# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., <br><br> *Plaintiff* <br><br> v. <br><br> CHANBOND, LLC, <br><br> *Defendant.* | C.A. No. 1:21-cv-01456-MN <br><br> **FILED UNDER SEAL** |

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND FOR EXPEDITED DISCOVERY

**BUCHANAN, INGERSOLL & ROONEY PC**

Dated: March 15, 2022

*/s/ Geoffrey Grivner*
Geoffrey G. Grivner (#4711)
Kody M. Sparks (#6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-3036
(302) 552-4200
geoffrey.grivner@bipc.com
kody.sparks@bipc.com

\*       \*       \*

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 3

ARGUMENT .................................................................................................................................. 6

   I.   LEGAL STANDARD ........................................................................................................ 6

      1.   CBV Has Demonstrated Likely Success on its Claims for Breach of Contract and Seeking Declaratory Judgment, Specific Performance, and Injunctive Relief ....................... 6

      2.   CBV Shall Suffer Irreparable Harm Absent the Grant of Injunctive Relief .................... 8

      3.   On Balance, Should Injunctive Relief Be Granted, ChanBond Would Face No Harm Yet CBV Would Suffer Irreparable Harm ................................................................. 10

      4.   The Public Interest Favors Granting the Provisional Relief .......................................... 11

      5.   An Order Permitting Specific, Limited, Expedited Discovery is Appropriate .............. 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) ....................................................... 11

*American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421
   (3d Cir. 1994)................................................................................................................................ 11

*AT&T Co. v. Winback And Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)...................... 12

*Hope v. Warden York Cty. Prison*, 956 F.3d 156 (3d Cir. 2020)...................................................... 6

*I/Mx Info. Mgmt. Sols., Inc. v. MultiPlan, Inc.*, 2013 WL 3322293 (Del. Ch. June 28, 2013)......... 7

*Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012).................... 9

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) .................................................... 8

*In re Netia Holdings, S.A.*, 278 B.R. 344 (Bankr. S.D.N.Y. 2002) ................................................. 8

*In re Tribune Co.*, 477 B.R. 465 (Bankr. D. Del. 2012) ................................................................... 8

*In re Uniflex, Inc.*, 319 B.R. 101 (Bankr. D. Del. 2005).................................................................. 12

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004)...................................................... 10

*Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*, 2004 U.S. Dist. LEXIS 25170
   (D. Del. Dec. 10, 2004)................................................................................................................ 11

*M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235 (M.D. Pa. 2020) ............................................................ 8

*Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) ............................................................................... 7

*Moneyham v. Ebbert*, 723 F. App'x 89 (3d Cir. 2018).................................................................... 6

*Official Comm. of Equity Sec. Holders v. Finova Gp. Inc. (In re Finova Gp. Inc.)*,
   C.A. No. 07–480–JJF, 2007 U.S. Dist. LEXIS 80577 (D. Del. Oct. 31, 2007).......................... 8

*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020)............................................... 8

*Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077 (9th Cir. 2004)................................... 8

*T.W. v. S. Columbia Area Sch. Dist.*, 2020 U.S. Dist. LEXIS 176429 (M.D. Pa. Sep. 25, 2020).. 7

*Texas Instruments Inc. v. Qualcomm Inc.*, 2004 WL 516560 (Del. Ch. Mar. 15, 2004).............. 11

**Rules**

Fed. R. Civ. P 26............................................................................................................................... 1

FED. R. CIV. P. 10 .................................................................................................................. 2

Fed. R. Civ. P. 65 .................................................................................................................. 1

**PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 65 and 26, Plaintiff CBV, Inc. ("CBV" or "Plaintiff") submits this Opening Brief in support of its Application for Temporary Restraining Order, Preliminary Injunction, and for Expedited Discovery. CBV respectfully moves this Court for entry of a temporary restraining order and a preliminary injunction enjoining and restraining Defendant ChanBond, LLC ("Defendant" or "ChanBond") from distributing funds held in trust by Eastern Point Trust Company ("Eastern Point Trust") derived from the settlement of various patent suits (the "Settlement Funds").[1] This extraordinary requested relief is required pursuant the applicable legal standards set forth herein because:

1. The key April 9, 2015 Patent Purchase Agreement (PPA)[2] under which the Settlement Funds are to be properly and legally distributed has not been disclosed to Eastern Point Trust by ChanBond pursuant its sole discretion; and

---

[1] Upon information and belief, the funds held in escrow amount to approximately $38,800,000. These funds are the remainder of $125,000,000 from settlement of the following suits: *ChanBond, LLC v. WideOpen West Finance, LLC*, No. 1:15-cv-00854 (D. Del. Sep 21, 2015); *ChanBond, LLC v. WaveDivision Holdings, LLC*, No. 1:15-cv-00853 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Time Warner Cable Inc. et al.*, No. 1:15-cv-00852 (D. Del. Sep 21, 2015); *ChanBond, LLC v. RCN Telecom Services, LLC*, No. 1:15-cv-00851 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Mediacom Communications Corporation*, No. 1:15-cv-00850 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Cox Communications, Inc. et al.*, No. 1:15-cv-00849 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Comcast Corporation et al.*, No. 1:15-cv-00848 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Charter Communications, Inc.*, No. 1:15-cv-00847 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Cequel Communications, LLC et al.*, No. 1:15-cv-00846 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Cablevision Systems Corporation et al.*, No. 1:15-cv-00845 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Cable One Inc.*, No. 1:15-cv-00844 (D. Del. Sep 21, 2015); *ChanBond, LLC v Bright House Networks, LLC*, No. 1:15-cv-00843 (D. Del. Sep 21, 2015); *ChanBond, LLC v. Atlantic Broadband Group, LLC, et al.*, No. 1:15-cv-00842 (D. Del. Sep 21, 2015).

[2] Attached hereto as **Exhibit A.**

2. CBV will be <u>irreparably harmed</u> by irretrievable distribution of the Settlement Funds under the exclusive direction of ChanBond to untraceable third party accounts leaving CBV no viable recourse against ChanBond.

As explained more fully in CBV's First Amended Complaint (incorporated herein, as if set forth at length),[3] CBV and ChanBond entered into the PPA. Under the PPA, the parties arranged for ChanBond, who was managed at the time by Dierdre Leane, to monetize Patents that ChanBond purchased from CBV in exchange for ChanBond receiving an agreed upon portion of the proceeds of those monetization efforts. ChanBond, acting in bad faith upon recognizing the value in the Patents, took fraudulent actions to enter into various ancillary agreements to conceal and pilfer funds that are owed to CBV.

As part of its efforts to renege on the PPA and to divert funds into its own coffers, Dierdre Leane and her company, IPNav, LLC ("IPNav") entered into an arbitration against ChanBond and its current manager, William "Billy" Carter, concerning issues expressly encompassed by the PPA and precluded CBV from participating in the proceedings. Upon information and belief, on March 8, 2022 Ms. Leane and/or IPNav received an arbitration award in the amount of $27.5 million, directly concerning the Settlement Funds directly at issue in this action.[4] ChanBond has repeatedly stated that it has no intent to abide by the PPA. With this recently issued arbitration award against ChanBond, ChanBond will act to distribute the Settlement Funds improperly unless this Court intervenes.

---

[3] FED. R. CIV. P. 10(c).

[4] CBV has requested a copy of the Arbitration award from both ChanBond and Ms. Leane. CBV's request has been refused or ignored to date.

Should ChanBond ferret away the Settlement Fund proceeds that CBV is clearly entitled to, it will make it impossible for CBV to later trace and locate these amounts in third party accounts. Distribution of the funds by ChanBond will thus irreparably harm CBV should this Court ultimately find CBV's claims meritorious. Urgent temporary restraints are warranted and necessary here because CBV is likely to succeed on the merits of its claim, and will be irreparably harmed in the absence of such relief.

## STATEMENT OF FACTS

CBV is a company that exists solely as the owner of the Patents. CBV's entire Patent portfolio was sold to ChanBond through the April 9, 2015 PPA. Under the PPA, CBV transferred its Patents to ChanBond in exchange for an entitlement to a $1,000,000 threshold payment and fifty percent (50%) of the Net Recoveries derived from any monetization of the Patents. ChanBond acted to monetize the Patents by bringing numerous Patent Suits in this District.

In June of 2021, ChanBond settled the Patent Suits for the amount of $125,000,000. By the terms of the PPA, ChanBond was to required pay CBV an amount *at least* equal to $30,506,583[5] by October 31, 2021. ChanBond indicated to CBV that it had **no intention** of paying CBV the agreed upon amount, necessitating the filing of this action. Even worse—ChanBond indicated that *no* payment would be made to CBV. To date, ChanBond continues to hold this line in direct breach of the PPA, § 3.2.2.

As the PPA governs management of the Settlement Funds, it is imperative that Eastern Point Trust be prevented from distributing the Settlement Funds to third parties in a manner at

---

[5] ChanBond refused to provide CBV with information regarding the settlement or the agreements with Mishcon de Reya LLP ("Mishcon"), King & Wood Mallesons LLP ("KWM"), Bentham, and others, and thus precluded CBV from determining the exact amount to which it is owed under the PPA and whether payments to these other parties are improper under the PPA.

further odds with the PPA between CBV and ChanBond. *See* Exhibit A, PPA, § 3.2.1. Although the Settlement Funds are encumbered by terms of the PPA, which terms can only be disclosed to Eastern Point Trust by ChanBond, ChanBond has refused to inform CBV whether Eastern Point Trust is ***aware*** of the PPA.

ChanBond further breached the PPA by thwarting CBV's efforts to contact the managing trustee, using the PPA's confidentiality provision against CBV, completely at odds with the confidentiality provision's original intended purpose. The PPA is subject to a draconian confidentiality provision that prohibits CBV from disclosing the existence of the PPA without prior consent by ChanBond purportedly so that ChanBond could more effectively monetize CBV's Patents. Exhibit A, PPA, § 8.4.[6] The PPA's terms prohibit CBV from referencing to third parties the PPA's existence, its terms, or that CBV and ChanBond are even parties to a contract. ChanBond refuses to consent to CBV disclosing the PPA to Eastern Point Trust. CBV contacted Eastern Point Trust to alert them of CBV's legal interest in the Settlement Funds and to request information regarding its escrow agreement with ChanBond, but Eastern Point Trust refused to provide any information. CBV has no choice but to seek immediate relief from this Court to prevent the distribution of Settlement Funds to third parties in a manner that violates the PPA.

CBV also learned in 2020 that ChanBond entered into various ancillary agreements barred by the PPA. For example, Ms. Leane, ChanBond's former manager, improperly asserted that CBV agreed to an "Advisory Services Agreement" under which her company, IPNav, LLC ("IPNav") would receive twenty-two percent (22%) of *gross* recoveries from monetization efforts involving

---

[6] PPA, § 8.4 states, in relevant part: "The Parties hereto will keep the terms and existence of this Agreement and the identities of the Parties and their Affiliates confidential and will not now or hereafter divulge any of this information to any third party except as follows: (a) with the prior written consent of the other Party. . ."

the Patents in exchange for purported monetization consulting (the "ASA").[7] There is not a shred of truth to this. Ms. Leane's predecessor, Mr. Spangenberg, specifically structured the PPA as a sale of the Patents rather than a consultancy arrangement. The PPA also *expressly* disclaims and supersedes any prior and contemporaneous agreements, including the ASA.

In other words, once Ms. Leane realized the financial value of the Patents, she resorted to outright fraud in an effort to purloin additional sums of money. Ms. Leane unilaterally signed the ASA between ChanBond and IPNav *for both parties* three months *after* the PPA and *backdated* the document to give the appearance that it was signed contemporaneously. However, the ASA clearly qualifies as an Affiliate transaction under Section 2.8 of the PPA, requiring CBV's consent. CBV never gave such consent.

Ms. Leane and IPNav then sought to enforce these falsified ancillary agreements in a private arbitration through the American Arbitration Association, only including as parties ChanBond's former and current owners, Diedre Leane and William "Billy" Carter (the "Arbitration").[8] CBV was prevented from participating or intervening in the Arbitration. On March 8, 2022, despite exclusion of necessary party CBV, the Arbitration yielded an award in the amount of $27.5 million in favor of third party Ms. Leane and/or IPNav.

Through various lawsuits and arbitrations between Ms. Leane and Mr. Carter, among others, CBV learned that Mr. Carter is also asserting the existence of other third party agreements which would dilute CBV's share of the Net Recoveries under the PPA. Upon information and belief, the effect of entering into these purported agreements without CBV's authority is to

---

[7] This would amount to Ms. Leane and/or IPNav receiving the unreasonable amount of $27,500,000 for services which were minor, if rendered at all.

[8] Upon information and belief, the Arbitration proceedings did not address the invalidity of the ASA, at issue in this action.

5

improperly siphon from CBV's settlement take to pay Mishcon, KWM, Bentham, and Mr. Carter amounts to which they are not entitled.

CBV sold all of its intellectual property to ChanBond under the PPA and relied upon ChanBond's good faith adherence to the terms of their agreement. CBV's inability to prevent the Settlement Funds from being disseminated to third parties to whom the funds are not entitled, will irreparably harm CBV. On the pretenses of the Arbitration award between third parties Diedre Leane and William "Billy" Carter, upon information and belief, ChanBond shall now seek to disburse the Settlement Funds and deny CBV the benefit of its bargain pursuant the PPA which CBV legally entered into with ChanBond.

## ARGUMENT

**I.   LEGAL STANDARD**

A preliminary injunction is an extraordinary remedy that should be granted only if (1) plaintiff has a reasonable likelihood of success on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant (aka "the balance of hardships"); and (4) granting the injunction is in the public interest. *Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018). The same elements also apply to temporary restraining orders ("TROs"). *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020). TROs are reserved for circumstances in which the applicant can show he or she faces a real and immediate threat of irreparable injury before the court can consider and hear a noticed-motion for a preliminary injunction. *Id*.

   *1. CBV Has Demonstrated Likely Success on its Claims for Breach of Contract and Seeking Declaratory Judgment, Specific Performance, and Injunctive Relief*

A movant need only establish a prima facie case demonstrating a reasonable probability of success; they are not required to prove that success is more likely than not. *T.W. v. S. Columbia*

*Area Sch. Dist.*, 2020 U.S. Dist. LEXIS 176429, at *6–7 (M.D. Pa. Sep. 25, 2020). The court generally does not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).

To state a breach of contract claim under Delaware law, a plaintiff must plead, "(1) the existence of a contract, whether express or implied; (2) a breach of an obligation imposed by that contract; and (3) damage suffered by the plaintiff as a result." *Narrowstep, Inc. v. Onstream Media Corp.*, Civil Action No. 5114–VCP, 2010 WL 5422405, at *7 (Del.Ch. Dec. 22, 2010).

Delaware law also authorizes declaratory actions that specifically order how escrowed funds can be distributed. *I/Mx Info. Mgmt. Sols., Inc. v. MultiPlan, Inc.*, 2013 WL 3322293, at *1 (Del. Ch. June 28, 2013).

CBV has demonstrated more than just a reasonable probability of success on the merits here, where the clear and express terms of the PPA, an indisputably valid contract, speak to how ChanBond must distribute the Settlement Funds to CBV. By failing to pay CBV an amount *at least* equal to $30,506,583 as its proper share of the $125,000,000 settlement value of the Patent Suits, ChanBond has clearly breached PPA, § 3.2.2. ChanBond fails to provide CBV with reasonable assurances that it will abide by the PPA § 3.2.1 and 3.2.2.

Implicit in the PPA, as in all contracts, is a duty of good faith and fair dealing. In bad faith, ChanBond withheld consent from CBV to disclose the PPA to Eastern Point Trust. ChanBond has breached its contractual duty to act in good faith and deal fairly with CBV by preventing CBV from ensuring that Eastern Point Trust manages the Settlement Funds pursuant to the PPA.

ChanBond's entry into prohibited ancillary agreements also constitute independent breaches of the PPA. ChanBond's former manager Ms. Leane signed the ASA for ChanBond <u>and</u> IPNav, as signatory on *both sides of the transaction* and illegally *backdated the document*, without

the knowledge or consent of CBV. ChanBond forged ahead using this instrument disclaimed by the PPA, and other such ancillary agreements, in an effort to siphon money away from CBV.

CBV has demonstrated a likelihood of success on the merits of its claims asserted in the First Amended Complaint.

### 2. *CBV Shall Suffer Irreparable Harm Absent the Grant of Injunctive Relief*

To show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial; the harm must be likely to occur in the absence of an injunction. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262 (3d Cir. 2020). To show irreparable harm, "the movant must show that it is 'more likely than not' to suffer irreparable harm absent the requested relief." *M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 244 (M.D. Pa. 2020).

The distribution of funds to third parties which, after disbursement, may be difficult or impossible to trace and recover constitutes irreparable harm. *See In re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012) ("[A] distribution of funds to diverse parties may constitute irreparable harm because once a distribution is made, funds may be difficult or impossible to recover." (citing *Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1086 (9th Cir. 2004); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351 (S.D.N.Y. 2007); *In re Netia Holdings, S.A.*, 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002)); *see also Official Comm. of Equity Sec. Holders v. Finova Gp. Inc. (In re Finova Gp. Inc.)*, C.A. No. 07–480–JJF, 2007 U.S. Dist. LEXIS 80577, at *4-5 (D. Del. Oct. 31, 2007) ("Appellant's risk of irreparable harm is real and substantial . . . Once [] distribution is made, Appellant will have little or no recourse available to reclaim the funds. . . Given the significant risk of harm to Appellant, the Court is inclined to give less weight to Appellant's likelihood of success on the merits.").

8

Delaware has recognized irreparable harm in situations when a company faces a "critical time" in which, absent an order granting specific emergent relief, the company's ability to continue as a going concern will be put into doubt. *Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012) (granting expedited scheduling of claim seeking injunctive relief to cause the target company to waive its advance notice bylaw because the company was facing a "critical time" after it was presented with an acquisition proposal, resisted by the board, that would have delivered a substantial premium to stockholders).

Unless a restraining order is issued in this case, there is material risk that CBV will suffer irreparable harm. Upon information and belief, Ms. Leane and/or IPNav obtained an Arbitration Award on March 8, 2022 premised upon misleading and fraudulently created third party ancillary agreements that are invalid under the PPA. CBV no longer possesses the intellectual property that it transferred to ChanBond and, is threatened with having its entire benefit of the PPA bargain devastated by ChanBond's $27.5 million distribution of the Settlement Funds to third parties; i.e., Ms. Leane and/or IPNav. With the Arbitration Award now issued, ChanBond will disseminate the Settlement Funds to third parties thereby precluding CBV its proper share of the Settlement Funds pursuant the duly executed PPA. CBV faces a total destruction of its contractually bargained benefit under the PPA.[9]

---

[9] Upon information and belief, if funds are distributed from the Settlement Funds pursuant to the Arbitration Award, CBV shall only receive $15.65 million of the total $125 million in Settlement Funds, despite that it created and provided the Patents to be monetized under the PPA.  By contrast: (i) Ms. Leane will have received $27.5 million from the Settlement Funds under the improper ASA for services which were minor, if rendered at all; (ii) ChanBond will have received $13.65 million from the Settlement Funds, (iii) and the attorneys and litigation financier will have received the remainder, approximately $68.2 million.   This is because ChanBond entered into various agreements in breach of the PPA which deprived CBV of funds to which it is entitled under the PPA in order to pay these other parties.

### 3. On Balance, Should Injunctive Relief Be Granted, ChanBond Would Face No Harm Yet CBV Would Suffer Irreparable Harm

Regarding the balance of hardships, the question is whether, and to what extent, the defendant will suffer irreparable harm if the preliminary injunction is issued; if temporary relief would irreparably harm a defendant pending final disposition of the case, the court should balance the hardships to ensure that the issuance of an injunction would not harm the defendant more than a denial would harm the plaintiff. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004). The injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself. *Id*. at 728.

The entry of a temporary restraining order on an interim basis will do nothing more than preserve the status quo on a temporary basis as the parties and the Court work through the issues raised in the First Amended Complaint. In the absence of immediate injunctive relief, ChanBond will remain free to disburse or convey the Settlement Funds to subsequent third party transferees, making it increasingly difficult, if not impossible, for CBV to trace and recover those assets. By compelling ChanBond to hold these proceeds in escrow pending further order of the Court, ChanBond will not be harmed or damaged. If the Court ultimately determines that CBV is not entitled to the relief sought in the First Amended Complaint, ChanBond will have immediate access to the Settlement Funds held in escrow, unimpaired by the passage of time (it is anticipated that such an escrow account would be an interest bearing account).

Conversely, in the absence of an injunction, CBV will be irreparably harmed. If ChanBond dissipates all or a substantial portion of the Settlement Funds during the pendency of this litigation, CBV will be materially harmed and will be in a far worse position than it is in today. CBV is prohibited by the PPA's confidentiality provision from disclosing the PPA to Eastern Point Trust, and bears no recourse to prevent the Settlement Funds' distribution but to seek immediate relief

10

from this Court. *See Texas Instruments Inc. v. Qualcomm Inc.*, 2004 WL 516560, at *4 (Del. Ch. Mar. 15, 2004) (recognizing that disclosing a patent purchase agreement that contains a confidentiality provision requiring consent to disclosure could potentially constitute a material breach of contract).

Accordingly, the balance of harm weighs in favor of granting CBV's request for emergent injunctive relief.

### 4. *The Public Interest Favors Granting the Provisional Relief*

The focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief. *Kyphon, Inc. v. Disc-O-Tech Med. Techs. Ltd.*, 2004 U.S. Dist. LEXIS 25170, at *16–17 (D. Del. Dec. 10, 2004). As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff. *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

The temporary relief sought by CBV seeks merely to preserve the status quo – preserving and protecting the value of the proceeds obtained by ChanBond pursuant to the PPA pending the final adjudication of the First Amended Complaint. Entry of the proposed order would permit the Court to adjudicate the Parties' entitlement to the assets pursuant a legal, enforceable PPA contract without disruption.

In the present case, CBV is at grave risk of an irreparable harm which public interest seeks to avoid. Without injunctive relief, CBV stands to lose the entire benefit of the PPA bargain it entered into with ChanBond. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) (requiring (i) irreparable harm absent an injunction and (ii) a reasonable likelihood of success on the merits and "if relevant, the court should also examine the likelihood of irreparable

harm to the nonmoving party and whether the injunction serves the public interest."); *In re Uniflex, Inc.*, 319 B.R. 101, 104 (Bankr. D. Del. 2005) (same); *see also AT&T Co. v. Winback And Conserve Program, Inc.*, 42 F.3d 1421 1427 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").

### 5. *An Order Permitting Specific, Limited, Expedited Discovery is Appropriate*

Expedited discovery is reasonable where, as here, CBV seeks narrowly tailored information necessary to CBV's application for a temporary restraining order and preliminary injunction. Pertinent to this dispute, CBV seeks (a) all documents and/or communications concerning ChanBond's agreement with Eastern Point Trust Company related to the Settlement Funds and (b) a copy of the Arbitration Award issued on or about March 8, 2022.

CBV's requested expedited discovery is reasonable and appropriate, because it is limited to information regarding ChanBond's escrow and/or trust agreement with Eastern Point Trust Company and the Arbitration Award. This discovery will assist the Court in determining whether the Settlement Funds have been further conveyed or encumbered for the benefit of Defendant, and/or mismanaged to CBV's detriment. ChanBond will not be prejudiced if ordered to produce the requested information on an expedited basis.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter a temporary restraining order and a preliminary injunction enjoining and restraining ChanBond from distributing funds held in trust by Eastern Point Trust and that the Court order specific, limited, expedited discovery relevant thereto.

|  |  |
|---|---|
|  | **BUCHANAN, INGERSOLL & ROONEY PC** |
| Dated:  March 15, 2022 | */s/ Geoffrey Grivner* |
|  | Geoffrey G. Grivner (#4711) |
|  | Kody M. Sparks (#6464) |
|  | 500 Delaware Avenue, Suite 720 |
|  | Wilmington, DE 19801-3036 |
|  | (302) 552-4200 |
|  | geoffrey.grivner@bipc.com |
|  | kody.sparks@bipc.com |

* * *

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*

13