## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC.,<br><br>   *Plaintiff*<br><br>  v.<br><br>CHANBOND, LLC,<br><br>   *Defendant.* | <br><br><br><br>C.A. No. 1:21-cv-01456-MN |

## <u>GREGORY COLLINS AND KAMAL MIAN'S MOTION TO INTERVENE DERIVATIVELY ON BEHALF OF UNIFIEDONLINE, INC.</u>

Gregory Collins and Kamal Mian are shareholders of UnifiedOnline, Inc., a Delaware corporation ("UOI"). UOI is the owner and sole member of Chanbond, LLC ("Chanbond"), the defendant in this action. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, the aforesaid shareholders of UOI ("Proposed Intervenors"), by, and on behalf of UOI, respectfully move this court pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, pursuant to Federal Rule of Civil Procedure 24(b), for an Order granting their Motion to Intervene in this lawsuit. Proposed Intervenors have attached to this motion their proposed shareholder derivative complaint[1] against Chanbond and William R. Carter, Jr. ("Carter"), controlling shareholder and sole director of UOI, as well as sole manager of Chanbond. Given the heavy redactions to the First Amended Complaint ("FAC") contained in the court's public file, however, Proposed Intervenors cannot respond to the allegations therein until such time as they are served with an unredacted copy of the FAC.

---

[1] Attached as Exhibit "A."

## Table of Contents

INTRODUCTION ................................................................................................................. 3

BACKGROUND .................................................................................................................. 8

ARGUMENT ...................................................................................................................... 12

    1.    **Proposed Intervenors Have a Right to Intervene Under Rule 24(a)** .......................... 12

        a.    **Timeliness**................................................................................................. 13

        b.    **Interest** ...................................................................................................... 13

        c.    **Interest Impaired**.................................................................................... 14

        d.    **Inadequate Representation**.................................................................... 15

    2.    **Alternatively, the Court Should Exercise its Discretion to Permit Intervention Under Rule 24(b)** ................................................................................................................ 16

CONCLUSION ................................................................................................................... 17

# Table of Authorities

## Cases

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191 (D.N.J. 2015)........ 10

*Applied Energetics, Inc. v Farley* (Del. Ch. 2020) 239 A.3d 409 ............................ 3, 9

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992) ........................................................ 13

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) .................................................. 12

*Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111, 2016 WL 5422063, at *4 (D.N.J.
Sept. 2, 2016) ........................................................................................................ 12

*Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082, 2019 WL 6785504, at *5 (D. Del.
Dec. 12, 2019) ...................................................................................................... 10

*F.T. Int'l, Ltd. v. Mason*, No. 00-5004, 2003 WL 21993859, at *1 (E.D. Pa. May 2, 2003)........ 11

*Getty Oil Co. v. Dep't of Energy*, 117 F.R.D. 540 (D. Del. 1987). ........................... 14

*Glover v. Ferrero USA, Inc.*, No. 11-1086, 2011 WL 5007805, at *3 (D.N.J. Oct. 20, 2011)..... 11

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) .................................................... 10

*Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 12-193, 2014 WL 4445953, at *2 (D.
Del. Sept. 8, 2014) ............................................................................................... 14

*Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560 (D.Del. 1981) ........................ 12

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ...................................... 10

*Kleissler v. U.S.Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ...................................... 11

*Pa. Prison Soc'y v. Cortes*, 622 F.3d 215 (3d Cir. 2010) ......................................... 10

*Pennsylvania v. President of the U.S.*, 888 F.3d 52 (3d Cir. 2018) ........................... 13

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ............................... 13

*United States v. Territory of V.I.*, 748 F.3d 514 (3d Cir. 2014) ................................ 10

*Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016) ............................................. 10

**Statutes**

28 U.S.C. § 1367............................................................................................................14

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................... 9, 10, 11, 14

Fed. R. Civ. P. 24(b).................................................................................... 10, 14

**Treatises**

6 *Moore's Federal Practice - Civil* § 24.03 (2021) ............................................ 12, 13

## INTRODUCTION

"Defendant Chanbond, LLC's Statement" filed with the Court on February 1, 2022, identifies UOI as Chanbond's sole member. (D.I. 15) As Chanbond's sole member, UOI is the intended beneficiary of Chanbond's Patent Purchase Agreement ("PPA") with Plaintiff CBV, Inc. ("CBV"), and is entitled to a 50% share of the settlement proceeds alleged in CBV's FAC. However, as UOI lacks both a functioning board of directors and any corporate officers, UOI is incapable of intervening in this case to protect the interests of UOI's shareholders in the subject settlement proceeds.[2] Thus, the identified shareholders, on behalf of a larger group of shareholders, holding approximately 310,000,000 shares in UOI, ask the Court for permission to intervene on behalf of UOI to protect UOI's interests.

Gregory Collins and Kamal Mian have not made a demand upon UOI to intervene in this matter. Demand upon UOI to intervene in the above captioned matter is futile for all of the same reasons identified in the proposed shareholder derivative complaint attached as Exhibit A and identified in paragraphs 28 – 35 of the proposed shareholder derivative complaint which are incorporated herein by reference and for the reasons identified within this motion which support the fact that Carter is both unwilling and incapable of looking out for the interests of UOI and its shareholders.

"As of September 16, 2015 there were approximately 5,900 record owners of UOI[ ] common stock."[3] Defendant Chanbond is a wholly owned subsidiary of UOI. The patents owned

---

[2] Delaware Annual Franchise Tax Reports for 2019 and 2020, signed and filed by Carter, list William R. Carter as the sole director and state that there are no officers. However, section 2.1 of UOI's bylaws, as amended, state that "[t]he Board of Directors shall consist of three (3) members" and section 2.6 provides that a quorum is "a majority of the total number of authorized directors." See, generally, the discussion of *Applied Energetics, Inc. v Farley,* 239 A.3d 409 (Del. Ch. 2020) below regarding the lack of authority of a sole director of a three director board.

[3] UnifiedOnline, Inc. 10-K Annual Report filed with the United States Securities and Exchange Commission ("SEC") October 30, 2015, for the fiscal year ended June 30, 2015, Item 5. (Hereinafter all references to reports or other filings submitted to the SEC shall refer to filings made by UOI.)

by Chanbond represent the largest, if not the sole, asset held by UOI.  The 50% share of the net settlement proceeds for the patent litigation represents the sole source of equity value for the estimated 5,900 UOI shareholders.

Consistent with the allegations in CBV's FAC, and certain publicly filed documents, Carter holds himself out as the sole person in charge of both UOI and its subsidiary Chanbond. Carter, however, has held no meetings of UOI's board of directors and has ignored the Proposed Intervenor's call for a meeting of UOI's shareholders. Without authority, Carter has instituted litigation and entered into agreements encumbering the assets of Chanbond and UOI. Carter has unlawfully refused to respond to the Proposed Intervenor's lawful demands to inspect corporate records, with the sole exception of providing copies of UOI's bylaws. Moreover, allegations made by CBV, and others, provide Proposed Intervenors reason to believe that Carter, through self-interested transactions, has improperly used UOI's assets for his own personal enrichment.

While Carter proclaims himself to be the sole director of UOI, he has produced no record of either his election by the shareholders or his appointment by the board of directors to fill a vacancy. Further, even if he had been elected or appointed, UOI's bylaws require at least two directors for board action.[4] Section 2.1 of UOI's amended bylaws clearly state that "[t]he Board of Directors shall consist of three (3) members."

Carter also claims to be the sole manager of Chanbond. His claim appears to be based on a provision in the agreement whereby UOI purchased all the membership interests in Chanbond. Again, however, there is no record of UOI's board of directors ever appointing Carter to manage Chanbond. Though heavily redacted, CBV's complaint offers some suggestion as to why Carter needed UOI to secure the CBV patents and why, after UOI purchased all the membership interests of Chanbond, UOI and its shareholders appear to have been forgotten.[5]

---

[4] See Fn 1, above.
[5] FAC ¶ 32: "Billy Carter of IP Navigation had problems coming up with the financial backing necessary to effectuate the agreement. Because of this, ChanBond was substituted in as [REDACTED]"; FAC ¶ 34: "Because of the problems with Mr. Carter in obtaining financing, CBV informed Ms. Leane that it was not interested…"

There are also specific allegations, both here and in other court filings, suggesting that Carter has made agreements, as Chanbond's manager, that will reduce the portion of the patent litigation settlement proceeds flowing through Chanbond to UOI. Most notably, it is alleged that Carter increased the percentage of settlement proceeds to be paid to the litigation funder and has made arrangements to redirect 20% of UOI's share of the settlement proceeds to be paid to Carter's affiliated company, UO! IP of NC, LLC ("UO! IP").

Perhaps the most important reason for intervention in a derivative capacity is that there is no indication that Carter has any current plans to distribute *any of* the settlement proceeds from the patent litigation to UOI's shareholders. Carter has not communicated with UOI's shareholders since 2015 and the shareholders received no news concerning the patent litigation or its settlement from Carter. In fact, the shareholders only learned of the settlement through the redacted filings in this case.

UOI's stock (ticker UOIP) was delisted following the SEC's revocation of UOI's registration on July 17, 2019,[6] yet, as of November 11, 2021, UOI did not have a current stock ledger necessary to distribute the funds.[7] Without a quorum of the board and without any validly appointed officers, furthermore, Carter lacks any authority to hire counsel to represent UOI's interests in this or any other pending litigation.

With several legal actions having been instituted by Chanbond's prior owner,[8] UOI's shareholders,[9] and the prior patent holders,[10] which include the action now pending before this court, to challenge management decisions taken by Carter in Chanbond's and UOI's name, and with Carter's continued refusal to communicate with UOI's shareholders, the likelihood of potential impropriety is hard to ignore. The immediate concern, though, is that the settlement

---

[6] Commission Order revoking Exchange Act registration, Release 86389 dated July 16, 2019. Once the registration had been revoked, UOI stock could no longer be publicly traded. But the transfer agent should have had a complete list stockholders as of July 17, 2019.
[7] Correspondence from UOI counsel (purportedly) Ira S. Saul, PLC dated November 11, 2021.
[8] *Leane v. UnifiedOnline, Inc.*, Case No. 3:20-cv-03097-B (N.D. Tex. 2020).
[9] *Mian, et al. v. Carter, et al.*, Case No. 30-2021-01219501 (Cal. Super. Ct. Orange 2021).
[10] *CBV, Inc. v. Chanbond, LLC*, Case No. 1:21-cv-01456-MN (D. Del. 2021).

proceeds at issue in this action represent a finite pool of funds and, with no other funds available, the multiple legal actions engendered by Carter's apparent mismanagement of UOI and Chanbond will deplete the funds available to all interested parties, principally, UOI and CBV.

## BACKGROUND

On July 20, 2021, Proposed Intervenors served UOI and Carter with a Demand to Inspect Books and Records pursuant to DGCL Section 220. To date, the only document received was the UOI bylaws as amended in 2014. While the story is far from clear, the following background information has been pieced together largely from UOI's past SEC filings as well as court filings. Pursuant to a Subscription Agreement dated April 23, 2014 (the "Subscription Agreement") between UOI (f/k/a IceWeb, Inc.), at that time a publicly held and reporting corporation, and UnifiedOnline!, LLC, a Delaware limited liability company ("Unified LLC") formed by Carter on March 25, 2014, Unified LLC received a controlling interest in UOI. Unified LLC acquired the controlling interest by purchasing 400,000 shares of Series AA Preferred Stock, with voting rights equal to "five thousand (5,000) times that number of votes on all matters submitted to the shareholders of the Corporation that is equal to the number of shares of Common Stock of the Corporation."[11] The Series AA Preferred Stock issued to Carter were converted "into the shares of UOI[ ]'s fully diluted Common Stock of such number sufficient to provide the holders thereof, in the aggregate, ninety percent (90%) of all shares of Common Stock of UOI[ ] on a fully diluted basis".[12] The public reports filed with the SEC disclosed that Carter was the sole member of Unified LLC and therefore the beneficial holder of a controlling interest in UOI.[13]

As of February 14, 2014, UOI had 492,746,383 shares outstanding.[14] On April 23, 2014, UOI shares were trading at $1.44, meaning Unified LLC's 90% interest was ostensibly worth

---

[11]  Item 3.02, Current Report on Form 8-K filed by UOI a/k/a IceWeb, Inc. on April 30, 2014.
[12]  Schedule 13D filed with the SEC on November 13, 2015.  The Series AA Preferred Stock was converted into common stock "on October 26, 2015 with an effective date of January 5, 2015." The purpose for the "transaction" was "to exercise control over [UOI]". Id.
[13]  Schedule 13D filed with the SEC on May 15, 2014
[14]  UOI Form 10-Q - Quarterly report filed 2/14/14.

$6,385,993,124 based only on the number of shares issued and outstanding (not fully diluted) at the time of "purchase" and the market stock price on that day without any value added for voting rights associated with the Series AA Preferred Stock.[15] According to SEC filings, the consideration paid by Unified LLC for its 90% stake in UOI was stated as follows: "In consideration for the Shares, Subscriber [Carter's Unified LLC] (i) paid $16,753.80 in satisfaction of a contractual health insurance obligation of the Corporation, (ii) caused $99,332.87 to be paid on behalf of the Corporation to various vendors, and (iii) obtained the agreement of a certain lessor to temporarily forbear exercising non-payment default remedies."[16]

Following the execution of the Subscription Agreement, the six sitting UOI directors carefully choreographed a sequence of resignation and election apparently designed to allow the resigning directors to name three new directors by filling vacancies pursuant to DGCL Section 223(a)(1) and Section 2.2 of the UOI bylaws. Presumably the careful sequence of resignation and election was to avoid the need for a shareholders' meeting to elect the new directors.  The three successor directors then amended the bylaws and reduced the authorized number of board seats to three.[17]

A public report filed by UOI with the SEC stated that the three directors had been selected by the controlling shareholder.  "On April 23, 2014, the six members of IceWEB's Board of Directors resigned, and was [sic] replaced by three directors *appointed by the holder of our Series AA Preferred Stock*. The Board of Directors consists of three directors as of April 23, 2014."[18]

---

[15] The calculation assumes the issuance to Carter of common shares such that he would own 90% of the issued and outstanding Common Stock and does not include any preferred shares that may have been issued.

[16] UOI Form 8-K Current Report dated April 23, 2014 filed on April 30, 2014.

[17] Notwithstanding the choreographed sequence of resignation, followed by appointment to fill the vacancy, followed by another resignation, etc., the "choreographer" apparently failed to notice that, with only three directors, there was no quorum able to act to amend the bylaw provision setting the number of authorized board seats.  Nor did it appear that the provision in DGCL Section 223(d) was considered and followed.

[18] Form 10-Q filed with the SEC on May 15, 2014, Notes to Financial Statements, Note 17 – Related Party Transactions, page 25.  Emphasis added.

In a declaration filed with the U.S. District Court for the Northern District of Texas, Carter stated that prior to acquiring a controlling interest in UOI, he had been seeking an agreement with plaintiff CBV, the prior owner of the patents at the center of this litigation (the "CBV Patents"). CBV instead entered into an agreement with Chanbond which had been formed by Carter's former colleague, Deirdre Leane ("Leane"). Pursuant to the agreement dated April 9, 2015, between CBV and Chanbond, Chanbond acquired the CBV Patents and agreed to pay to CBV approximately 50% of the net amounts Chanbond received from monetizing the CBV Patents.

On October 27, 2015, UOI acquired all the membership interests in Chanbond from Leane. Pursuant to the membership interest purchase agreement dated October 27, 2015, by and among UOI, Leane, and Chanbond whereby UOI acquired Chanbond and its Patents, "[a]t the Closing, Chanbond shall appoint William R. Carter, Jr as sole manager ("Manager") and thereafter Manager shall have sole and exclusive authority over the business of Chanbond."[19]   That is, UOI, controlled by Carter, appeared to delegate all control over the corporation's largest asset to Carter by its execution of the membership interest purchase agreement. Prior to this, on June 15, 2015, UOI filed a Current Report on Form 8-K with the SEC announcing the resignation of two of the three board members "selected" by Carter. They were not replaced leaving the UOI board without a quorum and therefore unable to take any action (other than filling vacancies on the board).

In *Applied Energetics*, the Delaware Court of Chancery discussed the ability of a sole director, Farley, on a board with three authorized board seats. "Although Farley was the sole remaining director, the board had three seats, and the Company's bylaws required the presence of a majority of the total number of directors to constitute a quorum for action at a meeting. As the sole remaining director, Farley could not meet the quorum requirement and therefore could not take action at a meeting. Farley also could not act by unanimous written consent without a meeting, because Delaware law requires that the number of directors acting unanimously by written consent be sufficient to constitute a quorum if the action was taken at a meeting. The actions Farley took

---

[19] Chanbond Agreement, Exhibit 10.1 to Form 8-K Current Report filed by UOI on October 30, 2015.

as the sole remaining director, including his approval of [a written consent of the board and a written consent of a board committee], are therefore invalid as a matter of law." *Applied Energetics* at 425. Similarly, any actions taken by Carter as a director of UOI would be "invalid as a matter of law." (Id.)

The Complaint filed by CBV in this action, alleges that the Patent Litigation was settled in June of 2021. On July 21, 2021, Proposed Intervenors served UOI and Carter with a Demand for Inspection of Books and Records of UOI pursuant to DGCL section 220 requesting, among other things, the current UOI shareholder list. Nearly four months later, counsel received an email from Ira S. Saul, purported counsel for UOI,[20] stating: "[a]s you know, there was a protracted period of time when UOI[ ] was not active. UOI[ ] was not financially able to operate. The process of assembling a shareholders list and undertaking other actions has been quite daunting. Responding to your inspection demand for a corporation that was dormant for a number of years requires time."[21] Ignoring the obvious, that the shareholder list should have always been current, after the revocation of UOI's registration in 2019 preventing future market transfers and, prior to Covid, with settlement of the patent litigation trials imminent, efforts to prepare the shareholder list should have been contemplated, if not completed. If not, then certainly after the patent litigation was settled in June 2021.

The proposed Scheduling Order filed on March 16, 2022, indicates that Chanbond's former member, Deirdre Leane ("Leane") and her limited liability company, IPNAV, LLC, will be intervening in the present suit and filing a complaint against UOI. Proposed Interveners do not know how the arbitration between Leane and Chanbond was settled, but it appears that Carter has

---

[20] "Purported" is used because without a functioning board, UOI lacks authority to hire counsel.
[21] See fn 6 above. "The process of assembling a shareholders list and undertaking other actions has been quite daunting. Responding to your inspection demand for a corporation that was dormant for a number of years requires time. Because the corporation was delisted by the SEC under the Securities Exchange Act of 1934 several years ago and for other reasons, the work required to assemble a shareholders list alone is substantial."

taken it upon himself to appear on behalf of UOI even though as outlined above, he has no authority to represent UOI and his purported authority to represent Chanbond is open to question.

## ARGUMENT

"Federal Rules of Civil Procedure 24(a) provides that, 'on timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010) (alteration omitted) (quoting Fed. R. Civ. P. 24(a)). "Rule 24(b) provides in relevant part that 'on timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 24(b)).

**1.  Proposed Intervenors Have a Right to Intervene Under Rule 24(a)**

The Third Circuit has articulated four elements that must be established to permit intervention pursuant to Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-cv-1082, 2019 WL 6785504, at *5 (D. Del. Dec. 12, 2019) (quoting *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014)). "The polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Crystallex*, 2019 WL 6785504, at *5 (alteration and citation omitted).

As in most other circuits, courts in the Third Circuit "liberally construe Rule 24(a) in favor of intervention." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015) (alteration and citation omitted). The Third Circuit's approach favors "'pragmatism'

and 'elasticity' over 'rigid rules' or 'narrow approaches;' it further 'favors intervention over subsequent collateral attacks.'" *Crystallex*, 2019 WL 6785504, at *5 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970–71 (3d Cir. 1998)); *see also Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987) (noting that courts must "consider the pragmatic consequences of a decision to permit or deny intervention").

### a. Timeliness

The Third Circuit considers three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (citation omitted). In addition, timeliness is ascertained from the complete set of circumstances, and the inquiry "is essentially a test of reasonableness." *F.T. Int'l, Ltd. v. Mason*, No. 00-5004, 2003 WL 21993859, at *1 (E.D. Pa. May 2, 2003). Where intervention "will cause no delay to the parties," the timeliness prong has been met. *See Glover v. Ferrero USA, Inc.*, No. 11-1086, 2011 WL 5007805, at *3 (D.N.J. Oct. 20, 2011).

Proposed Intervenors just recently became aware of this case and the instant motion to intervene was filed as promptly as possible. Based on the case "Docket Report" and "Deadlines/Hearings," it does not appear that this motion will prejudice the existing parties in any way. That said, Proposed Intervenors are prepared to comply with any schedule the Court may set prior to hearing on this motion, so there is no potential for delay.

### b. Interest

The second element under Rule 24(a)(2) requires the prospective intervenor to have "an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler v. U.S.Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citation omitted). In determining whether the movant has such an interest, "pragmatism is a substantial factor that must be considered," and the Third Circuit has "relied on pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding." Id. at 970.

UOI has a direct and "significantly protectable" legal interest in the settlement funds at issue in this case. As provided in paragraph 3.3.2 of the Patent Purchase Agreement, following the "Recoveries Threshold" amount, Chanbond and CBV would split equally (50/50) the "Net Recoveries" of the settlement proceeds.  UOI is the sole member of Chanbond, so Chanbond's 50% share of the "Net Recoveries" should flow directly to UOI.

Separately, though difficult to ascertain with certainty based on the heavily redacted FAC, it appears CBV may be disputing UOI's ownership interest in Chanbond. (See, e.g., FAC ¶ 10) UOI's ownership of Chanbond is a "direct, substantial, and legally protectable right" satisfying the "interest" requirement of Rule 24(a)(2). (See, 6 *Moore's Federal Practice - Civil* § 24.03 (2021))

Similarly, UOI has an interest in defending itself from claims made by Proposed Interveners Deidre Leane ("Leane") and IPNav, LLC.  It appears that there was an award in an arbitration at which Carter was involved representing Chanbond and UOI.

### c.  Interest Impaired

In assessing whether a proposed intervenor's interests will be impaired, courts in the Third Circuit look to the "practical consequences of denying intervention." *Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111, 2016 WL 5422063, at *4 (D.N.J. Sept. 2, 2016) (citation omitted). Intervenors "do not need to establish that their interests will be impaired. Rather, they must demonstrate only that the disposition of the action **'may' impair** or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citations omitted) (emphasis added).

"A movant's interest is plainly impaired if disposition of the action in which intervention is sought will prevent any future attempts by the movant to pursue that interest. For example, if the doctrine of res judicata would prohibit a movant from pursuing a claim in a separate action, a total obstruction of the interest would result. *6 Moore's Federal Practice - Civil* § 24.03 (2021).  Here, if CBV's allegations regarding the invalidity of Chanbond's ownership (FAC ¶ 10), as qualified above, should be successful, *res judicata* could bar UOI from bringing a separate action. "However, under the requirements of the rule, impairment, or a simple

14

decrease in the value of the interest, is also sufficient." *Id.* Given Carter's alleged conflicts and apparent lack of loyalty to UOI, without intervention, Chanbond "may" defend or settle this action in a manner that impairs UOI's interest.

Finally, Delaware District Courts have found impairment where an "action might deplete specific, identifiable funds before the court so as to make it unlikely that the proposed intervenor could be fully compensated…" *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569-570 (D. Del. 1981). While "limited to situations where a discrete, distinguishable fund exists and where the intervenor has some presently, legally enforceable interest in that fund…," the settlement proceeds are a "discrete, distinguishable fund" and UOI, as Chanbond's sole member, has, as does CBV, a "legally enforceable interest in that fund." (Id.) Regardless of the outcome, the costs associated with Chanbond defending this action will reduce the "fund" money available for distribution to CBV and UOI, but less so than if a separate action was required.

### d.  Inadequate Representation

The Third Circuit has held that the burden of making this showing should be treated as "minimal," and that a party seeking intervention as of right must only make a showing that the representation "*may be*" inadequate. *Pennsylvania v. President of the U.S.*, 888 F.3d 52, 60 (3d Cir. 2018) (citations omitted); see also *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Representation is considered inadequate where, "although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).

"A person who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the person's ability to protect that person's interest, has a right to intervene "unless existing parties adequately represent that interest." *6 Moore's Federal Practice - Civil* § 24.03 (2021). Regarding the UOI's burden to show inadequate representation, "[t]he Supreme Court has stated

that "the Rule is satisfied if the applicant shows that the representation of his [or her] interest 'may be' inadequate," so the applicant's burden on this matter should be viewed as "minimal." *Id*. (quoting *Trbovich v. United Mine Workers of Am*. (1972) 404 U.S. 528, 538, n.10).

Under normal circumstances the interests of limited liability company and its sole member would be perfectly aligned and adequate representation would be presumed. The unredacted portions of the FAC make clear that CBV believes that Carter has made personal upstream agreements reducing the CBV's share of the settlement proceeds. That is, Carter has made agreements that purportedly reduce the PPA's "Net Recoveries" amount. (PPA ¶ 3.3.2). UOI also believes Carter has made ultra vires agreements which benefit him to the detriment of UOI and its shareholders (as well as CBV). Carter has a clear interest in protecting and defending decisions he has made although he lacked any authority to make them. The absence of a board of directors that could act, leaves him without any business judgment rule to protect him. UOI does not have an interest in protecting or defending Carter's decisions. Carter has a clear conflict of interest.

**2. Alternatively, the Court Should Exercise its Discretion to Permit Intervention Under Rule 24(b)**

Proposed Intervenors also satisfy the requirements of Federal Rule of Civil Procedure 24(b). Under Rule 24(b), on "timely motion" the Court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 12-193, 2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014) (quoting Fed. R. Civ. P. 24(b)(1)(B). Regarding permissive intervention, ""as the doctrine's name suggests, is within the discretion of the district court." (*Brody*, 957 F.2d at 1124.) "The central consideration for the exercise of discretion is whether allowing intervention will cause 'delay or prejudice.'" *Getty Oil Co. v. Dep't of Energy*, 117 F.R.D. 540, 549 (D. Del. 1987).

Permissive intervention requires, "(1) an independent basis for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a common question of law or fact with the primary litigation." (Id.) The principal goal of Proposed Intervenors is to maximize UOI's assets for distribution to its shareholders. At a minimum, Carter has done nothing to suggest that he is

looking out for the interests of UOI and its shareholders so, as the manager of Chanbond, there is no reason to think he will adequately represent UOI's interests against CBV in this matter. UOI is a Delaware corporation and, thus, diverse from Plaintiff CBV, a Pennsylvania corporation. The Court has supplemental jurisdiction over any crossclaim against Chanbond pursuant to 28 U.S.C. § 1367.  Chanbond's answer to the CBV's FAC was filed on January 27, 2022, with redacted version filed on February 3, 2022, and there are currently no deadlines or hearings scheduled, so allowing intervention will not cause undue delay to the existing parties. UOI's claims and defenses share common questions of fact with the "primary litigation."

## **CONCLUSION**

For the foregoing reasons, Proposed Intervenors request that the Court grant their motion to intervene of right under Rule 24(a) or, in the alternative, to allow Proposed Intervenors to intervene under Rule 24(b) and to file the cross-complaint affixed hereto.

Respectfully submitted,

THE WILLIAMS LAW FIRM, P.A.

By:

John L. Williams (Del. Bar #4473)
Brian C. Crawford (Del. Bar #4941)
1201 N. Orange Street, Suite 600
P.O. Box 511
Wilmington, DE 19899-0511
Tele: (302) 575-0873
Fax: (302) 575-0925
E-mail: John@TrustWilliams.com
         Brian@TrustWilliams.com


CENTAURI LAW GROUP, P.C.

Jason R. Dilday (pro hac vice pending)
Stevan L. Rader (pro hac vice pending)
15615 Alton Pkwy, Suite 245
Irvine, CA 92618
Phone: (949) 336-5716
E-mail: JDilday@centaurilaw.com

17

SRader@centaurilaw.com

*Attorneys for Defendants*
*KAMAL MIAN and GREGORY COLLINS*
*Derivatively on behalf UNIFIEDONLINE, INC.*

Dated: March 21, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21 day of March, 2022, a copy of the foregoing Kamal Mian and Gregory Collins' Motion to Intervene derivatively on behalf of UnifiedOnline, Inc. with all supporting papers, was served by the Court's electronic filing system on all parties of record.

John L. Williams (DE Bar# 4473)