**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CBV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 1:21-cv-01456-MN |
| | ) | |
| CHANBOND, LLC, DEIRDRE LEANE, | ) | ████████████████████ |
| and IPNAV, LLC, | ) | |
| | ) | **PUBLIC VERSION FILED** |
| Defendants. | ) | **ON APRIL 8, 2022** |

**DEIRDRE LEANE AND IPNAV, LLC'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

<u>OF COUNSEL:</u>

Akiva M. Cohen
Dylan M. Schmeyer
KAMERMAN, UNCYK,
      SONIKER & KLEIN P.C,
1700 Broadway, 16th Floor
New York, NY 10019
212.400.4930
*acohen@kusklaw.com*
*dschmeyer@kusklaw.com*

Dated:  March 31, 2022

James H. S. Levine (DE No. 5355)
TROUTMAN PEPPER
      HAMILTON SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500
*james.levine@troutman.com*

*Attorneys for IPNAV, LLC and Deirdre Leane*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 3

STATEMENT OF FACTS .................................................................................................... 3

I.     The Parties' Agreements and CBV's False Denials of Knowledge ................................. 3

        a.     CBV's Knowledge of ChanBond's Retention of IPNAV ..................................... 3

        b.     CBV's Knowledge of the ISA ................................................................. 5

        c.     The Relevant Language of Section 2.8 and Mr. Hennenhoefer's Deposition Testimony ...................................................................... 6

                i.     "Net Recoveries" .................................................................... 6

                ii.     "Affiliates" ............................................................................. 9

II.     The Arbitration ....................................................................................................... 9

III.     This Application ..................................................................................................... 11

SUMMARY OF ARGUMENT ............................................................................................. 12

ARGUMENT ..................................................................................................................... 12

I.     The Applicable Legal Standard .................................................................................. 12

II.     CBV Has Not Established a Likelihood of Success on the Merits ................................. 13

        a.     CBV cannot succeed on its claims for breach of Section 2.8 of the PPA ........... 13

        b.     CBV's claim for failure to pay is barred by the Receipt Agreement ................... 17

III.     Irreparable Harm ..................................................................................................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronow Roofing Co. v. Gilbane Bldg. Co.*,
    902 F.2d 1127 (3d Cir. 1990) .................................................................................. 14

*E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*,
    693 A.2d 1059 (Del. 1997) ..................................................................................... 16

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
    765 F.3d 205 (3d Cir. 2014) ................................................................................... 12

*Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*,
    847 F.2d 100 (3d Cir. 1988) ................................................................................... 18

*Giordano v. Czerwinski*,
    216 A.2d 874 (Del. 1966) ....................................................................................... 15

*Halpern v. Barran*,
    313 A.2d 139 (Del. Ch. 1973) ................................................................................ 15

*Icahn P'rs LP v. Amylin Pharms., Inc.*,
    2012 WL 1526814 (Del. Ch. Apr. 20, 2012) ......................................................... 18

*Klein v. Lionel Corp.*,
    130 F.Supp. 725 (D.Del.1955) ............................................................................... 15

*Lane v. New Jersey*,
    753 F. App'x 129 (3d Cir. 2018) ............................................................................ 12

*Lorillard Tobacco Co. v. American Legacy Found.*,
    903 A.2d 728 (Del. 2006) ....................................................................................... 16

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ................................................................................................ 13

*Nardo v. Guido DeAscanis & Sons, Inc.*,
    254 A.2d 254 (Del.Super. 1969) ............................................................................ 15

*O'Brien v. Progressive N. Ins. Co.*,
    785 A.2d 281 (Del. 2001) ....................................................................................... 16

*Ramsay v. Nat'l Bd. of Med. Exam'rs*,
    968 F.3d 251 (3d Cir. 2020) ................................................................................... 17

*Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*,
  616 A.2d 1192 (Del. 1992) (Delaware applies the "objective" theory of
  contracts) ...................................................................................................................16

*Seidel v. Lee*,
  954 F. Supp. 810 (D. Del. 1996) ...........................................................................15

*Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*,
  No. CV 21-00705-WCB, 2022 WL 605724 (D. Del. Jan. 25, 2022) ...............12, 13

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007) ...........................................................................14, 15

*W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*,
  2007 Del. Ch. LEXIS 154 (Del. Ch. Nov. 2, 2007) ...............................................16

**Statutes**

  10 Del. C. § 8106 ...................................................................................................14

Defendants Deirdre Leane ("Leane") and IPNAV, LLC ("IPNAV" and, collectively with Leane, the "Leane Defendants") respectfully submit this Answering Brief in opposition to the motion of Plaintiff CBV, Inc. ("CBV") for a preliminary injunction (the "Motion").

Plaintiff's motion is unsupported by any testimony, and its "Statement of Facts" contains page after page of attorney argument and conclusory and wild allegations without citation to any record support. In fact, as shown herein, Plaintiff's motion is not only without merit but relies primarily on the material omission of multiple agreements signed by Plaintiff and its principal, Earl Hennenhoefer, and is contradicted by not only a raft of documentary evidence, but also by Hennenhoefer's sworn testimony as a third-party witness in the arbitration between Leane Defendants and Defendant ChanBond, LLC ("ChanBond") (the "Arbitration"). Indeed, CBV's August 2021 contract with ChanBond specifically waived both any right to payment on the schedule provided for in the parties' Patent Purchase Agreement ("PPA") and any right to argue that ChanBond's payment to its litigation funder was not a "shared expense" between CBV and ChanBond. Moreover, the vast bulk of Plaintiff's claims are barred by Delaware's three-year statute of limitations on breach of contract claims, and Plaintiff therefore has – and can have – *no* likelihood of success on the merits.

That said, Leane Defendants do not oppose entry of a preliminary injunction barring ChanBond from depleting the remaining funds from the settlement of the patent litigation by (1) using any of the remaining funds itself, or (2) distributing it to any party not subject to the jurisdiction of the Court). While the arbitration award has not yet been confirmed, the likelihood of reversing an arbitration award is vanishingly small, and it is therefore overwhelmingly likely that ChanBond will be subject to a judgment directing it to pay ███████████████ (in the amount the Arbitration panel found was due on the Advisory Services Agreement ("ASA"), ██

██████████████████████████████████████████████). With only a little under

████████████████████████████████████, that would leave only two options: (1) if the

payment to IPNAV is deductible from Gross Recoveries under the Patent Purchase Agreement

between ChanBond and CBV, ████████████████ to Leane Defendants, with CBV and

ChanBond splitting ████████████████████, and Leane Defendants left to recover

████████████████████████████████; or (2) if the payment to IPNAV is not

deductible, ████████████████ to CBV and the rest to IPNAV, ██████████████

████████████████████████████. Under the circumstances, ChanBond's use

or distribution of any settlement funds to anyone other than Leane Defendants or CBV risks

causing irreparable harm, ████████████████████████████████.

 As such, despite the lack of merit to CBV's claims, Leane Defendants do not oppose

entry of an injunction that would prohibit ChanBond from further depleting the settlement fund

except by payment to CBV or Leane Defendants.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff CBV filed its Complaint in this Action on October 15, 2021 (D.I. 1). CBV filed its Motion on March 15, 2022 (D.I. 18-19). On March 16, 2022, the parties stipulated to the Leane Defendants' intervention in this Action (D.I. 25), which the Court ordered on March 17, 2022 (D.I. 28). Leane Defendants filed an Answer, Counterclaims, and Cross-claim on March 23, 2022 (D.I. 41). This is the Leane Defendants' Answering Brief in opposition to the Motion.

## STATEMENT OF FACTS

### I.     The Parties' Agreements and CBV's False Denials of Knowledge

#### a.     CBV's Knowledge of ChanBond's Retention of IPNAV

On April 9, 2015, CBV executed *three* contracts in connection with the sale of its patents and patent applications (the "IP") to ChanBond. As CBV alleges, it executed a Patent Purchase Agreement ("PPA"), by which it sold the IP to ChanBond. *See* D.I. No. 6 ("Complaint"), ¶ 36 and Ex. A. But CBV also executed two other contracts that day, which were annexed to the PPA as Exhibits B and C: a "Mutual Nondisclosure Agreement" (the "NDA", Ex. B to the PPA), and a "Common Interest Agreement" (the "CIA", Ex. C to the PPA). A true and correct copy of the PPA, with *all* of its exhibits, is annexed to the accompanying Declaration of Akiva M. Cohen ("Cohen Dec.") as Ex. 1. Though Plaintiff has now submitted the PPA to the Court three times (D.I. 2, 6_, & 19), Plaintiff has repeatedly excised the NDA and CIA each time. *Id.*[1]

The reason for that sleight of hand is obvious. The gravamen of Plaintiff's complaint is that it was blindsided in 2020 when it learned ChanBond had retained IPNAV to provide patent monetization services. *See*, *e.g.*, Complaint, ¶ 48 ("CBV was never informed of the ASA.[2]

---

[1] The NDA and CIA are thus collectively referred to herein as the "Omitted Contracts."
[2] The term "ASA" refers to the Advisory Services Agreement by which ChanBond retained IPNAV.

Rather, CBV learned of the … ASA … in 2020"). Based on that allegation – and a purported reading of Section 2.8 of the PPA that, as discussed below, contradicts both its plain language and Mr. Hennenhoefer's sworn testimony about its meaning – Plaintiff claims ChanBond breached the PPA by executing the ASA and seeks a declaration that it is void. Complaint, ¶ 14. Indeed, CBV argues that, by the PPA, "the parties arranged for *ChanBond* [] to monetize the Patents that ChanBond purchased from CBV …" Docket No. 18 at 2 (emphasis added). The Omitted Contracts eviscerate that claim.

Each of the Omitted Contracts was signed by *three* parties, not just the two – ChanBond and CBV – who executed the PPA. Cohen Dec. Ex. 1 at 15, 19. Hennenhoefer signed each of the Omitted Contracts on behalf of CBV. *Id.* And Deirdre Leane signed each of the Omitted Contracts on behalf of *both* ChanBond and IPNAV. *Id.* Why was IPNAV involved at all? What was *its* role in the transaction? The CIA explains that IPNAV would be ChanBond's patent monetization agent:

> 1.1 [ChanBond], [CBV] and IPNAV … *are parties to agreements under which* (i) [ChanBond] and [CBV] are negotiating a commercial transaction with respect to the Patent Rights (as defined below) and (ii) *IPNAV will act as the worldwide intellectual property enforcement and licensing agent of [ChanBond] and will provide services related to* the existing and future *enforcement and monetization opportunities of the patents and related rights* …

*Id.* at 16. By the CIA, CBV expressly agreed that it and IPNAV had "a common, joint, and mutual legal interest in the monetization of valid and enforceable Patent Matters." *Id.*, § 2.1. For its part, the NDA expressly provided that CBV and IPNAV were "engaged in a business relationship with each other." *Id.* at 13. Nor did Mr. Hennenhoefer somehow miss all of these provisions and the existence of the signature line for IPNAV; at his deposition in the Arbitration, Mr. Hennenhoefer testified he had specifically asked his attorney about IPNAV before signing the PPA and had been told that IPNAV was Ms. Leane's entity. Cohen Dec. Ex. 2 at 45:23-46:6.

He expressly confirmed that he knew that IPNAV and ChanBond were "two separate entities" owned by the same person, *id.* at 148:5-18, and knew that IPNAV "was going to be the enforcement and monetization agent for ChanBond." *Id.* at 149:9-13 ("Yes. That's what it says. That's correct").

Moreover, Ms. Leane herself thereafter repeatedly and directly reminded CBV both that ChanBond had retained IPNAV to provide services and that she was the individual behind both IPNAV and ChanBond. In a June 14, 2015 email to Patrick Keane, CBV's counsel at Buchanan Ingersoll, Ms. Leane wrote "IPNAV is an advisor (vendor) to ChanBond. It so happens I sit on both sides of the fence: ChanBond and IPNAV." Cohen Dec. Ex. 3. Four days later, Ms. Leane essentially repeated that information in an email directly to Earl Hennenhoefer: "SINCE CHANBOND HAS HIRED IPNAV AND I SIT ON BOTH SIDES OF THE FENCE …" *Id.*, Ex. 4 (capitalization in original).

### b. CBV's Knowledge of the ISA

Similarly, Mr. Hennenhoefer's deposition testimony and publicly available documents entirely foreclose CBV's claim, Complaint ¶ 56, that it did not learn of the Interest Sale Agreement ("ISA", the 2015 contract by which Ms. Leane sold ChanBond to Unified), until 2020. At deposition, Mr. Hennenhoefer explained that he had purchased shares in Unified after a meeting with Billy Carter in early 2014. Cohen Dec. Ex. 2 at 72:7-73:9; 19:12-21. And Mr. Hennenhoefer confirmed that he "watched the stock very carefully and also watched the message board that people comment about the stock." *Id.* at 73:3-9. As a shareholder in Unified, Mr. Hennenhoefer (and therefore CBV) had at least constructive (and likely actual) knowledge of the ISA. Not only did Unified disclose the ISA in its November 2015 Form 10-Q, but it appended the entire ISA to that filing as Exhibit 10.2. Cohen Dec. Ex. 5. (As CBV acknowledges in its

Complaint, the ISA also specifically disclosed the existence of, and adopted, the ASA. Complaint, ¶ 10_) Moreover, the primary topic of discussion on the "message board that people comment about the [Unified] stock" was Unified's potential recovery in the patent litigations, through its ownership of ChanBond. Declaration of Deirdre Leane ("Leane Dec.") ¶ 2. Indeed, Mr. Hennenhoefer acknowledged at his deposition that he learned of Unified's acquisition of ChanBond earlier than 2018, from the "message board." Cohen Dec. Ex. 2 at 190:1-191:10.

### c. The Relevant Language of Section 2.8 and Mr. Hennenhoefer's Deposition Testimony

#### i. "Net Recoveries"

At the heart of CBV's claims is a distorted interpretation of Section 2.8 of the PPA – a misreading so clear that Mr. Hennenhoefer expressly, repeatedly, and emphatically rejected it at his deposition in the Arbitration.

Section 2 of the PPA is entitled "DEFINITIONS," Cohen Dec. Ex. 1 at 1, and each of its subsections defines a term used in the operative sections of the PPA. Section 2.1 of the PPA defines the terms "Affiliate"[3] and "control," Section 2.2 of the PPA defines "Assigned Patent Rights," Section 2.3 defines "Cash," Section 2.4 defines "Cash Equivalents," Section 2.5 defines "Entity," Section 2.6 defines "Executed Assignment," Section 2.7 defines "Gross Recoveries," Section 2.8 defines "Net Recoveries," Section 2.9 defines "Patents," and Section 2.10 defines "Person." *Id.* at 1-2. Section 2.8 provides as follows:

> "***Net Recoveries***" shall mean the total aggregate Gross Recoveries less the total amount of costs and expenses incurred by or on behalf of [ChanBond] in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and

---

[3] An "Affiliate," as defined in the PPA, is an entity under common control with ChanBond or that ChanBond controls or is controlled by. Cohen Dec. Ex. 1 at 1, Section 2.1**.**

other reasonable costs and expenses related to the maintenance, prosecution, enforcement and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents Notwithstanding the above, any cost or expense which is paid to an Affiliate of [ChanBond] or to a stakeholder of [ChanBond] shall require the prior approval of Seller, such approval to not be unreasonably withheld.[4]

*Id.* at 2.

As is clear from the above, Section 2.8 is a definition of "Net Recoveries" (which is the term that defines the pool of money from which CBV gets paid under Section 3.3.2 of the PPA, *id.* at 3), and does not limit ChanBond's ability to contract with any vendors it may choose. Rather, it provides the guidelines for determining which expenses may be deducted from Gross Recoveries to calculate Net Recoveries: only those listed in Section 2.8, and, even for those listed in Section 2.8, sums actually paid to an Affiliate (as defined) or stakeholder in ChanBond could be deducted only if CBV had given prior approval, which it could not unreasonably withhold. *Id.* at 2.

Unsurprisingly, Mr. Hennenhoefer's deposition testimony renders CBV's new claim to the contrary in this action frivolous. Asked whether Section 2.8 of the PPA precluded ChanBond from contracting with Affiliates at all, or only prevented ChanBond from deducting payments to such Affiliates from Gross Recoveries when calculating Net Recoveries, Mr. Hennenhoefer repeatedly confirmed that it was the latter. *See* Cohen Dec. Ex. 2 at 71:12-19 (testifying it would be a "fair statement" that the purpose of "everything included in [Section 2.8] was to define what deductions could be taken before CBV's share of revenue was calculated"), 93:9-95:1 (agreeing that under Section 2.8 ChanBond could "have an agreement with a third party," even an affiliate or stakeholder, as long as it was "not [CBV's] expense"), 118:13-23 (referring to a prior version

---

[4] The term "Affiliate transaction" does not appear in this or any other section of the PPA. *Cf.* Moving Brief at 5 ("… the ASA clearly qualifies as an Affiliate transaction under Section 2.8 of the PPA …").

of the deal in which the patents would be sold to an entity owned by Billy Carter, with an almost identical provision, and explaining that Carter "can get anyone he wants to and do whatever kind of deal he wants" so long as CBV was not going to be charged for it), 119:3-4 ("If Billy wants to pay somebody in IP Navigation out of his pocket, so be it"), 168:20-22 ("money going out of the net recoveries to any affiliate, had to require our acceptance"), 175:13-14 (Unified "could hire anybody at their expense, yes"), 167:14-168:5 (agreeing that CBV was not required to approve ChanBond's contracts with affiliates – "if she signed a deal outside of the PPA, yeah, she can sign any deal outside of the PPA" – and the only question would be whether a particular payment was deductible from Net Revenues: "Where the money comes out of, I guess that's something for the lawyers to argue"), 217:3-12 ( "Q … ChanBond can do whatever it wants out of its share of the money. The only question is: Does it come out of gross or net, right? A. Yeah. I mean, ChanBond could write an agreement fee note, them and anybody else they want to, as long as it's not coming out of my pocket").

Moreover, Mr. Hennenhoefer repeatedly agreed that it would be unreasonable for CBV to refuse to approve any payment ChanBond wanted to make to IPNAV out of *ChanBond's* share of the Net Recoveries. *Id.* at 71:22-72:7 ("You mean after we get our money, do we care what ChanBond does with their money? … As CBV, we would not care"), 73:11-17 ("CBV has no concern about what ChanBond does with its money after we get our – our cut … That's their business"), 119:3-4 ("If Billy wants to pay somebody in IP Navigation out of his pocket, so be it"), 184:19-185:13 (specifically testifying that CBV has no basis to object to the advisory services agreement between Carter and Unified that it now alleges is a breach of the PPA because it "came out of his money that he received not out of our money. … That's not my business"), 186:4-24 (testifying, with respect to the $5,000 per month fee it now alleges breached

8

the PPA, that CBV doesn't "care where the money goes" so "long as it doesn't affect CBV"). Any claim that the ASA is void for breach of the PPA is frivolous; at the very worst for IPNAV, it would be valid but payable only after ChanBond paid CBV its share of Net Recoveries.

### ii. "Affiliates"

Given these repeated, crystal clear, and dispositive admissions, which track (and are the only reasonable way to read) the unambiguous language of Section 2.8, why has CBV taken the exact opposite position in this litigation? The answer appears straightforward. The provision of Section 2.8 that requires CBV's approval before the expense can be deducted in calculating Gross Revenues is triggered only by a payment to an "Affiliate" of ChanBond as defined in the PPA. It is undisputed (and indisputable) that neither IPNAV nor Ms. Leane are "Affiliates" of ChanBond,[5] and undisputed (and indisputable) that neither have been an "Affiliate" of ChanBond since October 27, 2015, when the ISA was executed. Indeed, Mr. Hennenhoefer expressly agreed as much at his deposition. Cohen Dec. Ex. 2 at 181:5-24. He also agreed that CBV knew when it signed the PPA that there was a possibility that Leane could sell ChanBond and terminate any affiliation between ChanBond and IPNAV, and did not negotiate any right to prevent that from occurring. *Id.* at 218:4-17. Faced with the likelihood that ChanBond will be able to deduct the payment to IPNAV from Gross Recoveries, ██████████████████, CBV appears to have chosen a 'Hail Mary' attempt to void the ASA despite its own sworn testimony about the meaning of the relevant provisions of the PPA.

## II. The Arbitration

By arbitration demand dated September 30, 2020, Leane Defendants brought their claims against ChanBond and Unified before the American Arbitration Association. As set forth in

---

[5] The PPA defines an "Affiliate" of ChanBond as a legal entity that "controls, is controlled by or is under common control with" ChanBond. Cohen Dec. Ex. 1, § 2.1.

Leane Defendants' Second Amended Arbitration Demand, Cohen Dec. Ex. 6, in 2018, at her

deposition in the underlying patent suit, Ms. Leane was asked by ChanBond to terminate the

ASA while maintaining her right to be paid the 22% advisory fee, which ChanBond agreed it

would separately document at a later date. Cohen Dec. Ex. 7, ¶ 11. On that understanding, and

only after receiving assurances from Billy Carter that "of course" she would still get paid, Ms.

Leane executed a "Termination Agreement" on behalf of IPNAV that purported to retroactively

terminate the ASA. *Id.*, ¶¶ 11, 13. ChanBond and Unified vigorously disputed Ms. Leane's

description of events, claiming that she asked to terminate the ASA of her own accord. *Id.*

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████.

    During the pendency of the Arbitration, and after the underlying patent cases settled,

ChanBond and CBV entered into a "Receipt, Release, and Consent to Distribute" (the "Receipt

Agreement") by which, *inter alia*, CBV agreed that, notwithstanding the timelines for allocation reports and distributions of proceeds provided for in the PPA, the outcome of the Arbitration could impact the appropriate distribution to CBV and that ChanBond should therefore withhold further distributions until "the completion of the arbitration." Cohen Dec. Ex. 8. And CBV also agreed in the Receipt Agreement that ChanBond's payment to its litigation funder would be a "shared expense" between CBV and ChanBond. *Id.*

## III. This Application

CBV filed its motion for a TRO and preliminary injunctive relief on March 15, 2020. DI No. 18. The application was not supported by any supporting affidavit or declaration, and only a single exhibit: the incomplete copy of the PPA. DI No. 19. The roughly three-page "Statement of Facts" in the Opening Brief ("OB") contains exactly two citations: one at the top of Page 4 ("*See* Exhibit A, PPA, § 3.2.1") and one in the middle of page 4 ("Exhibit A, PPA, § 8.4"). Other supposed "facts" on which CBV bases its claim are simply spoken into existence without citation, as though mere assertion were enough for relief. *See, e.g.*, OB at 5 (declaiming, without any identified source, purported facts regarding Ms. Leane's alleged "predecessor" at IPNAV (she had none, *see* Leane Declaration ¶ 3), how Erich Spangenberg supposedly "structured" the PPA, that the PPA "*expressly* disclaims and supersedes" the ASA (emphasis in original; it does not), that Ms. Leane "realized the financial value of the Patents" and so "resorted to outright fraud" (she did not), that CBV was "prevented from participating or intervening in the Arbitration" (it never, to Leane Defendants' knowledge, asked to do so, Cohen Declaration, ¶ 2), that IPNAV's services were "minor, if rendered at all" (they were not, *see* Leane Declaration Ex. 1), and so on).

## SUMMARY OF ARGUMENT

1.      CBV does not have a reasonably probability of success on the merits because CBV did not seek relief for any claimed breaches within the applicable three-year statute of limitations, and because no reasonable interpretation of the applicable contracts can afford CBV the relief it requests.

2.      CBV cannot demonstrate irreparable harm because any injury it may suffer absent injunctive relief (which is none) can be compensated with money.

## ARGUMENT

## I.      The Applicable Legal Standard

Because preliminary injunctive relief is "an extraordinary remedy, which should be granted only in limited circumstances," *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quotation omitted), a party seeking such relief must carry the "heavy burden of showing the District Court that a preliminary injunction was warranted." *Lane v. New Jersey*, 753 F. App'x 129, 131 (3d Cir. 2018) (affirming denial of *unopposed* motion for preliminary injunction). To do so, the movant must establish (1) a likelihood of success on the merits, meaning at least a "reasonable probability" of eventual success at trial; (2) that it is "more likely than not" to suffer irreparable harm in the absence of an injunction; (3) the balance of the equities tipping in its favor; and (4) that the public interest favors an injunction. *Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*, No. CV 21-00705-WCB, 2022 WL 605724, at *3 (D. Del. Jan. 25, 2022). And the movant must make a "*clear showing*" that carries the burden of persuasion on each of those elements. *Id.* (emphasis in original), *quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (same emphasis). If either of the first two factors are not established, the motion must be denied; if both are, the Court must proceed to balance the equities, consider

the public interest, and exercise its discretion in considering whether the interplay between the factors warrants the grant of the requested relief.

As to the first factor, as discussed in Section II below, CBV has effectively no possibility of success on any of the substantive claims alleged in the Complaint. As to the four counts alleging that the execution of the ASA or ISA breached Section 2.8 of the PPA, those claims are definitively time barred; any claim for breach of contract accrued upon the 2015 execution of those agreements, and CBV only filed this complaint in 2021. And, in any event, Section 2.8 of the PPA unambiguously provides no bar at all to ChanBond entering into any contract it chooses, but merely directs how certain payments are to be treated in calculating Net Revenues. As to the two counts alleging breach by failure to pay, the Receipt Agreement – which CBV simply omitted from its representations to the Court – entirely forecloses it. Similarly, as discussed in Section III below, while CBV's argument for irreparable harm is both frivolous and speculative, there *is* a valid reason for concern that if ChanBond depletes the settlement fund there will not be enough money for Defendants to recover what they are entitled to. As such, the motion should be denied, except to the extent of restraining ChanBond from depleting the fund in any way except by paying Leane Defendants or CBV.

## II. CBV Has Not Established a Likelihood of Success on the Merits

### a. CBV cannot succeed on its claims for breach of Section 2.8 of the PPA

#### 1. CBV's claims are time-barred

Count III of the Complaint alleges that ChanBond breached Section 2.8 of the PPA when, on October 27, 2015, two *other* parties – Deirdre Leane and Unified – entered into the ISA that sold the membership interests in ChanBond from Leane to Unified, while Count IV of the

Complaint seeks a declaratory judgment that the ISA is invalid as a breach of the PPA.[6] Counts V and VI of the Complaint make similar claims about the ASA between IPNAV and ChanBond. But even if the execution of those agreements were a breach of the PPA as CBV now alleges (and as discussed below, they were not), any such claims would be time-barred.

The PPA is governed by Delaware law, Cohen Dec. Ex. 1, § 8.5, and Delaware's statute of limitations for breach of contract claims is three years. 10 Del. C. § 8106. The statute of limitations begins to run when the contract is breached. *Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1128 (3d Cir. 1990); *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) (statute runs from time of breach, whether or not plaintiff is aware of harm). CBV claims that the supposed breaches occurred upon execution of the ISA and ASA, each of which happened in 2015[7] – roughly *six* years before CBV filed suit. The breach claims are therefore unequivocally time-barred.

Nor does any exception to that rule cover CBV. Delaware's doctrine of "inherently unknowable injuries" prevents the statute from running where it would be "practically impossible for a plaintiff to discover the existence of a cause of action" and the plaintiff is therefore "blamelessly ignorant" of it. *In re Tyson Foods, Inc.*, 919 A.2d 563, 584–85 (Del. Ch. 2007). To fall under that doctrine, there must be "***no*** objective or observable factors" that "***might***

---

[6] Self-evidently, a contract between two parties who are not bound by the PPA (and neither Leane nor Unified is a party to the PPA) cannot breach the PPA.

[7] As ChanBond did in the Arbitration, CBV seeks to make hay out of the fact that Ms. Leane did not formally sign the ASA until July 2015. Complaint, ¶ __. For statute of limitations purposes, the particular dates in 2015 are irrelevant. But CBV's dark insinuations should be no more persuasive here than they were for ChanBond in the Arbitration; not only did Ms. Leane consult with counsel before including the April 9 date, but the Common Interest Agreement and NDA that CBV signed on April 9, but tried desperately to hide from the Court here, confirm that the relationship documented by the ASA in fact existed on April 9, 2015, and dating it to reflect that was proper.

have put the plaintiffs on notice" of their claims. *Id.* Here, CBV: (1) signed the NDA and CIA which specifically informed it that IPNAV would be ChanBond's patent monetization agent, Cohen Dec., Ex. 1 at 16; (2) received multiple emails specifically disclosing that ChanBond had in fact hired IPNAV, *id.*, Exs. 3-4; (3) had actual knowledge of the sale to Unified for more than three years before bringing their claims, *id.*, Ex. 2 at 190:1-191:10; and (4) had access to Unified's publicly filed SEC reports that included a copy of the ISA and specifically disclosed the existence of the ASA between ChanBond and IPNAV. *Id.*, Ex. 5 at 49. And despite all that, CBV never so much as asked Ms. Leane for a copy of the ASA or ISA, which she would have happily provided. Leane Dec., ¶ 6. The SEC filings alone preclude any application of this exception. *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996). Similarly, on this record CBV cannot allege tolling based on fraudulent concealment. *See Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, ___ (Del.Super. 1969) (fraudulent concealment requires an affirmative act designed to prevent plaintiff from learning of the claim); *Giordano v. Czerwinski,* 216 A.2d 874 (Del. 1966) (fraudulent concealment does not toll the statute where the claims can be discovered with reasonable diligence); *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973) (fraudulent concealment claims must be pled with particularity); *Klein v. Lionel Corp.*, 130 F.Supp. 725 (D.Del.1955) (same). Because the breach claims are time-barred, CBV cannot succeed on them.

        2.   CBV's breach claim is wholly meritless

Even if the claims were timely CBV would not have even a reasonable probability of success on them. Indeed, CBV's own principal testified under oath that CBV's newfound litigation positions are bunk: not only do they contradict the plain language of the PPA, but they are not what Earl Hennenhoefer understood the PPA to mean when he signed that agreement on

behalf of CBV. Simply put, Section 2.8 of the PPA is a *definition* (of "Net Revenues"), not a limitation on ChanBond's ability to contract with vendors, and a definition cannot be breached.

The rules governing the interpretation of contracts subject to Delaware law – as this PPA is – are straightforward. Contractual language "is not ambiguous simply because the parties disagree on its meaning," *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997), and the Court must adhere "to the language of the document and [may] not to look to extrinsic evidence to find ambiguity." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001). Where the plain meaning is unambiguous, the Court will give that plain meaning effect regardless of the subjective intent of the parties. *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) (Delaware applies the "objective" theory of contracts). The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations. *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2007 Del. Ch. LEXIS 154, at *32 (Del. Ch. Nov. 2, 2007).

Here, the language at issue is unambiguous: ChanBond can contract with whoever it wants, at whatever rates it wants, but no fee or expense "paid" to a ChanBond affiliate can be deducted in calculating the "Net Revenues" from which CBV is entitled to 50% unless approved by CBV. Cohen Dec. Ex. 1, § 2.8. Moreover, the language of the PPA is equally unambiguous that, because ChanBond and IPNAV are not "Affiliates," no money paid to IPNAV is subject to CBV's approval right at all. *Lorillard Tobacco Co. v. American Legacy Found.*, 903 A.2d 728, 740 (Del. 2006) ("The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant"). Even if it did trigger CBV's approval right, the failure to obtain approval would not render the agreements

void or unenforceable but mean only that any sums due to IPNAV could not be deducted in calculating the payment to which CBV is entitled (limiting IPNAV to collecting from ChanBond's share of the Net Recoveries). Finally, even were that not true, the PPA prohibits CBV from unreasonably withholding approval for payment, and withholding approval *after* CBV was paid everything it claims entitlement to would be inherently unreasonable. None of this is in dispute, because Mr. Hennenhoefer acknowledged it under oath. Cohen Dec. Ex. 2. Given that testimony, it is difficult to understand how Plaintiff could press the contrary claim in good faith.[8]

### b. CBV's claim for failure to pay is barred by the Receipt Agreement

Counts I and II of the Complaint primarily allege breach of the PPA by failure to pay the full amount allegedly due under the PPA on the timelines called for by that agreement. But the Receipt Agreement, which CBV executed scant months before filing those claims and yet failed to disclose to the Court, expressly authorized ChanBond to vary from those deadlines. *Id.*, Ex. 8. Again, it is difficult to see how CBV could have brought such a claim in good faith, and it has no probability of success on its merits.

### III. Irreparable Harm

To establish irreparable harm, CBV has the burden of showing the existence of potential harm that is both more likely than not to occur unless the injunction is granted and cannot be redressed by a legal or equitable remedy after trial. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262 (3d Cir. 2020). Typically, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 n.3 (3d Cir. 1988). Here, of course, CBV alleges *only* potential

---

[8] Plaintiff makes a desultory reference to the duty of good faith and fair dealing, MB at 7, but it did not even plead breach of that duty in its Complaint and it cites no precedent in support of its application here.

economic harm, for which it seeks *only* monetary damages, and therefore argues that an exception exists where, absent emergency relief, "the company's ability to continue as a going concern will be put into doubt." OB at 9, *citing Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012). But CBV never identifies any facts suggesting that rule could apply to it, OB at 8-9 (arguing only that CBV might lose the benefit of its bargain), for good reason: CBV is a *holding* company, created solely to hold the Intellectual Property it sold to ChanBond, and as such it has not had *any* ongoing business since that 2015 sale. Cohen Dec. Ex. 2 at 8:19-9:13 (testifying that CBV "was a patent-holding company, but not really an operating company"). The "ongoing business" doctrine thus cannot apply.

Similarly, CBV argues that distribution to the Leane Defendants would be "irreparable" because in some situations funds may be difficult to recover if distributed "to diverse parties" and therefore "difficult or impossible to trace and recover." OB at 8, *citing* cases. Again, CBV makes no effort at all to apply that rule to a distribution to Leane Defendants, two specific, known, and identified parties who are both subject to the jurisdiction of this Court. Nor did CBV support a claim that the supposed difficulty of recovering after a distribution to Leane Defendants would be "likely" rather than a bare possibility; CBV having presented no facts in support of such a claim, Leane Defendants cannot meaningfully respond to it in this motion.

There is, however, a basis to grant some injunctive relief. Unless restrained from doing so, ChanBond could draw-down the settlement fund – which is its only source of income – to fund its defense of this action or by distributing sums to other parties unknown, depleting the only pool from which either CBV or Leane Defendants can recover. And there is no dispute that both CBV and Leane Defendants are highly likely to recover significant sums, and potentially the entirety of the settlement fund. Nor is there a meaningful chance that CBV or Leane

Defendants could recover any drawn-down funds from ChanBond once the settlement fund is depleted; ChanBond has no other assets or revenue, and no prospects for other assets or revenue. As such, the Court should enjoin ChanBond from depleting the fund other than by distributions to CBV or Leane Defendants.

## CONCLUSION

For all the reasons set forth above, the Court should grant an injunction limited to barring ChanBond from drawing down the settlement fund except by payment to either CBV or Leane Defendants, not because CBV is likely to succeed on its claims, but because any funds ChanBond draws down will likely be taken from amounts due to either CBV or Leane Defendants, and neither will have any prospect of recouping those funds from ChanBond if and when that happens. The request to prohibit ChanBond from paying Leane Defendants should be denied.

Respectfully submitted,

OF COUNSEL:

Akiva M. Cohen
Dylan M. Schmeyer
KAMERMAN, UNCYK,
    SONIKER & KLEIN P.C,
1700 Broadway, 16th Floor
New York, NY 10019
212.400.4930
acohen@kusklaw.com
dschmeyer@kusklaw.com

Dated:  March 31, 2022

/s/ James H. S. Levine
James H. S. Levine (DE No. 5355)
TROUTMAN PEPPER
    HAMILTON SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500
james.levine@troutman.com

*Attorneys for IPNAV, LLC and Deirdre Leane*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022, I filed the foregoing *Deirdre Leane*

*And IPNAV, LLC's Answering Brief To Plaintiff's Motion For A Preliminary Injunction* using

CM / ECF, which will send notification  of such filing to all counsel of record.


/s/ James H. S. Levine
James H. S. Levine (DE No. 5355 )