# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., *Plaintiff* <br><br> v. <br><br> CHANBOND, LLC, DEIRDRE LEANE, and IPNAV, LLC, <br><br> *Defendants.* | C.A. No. 1:21-cv-01456-MN <br><br> **PUBLIC VERSION** |

### PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS APPLICATION FOR PRELIMINARY INJUNCTION

**BUCHANAN, INGERSOLL & ROONEY PC**

Dated: April 7, 2022

*/s/ Geoffrey Grivner*
Geoffrey G. Grivner (#4711)
Kody M. Sparks (#6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-3036
(302) 552-4200
geoffrey.grivner@bipc.com
kody.sparks@bipc.com

\*    \*    \*

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.    LEGAL STANDARD ................................................................................................. 3

    II.    CBV HAS DEMONSTRATED HIGH LIKELIHOOD OF SUCCESS ....................... 3

        A.    CBV's Claims Have Been Tolled and Are Not Time-Barred ..................................... 3

        B.    CBV's Claims Are Meritorious .................................................................................. 5

        1.    CBV's Prima Facie Case Demonstrates a High Probability of Success on the Merits That the ASA Is Unenforceable ............................................................................................................ 5

        2.    Leane Defendants Improperly Rely Upon Extrinsic Evidence to Distort the Terms of an "Unambiguous" Contract ............................................................................................ 6

        C.    The Release Agreement Is Irrelevant ......................................................................... 8

    III.    CBV HAS ESTABLISHED IRREPARABLE HARM ............................................. 9

    IV.    CBV Should Not Be Required to Post Bond Under Rule 65 .................................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656 (D. Del. 2017)................................. 8

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994).......................... 9

*Bayer CropScience AG v. Dow AgroSciences LLC*, 2013 WL 5539410 (D. Del. Oct. 7, 2013),.................. 7

*Davis v. 24 Hour Fitness Worldwide, Inc.*, 2014 WL 4955502 (D. Del. Sept. 30, 2014)............................ 3

*Deckert v. Independent Shares Corp.*, 311 U.S. 282 (1940)....................................................... 9

*E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059 (Del. 1997) ........................................ 6

*Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186 (3d Cir. 1990).......................................................... 9

*M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235 (M.D. Pa. 2020) ....................................................................... 9

*Marvani S.p.A. v. Keehan*, 900 F.Supp.2d 377 (D. Del. 2012) .................................................................. 3

*Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010) ......................................................................................... 3

*Moneyham v. Ebbert*, 723 F. App'x 89  (3d Cir. 2018) .............................................................................. 3

*O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281 (Del. 2001). .................................................................. 6

*Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2021 WL 2036672 (D. Del. May 21, 2021)...................... 4

*R & R Cap. LLC v. Merritt*, 2013 WL 1008593 (Del. Ch. Mar. 15, 2013)............................................. 10

*Shockley v. Minner*, 726 F.Supp.2d 368 (D. Del. 2011)............................................................................. 3

*T.W. v. S. Columbia Area Sch. Dist.*, 2020 U.S. Dist. LEXIS 176429 (M.D. Pa. Sep. 25, 2020)................. 3

*United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273 (3d Cir.1979)............................................. 9

*Viking Funds, LP v. Palmer*, 2019 WL 13115187 (E.D. Pa. Oct. 11, 2019) ........................................... 10

*Wal–Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004)....................................................... 4

## PRELIMINARY STATEMENT

Plaintiff CBV, Inc. ("CBV") respectfully requests the extraordinary relief, granted in this Court's discretion, of a preliminary injunction[1] to enjoin and restrain Defendant ChanBond, LLC ("ChanBond"), a potentially judgement-proof shell company, from prematurely distributing Settlement Funds, at least some of which all parties acknowledge CBV is entitled to receive. Absent this relief, CBV will be irreparably harmed by the immediate and irretrievable distribution of Settlement Funds, which are under the exclusive direction of ChanBond. ChanBond's purported need for imminent distribution of these funds to ChanBond's prior affiliates, Deirdre Leane ("Leane") and Leane's company IPNAV, LLC ("IPNAV") (collectively "Leane Defendants") is under the guise of an unsubstantiated ▮▮▮▮▮▮▮▮▮ concern[2] on an Interim Award from an arbitration proceeding conducted exclusively among Defendants. ChanBond's purported need for imminent distribution ignores and usurps this Court's authority and exclusive jurisdiction to rule on matters effecting the validity and finality of the Interim Award.

Leane Defendants concede the necessity of a preliminary injunction to address irreparable harm to CBV in their Opposition: "ChanBond's use or distribution of any settlement funds to anyone other than Leane Defendants or CBV risks causing irreparable harm, by leaving the sums due to the various parties unrecoverable." ChanBond's only assets are the Patents it acquired from CBV and the Settlement Funds derived from enforcement of those Patents. ChanBond threatens to immediately distribute the Settlement Funds to its prior affiliates and/or to its own affiliates[3] without regard to this Court's jurisdiction over interpretation of the key Patent Purchase Agreement ("PPA") between CBV and ChanBond, leaving CBV with a judgment against the effectively judgment-proof, shell entity ChanBond and/or ChanBond's prior affiliates, Leane Defendants.

---

[1] CBV's principals, all well-advanced in age, do not wish to protract this action any more than is necessary to protect their rights to the Settlement Funds under the PPA.
[2] *See* ChanBond Opp. at 10; *see also* D.I. 33 (ChanBond will distribute the Settlement Funds to Leane Defendants within five (5) business days following decision on the Motion).
[3] *See* Leane Defs' Opp. at 2.

1

The Interim Award of Arbitration Panel (the "Interim Award")[4] expressly recognizes ███████ ████████████████████████████████████████████████ ████████████████████████████████████.[5] If this Court finds the ASA unenforceable under its interpretation of the PPA, Leane Defendants are not entitled to the monetary relief granted by the Interim Award.

CBV's prima facie case that the ASA is unenforceable demonstrates a high likelihood of success on the merits: (1) Section 2.8 of the PPA requires ChanBond to obtain CBV's prior approval for "any cost or expense which is paid to an Affiliate of [ChanBond];" (2) The ASA was improperly executed in July 2015 by Leane on behalf of both IPNAV and ChanBond and backdated to April 9, 2015; (3) Leane Defendants admit in Paragraphs 54 and 78 of their Answer that ChanBond and IPNAV were "Affiliates" as defined in the PPA at the time of execution of the ASA, thereby requiring CBV consent of the Affiliate transaction; and (4) Leane Defendants admit in Paragraphs 143 and 163 of their Answer that CBV was not asked for consent to the ASA. As such, the ASA is unenforceable.

Leane Defendants meritless response refers to emails pre-dating the execution of the ASA and a November 2015 Unified Form 10-Q to assert that CBV's claims regarding the ASA are time-barred. These arguments are unavailing, and contradicted by sworn Declarations of CBV's principals submitted herewith. CBV did not know, nor should it have known, of the ASA's contents nor of its claims under the PPA regarding the ASA until 2020.

This Court's exercising discretion to grant a preliminary injunction is necessary in this extraordinary case riddled with Defendants' past improper, self-serving conduct, and given the irreparable harm destined to befall CBV absent such relief. Defendants' disregard for this Court's exclusive jurisdiction to rule on matters directly effecting validity and finality of the Interim Award, and to seek immediate, premature distribution of

---

[4] Defendants apparently will only act pursuant this Court's oversight, as evinced for example by the Interim Award having been issued on March 7, 2022, but CBV refused a copy until the filing of this Motion.
[5] *See* Interim Award at ¶ 22, attached as Exhibit 7 to Leane Defs' Opp. and Exhibit 1 to ChanBond Opp.

the Settlement Funds, is demonstrated by their opposition to CBV's Motion and their requested stipulation to distribute funds on the heels of a decision on this Motion.

## ARGUMENT

### I. LEGAL STANDARD

A preliminary injunction should be granted if (1) plaintiff has a reasonable likelihood of success on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest. *Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018).

### II. CBV HAS DEMONSTRATED HIGH LIKELIHOOD OF SUCCESS

A movant need only establish a prima facie case demonstrating a reasonable probability of success; they are not required to prove that success is more likely than not. *T.W. v. S. Columbia Area Sch. Dist.*, 2020 U.S. Dist. LEXIS 176429, at *6–7 (M.D. Pa. Sep. 25, 2020). The Court generally does not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).

#### A. CBV's Claims Have Been Tolled and Are Not Time-Barred

Leane Defendants assert that CBV's claims regarding the unenforceability of the ASA are time-barred under Delaware's statute of limitations for breach of contract actions. They are not. CBV hereby attaches Declarations of its principals confirming that CBV did not know of its claims arising out of the ASA.[6]

While "the statute of limitations begins to run when the plaintiff's cause of action accrues," *Shockley v. Minner*, 726 F.Supp.2d 368, 375 (D. Del. 2011), "the statute of limitations will be tolled until a plaintiff knew or should have known of the breach." *Davis v. 24 Hour Fitness Worldwide, Inc.*, 2014 WL 4955502, at *3 (D. Del. Sept. 30, 2014) (citing *Marvani S.p.A. v. Keehan*, 900 F.Supp.2d 377, 395 (D. Del. 2012)). "[T]he statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry

---

[6] Hennenhoefer Decl. at ¶ 2; Snyder Decl. at ¶ 2; Stine Decl. at ¶ 2.

3

which, if pursued, would lead to the discovery of such facts." *Wal–Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (internal quotation marks omitted).

Leane Defendants cite to a pre-ASA Common Interest Agreement ("CIA") entered into contemporaneously on April 9, 2015 with the PPA, a June 14, 2015 email, a June 18, 2015 email, and Unified Online, Inc.'s November 2015 Form 10-Q in asserting that CBV knew, or should have known, of the ASA and that CBV's claims are time barred.[7] These exhibits and assertions are unavailing.

First, while the CIA suggests that IPNAV will act as ChanBond's agent, it also states, in Section 4.1 that "[t]his agreement *does not create any agency or similar relationship among the parties*."[8] The CIA was entered into months before the ASA, and did not create any relationship between IPNAV and ChanBond, such that CBV could not have known of its claims arising from the improper ASA.

Second, the June 2015 emails Leane Defendants' reference are equally unavailing: (1) As with the CIA, each of these emails pre-dates the ASA by over a month; (2) These emails exhibit, at best, an "agreement to agree," which is unenforceable under Delaware law. *Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2021 WL 2036672, at *2 (D. Del. May 21, 2021) ("Courts applying Delaware law are averse to enforcing agreements to agree. Agreements to agree in the future without any reasonably objective controlling standards are unenforceable." (internal citation and quotations omitted)); (3) No relationship between ChanBond and IPNAV existed until Leane's unilateral execution of the ASA for both ChanBond and IPNAV over a month later, with Leane herself acknowledging as much in her internal email correspondence;[9] and (4) It is undisputed that Leane, as ChanBond's manager at the time, did not seek CBV's approval of the ASA,[10] and CBV was not apprised of any material terms of any engagement between ChanBond and IPNAV.

---

[7] *See* Leane Defs' Opp. at 15.
[8] Cohen Declaration at Ex. 1.
[9] *See* Exhibit 1 ("We need to get: … 2. An Engagement Agreement between ChanBond LLC and IPNAV, LLC[.]"); *see also* Exhibit 2 ("I need to have the ChanBond / IPNAV LLC Agreement in place ….").
[10] *See* Leane Defs' Answer at Paragraphs 143 and 163 (admitting that CBV was not asked to approve the ASA).

Third, Leane Defendants assert that CBV purportedly knew or should have known of their claims regarding the ASA because Unified Online, Inc.'s November 2015 Form 10-Q "specifically disclosed the existence of the ASA between ChanBond and IPNAV."[11] However, the Interest Sale Agreement ("ISA") attached to the 10-Q only includes a passing reference to the ASA in a schedule thereto with no mention of its contents. Neither the ISA nor the 10-Q attach the ASA as an exhibit, nor do they contain information regarding material terms of the ASA that would warrant a finding CBV knew or should have known of a potential claim regarding the ASA. As such, CBV's claims are clearly not time-barred.

### B. CBV's Claims Are Meritorious

ChanBond and Leane Defendants assert that CBV's claims are meritless.[12] To the contrary, CBV's prima facie case demonstrates a reasonable probability of success on the merits that the ASA is unenforceable due to a breach of Section 2.8 of the PPA. In fact, ChanBond, *agrees* with CBV that the ASA is unenforceable.[13]

#### 1. CBV's Prima Facie Case Demonstrates a High Probability of Success on the Merits That the ASA Is Unenforceable

PPA Section 2.8 reads, in relevant part: "Notwithstanding the above, any cost of expense which is paid to an Affiliate[14] of Purchaser or to a stakeholder of Purchaser shall require the prior approval of Seller [CBV], such approval to not be unreasonably withheld." It is undisputed that:

(1) The ASA was executed in July 2015 by Leane on behalf of both IPNAV and ChanBond and backdated to April 9, 2015;[15]

---

[11] Leane Defs' Opp. at 15.
[12] *See* Leane Defs Opp. at 15-17; *see also* ChanBond Opp. at 6-8.
[13] *See* ChanBond Opp. at 5 ("Chanbond also challenges the validity of the ASA."), 8 ("[D]efenses to paying Ms. Leane exist because she signed the ASA [] on which the Arbitration Award is based on behalf of both IPNAV and Chanbond, allegedly without obtaining Plaintiff's consent to this interested transaction and then fraudulently failed to disclose her self-interested execution of the ASA when she sold Chanbond to its current owner. . ."); *see also* Interim Award at ¶ 22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[14] *See* ¶ 77 of CBV's First Amended Complaint for the PPA Section 2.1's definition of "Affiliate."
[15] *See* Leane Defs' Answer at ¶ 144.

5

(2) ChanBond and IPNAV were "Affiliates," as defined in the PPA, at the execution of the ASA;[16] and

(3) CBV's approval of the ASA or the terms contained therein, which were unilaterally determined by Leane, who stood on both sides of the transaction, was never sought nor obtained.[17]

CBV's prima facie case establishes that the ASA is an unenforceable breach of the PPA, and that CBV is to receive 50% ▇▇▇▇▇▇▇ of the remaining Settlement Funds ▇▇▇▇▇▇▇ under Section 3.3.2 of the PPA, provided the funds are enjoined from immediate, improper distribution and remain collectable.

### 2. Leane Defendants Improperly Rely Upon Extrinsic Evidence to Distort the Terms of an "Unambiguous" Contract

Leane Defendants contradict themselves in acknowledging that PPA Section 2.8 is unambiguous,[18] citing settled Delaware law that the Court must adhere "to the language of the document and [may] not to look to extrinsic evidence to find ambiguity[,]"[19] and then referencing nearly *two pages* of irrelevant citations to deposition testimony from the Arbitration regarding alleged subjective interpretation of the meaning of Section 2.8. Either the PPA is unambiguous and the Court should strike Leane Defendants' citations to the Arbitration testimony; or the PPA is ambiguous, in which case CBV—having established a prima facie case for its interpretation of the PPA— should be granted a preliminary injunction.

Leane Defendants acknowledge that contractual language "is not ambiguous simply because the parties disagree on its meaning."[20] CBV has offered a reasonable and consistent interpretation of Section 2.8 of the PPA– i.e. (i) that Section 2.8 gives CBV a consent right regarding "Affiliate" transactions, and (ii) that the ASA was an "Affiliate" transaction because all parties agree Leane controlled both ChanBond and IPNAV at the time of ASA execution. The ASA is, therefore, unenforceable.

Leane Defendants propose other nonsensical interpretations of Section 2.8 which, put simply, would require this Court to find that the PPA permits them to enter into improper Affiliate transactions in which

---

[16] *Id*. at ¶¶ 54, 78.
[17] *Id*. at ¶¶ 143, 163
[18] *See* Leane Defs' Opp. at 9, 13, 16.
[19] Leane Defs' Opp. at 16 (citing *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001)).
[20] Leane Defs' Opp. at 16 (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)).

6

Leane could dictate all material terms unilaterally, and deprive CBV of its entire benefit of the bargain under the PPA. This defies the plain terms of the PPA and the indisputable facts regarding Section 2.8:

(i) Leane Defendants assert that the final sentence of Section 2.8, providing CBV a consent right regarding Affiliate transactions, should be written out entirely by the Court.[21] This interpretation defies well-established law that contracts should not be read to render terms superfluous. *See, e.g.*, *Bayer CropScience AG v. Dow AgroSciences LLC*, 2013 WL 5539410, at *4 (D. Del. Oct. 7, 2013), *aff'd,* 580 F. App'x 909 (Fed. Cir. 2014). This interpretation is also contradicted by the documentary evidence that Leane and Spangenberg sought to eliminate the last sentence of Section 2.8, but ultimately did not do so.[22]

(ii) Leane Defendants assert that Section 2.8 should be read as a "distribution guideline," not a consent right, and therefore Section 2.8 merely governs whether payment to Leane Defendants would come from Gross Recoveries (i.e. before ChanBond and CBV's Net Recoveries shares), or from ChanBond's Net Recoveries.[23] CBV's interpretation that Section 2.8 provides CBV a consent requirement regarding Affiliate transactions is confirmed by Leane and Erich Spangenberg's attorneys who assisted in negotiating the PPA.[24]

(iii) Leane Defendants and ChanBond also assert that, no matter the interpretation of Section 2.8, the ASA should not be considered an Affiliate transaction under Section 2.1 requiring CBV consent at the time it was executed because ChanBond and IPNAV are not now *currently* affiliates, despite that they were, admittedly, Affiliates at the time of execution of the ASA.[25] (A) Leane's own attorneys noted that Section 2.8 of the PPA provided a "consent requirement" to CBV.[26] (B) Leane Defendants' newly contrived interpretation would create absurd results—i.e. ChanBond in theory could unilaterally dictate terms of the

---

[21] *See* Leane Defs' Opp. at 16 ("… Section 2.8 of the PPA is a *definition* (of "Net Revenues"), not a limitation on ChanBond's ability to contract with vendors, and a definition cannot be breached.").
[22] *See* Ex. 3.
[23] *See* Leane Defs' Opp. at 7.
[24] *See* Exhibit 3 ("I'd consider changing the PPA as follows: 1. Delete the last two sentences in the definition of 'Net Recoveries' in Section 2.8 (removing any *consent requirements* on the part of [CBV])[.]" (emphasis added)).
[25] *See* Leane Defs' Opp. at 7, 16; *see also* ChanBond Opp. at 7.
[26] *See* Ex. 3.

Affiliate ASA such that CBV would receive *nothing*, later re-structure the entities such that they are no longer Affiliates, and then collect on the improper Affiliate transaction. *AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656 (D. Del. 2017) ("An interpretation is unreasonable if it produces an absurd result or one that no reasonable person would have accepted when entering the contract.") (internal quotations omitted). This interpretation would completely erode CBV's benefit of the bargain under the PPA. Leane's predecessor Erich Spangenberg specifically noted that even if IPNAV contracted at 20% of gross, instead of the 22% in the ASA, "there is nothing left [to CBV]."[27]

In summary, only CBV's interpretation that Section 2.8 gives CBV a consent right regarding Affiliate transactions is reasonable. It is appropriate for this Court to exercise its discretion and grant a preliminary injunction which will preserve its authority to rule on, and ultimately effectuate, proper distribution of the Settlement Funds only after its final interpretation of the PPA so as to prevent immediate and irreparable harm to CBV.

### C. The Release Agreement Is Irrelevant

ChanBond argues that the "[Release Agreement] disposes of Plaintiff's claims and undermines its likelihood of success on the merits."[28] Nothing in the Release Agreement waives CBV's right to contest the ASA as an Affiliate transaction under the PPA, nor any other claims it may have against ChanBond nor Leane Defendants. The Release Agreement specifically states in Paragraph 10 that "CBV and ChanBond are not otherwise releasing their rights under the Patent Purchase Agreement, as amended."[29] The August 27, 2015 PPA Amendment specifically requires that any amount in dispute be held "on account until the dispute has been resolved in accordance with the dispute resolution provisions contained in the [PPA][30]…"[31] This Court, given its exclusive jurisdiction over interpretation of the PPA, must exercise its extraordinary injunctive relief

---

[27] *See* Exhibit 4; *see also* Interim Award at ¶ 15.
[28] ChanBond Opp. at 8.
[29] Leane Defs' Opp. at Ex. 8, ¶ 11.
[30] Section 8.5 of the PPA reads: "The competent courts and tribunals situated in Wilmington, State of Delaware, USA shall have sole and exclusive jurisdiction in any dispute or controversy arising out or related to this Agreement."
[31] First Am. Compl., Ex. B, Sec. 4.1.

8

to prevent the distribution of disputed funds pursuant the PPA and pursuant Defendants unwillingness to respect this Court's jurisdiction as demonstrated by their opposition to CBV's Motion.

### III.     CBV HAS ESTABLISHED IRREPARABLE HARM

To show irreparable harm, "the movant must show that it is 'more likely than not' to suffer irreparable harm absent the requested relief." *M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 244 (M.D. Pa. 2020). CBV will suffer irreparable harm because immediate distribution of the Settlement Funds to Leane Defendants will render ChanBond judgment-proof and prevent CBV from collecting on its contractually bargained benefit under the PPA. Why else would Defendants oppose CBV's Motion? ChanBond's argument in favor of premature distribution is to avoid liability for ▬▬▬▬▬▬▬ on the Interim Award, even though the Interim Award cannot be perfected until this Court resolves validity of the ASA.[32]

ChanBond argues in its Answering Brief that CBV cannot "demonstrate the irreparable harm necessary to sustain preliminary injunctive relief" because "[t]he harm alleged here, is by definition, reparable because it can be redressed exclusively by the payment of monetary damages."[33] This is not true. "[T]he fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury." *United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273, 1280 (3d Cir.1979). The distribution of funds to third parties which, after disbursement, may be difficult or impossible to trace and recover constitutes irreparable harm.[34]

Courts in the Third Circuit have found irreparable harm where, as here, distribution of funds or assets would effectively leave the defendant judgment-proof. *See, e.g., Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) (compiling cases holding that the possibility of an unsatisfied money judgment can constitute irreparable injury for purposes of granting a preliminary injunction); *Deckert v. Independent Shares Corp.*, 311 U.S. 282, 290 (1940) ("[T]here were allegations that [the defendant] was insolvent and its

---

[32] *See* Interim Award at ¶ 22.
[33] ChanBond Opp. at 8-9.
[34] *See* Opening Brief at 8.

assets in danger of dissipation or depletion. This being so, the legal remedy against [the defendant], without recourse to the fund in the hands of [a third party], would be inadequate."); *Viking Funds, LP v. Palmer*, 2019 WL 13115187, at *2 (E.D. Pa. Oct. 11, 2019) (noting that distribution of funds making defendant judgment proof "[o]rdinarily [] would be sufficient to show irreparable harm."); *R & R Cap. LLC v. Merritt*, 2013 WL 1008593, at *5 (Del. Ch. Mar. 15, 2013), *aff'd*, 69 A.3d 371 (Del. 2013) (motion for status quo order granted where, in the absence of the order, party would dissipate assets rendering herself judgment proof).

ChanBond is a limited liability shell company created *solely* to hold the Patents CBV sold to it pursuant to the PPA. The Settlement Funds are ChanBond's only monetary assets, and immediate, premature distribution of these funds would leave ChanBond judgment-proof against CBV's claims. Money damages will be unavailable after premature distribution to preclude irreparable harm to CBV.

## IV.   CBV Should Not Be Required to Post Bond Under Rule 65

ChanBond argues that "[I]f the Court determines to enter a preliminary injunction, Plaintiff must be required to post security sufficient to cover Chanbond's interest exposure on the Arbitration Award to Ms. Leane and IPNAV."[35] CBV asserts that no bond is necessary under the present circumstances primarily because the Interim Award pursuant an arbitration conducted exclusively among Defendants does not constitute a final judgement until this Court affords CBV its day in court and rules on validity of the ASA pursuant the PPA. CBV is prepared to further address this issue at any hearing scheduled by the Court.

## CONCLUSION

If the compelling facts of improper, self-serving, and "fraudulent," as alleged by ChanBond, conduct, coupled with irreparable harm to CBV and disregard of this Court's authority, do not justify the equitable relief sought by CBV, then any future plaintiff's right to such relief will have been vitiated.

Therefore, Plaintiff respectfully requests that this Court enter a preliminary injunction enjoining and restraining ChanBond from distributing the Settlement Funds until resolution of this action.

---

[35] ChanBond Opp. at 11.

|  |  |
|---|---|
|  | **BUCHANAN, INGERSOLL & ROONEY PC** |
| Dated:  April 7, 2022 | */s/ Geoffrey Grivner* |
|  | Geoffrey G. Grivner (#4711) |
|  | Kody M. Sparks (#6464) |
|  | 500 Delaware Avenue, Suite 720 |
|  | Wilmington, DE 19801-3036 |
|  | (302) 552-4200 |
|  | geoffrey.grivner@bipc.com |
|  | kody.sparks@bipc.com |

\*     \*     \*

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*

11