## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., | |
| *Plaintiff* | |
| *v.* | |
| CHANBOND, LLC, | C.A. No. 1:21-cv-01456-MN |
| *Defendant.* | |

## DECLARATION OF STEVEN LEWIS RADER

1.      I am the Director of Firm Operations for the Centauri Law Group, PC, a California Professional Corporation, and legal counsel for Gregory Collins and Kamal Mian ("Proposed Intervenors").  Mr. Collins and Mr. Mian are individuals who are domiciled in Arizona and California, respectively.  Both are significant shareholders of UnifiedOnline, Inc., a Delaware corporation ("UOI").  UOI is the sole owner and sole member of ChanBond, LLC, a Delaware limited liability company ("ChanBond"), the defendant in this action.  UOI's only asset is its membership in ChanBond.  ChanBond's only asset is the "Settlement Fund" which forms the subject of this action.

2.      We are informed by legal counsel for ChanBond herein that ChanBond does not have a written "limited liability company agreement." Thus, it is at best unclear whether ChanBond has a "manager" properly appointed consistently with Section 18-101 of the <u>Delaware Limited Liability Company Act</u>.  The language of the agreement, pursuant to which UOI purchased all the ChanBond membership interests from Dierdre Leane, states that *ChanBond* was to "appoint William R. Carter, Jr. as sole manager."  With the inability of a Delaware limited liability company to take such action, appoint its own manager, it remains uncertain how it came about that ChanBond could even hire counsel to appear in this action.  See Section 2.2.2 of Agreement – ChanBond among Deidre Leane,

ChanBond, LLC, and UnifiedOnline, Inc. dated October 27, 2015 (the "ISA") filed as Document 1 on October 9, 2020 in the case Deirdre Leane and IPNAV, LLC v UnifiedOnline, Inc. and ChanBond, LLC, Case 3:20-cv-03097-B (hereinafter, "Case 3:20-cv-03097-B") affixed hereto as Exhibit "A".

3.       Nonetheless, proposed Cross-Defendant William R. Carter, Jr. ("Carter") has unilaterally appointed himself, and has acted at all times as, the sole and exclusive manager of ChanBond, for his own self-interest, and to the detriment of UOI and its shareholders. Without proper authorization and oversight by the Board of Directors or shareholders of UOI, Mr. Carter has taken actions to dispose of the only asset of ChanBond, at a potentially substantial financial loss to UOI and its shareholders.  As a result of Carter's management, or lack thereof, UOI has no validly appointed Board of Directors and, once a publicly traded corporation, UOI's registration with the United States Securities and Exchange Commission ("SEC") was revoked by the SEC.  Rather than protecting the interests of UOI and its shareholders, ChanBond, by and through Mr. Carter, has chosen to simply ignore them.

4.       In our Rule 7.1.1 conference held on March 28, 2022 with the attorney hired by Mr. Carter to represent ChanBond in this action, Stephen B. Brauerman of Bayard, P.A., I asked Mr. Brauerman how Mr. Carter expected to distribute the remainder of the Settlement Fund to the shareholders of UOI, when UOI could not even produce a shareholder register (or stock ledger). Mr. Brauerman brusquely retorted, as if it were preordained, that my clients would "get nothing" from the Settlement Fund and that my clients had "no right" to even ask for any information related to the disbursement of the Settlement Fund.  Even on its Opposition to the instant Motion, having had the opportunity for further deliberation, ChanBond continues to insist that UOI, the only member of ChanBond, has "*no right*" to share in any distribution upon the liquidation of ChanBond's only asset.  ChanBond continues to baldly proclaim that not only must its only member accept that UOI's interest in the Settlement Fund is adequately protected by Mr. Carter and Mr. Brauerman in this action, but that UOI has no right to even know the amount of the Settlement Fund at issue.

5.      I have been a member of the California Bar (No. 189979), in good standing, for a few months shy of 25 years.  I have been a litigator my entire career.  I have represented clients before the California Supreme Court, the Fourth and Second Districts of the California Court of Appeal, the United States District Court for the Central District of California, and the California Superior Court for the Counties of Orange, Los Angeles, Riverside and San Bernardino.  In many hotly contested cases, I have never been the subject of a motion for sanctions under FRCP 11, or its State counterpart (*CA Code Civ. Pro*. §128.7). I have met and conferred with opposing counsel hundreds of times.

6.      In the few months since we filed the instant motion merely to intervene in this case to protect our clients' undeniable interest in the Settlement Fund at issue, Attorneys Brauerman and Cohen have repeatedly introduced Rule 11 to our discussions implicitly threatening me with "Rule 11 sanctions", because they disagreed with our arguments, or did not understand them. (See e.g., ChanBond Opposition, p. 1 (admitting to being "confused" by a statement of facts derived largely from public corporate filings filed with the SEC))   Attached hereto as Exhibit "B" are true and accurate copies of my email communications with counsel for ChanBond and Deirdre Leane ("Leane") and IPNAV, LLC, a Delaware limited liability company ("IPNAV" and, together with Leane,  the "Approved Intervenors") during the course of our attempt to comply with the Court's request that we engage in a Rule 7.1.1 conference regarding the subject motion.  Although I attempted to respond to counsels' aggressive, tag-team, cross-examination, point by point, they steadfastly refused to even consider the sensible proposition that all rights in the Settlement Fund should be resolved in one action, and that my clients (the "Proposed Intervenors") belonged in this case at least as much as the Approved Intervenors.

7.      This should not be an emotionally charged case. It is essentially a business dispute between investors in certain patent rights.  No one has died, and top-secret matters of National Security are not at stake. Nonetheless, I have met with nothing but aggressive resistance and insulting accusations from counsel for ChanBond and the Approved Intervenors.  I have found it difficult in the extreme to have any constructive conversations with counsel for ChanBond and the Approved

Intervenors regarding any informal resolution of the issues, or even any exchange of basic information relevant to the valuation of securities held by my clients.

8.      To date, ChanBond has refused to provide my clients with any information relevant to the amount or ultimate disposition of the Settlement Fund.

9.      To date, Carter, a purported director of UOI (ChanBond Opposition, p. 2 ("Non-Party William R. Carter is a director of Unified and the manager of ChanBond")), has refused to provide any information relevant to the amount or ultimate disposition of the Settlement Fund.

10.     Exhibit "C" affixed hereto is a true and correct copy of the Patent Purchase Agreement between CBV, Inc., a Pennsylvania corporation ("CBV") and ChanBond dated April 9, 2015 (the "PPA") upon which Plaintiff CBV based its initial motion to file under seal.  However, Exhibit "C" was filed by ChanBond in Case 3:20-cv-03097-B and thereby publicly disclosed by ChanBond.

11.     Exhibit "D" affixed hereto is a copy of a letter agreement between ChanBond and IPNAV dated April 9, 2015 (the "Advisory Services Agreement" or "ASA") filed in Case 3:20-cv-03097-B on October 9, 2020, and publicly disclosed thereby.

12.      Exhibit "E" affixed hereto is a true and correct copy of the Amended Verified Complaint in Deirdre Leane derivatively on behalf of UNIFIEDONLINE, Inc. v William Ralph "Billy" Carter, Jr., File No. 21 CVS 5405 filed in the North Carolina Business Court Case No.2021CVS5405 ECF on February 25, 2022 (the "North Carolina Action"). The Amended Verified Complaint in the North Carolina Action does not allege, and cannot allege, that Approved Intervenors are "similarly situated" with the other UOI shareholders.

13.     In the North Carolina Action, a "derivative action," brought by the Approved Intervenors against UOI, and Mr. Carter, Mr. Brauerman represents Mr. Carter, adverse to the interests of UOI's shareholders.  Exhibit "F" affixed hereto is a true and correct copy of a Brief in Support of Defendant's Motion to Dismiss, with page 17 showing the signatures of the attorneys representing Defendant Carter including Mr. Brauerman as counsel to Carter.

14.     In the action before this court, as reflected in the Scheduling Order D.I. 24, contrary to the interests of UOI's shareholders, the Approved Intervenors seek to enforce an arbitration award which could have the effect of significantly diminishing UOI's share in the Settlement Fund. Therefore, my clients have no assurance that any present party to this action can or will adequately protect ChanBond's and UOI's interests in the Settlement Fund. All parties are self-interested to the detriment of ChanBond and UOI.

15.     The SEC maintains on the internet and available to the public in its EDGAR database, copies of filings and records of filings made by persons and entities pursuant to the Securities Act of 1933, as amended (the "33 Act") and the Securities Exchange Act of 1934, as amended (the "34 Act"), and the rules and regulations promulgated by the SEC pursuant to the 33 Act and the 34 Act.

16.     UOI filed publicly available reports with the EDGAR database maintained by the SEC from October 28, 1999, to April 26, 2016. Exhibit "G" affixed hereto is a true and correct copy of the first two pages of the EDGAR list of the reports and filings made by UOI downloaded on January 9, 2022.

17.     UOI's last filing with the SEC was a Current Report on form 8-K filed on April 26, 2016. The last substantive report of financial information filed by UOI with the SEC was a quarterly report on form 10-Q filed on February 22, 2016.

18.     Exhibit "H" is a true and correct copy of the Current Report on Form 8-K filed by UOI, f/k/a ICEWEB, INC., on or about April 30, 2014 (the "April 30 8-K"), downloaded and printed on October 27, 2021.  Exhibit H publicly reports the acquisition of a controlling interest in UOI by UnifiedOnline! LLC, a Delaware LLC ("Unified LLC").  Exhibit H also reports a change in the composition of the UOI board of directors and an amendment to the UOI bylaws setting the authorized number of directors to three.

19.     Exhibit "I" is a true and correct copy of a Schedule 13D filed by Unified LLC on May 15, 2014 (the "Schedule 13D"). The Schedule 13D identifies William Carter as the sole member of Unified LLC.

20.     Exhibit "J" is a true and correct copy of the quarterly report on Form 10-Q filed by UOI with the SEC on May 15, 2014 (the "May 15 10-Q").   In "Note 17" ("Related Party Transactions") to Unaudited Consolidated Financial Statements, changes to the composition of UOI's Board of Directors are described as follows: "On April 23, 2014, the six members of IceWEB's Board of Directors resigned, and was replaced by three directors appointed by the holder of our Series AA Preferred Stock. The Board of Directors consists of three directors as of April 23, 2014."

21.     Exhibit "K" is a true and correct copy of the Current Report on Form 8-K filed by UOI with the SEC on October 30, 2015 (the "October 30 8-K") reporting the acquisition of ChanBond the defendant herein.

22.     Exhibit "L" is a true and correct photocopy of correspondence dated July 20, 2021, wherein I requested on behalf of the Proposed Intervenors a copy of UOI's corporate records. To date, of the records requested, only the bylaws have been produced.

23.     Exhibit "M" is a true and correct copy of correspondence dated August 23, 2021, received from Ira S. Saul PLC representing UOI ("August 23 Letter").  The August 23 Letter acknowledges receipt of the demand to inspect books and records.  The August 23 Letter also acknowledges the transmission of the UOI bylaws and asserts that "a Unified shareholders list" is being "assembled" by UOI.  To date no such shareholders list has been received.

24.     Exhibit "N" is a true and correct copy of UOI's operative bylaws as such were provided to my office by Mr. Saul, on August 23, 2021.  Note the amendment to Section 2.1 of the bylaws fixing the size of the board of directors at three.  See page 1 of Exhibit M.  Also note the quorum requirement in Section 2.6 on page 7 of Exhibit M.

25.     Exhibit "O" is a true and correct copy of correspondence dated September 7, 2021, wherein the Proposed Intervenors exercised their rights as shareholders of UOI to call a meeting of the shareholders.  To date, no notice of meeting has been provided.

26.     Exhibit "P" is a true and correct copy of the Annual Franchise Tax Report filed by UOI with the State of Delaware on April 29, 2020.  Exhibit "P" lists no officers and no directors of UOI other than Mr. Carter.  With only one director, there is no quorum, and UOI can take no corporate

action, including, but not limited to, management and oversight over ChanBond, UOI's sole asset, and ChanBond's litigation and settlement agreements.

27.     Exhibit "Q" is a true and correct copy of the SEC's decision to revoke UOI's registration effective July 17, 2019.

28.     Exhibit "R" is a true and correct copy of an arbitration demand (the "Leanne Arbitration Demand") made by the Approved Intervenors on UOI and ChanBond.  Although UOI was a party to the arbitration, UOI has provided no notification to its shareholders regarding the status, or result, of the arbitration.

29.     The Leanne Arbitration Demand was filed as an exhibit, pages 31 – 52, to a Notice of Removal filed by counsel purporting to represent ChanBond and UOI in an action filed by the Approved Intervenors.  Deirdre Leane and IPNAV, LLC v. Unifiedonline, Inc. and ChanBond, LLC Case 3:20-cv-03097-B filed in the United States District Court for the Northern District of Texas Dallas Division on October 9, 2020.  The Approved Intervenors alleged that ChanBond, under Carter's management, improperly revised the distribution "waterfall" for the Settlement Fund.  As a result, the distribution "waterfall" for the Settlement Fund, as it existed when UOI first acquired ChanBond, and in effect when UOI was submitting public reports to the SEC, was revised by Mr. Carter to a distribution "waterfall" that was deleterious to UOI and its stockholders, to the benefit of Mr. Carter's other entity, UO! IP.

30.     According to the last available annual report publicly filed by UOI, "[a]s of September 16, 2015, there were approximately 5,900 record owners of [UOI] stock."  See Exhibit "S," Annual Report on Form 10-K for the fiscal year ended June 30, 2015, Part II, Item 5.

31.     Attached as Exhibit "T" are true and correct copies of brokerage statements provided to the Proposed Intervenors.  The four brokerage statements evidence the value of the stock in UOI held by the Proposed Intervenors prior to the revocation of UOI's registration by the SEC.

32.     The brokerage statement provided to Mr. Collins for July 2019 shows a "Total Market Value" for the 25,272,381 shares held in that brokerage account of $379,085.72.  The statement for August 2019, shows a "write down" of $23,360.90 over the period reported by the statement

from $63,536.87, for the 2,636,878 shares held in that account.  The total for the 27,909,259 shares held by Mr. Collins were valued at $442,622.59 in July 2019 ($379,085.72 plus $63,536.87).

33.     The brokerage statement provided to Mr. Mian for July 2019 shows a "Total Market Value" for the 100,647,563 shares held in that brokerage account of $1,509,713.45.  The Ameritrade statement for August 2019, shows a "Market Value" of $42,333.74 for the 2,822,249 shares held in that account.   The total for the 103,469,812 shares held by Mr. Mian were valued at $1,552,047.19 in July 2019 ($1,509,713.45 plus $42,333.74).

34.     Exhibit "U" are true and correct copies of brokerage statements provided to the Proposed Intervenors immediately following the revocation of UOI's registration by the SEC.  The statements show that the brokerages valued UOI's stock at $0 following such revocation.

35.     We first learned of this action on December 14, 2021, from a redacted copy of the Complaint retrieved through a Google search on the internet.

36.     The statements offered by legal counsel for ChanBond and the Approved Intervenors regarding our efforts to "to reach agreement with the opposing party on the matters set forth in the motion" under Rule 7.1.1 are both irrelevant and inaccurate.

37.     Counsel for the Approved Intervenors proclaims that I agreed that our proposed counterclaim "is not a viable third-party complaint under Rule 14".  (Cohen Decl. ¶3) Rather, I merely pointed out that his sole authority offered for objecting to our proposed counterclaim against ChanBond and Mr. Carter would hold the pleading viable under FRCP 13(h).  *FDIC v. Bathgate*, 27 F.3d 850 (3d Cir. 1994).

38.     During the call with Mr. Cohen, I offered that if there were pleadings deficiencies in the proposed counterclaim, I would discuss them with counsel for the cross defendants named therein. I noted also that our allegations against Mr. Carter were the same that his clients were making in litigation filed in North Carolina.  Deirdre Leane derivatively on behalf of UNIFIEDONLINE, Inc. v William Ralph "Billy" Carter, Jr., File No. 21 CVS 5405 filed in the North Carolina Business Court  Case No.2021CVS5405 ECF.   I stated that I believed that, in furtherance of judicial economy, and to prevent the possibility of inconsistent outcomes, the District Court would permit

my clients' intervention in this case.  During the call, Mr. Cohen at first stated that he had no objection to my clients' joining the lawsuit as party defendants, but then refused when my Delaware co-counsel asked if we could state as such in our Rule 7.1.1 statement.

39.     We held separately our Rule 7.1.1 conference with Mr. Brauerman, who has been retained by Mr. Carter to represent ChanBond in this action.

40.     Although we had already served our motion, both counsels presented a laundry list of questions which illustrated only that they had not read our motion.  I have never before had opposing counsel demand that I "dance" before filing a procedural motion. I tried to point out that if they objected to our motion, they could simply make their arguments in their Opposition.  If they were right, it would all be over in a few weeks.  Yet, counsel seemed outraged for some reason that we would even bring our request for intervention before the District Court. Exhibit "V" is a true and correct copy of email sent by my Delaware co-counsel reminding Mr. Cohen and Mr. Brauerman of the purpose of the Rule 7.1.1 conference, and their duties of professional civility.

41.     Mr. Brauerman offers no declaration under oath, yet ChanBond's brief includes several inaccurate representations regarding our attempt to comply with the "discussion" required by Rule 7.1.1.

42.     During the Rule 7.1.1 conference Mr. Brauerman adamantly insisted that UOI's interests perfectly aligned with ChanBond's but then stated that UOI has "no right to any money" and "could not make ChanBond distribute the funds."  He repeatedly referred to our proposed intervention as a "double derivative" action, even after I told him several times that we are not proposing to intervene as any party other than UOI.  I also reminded him that, before the parties realized that UOI might be represented by counsel who was not beholden to Mr. Carter, the parties had all agreed that UOI was a necessary party to this case.  See Scheduling Order (D.I. 24).

43.     At footnote 7 in the ChanBond opposition it states: "During the Court-ordered meet and confer on the Motion, ChanBond asked counsel for the Non-parties to explain how the Court could exercise subject matter jurisdiction over the Derivative Cross-Complaint.  Instead of explaining its

[sic] position, counsel for the Non-Parties hung up on counsel for ChanBond."  This is a mischaracterization of the conversation, and a misstatement of the law.

44.     As I tried to explain, the District Court's jurisdiction, as stated in the text of the proposed Cross-Complaint, would be premised on 28 U.S.C. §1367(a); and 28 U.S.C. §1367(b), by its very terms, would not apply.  Section (b) applies to plaintiffs.  "Third Circuit precedent establishes that the plaintiff exclusion is construed literally; it applies only to actual plaintiffs. Thus '§ 1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim or crossclaim raised by an intervening defendant, even where the intervenor shares citizenship with an original party.'" *Deluxe Bldg. Sys. v. Constructamax, Inc.*, 94 F. Supp. 3d 601, 610 (N.J.D.C. 2013) I patiently tried to get him to see that, once we became aware of the instant action, we purposefully chose to attempt to intervene as a party-defendant so that we did not have to destroy diversity in order to avoid potentially inconsistent outcomes if we were forced to bring a separate state action before the Delaware state courts. After about one-half hour of a most unpleasant phone call, I realized that further discussion on the topic would prove futile.

45.     Exhibit "W" is a screenshot from the e-Corp filing system with the Delaware Division of Corporations from April 22, 2022. This shows that the Delaware franchise tax was not paid and the annual report listing all directors was not filed before or after the March 1, 2022 deadline.

Dated: April 22, 2022

_/s/ Steven L. Rader_____
STEVEN L. RADER