13:12:40

                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF DELAWARE


        CBV, INC.,                      )
                                        )
                    Plaintiff,          )
                                        ) C.A. No. 21-1456(MN)
        v.                              )
                                        )
        CHANBOND, LLC, et al.,          )
                                        )
                    Defendants.         )



                        Monday, April 25, 2022
                        4:35 p.m.
                        Hearing


                        844 King Street
                        Wilmington, Delaware



        BEFORE:  THE HONORABLE MARYELLEN NOREIKA
                 United States District Court Judge



        APPEARANCES:


                        BUCHANAN INGERSOLL & ROONEY, PC
                        BY:  GEOFFREY GRAHAM GRIVNER, ESQ.
                        BY:  KODY MACGYVER SPARKS, ESQ.


                                Counsel for the Plaintiff



                        BAYARD, P.A.
                        BY:  STEPHEN B. BRAUERMAN, ESQ.
                        BY:  RONALD P. GOLDEN, III, ESQ.


                                Counsel for the Defendant
                                ChanBond, LLC

```
 1    APPEARANCES (Cont'd):

 2
                    TROUTMAN PEPPER HAMILTON SANDERS, LLP
 3                  BY:  JAMES HARRY STONE LEVINE, ESQ.

 4                  -and-

 5                  KAMERMAN UNCYK SONIKER & KLEIN, PC
                    BY:  AKIVA M. COHEN, ESQ.
 6

 7                         Counsel for Defendant
                          Deirdre Leane and
 8                        Intervenor IPNAV, LLC

 9

10                  THE WILLIAMS LAW FIRM, P.A.
                    BY:  JOHN WILLIAMS, ESQ.
11                  BY:  BRIAN C. CRAWFORD, ESQ.

12
                          Counsel for Intervenors
13                        Gregory Collins and Kamal Mian

14

15                  _ _ _ _ _ _ _ _ _ _ _ _

16:34:15 16

16:34:15 17           THE COURT:  Let's all hurry up.  Okay?

16:34:17 18           All right.  Let's start with some introductions.

16:35:52 19           MR. GRIVNER:  Good afternoon, Your Honor.

16:35:59 20   Jeffrey Grivner of Buchanan Ingersoll & Rooney.  With me

16:36:02 21   today is my colleague Kody Sparks.  And we're here on behalf

16:36:02 22   of plaintiff, CBV.  Thank you.

16:36:12 23           MR. BRAUERMAN:  Good afternoon, Your Honor.

16:36:17 24   Stephen Brauerman from Bayard.  I'm joined by my colleague

16:36:19 25   Ron Golden on behalf of ChanBond.
```

16:36:20 1                THE COURT:  Good afternoon.

16:36:26 2                MR. LEVINE:  Good afternoon, Your Honor.  James

16:36:28 3 Levine from Troutman Pepper Hamilton & Sanders.  I'm joined

16:36:31 4 by my co-counsel Akiva Cohen from the Kamerman Uncyk firm in

16:36:34 5 New York on behalf of Deirdre Leane and IPNAV.

16:36:38 6                THE COURT:  Okay.

16:36:43 7                MR. WILLIAMS:  Good afternoon, Your Honor.  John

16:36:47 8 Williams of the Williams Law Firm on behalf of Gregory

16:36:51 9 Collins and Kamal Mian who are appearing on behalf of

16:36:58 10 UnifiedOnline.  And I also have with me today Brian Charles

16:37:00 11 Crawford who is a director of our firm.

16:37:04 12                THE COURT:  Okay.  And is the counsel who is the

16:37:06 13 subject of this and who asked to be excused and I didn't

16:37:10 14 excuse here?

16:37:12 15                MR. WILLIAMS:  Stephen Rader is not here.  He's

16:37:15 16 in California Your Honor.  We are the local counsel.  We

16:37:18 17 will be presenting today.

16:37:18 18                THE COURT:  He was the one who was the subject

16:37:20 19 of the motion.  He is the one who was acting apparently

16:37:26 20 inappropriately and asked for a hearing and due process to

16:37:30 21 be heard.  And he asked to be excused and I denied that

16:37:34 22 motion.  So where is he?  Why isn't he here?  I denied the

16:37:39 23 motion, right, you saw that you shall.  And he just decided

16:37:41 24 he didn't care, he wouldn't come.

16:37:41 25                MR. WILLIAMS:  Your Honor, I guess the question

16:37:47 1   is, what is the agenda for the hearing today?

16:37:50 2           THE COURT:  It's on the request to be heard on

16:37:53 3   the violation of the local rule on confidentiality.  And he

16:37:59 4   is a key player in the violation that has been asserted.

16:38:04 5   And he asked to be excused from attending in person and I

16:38:09 6   denied that request.  So now he has just decided not to

16:38:13 7   attend at all?  Is that what I am to understand?

16:38:17 8           MR. WILLIAMS:  It's correct, Your Honor, that he

16:38:20 9   is not attending.  I believe our side thought there was

16:38:23 10  substantive arguments on the document in question --

16:38:27 11          THE COURT:  Nope.  Nope.  Right now, I just want

16:38:31 12  to hear why -- I get it that there might be a substantive

16:38:35 13  argument, but those arguments should have been made before

16:38:38 14  the document was disclosed, and before it was refused to be

16:38:43 15  given back.  Right?  There was an order that said it was

16:38:48 16  sealed.  Whether you disagree with that, what do you think

16:38:52 17  the appropriate response is, to come get the order lifted,

16:38:57 18  not just to disregard it.  Is there any dispute about that?

16:39:03 19          MR. WILLIAMS:  I guess the question, Your Honor

16:39:07 20  --

16:39:07 21          THE COURT:  No, the question is the question I

16:39:07 22  just asked.

16:39:11 23          MR. WILLIAMS:  Yes, Your Honor, there is a

16:39:12 24  question about that.

16:39:15 25          THE COURT:  Really?  This document was filed

16:39:18 1  under sealed pursuant to a court order and you thought, or

16:39:22 2  someone in your clients, these are people who want me to

16:39:25 3  allow them to intervene in this case, are saying we don't

16:39:30 4  care about your court order, Judge, we're just going to

16:39:33 5  decide on our own and we're not going to come back to you

16:39:36 6  and say Your Honor, maybe you ought to relook at that?

16:39:41 7       MR. WILLIAMS:  The order to file under seal

16:39:46 8  governed access to the docket and this was basically not

16:39:49 9  obtained through the docket, and so the question is whether

16:39:53 10 the order actually governs this particular disclosure.

16:39:59 11      THE COURT:  It's one thing if you say that they

16:40:02 12 gave it to you by mistake, but did you -- what happened when

16:40:06 13 they gave it to you?  It was marked under seal confidential

16:40:10 14 when you got it, right?

16:40:11 15      MR. WILLIAMS:  Actually what happened --

16:40:12 16      THE COURT:  Was it marked under seal

16:40:14 17 confidential when you received it?

16:40:16 18      MR. WILLIAMS:  I don't know because I don't

16:40:17 19 remember --

16:40:18 20      THE COURT:  Mr. Brauerman.

16:40:20 21      MR. BRAUERMAN:  Yes, Your Honor, the e-mail and

16:40:21 22 the filing indicated that it had been filed under seal.

16:40:24 23      THE COURT:  So was it treated as under seal

16:40:27 24 where outside counsel only had access to that, or was it

16:40:31 25 given to people who were not outside counsel?

MR. WILLIAMS:  Your Honor, I just need to create a record here if you don't mind.

THE COURT:  No, I need you to answer my question.  You can create whatever record you want, but now I need to understand what's going on.  Because you, your co-counsel asked for a hearing, said don't do anything until we have an opportunity to be heard.  So I have some questions as to what was being done that I need some answers to.  And you're not giving me those answers.  You're saying I just want to make a record.  That's not the way it works.  Okay?

So it was marked confidential.  There was a court order where I allowed it to be treated as confidential.  Was it treated as confidential as in kept by only outside counsel in the case?

MR. WILLIAMS:  I need to explain the timeline, Your Honor.

THE COURT:  I need to just know the answer to that question.

MR. WILLIAMS:  Okay.  Well, the document was sent to people on ECMF, everyone concedes that, I'm certainly not on it, Brian Crawford is, he wasn't in the office.  Mr. Rader received it.  I don't know who he shared it with specifically.

THE COURT:  How are you here today?  Mr. Rader

16:41:49 1  didn't bother to show up because he just didn't like that I

16:41:52 2  wanted him here in person and he asked to be excused and

16:41:56 3  didn't come.  And now you're saying I don't know what

16:42:00 4  Mr. Rader did with it.  If you were going to come and he

16:42:04 5  wasn't going to be here, don't you think you should have an

16:42:07 6  answer to that?

16:42:08 7          Because the question is, the question is not

16:42:11 8  right now whether it should have been marked confidential.

16:42:14 9  I get it.  You have questions on that.  But the fact is it

16:42:20 10  was.  And you didn't come to me and say this shouldn't be

16:42:26 11  confidential, you just did something with it.  So we now

16:42:29 12  need to know what was done with it, has it been recovered

16:42:34 13  and then at some point we can address whether it really

16:42:39 14  should be or part of it should be marked confidential.  So

16:42:42 15  let's start with the part that I care about right now and

16:42:45 16  the reason that I had the hearing, which is, what was done

16:42:49 17  with the document?  Were people other than outside counsel

16:42:53 18  given access to the document?

16:42:56 19          MR. WILLIAMS:  I believe the client may have had

16:42:59 20  access to the document, Your Honor.

16:43:02 21          THE COURT:  Okay.  Anyone else?

16:43:02 22          MR. WILLIAMS:  Not that I'm aware of.

16:43:03 23          THE COURT:  Was anything done with it to make

16:43:06 24  that document public?

16:43:09 25          MR. WILLIAMS:  Well, the question is, I think

16:43:13 1   Mr. Rader's understanding was the document should have

16:43:16 2   already been public.

16:43:17 3              THE COURT:  Again, I get it.  Totally

16:43:21 4   understand.  But Mr. Rader doesn't get to make that

16:43:25 5   decision.  I do.  Okay?  And you have to come to me to get

16:43:30 6   me to make that decision, you don't get to just decide it.

16:43:35 7   You do understand my concerns here which is your client went

16:43:39 8   to intervene in this case.  One of the grounds for

16:43:43 9   intervention asked me to exercise my discretion.  And I now

16:43:47 10  have some concerns about whether if I allow your clients to

16:43:51 11  be in the case you're just going to have my orders violated

16:43:55 12  left and right without any respect whatsoever for the Court.

16:43:59 13  Okay?  And I have counsel who can't even be bothered to show

16:44:03 14  up and answer the questions.  So we're not going to talk

16:44:07 15  about what you need to talk about right now, and whether or

16:44:10 16  not the decision was correct.  I need you to just tell me,

16:44:14 17  where did it go?  There was some allegations that it might

16:44:18 18  have been posted on websites.  Was that done?

16:44:20 19             MR. WILLIAMS:  Not that I'm aware of, Your

16:44:22 20  Honor.

16:44:22 21             THE COURT:  Did you check?  Did you ask anyone?

16:44:22 22             MR. WILLIAMS:  Well, there was an order to

16:44:29 23  return the document.  I understand that that order was

16:44:32 24  complied with by deleting the copy of the document that we

16:44:35 25  all had in our e-mail addresses and the client confirmed

16:44:43 1   that they also deleted the copy of the document.

16:44:45 2                THE COURT:  Was any request made as to whether

16:44:47 3   or not the client had disseminated that information

16:44:51 4   anywhere?

16:44:52 5                MR. WILLIAMS:  I don't know that for a fact,

16:44:54 6   Your Honor.

16:44:54 7                THE COURT:  You don't know whether anyone asked

16:44:56 8   the client?

16:44:58 9                MR. WILLIAMS:  I wasn't in direct contact with

16:45:01 10  the client, no, Your Honor.

16:45:05 11                THE COURT:  All right.  Mr. Brauerman, anything

16:45:10 12  you want to add?  What do you want me to do here?  Did you

16:45:15 13  get confirmation that ultimately they finally did delete the

16:45:19 14  document?  Did you get that confirmation.

16:45:22 15                MR. BRAUERMAN:  I received that confirmation

16:45:23 16  from Delaware counsel.  I received what I interpreted as a

16:45:27 17  somewhat cryptic response from lead counsel.

16:45:31 18                THE COURT:  What was the response?

16:45:33 19                MR. BRAUERMAN:  The response was essentially it

16:45:35 20  wasn't from Mr. Rader, it was from a member of Mr. Rader's

16:45:40 21  team that the e-mail that we had circulated was deleted, but

16:45:44 22  they responded to that in such a way that the confidential

16:45:48 23  information was on another e-mail.  And we asked them to

16:45:51 24  confirm that they deleted the second e-mail and we didn't

16:45:56 25  get a response.

16:45:57  1          Just to complicate matters, Friday evening in

16:46:00  2    their reply to the motion to intervene they attached an

16:46:04  3    e-mail that was filed publicly on the docket until this

16:46:07  4    afternoon.  We asked them to remove it over the weekend and

16:46:10  5    obviously the clerk's office can't move that quickly.  That

16:46:13  6    contains the very information that was in the award that

16:46:16  7    should have remained confidential and they filed it publicly

16:46:19  8    on the docket knowing that Your Honor had ordered it to be

16:46:24  9    under seal and then that Your Honor had ordered them to

16:46:28 10    delete it.  So this continues to be in my view an

16:46:35 11    extraordinarily serious problem.  I don't believe that

16:46:37 12    Delaware counsel is the problem, but clearly they are unable

16:46:40 13    or unwilling to resolve it.  I would be happy to make a

16:46:44 14    request for relief if that's what Your Honor would like.

16:46:48 15          THE COURT:  What do you want?

16:46:50 16          MR. BRAUERMAN:  My request for relief is that

16:46:52 17    the motion to intervene be denied with prejudice; that

16:46:55 18    Mr. Rader's pro hac be revoked; that Mr. Rader be referred

16:46:59 19    to disciplinary counsel, and attorneys fees and costs be

16:47:02 20    awarded both in responding to the motion to intervene and in

16:47:02 21    connection with these issues.

16:47:02 22          I just want to be clear, Your Honor, we raised

16:47:10 23    this in a meet and confer before this happened.  As soon as

16:47:14 24    the issue happened and we learn of it, I explained to them,

16:47:17 25    I got on the phone, I explained to them local Rule 26.2, I

explained to them what Your Honor was going to do.  I begged

Delaware counsel not to make me file that letter.  It is

embarrassing enough that we sent a document we ought not to

have sent, an did not want to make this any more public than

it needed to be.  I begged them not to put us in this

position.

Mr. Rader was rude and belligerent.  I have had

two meet and confers with him.  He has ended both of them by

hanging up on me.  In the first one, the question that I

asked him that he hung up on me, what is the basis of this

Court's jurisdiction over your cross claim because it's

broad diversity.  I did not understand their 1367 argument.

And he hung up on me.

As you know, Your Honor, I'm in this court a

lot, I deal with a lot of lawyers, I generally don't have

issues.  But I have never encountered this type of

unprofessionalism before.

So those are my requests, Your Honor.

THE COURT:  All right.  Do you have any laws

supporting you?  And let me just ask you this, is there

anyway that the information that you say was filed over the

weekend could have been obtained other than through the

confidential information that was inadvertently sent?

MR. BRAUERMAN:  No.  I can hand up -- there are

public individuals in the courtroom.

16:48:48 1          THE COURT:  Can you give it to me so I can read

16:48:51 2     it.

16:48:51 3          MR. BRAUERMAN:  May I approach?

16:49:01 4          THE COURT:  So this was filed?

16:49:04 5          MR. BRAUERMAN:  This was filed publicly.  This

16:49:06 6     e-mail was an exhibit.  You can see at the top of it, Your

16:49:09 7     Honor, there is an CEMCF stamp.  This same e-mail was filed

16:49:13 8     in two places on the docket, 87-2 and 88-2.

16:49:18 9          THE COURT:  Which are what?

16:49:19 10          MR. BRAUERMAN:  They are exhibits to the

16:49:20 11     opposition -- or I'm sorry to the reply in support of the

16:49:24 12     motion to intervene.  And if Your Honor looks at the bottom

16:49:38 13     of the e-mail, you can see the numbers that were

16:49:42 14     confidential and were only obtained through the inadvertent

16:49:48 15     disclosure.

16:49:49 16          THE COURT:  All right.  Any dispute that these

16:49:51 17     numbers that were filed publicly on the docket were obtained

16:49:54 18     through the public, through the confidential disclosure?

16:49:59 19          MR. WILLIAMS:  Your Honor, may I let Brian

16:50:00 20     Crawford respond to that?

16:50:08 21          MR. CRAWFORD:  Thank you, Your Honor.  We don't

16:50:12 22     dispute that they were filed on the public record.  It was

16:50:18 23     inadvertent on our part, Your Honor.  And my understanding

16:50:25 24     is that the numbers on there were from the information we

16:50:35 25     received from --

16:50:40 1          THE COURT:  But here is my question.  There was

16:50:42 2     a representation that the e-mail was deleted.  It was

16:50:50 3     inadvertently sent.  It was said that it was inadvertently

16:50:56 4     sent and no relief from the Court had been obtain.  So aside

16:51:01 5     from the inadvertence, and I understand Mr. Brauerman

16:51:05 6     probably understands how inadvertence can happen, why was it

16:51:09 7     being referenced at all?

16:51:15 8          MR. CRAWFORD:  In the filing --

16:51:16 9          THE COURT:  Essentially you weren't supposed to

16:51:18 10    have the information, and it was deleted.  And there was a

16:51:22 11    representation that it was deleted.  Why is it now coming

16:51:25 12    back?

16:51:26 13         MR. CRAWFORD:  Your Honor, my understanding was

16:51:28 14    that although it was represented, we represented that we

16:51:32 15    deleted the document in question which was the document at

16:51:37 16    issue.

16:51:38 17         THE COURT:  But you just decided to -- what do

16:51:41 18    you do with the information that was confidential in that,

16:51:44 19    if you deleted the e-mail, I think that's the problem is

16:51:48 20    that once the -- it's not supposed to be -- you have the

16:51:54 21    document, you get the confidential information, you say I

16:51:58 22    deleted the document and then you continue using the

16:52:02 23    confidential information.  The point is deleting the

16:52:02 24    document.  I need him to listen to me for a moment.

16:52:06 25         MR. WILLIAMS:  I'm sorry.

16:52:07 1          THE COURT:  The point of the deleting the

16:52:08 2   document was to essentially get rid of you having possession

16:52:13 3   of the confidential information, not that you would then use

16:52:15 4   it.

16:52:16 5          MR. CRAWFORD:  Yes, Your Honor.  And the e-mail

16:52:20 6   in question was not the e-mail that was sent to us by

16:52:24 7   ChanBond, it was an e-mail from Mr. Rader.  So it was a

16:52:28 8   separate e-mail.  I understand Your Honor's point that it

16:52:32 9   contained the information that was in the order.  But Your

16:52:35 10  Honor --

16:52:35 11         THE COURT:  You understand what my problem is,

16:52:37 12  right, that Mr. Rader is now out there sending e-mails that

16:52:41 13  include information that he was ordered to give back as in

16:52:47 14  not continue to use.

16:52:50 15         MR. CRAWFORD:  Yes.

16:52:51 16         THE COURT:  And I understand that he doesn't

16:52:54 17  think that this is confidential, but he doesn't make that

16:52:56 18  decision.  He has to come to me and ask me to do that.  Not

16:53:00 19  use it and then ask me.

16:53:02 20         MR. CRAWFORD:  Yes, Your Honor.

16:53:02 21         THE COURT:  All right.  So what do you think of

16:53:02 22  the relief that Mr. Brauerman just asked for?

16:53:02 23         MR. CRAWFORD:  Your Honor, there is case law in

16:53:12 24  the Third Circuit, *U.S. v. Dougherty* that says the term

16:53:18 25  under seal means the defendants and public would not be able

16:53:21 1    to view the filed papers or learn the contents from the

16:53:24 2    docket.  But in this case, the defendant clearly

16:53:27 3    disseminated the information to the public absent a

16:53:31 4    protective order.  That is *U.S. v. Dougherty*, 627 Federal

16:53:37 5    Appendix 907, 207, the Third Circuit 2015.

16:53:40 6              Additionally, Your Honor, our understanding is

16:53:42 7    that rules of civil procedure only address protective orders

16:53:46 8    that are materially exchanged during discovery, that's --

16:53:51 9              THE COURT:  Okay.  Again, it's confidential.  I

16:53:55 10   ordered you to return it, ordered you.  Okay?  So why is it

16:54:00 11   continuing to be used?

16:54:03 12             MR. CRAWFORD:  Your Honor --

16:54:08 13             THE COURT:  I asked you what do you think of the

16:54:10 14   relief.  I mean, it seems like counsel for the interveners

16:54:16 15   has no respect for the Court or its orders.  The allegations

16:54:24 16   are that your co-counsel who has been given the privilege of

16:54:29 17   being admitted pro hac in this case is rude and not

16:54:32 18   conducting himself as we expect people who are admitted into

16:54:37 19   this Court to act.  Can anyone tell me that Mr. Brauerman's

16:54:42 20   representation about those discussions is wrong?

16:54:45 21             MR. CRAWFORD:  Your Honor, with respect to

16:54:48 22   specifically the hanging up, on the first call I was on that

16:54:52 23   call with Mr. Brauerman and Mr. Rader and there was a

16:54:57 24   question posed kind of on the cuff as to jurisdiction.  And

16:55:02 25   Mr. Rader gave his answers over and over and the question

16:55:06 1    about jurors was continued to be asked, so at that point, I

16:55:10 2    think Mr. Rader politely hung up.  He said I think we're

16:55:16 3    done here.  Have a good day.  Something along those lines.

16:55:19 4    So he wasn't impolite, he just closed the meeting without

16:55:24 5    Mr. Brauerman signing off as well.

16:55:27 6            The second meeting involved all counsel and I

16:55:33 7    think that was a more abrupt hang up.  But the tone in that

16:55:39 8    meeting by everyone, I believe, was pretty hostile, I'll say

16:55:44 9    hostile.

16:55:45 10           So again, it was an abrupt hang up, but I don't

16:55:52 11   know that his tone in that conversation was different than

16:55:56 12   anyone else's tone, really.  So as far as his demeanor in

16:56:03 13   these meetings, I would be -- I would disagree with

16:56:08 14   Mr. Brauerman's interpretation.

16:56:18 15           Your Honor, also additionally, with respect to

16:56:22 16   --

16:56:22 17           THE COURT:  No, I just want to -- why is this

16:56:25 18   okay?  I don't mean the filing it publicly, because I

16:56:30 19   believe you when you tell me that was an accident.  But why

16:56:33 20   is this information, Mr. Rader sending e-mails to other

16:56:37 21   people with this information in it, I mean, I ordered that

16:56:40 22   it not be disseminated and this e-mail was sent.  Now this

16:56:45 23   e-mail was sent before that, but why was it attached?

16:56:51 24           MR. CRAWFORD:  Your Honor, I don't know the

16:56:55 25   reasoning behind the attachment other than it was part of

16:56:59 1    the declaration by Mr. Rader.  And in that declaration, he

16:57:03 2    was referring to the correspondence between counsel and

16:57:08 3    threats of -- this essentially started since we tried to

16:57:14 4    intervene, there have been references to Rule 15 even before

16:57:17 5    any sharing of documents, he felt that there was this open

16:57:22 6    hostility toward him and us and our clients trying to

16:57:25 7    intervene, trying to become part of this.

16:57:28 8             THE COURT:  And maybe if he were trying to

16:57:31 9    intervene he would act in accordance with the Court's

16:57:35 10   orders, wouldn't you think?

16:57:36 11            MR. CRAWFORD:  Yes, Your Honor.

16:57:37 12            THE COURT:  And he hasn't, has he?

16:57:40 13            MR. CRAWFORD:  Well, he filed the e-mail, Your

16:57:43 14   Honor.

16:57:43 15            THE COURT:  And did he give the information back

16:57:46 16   when --

16:57:47 17            MR. CRAWFORD:  Excuse me, I should say I filed

16:57:49 18   the e-mail, Your Honor.

16:57:51 19            THE COURT:  But it was attached to his

16:57:52 20   declaration.

16:57:52 21            MR. CRAWFORD:  Yes.

16:57:52 22            THE COURT:  All right.  So anything else you

16:58:00 23   want to add?

16:58:01 24            MR. CRAWFORD:  Yes, Your Honor.  Our

16:58:03 25   understanding is that the only basis for seeking

16:58:09 1    confidential treatment is that they don't provide concrete

16:58:17 2    particularized harm.  This has been a document that was

16:58:21 3    filed on the public record, that makes it subject to the

16:58:25 4    common law --

16:58:27 5              THE COURT:  It wasn't filed on public record.

16:58:29 6              MR. CRAWFORD:  Yes, Your Honor.

16:58:30 7              THE COURT:  No, it wasn't.  It was filed under

16:58:33 8    seal and the issue was that it was inadvertently served.

16:58:36 9              MR. BRAUERMAN:  Yes, Your Honor.

16:58:37 10             THE COURT:  So it was not filed on the public

16:58:40 11   record.  It was not.

16:58:41 12             MR. CRAWFORD:  Excuse my.  It was filed with the

16:58:43 13   Court, yes.  I'm sorry, Your Honor.  It was filed with the

16:58:46 14   Court and when it becomes --

16:58:48 15             THE COURT:  Here is what you're missing.  If you

16:58:52 16   don't think -- if you think something is improperly filed

16:58:55 17   under seal, here is my question.  Do you just say well, I

16:59:01 18   don't think it's confidential and file it publicly, or do

16:59:05 19   you come to the Court and say that's not appropriately filed

16:59:11 20   under seal?  I get it that you guys have questions, but the

16:59:15 21   way that you just disregard my role in the proceeding is

16:59:20 22   very disturbing to me because all I'm hearing is well, Your

16:59:30 23   Honor, it's not confidential.  That's not the way we deal

16:59:32 24   with things.  You don't get to say that.  Mr. Rader doesn't

16:59:35 25   get to say that.  No one does but me.  Okay?

And I take your point and if they file things
that are confidential and you don't think they should have
been, the proper thing to do would have been to move, but
you didn't.  And so now we are in this position where there
is a question of whether a violation of a court order has
occurred.

            MR. CRAWFORD:  Yes, Your Honor.

            And as far as the confidentiality aspect of it,
as I mentioned, I think everything leading up to the -- when
there was only filing under seal in place, we believe that
that -- we're entitled to do what we want under *U.S. v.*
*Dougherty*.

            And then, Your Honor, our concern is that as
noted, Rule 26 really applies to discovery issues.

            THE COURT:  It doesn't.  No, it doesn't.  I
mean, Rule 26.2, familiarize yourself with the rules of the
Court if you want to practice here.  That's not right.
Okay?  People use that -- we don't have that rule just so
that, you know, things can be produced in discovery and then
filed publicly on the docket.  That's not the way it works.

            And by the way, your brief didn't comply with
the rules of this Court, either, so we're not -- there is a
real concern I have that you folks aren't even trying to
comply with our rules.

            So this is what I am going to do.

Mr. Brauerman, I need you to send me a
submission with some law or something that supports the
relief that you're requesting, something that would say that
what you're requesting is an appropriate sanction.

When can you get me that?

MR. BRAUERMAN:  Can I have until the end of the
day tomorrow, Your Honor?

THE COURT:  Yes.  You can have 24 hours to
submit a response and I will rule.

MR. BRAUERMAN:  Your Honor, I don't know if it's
helpful, I have two cases that were able to find right now.
One was *Johnson v. Trueblood*, 629 F.2d 302, Third Circuit
1980.  The Third Circuit recognized the court has the
inherent power to revoke pro hac as long as there is notice
and a hearing.

THE COURT:  Does this count as notice and a
hearing?  I think that I did it because Mr. Rader asked for
notice.  Mr. Rader seemed like he wanted to attend because
he asked me to be excused or allowed to participate
remotely.  We are having jury trials in this courthouse, so
I can't say it is too dangerous for someone to come here and
have the notice that he wants.  So okay, I think we have had
that.

MR. BRAUERMAN:  I do, too, Your Honor.  We had a
meet and confer before they filed their motion to ask

17:02:40 1    Mr. Rader to be excused.  And I explain to them, I asked

17:02:44 2    them whether there was a medical reason or a personal issue

17:02:47 3    that precluded his attendance and none was explain to me.

17:02:51 4    And I said we're going to oppose.  Even if we agree, I

17:02:55 5    didn't think Your Honor was going to approve it even if we

17:02:58 6    stipulated it because I understood that the purpose of this

17:03:01 7    hearing was to address his conduct.

17:03:04 8          THE COURT:  And because he asked me for an

17:03:06 9    opportunity to be heard with proper notice.

17:03:10 10          MR. BRAUERMAN:  And I'll note, Your Honor, just

17:03:12 11    so that it's clear, we filed a redacted version that

17:03:16 12    redacted the document they challenged the confidentiality of

17:03:19 13    in accordance with the rules --

17:03:21 14          THE COURT:  That's the whole document.

17:03:25 15          MR. BRAUERMAN:  Right.  It was a confidential

17:03:27 16    arbitration award.  But the way -- the mechanism -- and they

17:03:30 17    haven't filed a motion and for them to file a motion

17:03:32 18    challenging our redaction, that hasn't occurred.  And at

17:03:36 19    this point I think it may be waived.  But we were very

17:03:39 20    careful.  We didn't redact any of the document.  The only

17:03:42 21    thing that's redacted from that filing is that exhibit, it's

17:03:46 22    just the exhibit.  I don't think we redacted any of the

17:03:48 23    argument in briefing or anything about the exhibit, it was

17:03:51 24    just the exhibit itself that we redacted.

17:03:55 25          THE COURT:  That exhibit which is an arbitration

17:03:55 1    award, that award has not been docketed in any court?

17:03:59 2              MR. BRAUERMAN:  Not to my knowledge.

17:04:00 3              THE COURT:  Can you check on that, because

17:04:02 4    that's where the Third Circuit case law seems to come into

17:04:07 5    play.

17:04:07 6              MR. BRAUERMAN:  Mr. Cohen has confirmed it has

17:04:09 7    not.

17:04:10 8              MR. COHEN:  It has not.

17:04:10 9              THE COURT:  All right.

17:04:11 10             MR. BRAUERMAN:  I had one more cite.

17:04:12 11             THE COURT:  If you could put it together.  You

17:04:15 12   can put the cite on the record and we'll take a look.

17:04:17 13             MR. BRAUERMAN:  It's a transcript ruling so

17:04:19 14   we'll attach it, but it's *BioRad v. 10X Genomics*, Judge

17:04:24 15   Andrews transcript from June 20th, 2018.  The Court there

17:04:30 16   did not revoke the pro hac, but only because counsel showed

17:04:33 17   up and apologized.  But it mentioned that the Court had

17:04:37 18   authority to revoke the pro hac there.

17:04:39 19             And while I'm here, I'll put this in the letter,

17:04:42 20   but with respect to attorney fees the Court has inherent

17:04:42 21   power certainly --

17:04:48 22             THE COURT:  Who has denial of the motion?

17:04:52 23             MR. BRAUERMAN:  I think that can be a sanction,

17:04:52 24   intervention certainly as to permissive intervention can be

17:04:56 25   deny.  Intervention, it's fully briefed, Your Honor can read

17:05:01 1    it.  You can deny it for any number of reasons, but

17:05:05 2    dismissal is permissive sanction in appropriate

17:05:08 3    circumstances.  Certainly a denial of a motion to intervene,

17:05:11 4    can be, I would think, I haven't researched that issue.  I

17:05:15 5    will over the next 24 hours and get back to Your Honor.  But

17:05:18 6    if the Court can dismiss a case, I think the Court can deny

17:05:24 7    intervention even it's mandatory.  We're happy to argument.

17:05:28 8    We have asked for argument.  They don't come close.  Their

17:05:32 9    cross claim on jurisdiction, a cross claim on diversity

17:05:36 10   doesn't have diverse parties on either side of it.  So we'll

17:05:40 11   provide some --

17:05:42 12               THE COURT:  What's the issue on subject matter

17:05:45 13   jurisdiction?

17:05:45 14               MR. BRAUERMAN:  It's diversity.  They're seeking

17:05:47 15   to intervene to file a cross claim with Unified on one side

17:05:51 16   which is Delaware entity and ChanBond on the other.  And

17:05:55 17   ChanBond is a Delaware LLC.  And they haven't addressed

17:05:59 18   that.  1367 doesn't address that.  They're trying to

17:06:03 19   intervene to file a cross claim that this Court can't hear.

17:06:07 20               MR. CRAWFORD:  Your Honor, we have arguments as

17:06:08 21   to that that have not been briefed at this point.

17:06:11 22               THE COURT:  No.  If that issue has been raised

17:06:13 23   and if it's not in your motion to intervene, when do you

17:06:16 24   think you would make those arguments?

17:06:20 25               MR. CRAWFORD:  I believe it's in our reply brief

17:06:24 1    that we filed, which I'm not prepared to address here today.

17:06:26 2    But I will say our understanding is that when there is --

17:06:32 3    this is third-party cross practice, and once there is

17:06:39 4    established jurisdiction or jurisdiction over the main

17:06:42 5    matter then we're able to bring these claims.

17:06:44 6              MR. BRAUERMAN:   1367 says exactly the opposite

17:06:48 7    in the express language of the statute and we told them

17:06:51 8    that.   And their reply does not address it.

17:06:55 9              THE COURT:   All right.   Okay.   So I want a

17:06:59 10   response or something from you, Mr. Brauerman, tomorrow.

17:07:03 11   Response, 24 hours later so that would be by the close of

17:07:07 12   business on Wednesday.   And then we will let you know if we

17:07:10 13   need more.

17:07:11 14             Yes, sir.

17:07:12 15             MR. LEVINE:   Your Honor, James Levine from

17:07:15 16   Troutman Pepper.   Not to be the cat bringing Your Honor a

17:07:19 17   mouse.

17:07:19 18             THE COURT:   Is that a good thing or a bad thing?

17:07:21 19             MR. LEVINE:   It's not a good thing.   I'm trying

17:07:22 20   not to do a bad thing.   There is one other item that needs

17:07:27 21   to be addressed.   With respect to disclosure of this e-mail

17:07:30 22   on Friday which Mr. Brauerman raised, that document has

17:07:33 23   already been out in the public.   The toothpaste is out of

17:07:37 24   the tube and members of the public have that document.

17:07:39 25             There is an active message board that

17:07:44 1    involves -- I mean, there are active posters that are

17:07:47 2    discussing these very issues.  We believe that they likely

17:07:51 3    have this document.  And as I said, once it's out, it's out,

17:07:56 4    and I'm not sure what we can do about that.  But I would ask

17:08:01 5    Your Honor in addition to the relief that Mr. Brauerman

17:08:05 6    requested to potentially bring any individuals who have

17:08:08 7    already obtain that document which was improperly filed

17:08:13 8    within the ambit of the protective order of this Court and

17:08:16 9    ordered no further dissemination of that document.

17:08:20 10             THE COURT:  I don't know that I have

17:08:21 11   jurisdiction over people on a message board.  I don't know

17:08:25 12   how you would think I could enforce that.

17:08:29 13             MR. LEVINE:  Hence the cat, Your Honor.  It is a

17:08:33 14   concern.  We can --

17:08:35 15             THE COURT:  If you have some authority that says

17:08:38 16   I can do that, I will consider it, but I don't know what --

17:08:44 17             MR. BRAUERMAN:  May I make a suggestion, Your

17:08:46 18   Honor.  Do you think you can order Mr. Rader, who is the one

17:08:49 19   who caused this to be filed publicly, to make some effort to

17:08:52 20   recover it.  He certainly represents two of the stockholders

17:08:58 21   who are participating in those message boards.  He has

17:09:01 22   contact with other stockholders, at least he's represented

17:09:04 23   that to us.  Certainly Your Honor can order him to attempt

17:09:07 24   to mitigate this.

17:09:09 25             THE COURT:  Mr. Rader is the one who broke, who

17:09:14  1   violated this Court's order, and who even though he has not

17:09:19  2   moved to have this document placed on the public record,

17:09:26  3   just decided on his own that he would continue to use the

17:09:29  4   information even though I had ordered it to be returned, so

17:09:33  5   yeah, I think it's fair that Mr. Rader be required to use

17:09:39  6   his good faith efforts to retrieve the document or ask that

17:09:45  7   it be, explain that it was not properly out there and get it

17:09:50  8   back.

17:09:52  9        MR. COHEN:  Your Honor, one other thing on the

17:09:53 10   subject of this message board.  And the individuals who are

17:09:57 11   here who are truly lovely human beings, and so this is not

17:10:04 12   -- I appreciate that.

17:10:06 13        There has been discussion in this courtroom of

17:10:07 14   the fact that those numbers which are confidential and

17:10:12 15   sealed can be found in a document that could have been

17:10:15 16   downloaded by members, by other members of the message board

17:10:19 17   even if it wasn't these individuals.  I would ask that the

17:10:22 18   Court order that anybody in this room who has heard that not

17:10:25 19   publicly disclose that fact to anybody who is not in this

17:10:28 20   room because what I would not like to have happen, and the

17:10:31 21   concern here is these numbers were in a settlement that I

17:10:35 22   understand has a confidentiality provision which would put

17:10:40 23   ChanBond in breach to the settling defendants if those

17:10:42 24   numbers become public.

17:10:45 25        THE COURT:  If you knew that people who were

17:10:48 1    members of the public were in the courtroom, why did you not

17:10:50 2    ask me to close the courtroom before you want me to impose

17:10:55 3    on members of the public an order that was something stated

17:11:00 4    in open court with no, no requirement that, you know, or no

17:11:07 5    request that they be asked to leave and we close the

17:11:12 6    courtroom for a very short period of time.

17:11:14 7                 MR. COHEN:  Your Honor, my understanding walking

17:11:17 8    into the room was that request was going to be made before

17:11:19 9    that was discussed and unfortunately it wasn't until it was

17:11:22 10   discussed.  And at that point it was --

17:11:24 11                THE COURT:  I think that you can -- the members

17:11:26 12   of the public there are things here that were not supposed

17:11:30 13   to have been made public.  You can ask them, but I am not

17:11:34 14   going to impose an order on them because there was no such

17:11:39 15   request made.  It was all done on the public record.

17:11:42 16                MR. COHEN:  I understand, Your Honor.

17:11:43 17                THE COURT:  You all have a really strange way of

17:11:46 18   explaining to me that you have highly sensitive confidential

17:11:49 19   information out there when it seems that everybody is

17:11:52 20   treating it as if it's a big fat joke.

17:11:52 21                All right.

17:11:52 22                MR. BRAUERMAN:  Your Honor, I didn't make the

17:12:02 23   statement.  I'm the one that made the statement.  I was

17:12:02 24   aware they were in here.  I said I thought on the record

17:12:02 25   that I didn't want to have to seal the courtroom.  I don't

17:12:11 1    think the fact that this e-mail was out there is necessarily

17:12:15 2    confidential, but the information --

17:12:17 3                    THE COURT:  We did not talk about the substance

17:12:20 4    of the e-mail.

17:12:21 5                    MR. BRAUERMAN:  I have been very careful not to

17:12:23 6    disclose the information that we are trying to keep private,

17:12:28 7    which is the substance of the arbitration award and the

17:12:31 8    actual numbers which are subject to the confidential order

17:12:35 9    signed by Judge Andrews in the patent case.  That's what

17:12:38 10   we're trying to protect.

17:12:40 11                   THE COURT:  Okay.  Any questions that you have

17:12:43 12   about what I ordered your co-counsel to do in terms of

17:12:48 13   trying to mitigate the damage caused by the second use of

17:12:54 14   confidential information and placing of it on the public

17:12:56 15   record?

17:12:58 16                   Questions?

17:13:00 17                   MR. WILLIAMS:  Your Honor, is this going to be a

17:13:03 18   written order from you just so we can communicate it?

17:13:06 19                   THE COURT:  No.  You have to get the transcript.

17:13:08 20                   MR. WILLIAMS:  Okay.  I don't want to sort of --

17:13:14 21   I guess I don't remember receiving a second request to

17:13:17 22   delete the e-mail which Mr. Brauerman mentioned, but I do

17:13:21 23   understand that it still governs which is why we went above

17:13:25 24   and beyond trying to go on the weekend and trying to get

17:13:28 25   this thing off the record.

17:13:29 1          THE COURT:  Just putting it on over the weekend,

17:13:34 2   I get it.  It was a mistake.  And there is a limit to how

17:13:38 3   much you can deal with that mistake over the weekend.  The

17:13:42 4   problem I have is that it was attached.  So the information

17:13:48 5   that was not supposed to be in the hands of the third

17:13:52 6   parties who are seeking to intervene or their counsel, that

17:13:56 7   information was, after I ordered it to be returned, it was

17:14:02 8   used as in attached to a declaration that was filed.  That's

17:14:07 9   my problem.

17:14:10 10          MR. WILLIAMS:  I understand, Your Honor.

17:14:10 11          The last thing I'm going to say is I have

17:14:16 12   communicated Mr. Rader about this matter, obviously, and I

17:14:19 13   don't think he was under the impression this was a hearing

17:14:23 14   to remove his pro hac vice, but, you know, I'm just letting

17:14:29 15   you know that I didn't think -- that wasn't my impression of

17:14:33 16   this hearing.

17:14:35 17          THE COURT:  It was clearly a request.  I mean,

17:14:39 18   he asked that no further action be taken without notice and

17:14:44 19   an opportunity to be heard.  I gave him that.  And he didn't

17:14:48 20   show up.  So I think that you guys can respond to whatever

17:14:52 21   law there is, but I can't help it what Mr. Rader understood

17:15:01 22   because Mr. Rader didn't bother to show you.  He asked me

17:15:04 23   for relief.  I denied the relief.  And he said okay, fine,

17:15:07 24   then I'm just not going to come.  So that's what happens.

17:15:11 25          MR. WILLIAMS:  Thank you.

17:15:11 1          THE COURT:  All right.  Anything else?

17:15:13 2          MR. BRAUERMAN:  No, Your Honor.  Thank you.

17:15:14 3          THE COURT:  Thank you.

4          (Court adjourned at 5:15 p.m.)

5

6          I hereby certify the foregoing is a true and
accurate transcript from my stenographic notes in the proceeding.

7

8                              /s/ Dale C. Hawkins
                              Official Court Reporter
9                               U.S. District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25