# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., | ) |
|        Plaintiff, | ) |
| v. | )   C.A. No. 1:21-cv-01456-MN |
| CHANBOND, LLC, DEIRDRE LEANE, and IPNAV, LLC, | ) |
|        Defendants. | ) |

**DEIRDRE LEANE AND IPNAV, LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

OF COUNSEL:

Akiva M. Cohen
Dylan M. Schmeyer
KAMERMAN, UNCYK,
    SONIKER & KLEIN P.C,
1700 Broadway, 16th Floor
New York, NY 10019
212.400.4930
acohen@kusklaw.com
dschmeyer@kusklaw.com

Dated: June 28, 2022

James H. S. Levine (Del. Bar. No. 5355)
TROUTMAN PEPPER
    HAMILTON SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
james.levine@troutman.com

*Attorneys for IPNAV, LLC and Deirdre Leane*

# Table of Contents

INTRODUCTION ..................................................................................................................2

ARGUMENT..........................................................................................................................2

    I.    CBV's Breach of Contract Claim is Time Barred ................................................2

    II.   There are No Issues of Material Fact as to the Meaning of Section 2.8 of the PPA ............2

    III.  There are No Issues of Material Fact as to the Meaning of "Paid to an Affiliate"...............2

CONCLUSION......................................................................................................................2

# Cases

*ITG Brands, LLC v. Reynolds Am., Inc.*, No. CV 2017-0129-AGB, 2019 WL 4593495
 (Del. Ch. Sept. 23, 2019) ..................................................................................................8

*Kim v. Coupang, LLC*, 2021 WL 3671136 (Del. Ch. Aug. 19, 2021) ............................................5

*Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239 (3d Cir. 2001) ................................................5

*Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, No. CVN15C08168AMLCCLD,
 2019 WL 6726836 (Del. Super. Ct. Dec. 4, 2019), *aff'd*, 247 A.3d 674 (Del. 2021)..................5

*Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445 (Del. Ch.),
 *judgment entered*, (Del. Ch. 2018). .................................................................................7

*Seidel v. Lee*, 954 F. Supp. 810 (D. Del. 1996) .............................................................................5

*Smith v. Whelan*, No. CIV.A. 11-1188-RGA, 2013 WL 3169373 (D. Del. June 21, 2013)............5

*Surgical Synergies, Inc. v. Genesee Assocs., Inc.*, 432 F.3d 870 (8th Cir. 2005)...........................8

*Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) ................................5

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004)...........................................5

**INTRODUCTION**

The vacuousness of CBV's[1] opposition to Leane Defendants' motion for judgment on the pleadings is typified by its non-denial denial that CBV expected – when signing the PPA – that ChanBond would retain and pay IPNAV as its patent monetization agent, a fact CBV expressly admitted in its Answer to Leane Defendants' Counterclaims. Faced with that admission on this motion, CBV can only play word games: "Th[at] is not what CBV said; CBV stated that it 'understood IPNAV would be compensated from ChanBond's [50%] share of Net Recoveries.'" (AB at 17 (emphasis in original)). Of course, those are the same exact thing, and CBV spills no ink attempting to explain how ChanBond "compensating IPNAV from ChanBond's share of recoveries" is different from "ChanBond paying IPNAV."

But word games are all CBV has, and therefore all its Answering Brief offers. CBV does not meaningfully engage with the facts in the parties' pleadings, the text of the relevant documents, or the applicable law. In response to Leane Defendants' showing that the breach of contract claim is time-barred, CBV cannot identify even a single relevant fact it was not expressly told more than five years before bringing its complaint. Instead, CBV hypothesizes that ChanBond's express disclosures that it had hired IPNAV were insufficient because the agreement *documenting* the terms of that retention was not executed until after those disclosures. CBV's suggestion that perhaps Ms. Leane was still negotiating with herself when she repeatedly told CBV that ChanBond had already hired IPNAV makes no sense, and is not enough to survive this Motion. But even if it were, the timing is irrelevant given the inquiry notice standard; having been told that ChanBond had retained IPNAV, CBV's failure to inquire further is fatal.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Leane Defendants' Opening Brief in support of the Motion.

Similarly, CBV's suggestion that it could not know of its breach of contract claim until it knew whether ChanBond would be paying IPNAV from ChanBond's share of recoveries or seeking to deduct the payment as a litigation expense eviscerates its breach of contract claim on the merits: if so, ChanBond's breach would be the attempt to deduct the payment, not the initial execution of the ASA. CBV is thus caught in a cleft stick of its own making: if the "breach" was the retention of IPNAV for a fee (regardless of source) without CBV's prior approval, then CBV's claim is time-barred. And if the "breach" is ChanBond's claim that the payment to IPNAV should be deductible, then merely entering into the ASA in the first instance did not breach the PPA. Either way, CBV's breach of contract claim must be dismissed.

The remainder of CBV's opposition engages in similarly meritless wordplay. For instance, CBV suggests that a provision reciting that the CIA did not *itself create* an agency relationship between IPNAV somehow disclaimed the already extant relationship between ChanBond and IPNAV that the agreement expressly disclosed. With respect to the interpretation of the PPA, CBV asks the Court to ignore the context of Section 2.8 and the words "[n]otwithstanding the above" and "paid to an Affiliate," to instead rewrite the PPA to include an anti-assignment clause it did not bargain for, and to ignore the express integration clause and disclaimer of prior representations in favor of Earl Hennenhoefer's subjective alleged understanding of different negotiations with Erich Spangenberg in connection with a prior, different deal with a different entity. Of course, and as laid out in the Opening Brief and herein, the applicable law does not allow the Court to do any such thing. The Motion should be granted.

## ARGUMENT

### I. CBV's Breach of Contract Claim is Time Barred

In their Opening Brief ("OB"), Leane Defendants established that they had specifically disclosed every fact necessary to CBV's breach of contract claim (assuming the validity of

CBV's interpretation of Section 2.8 of the PPA) in 2015: that ChanBond had hired IPNAV as its patent monetization agent, which CBV knew would involve ChanBond compensating IPNAV. (D.I. 105 at 10-12). In response, CBV does not identify a single relevant fact it was unaware of in 2015. Instead, it raises a novel defense: that none of those disclosures should count, because the ASA *documenting* that relationship wasn't executed until July of 2015.[2]

This argument is unavailing. In its answer to Leane Defendants' Counterclaims, CBV admitted that the CIA "indicates that ChanBond *had retained* IPNAV as a patent monetization agent." (D.I. 79 at 4 (emphasis added)). In CBV's own words, it was on notice since signing the PPA that ChanBond's retention of IPNAV was complete and in effect. CBV's argument that the CIA "does not create any agency or other similar relationship among the parties" is therefore irrelevant; the CIA did not need to create such a relationship, nor did it purport to. Rather, it *disclosed* a pre-existing relationship between ChanBond and IPNAV, and further described that relationship in more than sufficient detail to place CBV on actual notice of the existence of ChanBond's agreement to retain and pay IPNAV as its patent monetization agent.

Indeed, CBV has admitted to its contemporaneous awareness of the agreement between ChanBond and IPNAV: the existence of the parties to the contract (D.I. 79 at 61, "ChanBond is not IPNAV"), the agreement that IPNAV would perform services for ChanBond (D.I. 79 at 4, "ChanBond had retained IPNAV as a patent monetization agent") in exchange for consideration (D.I. 79 at 5, "IPNAV would be compensated from ChanBond's fifty percent (50%) share of Net Recoveries under the PPA"), and that the parties presumptively achieved a meeting of the minds (*id.*, "ChanBond and IPNAV were both owned and controlled by Deirdre Leane […] [t]he

---

[2] CBV also claimed, without citation, that IPNAV was not formed until July 2015. (AB at 6). That is simply false. *See* Reply Declaration of Akiva M. Cohen, Ex. 1 (Texas Secretary of State record showing a formation date of May 29, 2014).

3

separation between ChanBond [sic] was procedural"). CBV cannot now claim that it was blamelessly ignorant of the forest despite admittedly seeing every tree.

CBV's argument that the June 2015 emails predate the existence of the ASA can be similarly disposed of. The emails may predate the reduction of the ChanBond-IPNAV agreement to writing, but they emphatically post-date the agreement itself. CBV's curious argument that the emails "exhibit, at best, an 'agreement to agree'," (AB at 14),³ cannot withstand the fact that both ChanBond and IPNAV signed the CIA on April 9, 2015, which expressly stated that they were "parties to [an] agreement[] under which [] IPNAV will act as the worldwide intellectual property enforcement and licensing agent of [ChanBond]." CBV pled that ChanBond breached the PPA by "entering into" that agreement. (D.I. 6 at 7). CBV does not provide any explanation as to how ChanBond "had retained" IPNAV months prior to "entering into" an agreement to do so, and indeed, no explanation would be plausible. Because CBV's breach claim is based on ChanBond's *retention* of IPNAV, not its execution of the ASA documenting that retention,⁴ it was on actual notice in 2015.⁵

---

³ That argument is nonsensical, because Ms. Leane's emails to CBV were neither "an agreement to agree" nor themselves an enforceable contract – just further *disclosure* of the already existing agreement between IPNAV and ChanBond. *Sub rosa*, CBV is arguing that Ms. Leane was lying (and the CIA and ASA are fraudulent), and that ChanBond and IPNAV did not agree on the terms of their retention until the date the ASA documenting it was executed. But CBV pleads no facts supporting that theory beyond the date the ASA was executed, which is entirely consistent with the ASA documenting the existing agreement Ms. Leane had repeatedly disclosed and therefore insufficient to state a plausible claim, particularly where Ms. Leane was the sole decisionmaker for both ChanBond and IPNAV.

⁴ A hypothetical makes this crystal clear: what if ChanBond and IPNAV had *never* documented their agreement in writing, but both parties nevertheless acknowledged its existence and terms in 2021 after settling the patent case? Is CBV truly suggesting that Section 2.8 of the PPA applied only to written agreements, but not oral agreements? Of course not. The alleged breach was ChanBond's April 2015 retention of IPNAV, not the act of later documenting the agreement.

⁵ CBV also has no meaningful response to the disclosure of the ASA's existence in the ISA, which CBV acknowledges it received and reviewed as part of Unified's SEC filing. Shareholders (such as CBV's principals) are presumed to know the information disclosed in SEC filings (such as the

In any event, CBV's conceded inaction after being informed that ChanBond had retained IPNAV makes actual notice academic. Once CBV had notice of facts sufficient to raise a suspicion that ChanBond had breached the PPA, its admitted and total lack of inquiry precludes tolling. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001) (once a party is on inquiry notice, burden shifts to plaintiff to show an attempt to investigate); *Smith v. Whelan*, No. CIV.A. 11-1188-RGA, 2013 WL 3169373, at *3 (D. Del. June 21, 2013) (granting summary judgment where plaintiff did not inquire after being on inquiry notice), *aff'd*, 566 F. App'x 177 (3d Cir. 2014). Inquiry notice is triggered whenever a plaintiff is on notice of facts that would make a prudent person investigate a *possible* claim. *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *10 (Del. Super. Dec. 4, 2019), *aff'd*, 247 A.3d 674 (Del. 2021).[6] And accepting CBV's theory that *any* paid retention of IPNAV would be a breach of the PPA absent CBV's "prior approval," even if paid out of ChanBond's share of the proceeds, Ms. Leane's repeated disclosure that ChanBond had "hired" IPNAV would have been a giant, neon, frantically waving red flag of a potential breach to any reasonably prudent person. Under the circumstances, and even ignoring its admitted expectation that IPNAV would be

---

10Q). *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996). There is no "passing reference" exception, and that this rule finds application here in a contract case rather than a securities case is irrelevant. The law presumes CBV knew (or should have known) about the ASA's existence by November 2015 at the latest, and its claim is untimely for that reason, too.

[6] The cases cited by CBV are not remotely to the contrary. In *Kim v. Coupang, LLC*, 2021 WL 3671136 (Del. Ch. Aug. 19, 2021), the pleadings did not clearly identify an accrual date for the claim. *Id.* at *5-6. Here, in contrast, there is no dispute that CBV's claim accrued in 2015, and CBV argues only that the statute should be tolled. D.I. 123 at 12. In *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002), this Court explained that inquiry notice should only be resolved on a motion addressed to the pleadings if "the underlying facts are undisputed." *Id.* at 57. Here, there is no dispute about the underlying disclosures CBV received, only their legal impact. Finally, in *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004), the Delaware Supreme Court held that dismissal was inappropriate where "the pleaded facts permit a reasonable inference that the statute of limitations was tolled." *Id.* at 319. Here, in contrast, CBV pled *no* facts supporting any such inference.

"compensated," CBV had a clear duty to inquire about whether the retention was paid before it could claim any tolling of the statute of limitations. By its own admission in its pleadings, CBV did not do so. As such, there can be no toll, and the claim is time-barred. There is thus no factual dispute precluding resolution on the pleadings, and CBV offers no excuse at all for its inaction in April 2015, and June 2015, and August 2015, and every month thereafter until 2021.

## II. There are No Issues of Material Fact as to the Meaning of Section 2.8 of the PPA

CBV's argument that there are material issues of fact as to the meaning of Section 2.8 of the PPA is similarly meritless.[7] CBV does not dispute that Section 2.8 of the PPA defines "Net Recoveries." It does not dispute that the "[n]otwithstanding" clause is, linguistically, part of that definition and signals that the "prior approval" clause was limiting which expenses could be charged to CBV. (*See* D.I. 105 at 14 (*citing* Scalia & Garner and collecting cases)). Indeed, CBV offers *no* alternative explanation for the phrase "[n]otwithstanding the above," *no* alternative explanation for the clause's presence in the section of the contract defining Net Recoveries, and *no* alternative explanation for the provision's reference to *payments to* Affiliates – but not *agreements with* Affiliates – requiring CBV's "prior approval." Instead, CBV's sole argument is the *ipse dixit* pronouncement that its "interpretation" is "reasonable and consistent." (AB at 17-18). That is not enough, as a matter of law, to generate ambiguity. *Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 461 (Del. Ch. 2018).

And even if the language were ambiguous, CBV does not dispute its principal's testimony that CBV understood *every* clause of Section 2.8 as defining what was or wasn't

---

[7] At page 17 of its Answering Brief, CBV claims, without citation or elaboration, that "Leane Defendants previously asserted numerous other interpretations of Section 2.8, all apart from CBV's reasonable interpretation." Leane Defendants do not have the first clue as to what CBV is referring.

6

deductible in calculating Net Recoveries and that Section 2.8 prohibited only charging CBV for a share of amounts *paid to* ChanBond Affiliates, not *contracting with* ChanBond Affiliates in the first instance. (D.I. 105 at 8, 15-16). Yet CBV does not even acknowledge that testimony exists, let alone explain why it is not dispositive. Instead, CBV's only reference to Hennenhoefer's testimony about Section 2.8 is to testimony about what Hennenhoefer wanted to accomplish when he was negotiating an earlier potential transaction with Erich Spangenberg. (AB at 7, n.24).[8] And even in that testimony, Hennenhoefer made clear that the parties were negotiating a provision to limit which expenses *could be charged to CBV*, not which expenses the proposed buyer would be allowed to incur in the first instance. (*Id.* (citing testimony at 27:12-18 that Hennenhoefer "didn't want any additional expenses" and Spangenberg agreed to include a definition of which expenses would be chargeable to CBV and at 38:21-39:11 that CBV would have to approve any affiliate that would be "a cost *to us*" and that the subject of conversation was what expenses *CBV* would be responsible for ("*I would not be responsible for* any of the costs that the affiliate had …"), not whether it could incur those costs at all)).

And because that testimony exists and is admitted in the pleadings, the typical rule that ambiguity in a contract cannot be resolved at the pleadings stage has no application here. As the court explained in *ITG Brands,* the reason judgment on the pleadings is inappropriate where contract language is ambiguous is because construing ambiguous language requires parol evidence of how the parties understood the contract at the time it was made, which is generally not available at the pleading stage. *ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495, at *9 (Del. Ch. Sept. 23, 2019). Here, in contrast, the pleadings include Mr. Hennenhoefer's

---

[8] In any event, the PPA disclaimed any "understandings" based on external representations (by Spangenberg or anyone else) and contained CBV's agreement that the parties would be bound only by what the PPA "expressly provided." (D.I. 123-1, § 8.10).

7

deposition testimony expressly conceding that when CBV executed the PPA, it *in fact did not* understand Section 2.8 as having the meaning it is now asserting for purposes of litigation. (D.I. 105 at 15-16). That concession as to what CBV expected and understood when it signed the PPA is outcome determinative, and CBV therefore cannot identify any conceivable evidence that would be sufficient to allow any other interpretation of the supposed "ambiguity." In the rare circumstances where the dispositive extrinsic evidence is included in the pleadings and unquestionably authentic, the Court may grant a judgment on the basis of that evidence without need for further proceedings. *See, e.g., Surgical Synergies, Inc. v. Genesee Assocs., Inc.*, 432 F.3d 870, 875 (8th Cir. 2005) (affirming grant of judgment on the pleadings where extrinsic evidence conclusively resolved any ambiguity). The motion should be granted for this reason, as well.

### III. There are No Issues of Material Fact as to the Meaning of "Paid to an Affiliate"

There is likewise no basis to deny judgment on the pleadings that a payment to IPNAV, which is not an Affiliate of ChanBond, would not be within the scope of Section 2.8 regardless, and that ChanBond may deduct it in calculating Net Recoveries. CBV concedes ChanBond and IPNAV are not currently "Affiliates" under the definition included in the PPA, but argues the Court should simply ignore that because applying the plain language would "eliminate the entire purpose behind Section 2.8" and "create absurd results." (AB at 19.) Not so.

The "purpose behind Section 2.8" was to prevent "Hollywood accounting" by which ChanBond might siphon off a larger share of the recoveries than it would otherwise be entitled to by paying "expenses" that were really self-payments. It did nothing at all to prevent ChanBond from paying expenses that decreased both ChanBond's and CBV's recoveries in equal proportions if ChanBond believed such expenses were warranted for purposes of the enforcement campaign. (*See* Hen. Tr. 175:19-177:20 (acknowledging that the prior approval

8

right would not apply to ChanBond paying an unaffiliated monetization advisor)). Indeed, Hennenhoefer conceded CBV had agreed to delete a provision that previously limited such expenses to those CBV agreed were necessary, and that the retention of a third-party monetization agent would not have triggered Section 2.8. (*Id.*). When Unified purchased ChanBond from Ms. Leane in an arms'-length transaction and thereby agreed to take on ChanBond's obligation to pay the 22% advisory fee, the payment due to IPNAV became no different than a payment due to any other unaffiliated monetization agent – one that decreased ChanBond's own share of the recoveries, and therefore one for which CBV had agreed its prior approval was not necessary before that expense could be deducted from Net Recoveries. That CBV now wishes it had negotiated different terms – whether a broader approval right directed at "contracts with Affiliates" (or "Affiliate Transactions") rather than "amounts paid to Affiliates," or a change-of-control clause to prevent ChanBond from disaffiliating from IPNAV – is irrelevant; CBV, which was represented by excellent counsel when it negotiated the PPA, is bound by the contract it *actually* signed, not the one it now pretends it had.

In fact, CBV concedes as much when it imagines a parade of horribles in which ChanBond structured a contract with an Affiliate to cut CBV out of any revenue and "then collect all funds for *themselves*." (AB at 19 (emphasis added)). But that is exactly the point: if ChanBond and the imagined third-party entity were truly disaffiliated (as ChanBond and IPNAV are), then ChanBond and its owner would not be collecting *any* funds owed to that entity "for themselves." The benefit of CBV's bargain was that it would be on equal footing with ChanBond, and it remains on equal footing with ChanBond. Indeed, in CBV's hypothetical no true third-party would ever purchase ChanBond and leave itself in a position to "receive [the same] *nothing*" as CBV. Having not negotiated a change-of-control clause to prevent Ms. Leane

9

from selling ChanBond and retaining IPNAV, CBV assumed the risk that a third party would be willing to purchase ChanBond, rendering the IPNAV fee payable to a non-Affiliate (and therefore deductible by ChanBond in calculating Net Recoveries). Indeed, Mr. Hennenhoefer testified as much. Hen. Tr. at 217:21-218:17 (agreement allowed IPNAV to disaffiliate from ChanBond). CBV's seller's remorse does not make that business decision "absurd."

## CONCLUSION

In sum, CBV was aware when it executed the PPA that ChanBond would be retaining IPNAV as its agent, for a fee, (D.I. 79, ¶ 5), aware when it executed the PPA that ChanBond and IPNAV might not be Affiliates when the patent litigation produced a recovery, Hen. Tr. at 217:21-218:17, and executed a contract that only provided it with an approval right for amounts actually "paid to an Affiliate" before ChanBond could deduct such amounts from Net Recoveries. (D.I. 49-1, § 2.8). CBV obtained a significant recovery thanks to its sale of the patents and the work put in by ChanBond and IPNAV, on patents that it had been unable to generate *any* interest in before obtaining Ms. Leane's expertise and efforts.[9] That CBV now wants a greater recovery than its contract entitles it to is no basis to judicially rewrite the deal it freely signed, and it will have to live with its agreements. For this reason, too, Leane Defendants are entitled to judgment on the pleadings.

---

[9] CBV continues to assert, based on its own ignorance and without citation, that IPNAV did "minimal" work, if any. (AB at 19). That claim is utterly irrelevant to the relevant agreements, and therefore this motion. It is also flatly wrong, as Leane Defendants proved in the Arbitration when ChanBond unsuccessfully attempted the same denigration of their significant work.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| OF COUNSEL:<br>Akiva M. Cohen<br>Dylan M. Schmeyer<br>KAMERMAN, UNCYK,<br>   SONIKER & KLEIN P.C,<br>1700 Broadway, 16th Floor<br>New York, NY 10019<br>212.400.4930<br>acohen@kusklaw.com<br>dschmeyer@kusklaw.com | */s/ James H. S. Levine*<br>James H. S. Levine (DE No. 5355)<br>TROUTMAN PEPPER<br>   HAMILTON SANDERS LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, DE  19899-1709<br>302.777.6500<br>james.levine@troutman.com |
| Dated: June 28, 2022 | *Attorneys for IPNAV, LLC and Deirdre Leane* |