**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CBV, INC.,

      *Plaintiff/Counterclaim-
      Defendant,*

  *v.*

CHANBOND, LLC,

      *Defendant/Crossclaim-
      Defendant,*

  and

DEIRDRE LEANE, and IPNAV, LLC,

      *Defendants/Counterclaim-
      Plaintiffs/Crossclaim-
      Plaintiffs.*

C.A. No. 1:21-cv-01456-MN

**PUBLIC VERSION**

**PLAINTIFF CBV INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEIRDRE LEANE AND IPNAV, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**BUCHANAN, INGERSOLL & ROONEY PC**

Dated: June 21, 2022

Geoffrey G. Grivner (#4711)
Kody M. Sparks (#6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-3036
(302) 552-4200
geoffrey.grivner@bipc.com
kody.sparks@bipc.com

\*    \*    \*

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727
(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

    Leane Defendants' Motion Fails As A Misguided, Factually Incorrect Attempt To Divert
    Settlement Funds From CBV ............................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS .......................................................................... 3

STATEMENT OF FACTS ......................................................................................................... 4

    A.   CBV Enters the PPA ................................................................................................. 4

        1.   PPA Section 2.8 ............................................................................................ 6

        2.   PPA Section 3.3.2 ......................................................................................... 8

        3.   PPA Section 8.10 .......................................................................................... 8

        4.   The Common Interest Agreement (CIA) ...................................................... 8

        5.   The "PPA Amendment" ................................................................................ 9

    B.   The Patent Suits and Settlement ............................................................................... 9

    C.   The Advisory Services Agreement (ASA) ................................................................ 9

ARGUMENT ............................................................................................................................ 10

       I.   Standard of Law ....................................................................................... 10

       II.   The ASA Is Unenforceable and in Breach of Section 2.8 of the PPA ............... 11

       III.   CBV's Claims Are Not Time-Barred ................................................................ 12

    A.   The Pre-ASA CIA Did Not Apprise CBV of the Facts Giving Rise to Its Breach of
    Contract Cause of Action ........................................................................................ 12

    B.   The Pre-ASA Emails Did Not Apprise CBV of Facts Giving Rise to Its Breach of
    Contract Cause of Action ........................................................................................ 13

    C.   Unified's Form 10-Q Did Not Apprise CBV of Facts Giving Rise to Its Breach of
    Contract Cause of Action and Leane Defendants' Cited Cases Are Inapposite .................. 15

       IV.   Issues of Material Fact Regarding the Parties' Intentions Behind Section 2.8 of
       the PPA Render Judgment on the Pleadings Inappropriate .......................................... 17

       V.   Because ChanBond and IPNAV Were Affiliates at the Time of the ASA, the
       ASA Is An Affiliate Transaction ..................................................................... 18

CONCLUSION .......................................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Cases**

*AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656 (D. Del. 2017)................................ 19

*Cantor v. Perelman,* 414 F.3d 430 (3d Cir. 2005)........................................................ 12

*Cardio–Medical Associates, Ltd. v. Crozer–Chester Med. Ctr.*, 536 F.Supp. 1065
 (E.D.Pa.1982)......................................................................................................... 10

*Davis v. 24 Hour Fitness Worldwide, Inc.*, 2014 WL 4955502 (D. Del. Sept. 30, 2014) ........... 12

*Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466 (3d Cir. 2019) ................................ 17

*Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, 2013 WL 3215704
 (Del. Ch. June 26, 2013) ........................................................................................ 17

*ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495 (Del. Ch. Sept. 23, 2019) ............. 17

*Kim v. Coupang, LLC*, 2021 WL 3671136 (Del. Ch. Aug. 19, 2021) .................................... 12, 13

*Marvani S.p.A. v. Keehan*, 900 F.Supp.2d 377 (D. Del. 2012)...................................................... 12

*Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2021 WL 2036672 (D. Del. May 21, 2021) ...... 14

*Paoli v. Delaware*, 2008 WL 11515292 (D. Del. Jan. 25, 2008) ................................................... 1

*Petra Mezzanine Fund, L.P. v. Willis*, 2012 WL 5382944 (D. Del. Nov. 1, 2012)...................... 14

*Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008 ............................................................... 11

*Seidel v. Lee*, 954 F. Supp. 810 (D. Del. 1996) ........................................................................... 15

*Shockley v. Minner*, 726 F.Supp.2d 368 (D. Del. 2011) ............................................................. 12

*Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) .............................. 12

*Turbe v. Government of the Virgin Islands*, 938 F.2d 427 (3d Cir.1991)...................................... 10

*Walker v. W. Michigan Nat. Bank & Tr.*, 324 F. Supp. 2d 529 (D. Del. 2004)...................... 15, 16

*Wal–Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004) ................................. 12, 13

*Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*,
 894 F.3d 509 (3d Cir. 2018)........................................................................................ 17

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187 (3d Cir. 2019) ......... 1, 10

## INTRODUCTION

The Motion for Judgment on the Pleadings (the "Motion") pursuant Rule 12(c) filed by Defendants Deirdre Leane ("Leane") and IPNAV, LLC ("IPNAV"), collectively referred to herein as "Leane Defendants," must be denied because it relies upon factual assertions that are in clear contrast to any reasonable review of the record in this case, particularly when the record is reviewed in a requisite light most favorable to Plaintiff CBV, Inc. ("CBV"). At best, even if such factual assertions are attributed any credibility, they constitute material facts in dispute which require denial of the Motion pursuant the same legal standard that would apply to a Rule 12(b)(6) motion for failure to state a claim. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).  The Court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party, and should only grant the motion if the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id*.

**Leane Defendants' Motion Fails As A Misguided, Factually Incorrect Attempt To Divert Settlement Funds From CBV**

1.   Leane Defendants' Motion relies on strained factual interpretations[1] and re-hashes unsubstantiated arguments from their opposition [D.I. 48-51] to CBV's Motion for Preliminary Injunction [D.I. 18-19], which is fully briefed and ripe for hearing and decision by the Court.[2] The  Motion demonstrates bad faith with respect to CBV's rights under the Patent Purchase

---

[1] CBV has repeatedly been kept in the dark as to the full distortion of material facts by Leane Defendants.  For example, CBV only obtained documents and deposition and hearing transcripts from a prior Arbitration involving Leane Defendants and Defendant ChanBond on March 31, 2022, April 1, 2022, and April 7, 2022.

[2] Should the Court grant CBV's Motion for Preliminary Injunction, Leane Defendants' Motion for Judgment on the Pleadings must be denied. *See Paoli v. Delaware*, 2008 WL 11515292, at *1 (D. Del. Jan. 25, 2008) ("[T]he plaintiff must meet a higher burden to succeed on a motion for preliminary injunction than to defeat a motion for judgment on the pleadings.")

Agreement (PPA) because it clarifies Leane's plan to: (1) create a scheme by which she would receive $5 million from a sale to ChanBond after little or no contribution to ChanBond's success; (2) then, without CBV's knowledge or consent, breach the PPA by unilaterally executing both sides of a self-interested agreement between Affiliates ChanBond and Leane's consulting entity IPNAV, both of which Leane controlled; and (3) attempt to significantly deplete CBV's recoveries and completely erode CBV's benefit of the bargain under the PPA.

2. Leane Defendants' Motion relies on an unsubstantiated assertion that CBV's action is time-barred, and in so doing demonstrates Leane's misguided attempt to cover up her bad faith avoidance of discovery, and scrutiny of CBV's rights under the PPA. Leane Defendants' Motion is premised on an unsubstantiated argument that CBV's claims regarding unenforceability of the secret ASA are time-barred because CBV knew or should have known of the ASA's purpose and content based upon irrelevant facts, and based upon documents which *pre-date the ASA* and which to CBV's knowledge bear no relationship to the ASA. CBV did not know, nor should it have known, of its claims arising out of the ASA.

3. Leane Defendants' Motion recognizes the likely failure of their time bar argument, and alternatively asserts two interpretations that the PPA does not restrict their recovery under the ASA:

(a) First, Leane Defendants would have this Court ignore the plain and clear wording of PPA Section 2.8, which affords CBV as "Seller" a required consent right for "prior approval" of an "Affiliate of Purchaser" as a guard against potential fraudulent inside transactions by Purchaser. Section 2.8 reads in relevant part: "[n]otwithstanding the above, *any cost or expense which is paid to an Affiliate of Purchaser or to a stakeholder of Purchaser shall require the* <u>*prior approval*</u> *of Seller*" (italics and underlining added). Leane Defendants disingenuously characterize Section 2.8 as a "distribution guideline" for dictating whether payment to Leane Defendants would occur

before, or after, CBV's recovery. This interpretation of the PPA makes no business sense and fails to pass any test of simple logic, as it upends the plain terms of Section 2.8 and contradicts the understanding of CBV as demonstrated by Earl Hennenhoefer's deposition testimony.  At the very least, Leane Defendants' first interpretation of Section 2.8 demonstrates ambiguity and renders any judgment on the pleadings inappropriate.

(b) Second, Leane Defendants proffer an alternative interpretation of the PPA which is more absurd than the first as regards the timing of when an entity should be considered an "Affiliate" that requires CBV approval. Leane Defendants assert that they are not *now* "Affiliates," while recognizing that they were indisputably and admittedly Affiliates at the time the ASA was unilaterally executed. This second interpretation contorts the purpose of Section 2.8 and completely erodes that Section's effectiveness. As with the first interpretation, it sets forth such a strained and illogical interpretation of the PPA that it tacitly acknowledges judgment on the pleadings is inappropriate.

The numerous issues of material fact presented by the very strained and illogical positons proposed by Leane Defendants require that their Motion be denied.

## NATURE AND STAGE OF PROCEEDINGS

October 15, 2021 - CBV files its complaint against ChanBond in this Court for specific performance, breach of contract, declaratory judgment, and injunctive relief [D.I. 2].

December 6, 2021 - CBV files its First Amended Complaint [D.I. 6] (the "Amended Complaint").

January 27, 2022 - ChanBond answers CBV's Amended Complaint [D.I. 11] (the "ChanBond Answer").

March 15, 2022 - CBV files a motion for temporary restraining order, preliminary injunction, and for expedited discovery [D.I. 18] and opening brief in support thereof [D.I. 19].

March 16, 2022 - The parties stipulate Leane Defendants' intervention into this action [D.I. 25, 28].

March 17, 2022 - CBV withdraws its motion for temporary restraining order because the parties agree to a stipulated temporary restraining order during the pendency of CBV's motion for preliminary injunction [D.I. 30, 31, 32, 33].

March 23, 2022 - Leane Defendants file their answer to the Amended Complaint (hereinafter, "Leane Defendants' Answer"), Crossclaim against ChanBond for confirmation of the Interim Award,[3] and Counterclaim against CBV for declaratory judgment and unjust enrichment (in the alternative) [D.I. 41].

March 31, 2022 - Leane Defendants and ChanBond file their respective answering briefs in opposition to CBV's motion for preliminary injunction [D.I. 48-51, 54].

April 7, 2022 - CBV files its reply brief in support of its motion for preliminary instruction [D.I. 65], which is currently pending and ready to be heard by this Court.

## STATEMENT OF FACTS

### A.      CBV Enters the PPA

Pre-2014: Plaintiff CBV, Inc. owns certain U.S. Patents and U.S. Patent Applications (the "Patents") naming inventors Earl Hennenhoefer, Richard Snyder, and Robert Stine, and covering a standard for Data Over Cable Service Interface Specification (DOCSIS) technology for efficient delivery of high-speed video data over cable systems. (Am. Compl. ¶ 25.)

2014: CBV negotiates a relationship for monetizing the Patents with IP Navigation Group's[4] founder, Erich Spangenberg.  Mr. Spangenberg makes clear he will demand ownership

---

[3] The Interim Award is cited and incorporated by reference in the pleadings, specifically, Leane Defendants' Cross-Claim for Confirmation of Arbitration Award [D.I. 41]. As such, the Interim Award may be considered at this stage on judgment on the pleadings.

[4] IP Navigation being a different entity than Defendant IPNAV.

of the CBV Patents. (Am. Compl. ¶ 29.) Mr. Spangenberg proposes an agreement in which (i) CBV provides the Patents, (ii) IP Navigation, or a newly formed shell company, provides the financing, (iii) legal costs are divided between the parties, (iv) both parties share the remaining revenue, and (v) any up-front money paid by IP Navigation will be paid back double. (*Id*. at ¶ 30.) Ultimately CBV and IP Navigation agree that CBV will sell its Patents to IP Navigation in exchange for a $1.5 million threshold payment and 50% of the Net Recoveries of any monetization. (*Id*. at ¶ 31.) However, upon information and belief, Billy Carter of IP Navigation who was to provide the financing for monetization of the Patents could not provide the financial backing. (*Id*. at ¶ 32.) CBV was informed that Leane could make the deal happen for IP Navigation and that the resulting patent lawsuits would be filed within one month. (*Id*. at ¶ 35.) ChanBond was formed by Leane and designated as a shell company Purchaser that would be named in the lawsuits to enforce the Patents. (*Id*. at ¶¶ 32-33.)

In the fall of 2014, Spangenberg informs CBV that he is retiring and turning his patent monetization business over to Leane. (*Id*. at ¶ 33.) Leane, through her newly formed shell entity ChanBond, is to be party to the agreement with CBV. (*Id*. at ¶¶ 32-33.) The agreement is to be essentially the same as agreed upon with Spangenberg, but will not include any upfront money from ChanBond. (*Id*. at ¶ 33.)

April 9, 2015: CBV signs the PPA with ChanBond, attached hereto as Exhibit A. Leane, as ChanBond's manager, executes the PPA on behalf of ChanBond whereby CBV ("Seller") and ChanBond ("Purchaser") agree that ChanBond will purchase the Patents from CBV in order to monetize those Patents through patent litigation. (Ex. A; Am. Compl. ¶ 36.) In exchange, CBV is to receive a right to a $1 million threshold payment and 50% of the Net Recoveries from the litigation involving the Patents. (*Id*.)

July 2015: IPNAV, a company separate from Spangenberg's IP Navigation, is formed as a

Texas limited liability company managed by Leane as its sole member. (Am. Compl. ¶ 21.) Leane executes both sides of an improper Advisory Services Agreement (ASA), an "Affiliate" transaction between ChanBond and IPNAV without CBV's approval, in breach of the PPA, and backdates the ASA to the execution date of the PPA (i.e., April 9, 2015). (*Id*. at ¶¶ 47-48.)

October 27, 2015:  Leane sells her membership interests in ChanBond to Unified Online, Inc. ("Unified") only six months after entry into the PPA for $5M and shares of Unified via an Interest Sale Agreement ("ISA"). (*Id*. at ¶¶ 50-52, 119, 139.) After the ISA, William "Billy" Carter, Unified's current Chief Executive Officer, becomes ChanBond's manager. (*Id*. at 19, 24, 52, 119, 139; ChanBond Ans. ¶¶ 23-24, 52, 119, 139.)

### 1.    PPA Section 2.8

Section 2.8 of the PPA requires that ChanBond receive "the prior approval of [CBV]" for any cost or expense which is paid to an Affiliate of [ChanBond]." (Ex. A at Sec. 2.8 (underlining added).) That Section reads, in full:

> "Net Recoveries" shall mean the total aggregate Gross Recoveries less the total aggregate amount of costs and expenses incurred by or on behalf of Purchaser in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and other reasonable costs and expenses related to the maintenance, prosecution, enforcement, and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents Notwithstanding the above, *any cost or expense which is paid to an Affiliate of Purchaser or to a stakeholder of Purchaser shall require the prior approval of Seller, such approval to not be unreasonably withheld.*

(Ex. A at Sec. 2.8 (italics and underlining added).) Section 2.8 of the PPA was of vital importance to the CBV principals, who understood that it provided them a consent right with respect to ChanBond transactions with ChanBond "Affiliates." (*See* Hennehoefer Transcript at 27:12-18 ("My concern was we have a contract which depends on what the profit is after all expenses. And

I didn't want any additional expenses including (sic). And Erich agreed, he said, you know, we define the expenses and they can't have anything of this size, so this all came out with no other expenses added on."); 38:3-6 ("[W]e were very concerned on how the money was going to be split up and we didn't want to have somebody else getting part of the money that was not legitimately part of the contract."); 38:21-39:11 ("Yeah. As far as I was concerned, we still had -- had to approve anybody who was affiliated or stakeholder, being a consultant, or any -- any involvement or cost to us. You know, pretty close to Day 1, Erich sent me a letter defining that I would not be responsible for any of the costs that the affiliate had, like overhead, travel, and so forth. 54:3-13 ("Q. So when you mentioned that the 22 percent would have been a killer, what did you mean by that? A. Well, they're -- you know, they're already getting 50 percent of the net recoveries and then to put a 22 percent for gross recoveries on top of that, that would not make any sense to anybody. So that's -- that would have been a deal killer and I could not ever sell that to my partners, let alone to myself, but, you know, my partners wouldn't have agreed to it either."))

The PPA defines "Affiliate" as, "with respect to any Person, any Entity in any country that controls, is controlled by or is under common control with such Person." (Ex. A at Sec. 2.1.) The term "Control" is defined as "possession directly or indirectly of the power to direct or cause the direction of the management and policies of an Entity, whether through the ownership of voting securities, by trust, management agreement, contract or otherwise; provided, however, that beneficial ownership of more than fifty percent (50%) of the voting equity interests of an Entity shall be deemed to be control." (*Id*.) At the time of entry into the PPA and the later executed ASA, ChanBond and IPNAV are "Affiliates" under the PPA because they were under the common control of Leane, as admitted by Leane Defendants in their Answer to CBV's Amended Complaint. (*See* Leane Defs' Answer ¶¶ 54, 78 (admitting that "ChanBond and IPNAV were affiliates as defined by the PPA at the times that ChanBond and IPNAV agreed to and executed the ASA.").)

### 2.     PPA Section 3.3.2

Under Section 3.3.2 of the PPA, CBV is entitled to a portion of any recoveries from the Patent Suits. (Ex. A at Sec. 3.3.2; Am. Compl. ¶¶ 36, 63-64.) Under Section 3.3.2 of the PPA, CBV is entitled to 100% of Net Recoveries (as defined in the PPA) from the Patent Suits up to one million dollars ($1,000,000).

After the one million dollar threshold, CBV is entitled to fifty percent (50%) of all Net Recoveries actually received and collected by ChanBond, to be paid "within thirty (30) calendar days after each applicable calendar quarter, commencing with the first calendar quarter following the Closing Date until the expiration of the Patent." (*Id*.)

### 3.     PPA Section 8.10

The PPA also includes an integration clause in Section 8.10 which reads, in relevant part:

> This Agreement, including its exhibits, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and *merges and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions including, for the avoidance of doubt, the Previous PPAs*. . . . No oral explanation or oral information by either Party hereto will alter the meaning or interpretation of this Agreement. No amendments or modifications will be effective unless in writing and signed by authorized representatives of both Parties.

(Ex. A at Sec. 8.10 (emphasis added).)

### 4.     The Common Interest Agreement (CIA)

ChanBond and IPNAV execute a Common Interest Agreement (the "CIA") on April 9, 2015, referencing IPNAV's common interest with ChanBond in monetizing the Patents, but making clear IPNAV is not an agent of ChanBond. (*See Id*. at Exhibit C.) The CIA is executed contemporaneously with the PPA and months before the Advisory Services Agreement, described *infra*. (*Id*.; Interim Award ¶ 5.) The CIA, appended to the PPA as Exhibit C, makes clear in Section 4.1 that "[t]his agreement *does not create any agency or similar relationship among the parties*." (Ex. A at Exhibit C.)

5.      **The "PPA Amendment"**

In August of 2015, ChanBond, through its then-manager, Leane, induced CBV and ChanBond to execute an Amendment to the PPA (the "PPA Amendment"), attached hereto as Exhibit B, which revokes CBV's ability to have the Patents returned to them, as per the original PPA. The remaining terms of the PPA remain unchanged by the PPA Amendment.

**B.      The Patent Suits and Settlement**

After executing the PPA, ChanBond initiates various patent infringement suits (the "Patent Suits") to be filed on September 21, 2015 in the United States District Court for the District of Delaware. (Am. Compl. ¶¶ 39-42.) On July 12, 2021, Judge Andrews enters a Joint Stipulation and Order for dismissal of the Patent Suits with prejudice as a result of the parties agreement to "settle, adjust and compromise all claims" in the Patent Suits. (*Id.* at ¶ 45.) The Patent Suits settle ███████████. (*Id.*; *see also* Interim Award ¶ 5.)

**C.      The Advisory Services Agreement (ASA)**

In the preliminary negotiations regarding monetization of the Patents, various structures were discussed, but ultimately, Mr. Spangenberg requires ownership of the Patents. (Am. Compl. ¶ 46.) CBV and IP Navigation never agree to any consultancy-type relationship with IP Navigation or IPNAV. (*Id.*)

Nevertheless, in July 2015, Ms. Leane asked IP Navigation's in-house counsel to review a draft ASA, back-dated to reflect that it had been in effect since April of 2015 contemporaneous with the PPA (despite that it was not). (*Id.* at ¶ 47; Leane Defs' Ans. ¶¶ 144, 164.) On or about July 28, 2015, Ms. Leane improperly executes the ASA on behalf of both ChanBond and IPNAV, and dates it as of April 9, 2015. (Am. Compl. ¶ 47.) A true and correct copy of the purported ASA is attached hereto as Exhibit C. Pursuant to the unenforceable, unilaterally executed ASA, IPNAV is to receive 22% of any Gross Recovery obtained by ChanBond on the Patents, despite that: (1)

Leane's ChanBond already receives a 50% interest in any Net Recoveries, and (2) the parties to the PPA, in particular CBV as "Seller", never consented to or approved such an illogical arrangement between ChanBond and IPNAV. (Ex. C; Am. Compl. ¶ 47.)

CBV was never informed of the ASA purpose and content. (Am. Compl. ¶ 48; Leane Defs' Answer ¶¶ 143, 163; Hennenhoefer Trans. at 60:14-22 ("No. No we never gave any [consent] nor we were (sic) ever informed about the ASA. I didn't know anything about that. . . I am saying I did not consent to any 22 percent of the gross proceeds, not did I even know about this ASA until, I think, 2020.").) Rather, CBV learned of the unenforceable, unilateral ASA through an arbitration filed by Ms. Leane against Unified and ChanBond in 2020, AAA Case No. 01-20-0015-0793 (the "Arbitration"). (Am. Compl. ¶ 48; Hennenhoefer Trans. at 60:20-22.)

## ARGUMENT

### I.    Standard of Law

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard that would apply to a Rule 12(b)(6) motion for failure to state a claim. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). The Court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party, and should only grant the motion if the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id*.  "The motion can be granted only if no relief could be afforded under any set of facts that could be provided." *Ingiosi v. NCO Fin. Sys., Inc.*, 61 F. Supp. 3d 401, 402 (D. Del. 2014) (citing *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991) and *Cardio–Medical Associates, Ltd. v. Crozer–Chester Med. Ctr.*, 536 F.Supp. 1065, 1072 (E.D.Pa.1982)).

Leane Defendants are not entitled to judgment as a matter of law because numerous, significant material facts, that they allege to be true, are in dispute, when viewing the facts

presented in the pleadings and the inferences drawn from them in the light most favorable to CBV. Because Leane Defendants have not "clearly establish[ed] that no material issue of fact remains to be resolved," they are not entitled to judgment as a matter of law and judgment on the pleadings is inappropriate at this stage. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008) (internal citation and quotation marks omitted).

Leane Defendants' Motion is a bad faith attempt to divert attention from an inappropriate Affiliate transaction entered unilaterally by Leane to divert Settlement Funds from CBV to Leane and IPNAV.

## II.      The ASA Is Unenforceable and in Breach of Section 2.8 of the PPA

Leane Defendants assert that judgment on the pleadings is appropriate because the "language [of Section 2.8 of the PPA] is unambiguous" and "did not bar ChanBond from contracting with IPNAV." (Leane Defs' Op. Br. at 12.) However, Leane Defendants' interpretation of the PPA strains logic in order to reach a result that improperly benefits Leane Defendants. At a minimum, the strained interpretations of the PPA proffered by Leane Defendants create material issues of fact with respect to the PPA generally, and Section 2.8 of the PPA specifically, such that judgment on the pleadings is inappropriate at this stage. *See Rosenau*, 539 F.3d at 223.

PPA Section 2.8 reads, in relevant part: "Notwithstanding the above, any cost o[r] expense which is paid to an Affiliate of Purchaser or to a stakeholder of Purchaser shall require <u>the prior approval of Seller</u> [CBV], such approval to not be unreasonably withheld." (Ex. A at Sec. 2.8 (underlining added).) It is undisputed that:

(1) The ASA was executed in July 2015 by Leane on behalf of both IPNAV and ChanBond and backdated to April 9, 2015; (*See* Leane Defs' Answer ¶¶ 144, 164.)

(2) ChanBond and IPNAV were "Affiliates," as defined in the PPA, at the execution of the ASA; (*Id.* at ¶¶ 54, 78.) and

(3) CBV's approval of the ASA or the terms contained therein, which were unilaterally determined by Leane, who stood on both sides of the transaction, was never sought nor obtained. (*Id.* at ¶¶ 143, 163)

11

These facts, when compared to the requirements of the PPA, demonstrate that CBV has established that the ASA breaches the PPA and is unenforceable.

## III.   CBV's Claims Are Not Time-Barred

Leane Defendants assert that "CBV's breach of contract claims accrued (if at all) in 2015, and the claims are therefore time-barred." (Leane Defs' Op. Br. at 2, 9-12.) However, CBV did not know, nor should it have known, of ChanBond's breach of the PPA by Leane until 2020. (Am. Compl. ¶ 48; Hennenhoefer Trans. at 60:14-22.) Therefore, CBV's claims cannot be not time-barred.

While "the statute of limitations begins to run when the plaintiff's cause of action accrues," *Shockley v. Minner*, 726 F.Supp.2d 368, 375 (D. Del. 2011), "the statute of limitations will be tolled until a plaintiff knew or should have known of the breach." *Davis v. 24 Hour Fitness Worldwide, Inc.*, 2014 WL 4955502, at *3 (D. Del. Sept. 30, 2014) (citing *Marvani S.p.A. v. Keehan*, 900 F.Supp.2d 377, 395 (D. Del. 2012)). "[T]he statute will begin to run only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal–Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (internal quotation marks omitted). Statute of limitations determinations, and determinations regarding inquiry notice, are fact-intensive and not appropriate for resolution on the pleadings. *Kim v. Coupang, LLC*, 2021 WL 3671136, at *6 (Del. Ch. Aug. 19, 2021) (citing *Wal-Mart Stores, Inc.*, 860 A.2d at 320); *see also Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 57 (D. Del. 2002); *Norman v. Elkin*, 726 F. Supp. 2d 464, 470 (D. Del. 2010) (citing *Cantor v. Perelman*, 414 F.3d 430, 441 (3d Cir.2005)).

## A.   The Pre-ASA CIA Did Not Apprise CBV of the Facts Giving Rise to Its Breach of Contract Cause of Action

Leane Defendants assert that CBV knew or should have known that the ASA existed

because of the CIA executed contemporaneously with the PPA on April 9, 2015. (Leane Defs' Op. Br. at 10-11.) This argument is unavailing because the CIA was executed on April 9, 2015, (Ex. A at Exhibit C.) months prior to the back-dated ASA, merely to establish a common interest among ChanBond and IPNAV (e.g., to protect the sharing of information pursuant the attorney-client privilege). Leane Defendants admit that the ASA was not executed until on or about July 28, 2015, (Leane Defendants' Answer ¶¶ 144, 164.) such that there is no way that CBV could have known, nor should it have known, on April 9, 2015, of an ASA contract executed three months later (i.e., on or about July 28, 2015).

Second, the CIA merely establishes a common interest of ChanBond and IPNAV to monetize the Patents, and confirms in Section 4.1 that "[t]his agreement *does not create any agency or similar relationship among the parties*." (Ex. A at Exhibit C.) The CIA was entered into months before the ASA, and did not create any relationship between IPNAV and ChanBond, such that CBV could not have known of CBV's claims arising from the later executed, unenforceable ASA.

CBV did not know, nor should it have known, of the facts giving rise to its claims here, until 2020 at the earliest. In any event, Leane Defendants' arguments regarding CBV's knowledge or inquiry notice of the facts giving rise to its claims are fact-driven and not appropriate for resolution at this stage. *See Kim*, 2021 WL 3671136, at *6 (citing *Wal-Mart Stores, Inc.*, 860 A.2d at 320).

**B.    The Pre-ASA Emails Did Not Apprise CBV of Facts Giving Rise to Its Breach of Contract Cause of Action**

Leane Defendants assert that CBV knew or should have known of the ASA and its breach of contract claims arising therefrom because of certain pre-ASA communications between Leane and CBV. (Leane Defs' Op. Br. at 11.) These arguments suffer a similar fate to those regarding the CIA.

Leane Defendants cite to certain June 2015 emails to assert that CBV knew or should have

known of the ASA. (*Id*. at 11 (citing D.I. 41-1, 41-2).) The first is an email dated June 14, 2015 from Deirdre Leane to Patrick Keane, with others copied. (*See* D.I. 41-1.) The second is an email dated June 18, 2015 from Deirdre Leane to Earl Hennenhoefer among others. (*See* D.I. 41-2.) As with the CIA, each of these emails *pre-dates the ASA* by over a month. (*See* D.I. 41-1, 41-2.) As such, these emails simply could not provide any notice to CBV of an agreement that *did not yet exist*. In addition, none of these emails exhibit any sort of contract or agreement amongst the relevant parties. Notably, these emails are missing material terms (such as, *inter alia*, IPNAV's services to be provided, consideration to be paid by ChanBond, etc.) required for formation of a contract. *Petra Mezzanine Fund, L.P. v. Willis*, 2012 WL 5382944, at *2 (D. Del. Nov. 1, 2012) ("[T]he terms of a contract are reasonably certain if they provide a basis for determining the existence of breach and for giving an appropriate remedy." (quoting *Echols v. Pelullo,* 377 F.3d 272, 277 (3d Cir.2004)). These emails exhibit, at best, an "agreement to agree," which is unenforceable under Delaware law. *Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2021 WL 2036672, at *2 (D. Del. May 21, 2021) ("Courts applying Delaware law are averse to enforcing agreements to agree.  Agreements to agree in  the  future  without any reasonably objective controlling standards are unenforceable." (internal citation and quotations omitted)). No relationship between ChanBond and IPNAV existed until Leane's unilateral execution of the ASA for both ChanBond and IPNAV over a month later in July of 2015. (Leane Defs' Answer ¶¶ 144, 164.)

Leane Defendants admit that Leane, as ChanBond's manager at the relevant time, did not seek CBV's approval of the ASA, (*See Id*. at ¶¶ 143, 163 (admitting that CBV was not asked to approve the ASA).) and CBV was not apprised of any material terms of any engagement between ChanBond and IPNAV until 2020. (Am. Compl. ¶ 48; Hennenhoefer Trans. at 60:20-22; Leane Defs' Answer ¶¶ 143, 163.)

C.   **Unified's Form 10-Q Did Not Apprise CBV of Facts Giving Rise to Its Breach of Contract Cause of Action and Leane Defendants' Cited Cases Are Inapposite**

Leane Defendants also assert that CBV purportedly knew or should have known of their claims regarding the ASA because "Unified publicly filed [the Interest Sale Agreement ("ISA")] with the SEC – and that agreement disclosed the existence of the ASA." (Leane Defs' Op. Br. at 11.) However, the ISA attached to Unified's Form 10-Q only includes a passing reference to the ASA in a schedule thereto with no mention of its purpose or contents. Neither the ISA nor the Form 10-Q, attached hereto as Exhibit D, attach the ASA as an exhibit, nor do they contain any information regarding material terms of the ASA that would warrant a finding CBV knew or should have known of a potential claim regarding the ASA. As such, CBV's claims are clearly not time-barred.

Leane Defendants cite to *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996) and *Walker v. W. Michigan Nat. Bank & Tr.*, 324 F. Supp. 2d 529, 535 (D. Del. 2004), *aff'd* 145 F. App'x 718 (3d Cir. 2005) for the proposition that the "public disclosure of the ISA and its explicit reference to the ASA" warrant a finding that CBV knew or should have known of its claims regarding the ASA. (*Id*.) These cases are inapposite.

First, *Seidel v. Lee* was a case involving alleged violations of the Investment Company Act of 1940. In contrast, the present case is an action for breach of contract. The holding from *Seidel* that Leane Defendants rely upon was based on the plaintiff's argument in that case that beneficiaries are entitled to trust their fiduciaries in the securities context. That context is simply irrelevant here. Leane Defendants cannot point to any public filings by ChanBond that CBV saw, but ignored. In addition, the Unified Form 10-Q did not apprise CBV of any of the facts giving rise to its claim. The Form 10-Q merely attaches the ISA as an exhibit, and the ISA includes only a passing reference to the ASA buried in a schedule thereto with no mention of its purpose or contents. (*See* Ex. D. at 50.) Neither the ISA nor the Form 10-Q attach *the ASA* as an exhibit, nor

do they contain information regarding material terms of the ASA that would warrant a finding CBV knew or should have known of a potential claim regarding the ASA. As such, CBV's claims are clearly not time-barred.

Second, in *Walker v. W. Michigan Nat. Bank & Tr.,* the Court found that the plaintiff failed to allege facts to toll the statute of limitations because the plaintiff merely "assert[ed] that she just did not read the papers before she signed them." 324 F. Supp. 2d 529, 535 (D. Del. 2004), *aff'd sub nom. Walker v. W. Michigan Nat'l. Bank & Tr.*, 145 F. App'x 718 (3d Cir. 2005). The facts in *Walker* are completely different from the present case. Here, Leane, admittedly, failed to seek CBV's consent regarding the ASA as required by Section 2.8 of the PPA, and CBV had no knowledge of the purpose or contents of the ASA, and never saw the ASA until 2020. Leane Defendants' citation to *Walker* is simply misplaced.

Leane Defendants also distort CBV's allegations and answers to support their argument that the statute of limitations has passed. Leane Defendants argue that "CBV admits that it expected ChanBond to pay IPNAV." (Leane Defs' Op. Br. at 11 (citing D.I. 79, ¶ 5.).) This is <u>not</u> what CBV said; CBV stated that it "understood that IPNAV would be compensated from ChanBond's fifty percent (50%) share of Net Recoveries under the PPA." (CBV Answer to Leane Defs' Counterclaim [D.I. 79] ¶ 5.) Contrary to Leane Defendants' misleading recitation of CBV's Answer to Leane Defendants' Counterclaims, CBV's answer confirms that it knew nothing of the ASA or any facts giving rise to its claims at issue here. Additionally, Leane Defendants argue that "CBV affirmatively alleges that it did not approve the ASA." (Leane Defs' Op. Br. at 11 (citing D.I. 6, ¶ 143).) Contrary to Leane Defendants' spin of events, CBV did not approve the ASA because Leane, admittedly, did not seek CBV's approval as required by Section 2.8 of the PPA. (*See* Leane Defs. Answer ¶¶ 143, 163.)

Contrary to Leane Defendants arguments and distorted recitation of the pleadings, CBV did not know, nor should it have known, of the facts giving rise to its claims until 2020. Therefore,

CBV's claims are not time-barred and Leane Defendants' Motion should be denied.

**IV.    Issues of Material Fact Regarding the Parties' Intentions Behind Section 2.8 of the PPA Render Judgment on the Pleadings Inappropriate**

Leane Defendants assert that Section 2.8 of the PPA is a distribution guideline which "unambiguously requires CBV's approval before money 'which is paid to an Affiliate' could be deducted in calculating 'Net Recoveries,' and does not limit ChanBond's ability to contract with such an Affiliate." (Leane Defs' Op. Br. at 12.) Contrary to their most recent assertion, Leane Defendants previously asserted numerous other interpretations of Section 2.8, all apart from CBV's reasonable interpretation. At best, the PPA is subject to multiple interpretations, such that a determination on the meaning of Section 2.8 of the PPA at this stage is inappropriate. *See ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495, at *9 (Del. Ch. Sept. 23, 2019) ("When a contractual provision is ambiguous, judgment on the pleadings is not appropriate to resolve the ambiguity. Rather, the court will need to examine whatever parol evidence may exist. . ."); *see also Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 (3d Cir. 2019) (citing, *inter alia*, *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n Maya Van Rossum*, 894 F.3d 509, 534 (3d Cir. 2018)); *Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, 2013 WL 3215704, at *2 (Del. Ch. June 26, 2013) (denying judgment on the pleadings where contract is ambiguous).  CBV has offered a reasonable and consistent interpretation of Section 2.8 of the PPA– i.e., (i) that Section 2.8 defines CBV's consent right regarding "Affiliate" transactions, and (ii) that the ASA was an improper "Affiliate" transaction because all parties agree Leane controlled both ChanBond and IPNAV at the time of ASA execution. (Am. Compl. ¶¶ 136-175.) The ASA is, therefore, unenforceable.

Leane Defendants proposed interpretation of Section 2.8 as being a distribution guideline is nonsensical, and would require this Court to find that the PPA permits them to enter into improper Affiliate transactions in which Leane could dictate all material terms unilaterally, and

deprive CBV of its entire benefit of the bargain under the PPA. At the very least, this non-sensical interpretation proffered by Leane Defendants constitutes an alternate interpretation of Section 2.8 and raises a material issue of fact with respect to the parties' intentions behind Section 2.8, such that Leane Defendants are not entitled to judgment on the pleadings.

**V.   Because ChanBond and IPNAV Were Affiliates at the Time of the ASA, the ASA Is An Affiliate Transaction**

Leane Defendants and ChanBond also assert that the ASA should not be considered an Affiliate transaction under Section 2.1 requiring CBV consent at the time it was executed because ChanBond and IPNAV are not *currently* affiliates, despite having been admitted Affiliates at the time the ASA was executed. (Leane Defs' Op. Br. at 17-19.) Leaving aside the fact that this interpretation is directly contradicted by documentary evidence, which cannot be relied upon on judgment on the pleadings, it is also nonsensical and incorrect.

Leane Defendants argue that CBV wishes it had negotiated a change of control provision and now seeks broader rights with respect to Section 2.8 of the PPA. (*Id*. at 19-20.) CBV did not negotiate a change of control provision for its benefit under the PPA, and does not seek to do so now. Leane Defendants offer a red herring assertion to distract from CBV's true concerns and Leane Defendants' deception and impropriety under the PPA.

In negotiating the PPA, CBV was concerned with, and sought to protect itself from, being blindsided by unapproved additional costs and fees deteriorating its recovery under the PPA through unapproved Affiliate transactions. (*See* Note 24, *supra* (citing Hennenhoefer Transcript at 27:12-18; 31:3-9; 38:3-6; 38:21-39:11; 39:19-40:9; 54:3-13.) Leane Defendants now want this Court to adopt a strained reading of Section 2.8 that would eliminate the entire purpose behind Section 2.8 (from CBV's intent and perspective) and would result in Leane Defendants receiving, in total, ███████████ for services which were minimal, if rendered at all. This is precisely what CBV was concerned with, and precisely what CBV negotiated Section 2.8 to prevent.

Apart from the fact that Leane Defendants' interpretation of the term "Affiliates" directly contradicts CBV's interpretation and understanding of Section 2.8, Leane Defendants' contrived interpretation would create absurd results. For example, ChanBond in theory could unilaterally dictate terms of an Affiliate ASA such that CBV would receive *nothing*, later re-structure the entities such that they are no longer "Affiliates", and then collect all funds for themselves. *AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656 (D. Del. 2017) ("An interpretation is unreasonable if it produces an absurd result or one that no reasonable person would have accepted when entering the contract.") (internal quotations omitted). This interpretation would completely erode CBV's benefit of the bargain under the PPA. Leane's predecessor Erich Spangenberg specifically noted that there was no room in the PPA deal for an ASA, even if IPNAV contracted at 20% of gross, instead of the 22% in the ASA. (*See* Interim Award ¶ 15.)

At the very least, Leane Defendants' absurd interpretation of the facts creates a factual dispute that warrants denial of their Motion.

## CONCLUSION

For the reasons stated herein, CBV respectfully requests that this Court deny Leane Defendants' Motion for Judgment on the Pleadings under Rule 12(c).

**BUCHANAN, INGERSOLL & ROONEY PC**

Dated: June 21, 2022

*/s/ Geoffrey Grivner*
Geoffrey G. Grivner (#4711)
Kody M. Sparks (#6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-3036
(302) 552-4200
geoffrey.grivner@bipc.com
kody.sparks@bipc.com

\*      \*      \*

Patrick C. Keane, Esq.
BUCHANAN, INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314-2727

19

(703) 836-6620
patrick.keane@bipc.com

*Attorneys for Plaintiff*