SUPREME COURT OF NEW YORK
NEW YORK COUNTY
------------------------------------ x
                                     :
MISHCON DE REYA NEW YORK LLP,        :
                                     :
            *Plaintiff*,             :
                                     :
        v.                           : **SUMMONS**
                                     :
CHANBOND LLC, and KING & WOOD        :
MALLESONS LLP,                       :
                                     :
            *Defendants.*            :
                                     :
------------------------------------ x

To CHANBOND LLC, 2633 McKinney Ave., Dallas, Texas 75204:

PLEASE TAKE NOTICE THAT YOU ARE SUMMONED to answer the complaint of the plaintiff and to serve a copy of your answer on the plaintiff at the address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after services is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered by default for the relief demanded in the complaint. Plaintiff designates New York County as the place of trial. The basis of this designation is Defendant's presence in New York County, and the substantial portion of events that took place there.

New York, NY
Dated: February 4, 2022

                                        SLARSKEY LLC

                                        By: _____
                                        David Slarskey
                                        Evan Fried
                                        420 Lexington Avenue, Suite 2525
                                        New York, NY  10022
                                        (212) 658-0661
                                        *Counsel for Mishcon de Reya New York LLP.*

SUPREME COURT OF NEW YORK
NEW YORK COUNTY
------------------------------------ x
                                     :
MISHCON DE REYA NEW YORK LLP,        :
                                     :
                    *Plaintiff*,     :
                                     :
              v.                     :   **COMPLAINT**
                                     :
CHANBOND LLC and KING & WOOD         :
MALLESONS LLP,                       :
                                     :
                    *Defendants*.    :
                                     :
------------------------------------ x

    Mishcon de Reya New York LLP, by its counsel, Slarskey LLC, and for its Complaint against ChanBond LLC and King & Wood Mallesons LLP alleges as follows:

### NATURE OF ACTION

  1. Mishcon de Reya New York LLP ("Mishcon") brings this action to recover attorneys fees from a patent litigation campaign it successfully prosecuted on a contingency fee basis, for more than four years, on behalf of a former client, Defendant ChanBond LLC.

  2. Between 2015 and 2019, Mishcon invested more than $7.5 million in attorney time, pursuing this campaign against thirteen defendants, through multiple successful stages of litigation. In November 2019, the two Mishcon partners responsible for the litigation successfully argued for ChanBond, against Defendants' consolidated motion for summary judgment. Four weeks later, those partners departed Mishcon and joined Defendant King & Wood Malleson LLP, taking the ChanBond matters with them. Those matters have since settled for $125 million.

  3. Under Mishcon's engagement letter with ChanBond, Mishcon was entitled to collect a contingency fee of up to 28.5% from any proceeds of the campaign, based upon the

phase of the litigation at which the representation ended, or *quantum meruit* for the work that it performed before the termination or withdrawal.

4. Mishcon has received no compensation for its years of successful effort on behalf of ChanBond. It has accordingly asserted a lien over the proceeds from the settlement and brought this action.

## PARTIES AND NON-PARTIES

5. Plaintiff Mishcon de Reya New York LLP is a New York limited liability partnership. At the pertinent times, Mishcon was a New York law firm representing ChanBond LLC out of its Manhattan office. Current non-parties Mark Raskin and Robert Whitman were partners at Mishcon until they switched firms to King & Wood Mallesons LLP, and took with them the ChanBond matters. Since Raskin and Whitman's departure, Mishcon has ceased operations.

6. Defendant ChanBond, LLC ("ChanBond") is a Delaware limited liability company with a principal place of business at 2633 McKinney Ave., Dallas, Texas 75204. ChanBond has a registered agent for service of process at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7. Defendant King & Wood Mallesons LLP ("KWM") is a law firm, with an office located at 500 Fifth Avenue, New York, New York.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all parties because KWM has an office in New York, and ChanBond contracted with Mishcon in New York to represent it in the matters alleged. In addition, during the engagement with Mishcon, ChanBond met numerous times in New York with Mishcon's attorneys.

2

9. Venue is proper pursuant to CPLR § 503(a) because KWM's offices are in New York County and a substantial portion of the related events took place in New York County.

## DETAILED ALLEGATIONS

### *Background on Mishcon*

10. Mishcon was formed in 2010 to pursue a strategy focused on high-stakes litigation, and—over time—developed an emphasis on commercial contingency fee litigation. This strategy entailed assuming a significant amount of upfront risk – with Mishcon investing in personnel, marketing, office space, and other overhead needed to identify potential clients, develop relationships with plaintiffs who had appropriate claims, evaluate the claims for viability, and litigate them.

11. Mishcon is a legally-independent affiliate of the United Kingdom-based firm Mishcon de Reya LLP ("Mishcon UK"). Several of the partners of Mishcon UK funded Mishcon de Reya (Holdings) LLP ("Mishcon Holdings"), which in turn funded the Mishcon New York venture.

12. From the outset, Mishcon Holdings expected that its investment would eventually pay off with one or more very successful contingency claims, even if other efforts were unsuccessful or earned only modest compensation.

13. Current non-parties Mark Raskin ("Raskin") and Robert Whitman ("Whitman") sought to join the Mishcon team early on in its development.

14. Both Raskin and Whitman were experienced patent lawyers, seeking to pursue high-value plaintiff-oriented patent litigation, based on the contingency fee strategy Mishcon intended to employ.

15. Neither Raskin nor Whitman, however, had a platform from which to pursue such efforts. Raskin, for example, held an in-house role prior to joining Mishcon, had not practiced in

3

a law firm for years, and had no ability to pursue contingency patent litigation without the support that a law firm could provide.

16. Prior to joining Mishcon, Whitman had been practicing at a law firm known more for conservative defense-related work, rather than for the aggressive plaintiff-oriented strategy that Whitman wanted to pursue, and which was Mishcon's focus.

17. Raskin and Whitman convinced Mishcon to support them in their efforts to redirect their careers towards the pursuit of plaintiff-oriented, entrepreneurial, contingency-fee patent litigation. At the height of Mishcon's practice, Raskin and Whitman were two of approximately ten partners.

18. Between 2013 and 2020, Mishcon invested substantial sums into building its contingency-fee oriented practice. Mishcon supported Raskin and Whitman's efforts with professional office space, competitive salaries for high-stakes patent litigators, marketing, and travel budgets so that Raskin and Whitman could court patent holders, and other staff and support expenditures. Whitman earned nearly $1 million per year as salary.

19. Many of the opportunities considered by Raskin and Whitman and the Mishcon patent litigation team did not end up generating fees. Other opportunities were only modestly successful.

20. By 2019, the ChanBond matters were the most significant assets in the Mishcon contingency-fee portfolio, and were expected to generate substantial fees either through judgment or settlement.

*The ChanBond Litigations*

21. IP Navigation Group, LLC ("IP Navigation") and IP Navigation's successor, IPNav, LLC ("IP Nav," and collectively with IP Navigation, the "IP Nav Entities") are highly-

4

regarded patent consulting and monetization entities. The IP Nav Entities' business model included partnering with inventors by taking ownership or a license to those inventors' patents, conducting due diligence to select patents for assertion against purported infringers, and engaging and instructing legal counsel to enforce patents through licensing and litigation campaigns.

22. In 2015, IPNav, through then-CEO Deirdre Leane, approached Mishcon to represent an affiliate of IPNav in a series of patent litigations. More specifically, IPNav had recently formed its affiliate, Defendant ChanBond, which had exclusive control over a series of patents that covered DOCSIS technology for delivering high-speed data over cable systems[1] (collectively the "Patents"). ChanBond was looking to monetize those patents through litigation.

23. The Patents covered intelligent device systems and methods for distribution of cable signals on a wideband signal distribution system. It was believed that the Patents were being infringed upon by all the major cable companies, through technologies for distribution of cable programming across the United States — a huge market and infringement base.

24. On April 20, 2015, ChanBond entered into a written engagement letter with Mishcon (the "Retention Agreement"). Pursuant to the Retention Agreement, Mishcon agreed to represent ChanBond in asserting ChanBond's claims under the Patents against purported infringers of the ChanBond Patents.

25. Mishcon undertook considerable risk under the Retention Agreement. Pursuant to the agreement, Mishcon was required to "investigate Claims against Infringers" prior to filing lawsuits; prosecute, attempt to settle, and, if necessary, litigate through trial the underlying

---

[1] The patents included U.S. Patent No. 7,346,918, 7,941,822, 8,341,779, 8,984,565.

5

litigations; and, in the event an appeal was necessary, defend ChanBond in an appeal without any additional compensation.

26. Pursuant to Section 3(b), Mishcon and ChanBond agreed that Mishcon would be compensated on a contingency fee basis:

> (b) <u>Contingent Fee Arrangement.</u> In consideration for the services to be rendered by Mishcon to [ChanBond] under this Retention Agreement, [ChanBond] agrees to pay Mishcon a Contingency Fee, payable solely out of Proceeds calculated according to the schedule set forth in Paragraph 3(c) below.

27. Paragraph 3(c) provided that, after ChanBond were to receive the first $1,000,000 of Proceeds, Mishcon would receive an allocation and distribution of Proceeds based on the "phase of the case":

> Phase 1: from date of filing of complaint until initial scheduling/case management conference -- 15% to Mishcon;
>
> Phase 2: from initial scheduling conference until 30 days before Markman hearing -- 21% to Mishcon;
>
> Phase 3: from 30 days before Markman hearing until 45 days before trial -- 25% to Mishcon;
>
> Phase 4: from 45 days before trial through post-trial 28.5%.
>
> In addition, after the first one million dollars ($1,000,000) of Proceeds are collected, allocated and distributed to Client, Mishcon will receive the next $150,000 of Proceeds collected.

(Retention Agreement § 3(c)(i).)

28. Raskin executed the Retention Agreement on behalf of Mishcon.

### *Mishcon Performs Under the Retention Agreement for Four Years*

29. Mishcon performed extensive legal work for ChanBond over a period of more than four years.

30. A complaint in a patent action requires substantial upfront investment, including research on patent "validity," identification and research of potentially infringing products,

6

calculation of a preliminary estimate of potential damages, and ultimately, drafting a complaint. Mishcon spent five months on pre-litigation due diligence and preparation of the thirteen complaints for ChanBond—without knowing at the outset even whether the claims were viable.

31. Prior to filing the actions, Mishcon assisted ChanBond in procuring a third-party litigation funder to fund the out-of-pocket expenses for the impending litigation. Ultimately, in September 2015, ChanBond obtained a commitment for substantial litigation funding with a reputable litigation funder, to fund the hard costs associated with the impending litigations.

32. In September 2015, Mishcon filed 13 actions in the United States District Court of Delaware against various cable companies (the "Targets"), asserting infringement of the Patents (collectively the "Litigations")[2]:

- *ChanBond, LLC v. Atlantic Broadband Group, LLC*, No. 1:15-cv-00842 (D. Del.)
- *ChanBond, LLC v. Bright House Networks, LLC*, No. 1:15-cv-00843 (D. Del.)
- *ChanBond, LLC v. Cablevision Systems Corporation et al*, No. 1:15-cv-00845 (D. Del.)
- *ChanBond, LLC v. Cequel Communications, LLC*, No. 1:15-cv-00846 (D. Del.)
- *ChanBond, LLC v. Charter Communications, Inc.*, No. 1:15-cv-00847 (D. Del.)
- *ChanBond, LLC v. Comcast Corporation et al*, No. 1:15-cv-00848 (D. Del.)
- *ChanBond, LLC v. Cox Communications, Inc. et al*, No. 1:15-cv-00849 (D. Del.)
- *ChanBond, LLC v. Mediacom Communications Corporation*, No. 1:15-cv-00850 (D. Del.)
- *ChanBond, LLC v. RCN Telecom Services, LLC*, No. 1:15-cv-00851 (D. Del.)
- *ChanBond, LLC v. Time Warner Cable Inc. et al*, No. 1:15-cv-00852 (D. Del.)
- *ChanBond, LLC v. WaveDivisions Holdings, LLC*, No. 1:15-cv-00853 (D. Del.)
- *ChanBond, LLC v. WideOpen West Finance, LLC*, No. 1:15-cv-00854 (D. Del.)

---

[2] The Litigations were ultimately consolidated in March 2017.

7

33. Between 2015 and late 2019, *i.e.,* for more than four years, Mishcon vigorously prosecuted the Litigations on behalf of ChanBond, against well-funded, highly-motivated defendants and defense counsel.

34. The Targets (and interested parties, in concert with the Targets) filed 14 *inter partes review* ("IPR") petitions before the U.S. Patent Trial and Appeals Board challenging the patents' validity. Mishcon defended those IPRs, successfully, on contingency, in order to protect ChanBond's valuable technology and the prospect of success in the underlying litigations.

35. A successful defense of an IPR meaningfully improves a plaintiff's prospect of demonstrating validity of the underlying patents in the Litigation.

36. Mishcon also researched, briefed, and argued a claim construction ("*Markman*") hearing. This too is a meaningful milestone in a patent litigation, and, if in favor of a plaintiff (patent holder) can dramatically impact the scope of infringement and damages an underlying litigation.

37. Pursuant to the Retention Agreement, upon completing the *Markman* hearing, Mishcon's contingency fee increased from 21% to 25% of any Proceeds from the litigation.

38. All said, Mishcon completed most of the material milestones in the ChanBond matters: Mishcon developed and filed the complaints; defended the IPRs; conducted discovery and depositions; and handled the *Markman* hearing. This work, discovery, and diligence paved the way for dispositive summary judgment motions and trial.

39. The work that Mishcon successfully completed was also the riskiest legal work. That is because in a contingency matter (such as these were), the likelihood of recovery increases as the case progresses and a defendant's defenses are eliminated. With each successful phase

8

completed by Mishcon, continuing to represent ChanBond became less of a risk—and a more valuable opportunity.

### Mishcon's Successful Summary Judgment for ChanBond

40. In 2019, with Mishcon having successfully guided ChanBond through discovery, IPRs, and *Markman* hearing, the parties focused their attention on summary judgment motion the defendants had filed.

41. Mishcon eagerly awaited the summary judgment decision. Throughout 2019, Mishcon expended substantial resources creating internal cash flow projections and budgets so that the Mishcon entities could fund the ChanBond litigations for trial, if ChanBond were able to defeat summary judgment. Additionally, the firms engaged in meaningful conversations with third-party litigation funders, who also expressed interest in funding the ChanBond Litigations.

42. During that period, Mishcon, Raskin, and Whitman projected that the ChanBond Litigation would generate at least $80 million in settlement proceeds (resulting in tens of millions of contingency fees to Mishcon) and that ChanBond was the "key selling point" for any decision to fund Mishcon.

43. Based on the anticipated ChanBond proceeds, Mishcon Holdings and third-party funders stood prepared to inject additional capital into the ChanBond litigations and into Mishcon.

44. On November 25, 2019, after months of briefing and preparing for oral argument, Mishcon argued against the defendants' motion for summary judgment in the Delaware Litigations.

45. The transcript made obvious that the summary judgment argument went very well for ChanBond. It appeared very likely, from the transcript, that the judge in the Delaware

9

Litigations would not be granting the defendants' summary judgment motions, and that the Litigations would be progressing to trial.

### *Raskin and Whitman's Departure from Mishcon*

46. Going into the fall of 2019, the partners of Mishcon had been having discussions with Mishcon Holdings about budgeting and funding issues for 2020 and beyond. Mishcon was still dependent upon funding to support its operations.

47. For years, Mishcon Holdings had been funding Mishcon, and propping up Raskin and Whitman's practice.

48. Mishcon Holdings remained willing to fund Mishcon through November 2019, but encouraged Raskin and Whitman to find an alternate source of funding beyond that date (including, potentially third-party litigation funding), as Mishcon Holdings was unwilling to continue bearing open-ended cost and commitment to their practice, which had not, to that point, turned a profit.

49. Unbeknownst to Mishcon (other than Raskin and Whitman), Raskin and Whitman had been negotiating an agreement with Defendant KWM since June 2019.

50. Upon information and belief, Raskin and Whitman believed that if they could uproot the ChanBond matters from Mishcon, and move to a different firm, they could avoid avoid Mishcon's (and by extension, Mishcon Holdings's) entitlement to fees, and retain for themselves a greater share of any fees earned from the ChanBond Litigations, because their new firm would not have the same overhead investment in supporting the ChanBond Litigations, or Raskin and Whitman generally.

51. On December 6, 2019, Raskin and Whitman abruptly informed Mishcon Holdings that they were leaving Mishcon.

52. The parties attempted in December 2019 to negotiate terms for Raskin and Whitman's departure. Central to the discussions were the ChanBond contingency fees that were expected, ultimately, to be received.

53. Throughout those negotiations, Raskin and Whitman repeatedly acknowledged Mishcon's right to proceeds from the ChanBond matter — *i.e.,* that they needed to "work out payment to Mishcon in the event of funding or success" of the ChanBond matter, that ChanBond needed to provide "satisfaction of any and all ChanBond quantum meruit claims," and that when Raskin and Whitman joined a new firm "notice will be made to that firm that [Mishcon] believes it has a claim to quantum meruit" from the ChanBond matter.

54. At the same time, Raskin and Whitman began manufacturing a record, attempting to justify a purported "for cause" termination of Mishcon by ChanBond. These deliberate efforts by Raskin and Whitman were intended to undermine Mishcon's claim for fees, even though the Retention Letter provided Mishcon with a vested right to quantum meruit for the work that it had done.

55. Ultimately, negotiations between Mishcon and Raskin/Whitman broke down. On December 20, 2019, Raskin and Whiman officially announced their resignation from Mishcon.

56. One week later, Billy Carter, who had succeeded Ms. Leane as the managing member of ChanBond, stated that it was his understanding that as a result of Raskin and Whitman's departures, Mishcon could not represent ChanBond "going forward" in the Litigations. Accordingly, ChanBond was purportedly terminating its relationship with Mishcon, and transferring the matter to KWM, where Raskin and Whitman had become partners.

57. Mishcon responded by describing the circumstances under which Raskin and Whitman had departed Mishcon, and reminded Mr. Carter of ChanBond's obligation to

11

compensate Mishcon for the past work that Mishcon had completed, if there were a recovery. Mr. Carter did not disagree that ChanBond was obligated to compensate Mishcon, and requested from Mishcon the amount of payment it would be expecting.

58. In December 2019, Mishcon notified Raskin and Whitman that Mishcon — under Raskin and Whitman's direction — had incurred $7,587,626 in "WIP," *i.e.,* "work in progress" billings logged on the ChanBond matter as of November 27, 2019. Similarly, pursuant to the Retention Agreement, Mishcon had taken the case through *Markman*, *i.e.,* to "Phase 3" of the contingency fee structure, which correlated to 25% of Proceeds. All work in progress was recorded under the instruction and direction of Raskin and Whitman as the managing attorneys.

**<u>ChanBond Joined Raskin and Whitman at KWM and Resolve the Litigation</u>**

59. In January 2020, Raskin and Whitman joined KWM as partners.

60. Upon information and belief, the relationship between Raskin and Whitman and KWM began in June 2019 — five months before Raskin and Whitman disclosed that they intended to depart Mishcon. Sometime in June 2019, KWM began recruiting Raskin and Whitman, in an attempt to poach the ChanBond matters. KWM is an international law firm, looking to expand its contingency patent litigation interests in New York.

61. Upon information and belief, KWM's recruitment of Raskin and Whitman was deliberate and calculated, and measured against the summary judgment risk on the ChanBond matter: KWM firmly committed to Raskin and Whitman after Mishcon's successful summary judgment argument.

62. Upon joining KWM, on January 13, 2020, ChanBond and KWM entered into their own engagement letter (the "KWM Retention Agreement").

63. The KWM Retention Agreement highlights KWM's and ChanBond's obligation to compensate Mishcon for having represented ChanBond on contingency for 4.5 years.

64. The KWM Retention Agreement specifically provides:

> 8. **Mishcon de Reya New York LLP** *Quantum Meruit*. In the event that Mishcon de Reya New York LLP seeks *quantum meruit*, related to its prior representation of Client, KWM will use best efforts to resolve those issues on Client's behalf. In addition, KWM will pay the amount of Mishcon de Reya New York LLP's *quantum meruit*), up to the amount of KWM's respective distribution of Proceeds or Net Proceeds, from KWM's respective distribution of Proceeds or Net Proceeds.

(*Leane v. Mishcon de Reya*, Index No. 654614/2020, Doc. 16.)

65. KWM and ChanBond thus specifically contracted to deal with their obvious obligation to compensate Mishcon for its claim, based upon four years of uncompensated work.

66. On July 12, 20121, the Court in the ChanBond Litigations entered a Stipulation and Order dismissing the ChanBond Litigations with prejudice as a result of the parties' agreement to "settle, adjust and compromise all claims."

67. Upon information and belief, these settlements generated approximately $125 million in settlement proceeds for ChanBond.

68. Mishcon, through counsel, contacted KWM in an attempt to obtain Mishcon's compensation from the ChanBond Litigations.

69. When KWM and ChanBond refused to pay Mishcon the fees that it had earned, Mishcon asserted a Judiciary Law lien over the proceeds, and brought this action.

**FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT**
**(against ChanBond)**

70. Mishcon fully and faithfully performed legal services for ChanBond between 2015 and December 2019, pursuant to the terms of the parties' Retention Agreement.

71. Mishcon's legal services included researching and filing the complaint in thirteen Litigations, conducting discovery, defending the IPRs, briefing and arguing the *Markman*

13

hearing, and briefing and surpassing the Targets' motions for summary judgment. Therefore, Mishcon performed legal services in good faith.

72. Section 7(c)(ii) of the Retention Agreement expressly provides that "[i]n the event that Client terminates its engagement with Mishcon or Mishcon withdraws from representation of Client, Mishcon: … shall be entitled to collect *quantum meruit* for work performed up to date of withdrawal, in the event of a settlement, successful outcome of a Lawsuit, or a transfer of interest in any of the Patentes entered into after the date of termination or withdrawal."

73. ChanBond has refused to pay Mishcon its *quantum meruit* fees earned, in spite of the "settlement" and "successful outcome of [the] Lawsuit[s]."

74. ChanBond accordingly has breached the Retainer Agreement.

75. Mishcon is entitled to damages in the amount of $7.5 million.

## SECOND CLAIM FOR RELIEF: QUANTUM MERUIT
### (against ChanBond)

76. ChanBond encouraged Mishcon to provide legal services and accepted the benefits of Mishcon's legal services.

77. There was an expectation that Mishcon would be compensated for its services in the event the Litigations were successful and/or if ChanBond were able to raise additional legal funding.

78. Mishcon's services were valuable. Mishcon had generated $7,587,626 in "WIP," *i.e.,* "work in progress" billings logged by Raskin, Whitman, and their team on the ChanBond matter as of November 27, 2019.

79. Ultimately, ChanBond discharged Mishcon without cause in December 2019. Therefore, Mishcon is entitled to compensation from ChanBond in *quantum meruit, i.e.,* the fair and reasonable value of Mishcon's services.

14

## THIRD CLAIM FOR RELIEF: QUANTUM MERUIT AND/OR PROPORTIONATE SHARE OF THE CONTINGENCY FEE
### (against KWM)

80. Mishcon worked for ChanBond, pursuant to the Retainer Agreement, on a contingent fee basis, payable upon the ultimate success of the Litigations.

81. In December 2019 ChanBond discharged Mishcon without cause from the ChanBond Litigations, under circumstances that were designed and engineered by KWM partners Raskin and Whitman to effectuate a transfer of the ChanBond matters to KWM, and avoid fee payments to Mishcon.

82. Soon thereafter, ChanBond engaged KWM as the incoming law firm for the Litigations. ChanBond also engaged KWM on a contingency fee or hybrid fee arrangement.

83. As the discharged law firm, Mishcon is entitled to compensation from KWM based on *quantum meruit* or on a contingency percentage fee based on its proportionate share of the work performed on the whole case.

84. Mishcon's damages on a *quantum meruit* basis are in excess of $7,587,626. Alternatively, pursuant to the Retention Agreement, Mishcon guided ChanBond into "Phase 3" of the Litigation, *i.e..*, "from 30 days before Markman hearing until 45 days before the trial," entitling Mishcon to a 25% contingency fee (out of the total 28.5% KWM received).

85. It is impossible to determine the value of Mishcon's proportionate value of the contingency fee, because KWM refuses to disclose the amount of the settlement or its fee on the settlement. Therefore, Mishcon demands compensation on one of the two bases above, *i.e.,* $7,587,626, or 87.7% of a 28.5% contingency fee, but will elect its remedies after ChanBond and KWM make disclosure of the compensation under the ChanBond Litigations.

15

## THIRD CLAIM FOR RELIEF: CHARGING LIEN UNDER JUDICIARY LAW § 475
### (against ChanBond and KWM)

86. Mishcon appeared on behalf of ChanBond in the Litigations. Ultimately, ChanBond discharged Mishcon without cause.

87. Mishcon accrued $7,587,626 in "WIP" billings and, alternatively, maintains its right to a proportionate share of the contingency fees generated from the ChanBond Litigations.

88. Pursuant to New York Judiciary Law § 475, Mishcon has a lien upon ChanBond's causes of action and claims, attaching to all verdicts, reports, determinations, decisions, awards, settlements, judgments, or final orders in ChanBond's favor, and the proceeds thereof in whatever hands they may come.

89. KWM is currently in possession of settlement funds from the Litigation.

90. Mishcon is entitled to compensation from ChanBond and KWM as a result of the successful recoveries in the Litigations.

91. Mishcon seeks determination and enforcement of the lien, to be enforced against ChanBond and KWM *inter alia* against the funds currently in the possession of KWM.

WHEREFORE Plaintiff seeks judgment:

A. Awarding monetary damages and/or quantum meruit in an amount to be determined at trial, but in excess of $7,587,626;

B. An order requiring KWM and ChanBond to honor the charging lien against the settlement funds from the ChanBond Litigations unless and until Mishcon is fully compensated;

C. Awarding attorneys fees, costs, and other expenses of litigation;

D. Such further and other relief as the Court may determine warranted.

16

New York, NY
February 4, 2022

                                SLARSKEY LLC

                                _____
                                David Slarskey
                                Evan Fried
                                420 Lexington Avenue, Suite 2525
                                New York, NY  10170
                                (212) 658-0661
                                *Counsel for Plaintiff Mishcon de Reya LLP*

17