IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHANBOND, LLC, DEIRDRE LEANE, and IPNAV, LLC, <br><br> Defendants. | C.A. No. 21-1456-GBW <br><br> **UNSEALED 3/30/2023** |

Geoffrey Graham Grivner, Kody Macgyver Sparks, BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware

*Counsel for Plaintiff*

Stephen B. Brauerman, Ronald P. Golden, III, BAYARD P.A., Wilmington, Delaware; James H. S. Levine, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, Delaware; David L. Finger, FINGER & SLANINA LLC, Wilmington, Delaware; John Legare Williams, Brian C. Crawford, THE WILLIAMS LAW FIRM P.A., Wilmington, Delaware; Akiva M. Cohen, Dylan M. Schmeyer, KAMERMAN, UNCYK, SONIKER & KLEIN P.C., New York, New York

*Counsel for Defendants*

**MEMORANDUM OPINION**

October 5, 2022
Wilmington, Delaware

1

_____
GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before this Court is Defendants Deirdre Leane ("Leane") and IPNAV, LLC's ("IPNAV") (collectively, "Leane Defendants") Motion for Leave to File a Sur-Reply in further opposition to Plaintiff CBV, Inc.'s ("CBV") Motion for Preliminary Injunction (D.I. 70), and CBV's Motion for Preliminary Injunction (D.I. 43).[1] For the reasons set forth below, the Court will deny Leane Defendants' Motion for Leave to File a Sur-Reply and CBV's Motion for Preliminary Injunction.

I. **BACKGROUND**

On December 6, 2021, CBV filed its First Amended Complaint against Defendant ChanBond, LLC ("ChanBond") alleging ChanBond breached various provisions of a Patent Purchasing Agreement (the "PPA") executed between CBV and ChanBond on April 9, 2015. D.I. 8. Under the PPA, CBV transferred a large patent portfolio to ChanBond in exchange for a threshold payment and fifty percent of the "Net Recoveries" derived from ChanBond's monetization and enforcement of the patents. D.I. 44 at 3. ChanBond monetized the patents through several patent suits filed in this Court and recovered $125,000,000 as settlement, which is now held in trust by Eastern Point Trust Company (the "Settlement Funds"). *Id.* at 1, 3.

On March 15, 2021, CBV moved for a preliminary injunction seeking to enjoin ChanBond from distributing the Settlement Funds. *See, e.g.*, D.I. 43; D.I. 44. CBV's paramount concern is that, unless enjoined, ChanBond will fully deplete the Settlement Funds to pay a $27.5 million

_____
[1] CBV's Motion for Preliminary Injunction was initially filed as "Plaintiff CBV, Inc.'s Motion for a Temporary Restraining Order, Preliminary Injunction, and for Expedited Discovery." *See* D.I. 43. However, as stipulated by the parties on March 17, 2022, CBV's request for a Temporary Restraining Order was withdrawn from that Motion. D.I. 32; D.I. 33. As such, the Court will address only those arguments related to CBV's Motion for Preliminary Injunction.

2

arbitration award—which has yet to be confirmed—ordered in a related arbitration between ChanBond and the Leane Defendants. D.I. 44 at 1-2. On March 16, 2021, the parties stipulated to the Leane Defendants' intervention in this Action. *See* D.I. 25; D.I. 28. Both ChanBond and the Leane Defendants filed their respective answering briefs in opposition to CBV's Motion for Preliminary Injunction on March 31, 2022 (*see* D.I. 66; D.I. 67), and CBV filed its reply brief on April 7, 2022 (D.I. 81). On April 8, 2022, Leane Defendants filed a Motion for Leave to File a Sur-Reply in further opposition to CBV's Motion for Preliminary Injunction. D.I. 70. CBV filed its answering briefing in opposition to Leane Defendants' Motion for Leave on April 21, 2022 (D.I. 89), and Leane Defendants filed its reply brief on April 29, 2022 (D.I. 97).

## II. LEGAL STANDARD

### A. Motion for Leave to File Sur-Reply

This district generally disfavors sur-replies. *See* D. Del. Local Rule 7.1.2 ("[N]o additional papers shall be filed absent Court approval."). Thus, generally, leave to file a sur-reply is granted only where the proposed brief responds to new evidence, facts, or arguments raised for the first time in the moving party's reply brief. *See, e.g., Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 540 (D. Del. 2017); *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*, 291 F.R.D. 75, 80 (D. Del. 2013). But, when the complained-of material from the moving party's reply brief is responsive to theories and arguments raised in the respondent's answering brief, respondent's motion for leave to file a sur-reply will be denied. *See Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*, C.A. No. 14–880–LPS–CJB, 2015 WL 1738186, at *1 n.1 (D. Del. Apr. 8, 2015).

### B. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" that should be granted only in "limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

3

The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the district court. *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief. *Kos Pharms.*, 369 F.3d at 708.

The first two factors—likelihood of success on the merits and irreparable harm—are "gateway factors" that the moving party must establish to obtain relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Greater Phila. Chamber of Com.*, 949 F.3d at 133. Unless the movant meets its burden on these two factors, a preliminary injunction is not warranted, regardless of whether the Court proceeds to consider the balance of equities and the public interest. *Reilly*, 858 F.3d at 179.

### III.   DISCUSSION

CBV's reply brief in support of its Motion for Preliminary Injunction is responsive to new arguments Leane Defendants raised in its answering brief. Thus, the Court will deny Leane Defendants' Motion for Leave to file a Sur-Reply. With respect to CBV's Motion for Preliminary Injunction, CBV has failed to carry its burden of demonstrating a likelihood of success on the merits and that it will be irreparably harmed if an injunction is not granted. Thus, the Court will deny CBV's Motion for Preliminary Injunction.

### A. Motion for Leave to File Sur-Reply

Leane Defendants move for leave to file a six-page sur-reply in further opposition to CBV's Motion for Preliminary Injunction, arguing that without an opportunity to file a sur-reply,[2] they will be denied a fair opportunity to respond to "new arguments" raised in CBV's reply brief. *See* D.I. 85 at ¶ 7. Specifically, the Leane Defendants claim that CBV—for the first time in its reply brief in support of its Motion for Preliminary Injunction—raises "legal arguments and factual averments with respect to the statute of limitations that could and should have been raised in its Opening Brief, but were not." *Id.* at ¶ 4. CBV contests the Motion for Leave, arguing that its reply brief (D.I. 81) is merely responsive to arguments raised in Leane Defendants' answering brief (D.I. 67) and that the Leane Defendants' Motion for Leave is no more than an effort to have the last word. *See* D.I. 89 at 2-3.

CBV's reply brief does not contain "new arguments" to the extent it responded to the new argument Leane Defendants raised in its answering brief in opposition to CBV's Motion for Preliminary Injunction. Although, on its surface, CBV's reply brief injects new facts and arguments not previously addressed in its Motion for Preliminary Injunction (D.I. 44), the substance of CBV's "new argument" simply addresses and responds to the new argument raised in Defendants' answering brief—that CBV's breach of contract claims arising out of ChanBond's ancillary agreements may be barred by Delaware's three-year statute of limitations. *See* D.I. 67 at § II.a.1 ("CBV's claims are time-barred"). Moreover, while Leane Defendants' proposed sur-reply elaborates on Delaware's statute of limitations, it is no more than a veiled attempt to pursue similar and repetitive arguments that were raised or could have been raised in its answering brief.

---

[2] Leane Defendants attached its proposed Sur-Reply Brief as an exhibit to both its Motion for Leave to File a Sur-Reply (D.I. 85, Ex. A) and its Reply Brief in Further Support of its Motion for Leave (D.I. 97, Ex. A).

*See Bishop v. JPMorgan Chase & Co.*, C.A. No. 13–1–RGA–MPT, 2013 WL 3177826, at *6 (D. Del. June 21, 2013), *report and recommendation adopted*, 2013 WL 4007508 (D. Del. Aug. 5, 2013) (holding a sur-reply is not for the purpose of pursuing similar arguments repetitive of prior arguments that were, or could have been, raised in the answering brief). For these reasons, the Leane Defendants' Motion for Leave to file a Sur-Reply is denied.[3]

### B.     Motion for Preliminary Injunction

CBV moves this Court to preliminarily enjoin ChanBond from distributing the Settlement Funds held in trust by Eastern Point Trust Company because ChanBond allegedly breached the PPA. *See* D.I. 44 at 1-3. Specifically, CBV argues that ChanBond has breached the PPA by (1) "failing to pay CBV an amount at least equal to $30,506,583 as its proper share" of the Settlement Funds, which CBV states it has only received $10 million so far, in violation of § 3.2.2; and (2) entering into prohibited ancillary agreements with Leane Defendants to provide patent monetization services without prior approval of CBV, in violation of § 2.8.[4] *Id.* at 7-8. Further,

---

[3] Because Leane Defendants' Motion for Leave to File a Sur-Reply is denied, the Court will not consider the substance of Leane Defendants' arguments contained in its proposed sur-reply when evaluating the arguments made for, or against, CBV's Motion for Preliminary Injunction.

[4] As a threshold matter, CBV's First Amended Complaint alleges that ChanBond violated § 3.5 of the PPA and § 4.1 of the PPA Amendment by failing to provide CBV with allocation reports upon distribution of any portion of the Settlement Funds. D.I. 8 at 24-26, Count II. Additionally, CBV's First Amended Complaint alleges that ChanBond, through the actions of Diedre Leane, breached § 2.8 of the PPA by failing to inform CBV that Diedre Leane was selling her membership interests in ChanBond to UnifiedOnline, Inc. through an Interest Sales Agreement (the "ISA"). *See* D.I. 8 at 26-33, Counts III-VI. However, CBV has only addressed these allegations in response to Leane Defendants' argument that CBV explicitly allowed ChanBond to vary the payment schedule or to Leane Defendants' assertion that CBV's claims are barred under Delaware's statute of limitations. *See* D.I. 81 at 3-4. In fact, CBV's Motion for Preliminary Injunction fails to even mention § 3.5 of the PPA or § 4.1 of the PPA Amendment, or that Diedre Leane sold her membership interests in ChanBond through the ISA. As such, the Court will not address CBV's likelihood of success with regard to § 3.5 of the PPA, § 4.1 of the PPA Amendment, or the ISA. Even if these claims were addressed, each would succumb to the same conclusion for the same reasons as explained below (*e.g.*, § 2.8 is not a "consent right," Leane Defendants raise substantial questions regarding

6

CBV contends that, in the absence of a preliminary injunction, it will be irreparably harmed because ChanBond will disseminate the Settlement Funds making efforts to trace and recover its alleged portion "difficult or impossible." *Id.* at 8.

### i. Likelihood of Success on the Merits

At the outset, the threshold question of whether the movant has shown a reasonable likelihood of success on the merits requires a showing by the moving party of a present, actionable breach of contract. The elements of a breach of contract claim under Delaware law are: (1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Where such an initial showing of an actionable breach of contract cannot be made, preliminary injunctive relief will not be granted. *See, e.g., Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386 (D. Del. 2019).

The parties do not dispute that the PPA is a valid contract. Rather, the dispute centers around whether ChanBond's actions constitute a breach of the PPA. CBV asserts that ChanBond committed two actionable breaches of the PPA: (1) by failing to timely pay CBV the amount owed pursuant to § 3.2.2, and (2) by entering into ancillary agreements with Leane Defendants without the pre-approval of CBV as purportedly required by § 2.8. *See* D.I. 8 at 20-28; D.I. 44 at 6-8. Both ChanBond and the Leane Defendants contest CBV's allegations, asserting that CBV expressly authorized ChanBond to vary the payment schedule when it executed the Receipt, Release, and Consent to Distribute Agreement (the "Receipt Agreement," *see* D.I. 67 at 17; D.I. 66 at 7-8), and that CBV misinterpreted § 2.8 as a "consent right" rather than the definition of "Net

---

whether CBV's breach of contract claims are time-barred under Delaware's statute of limitations, and CBV's failure to establish "irreparable harm."). *See infra* Sections B.i.b, B.i.c, B.ii.

Recoveries" (*see* D.I. 67 at 15-17; D.I. 66 at 7-8). Additionally, Leane Defendants raise a substantial question regarding whether CBV's breach of contract claims are time-barred under Delaware's three-year statute of limitations because CBV allegedly knew, or should have known, of ChanBond's ancillary agreements since 2015. D.I. 67 at 13-15. The Court addresses each argument separately.

### a. The Receipt Agreement

CBV asserts that, by failing to timely disperse its "proper share" of the Settlement Funds based on the timeline outlined in § 3.2.2, ChanBond has breached the PPA. D.I. 44 at 7. Neither the Leane Defendants nor ChanBond dispute that CBV has only received $10 million of the approximately $30,506,383 CBV claims its owed pursuant to the PPA. However, Leane Defendants and ChanBond contend that ChanBond's failure to adhere to § 3.2.2's payment schedule is not a breach of the PPA because the Receipt Agreement explicitly authorizes ChanBond to vary the payments' timeline. D.I. 67 at 17; D.I. 66 at 7-8. In response, CBV argues that the Receipt Agreement is "[i]rrelevant" because nothing in the Receipt Agreement waives CBV's claims "it may have against ChanBond nor Leane Defendants." D.I. 81 at 8. Rather, CBV asserts that ¶ 10 of the Receipt Agreement reserves its rights and remedies under the PPA. *Id.*

CBV and ChanBond executed the Receipt Agreement on August 27, 2021, during the pendency of an arbitration proceeding between the Leane Defendants and ChanBond. D.I. 68-7. The Receipt Agreement provides, in relevant part:

> CBV acknowledges ChanBond has asserted that due to the ongoing arbitration, ChanBond must withhold any additional Recoveries Payment until the completion of the arbitration. CBV acknowledges that due to the possibility that the arbitrators may rule in Leane's favor, the amount and timing of any further Recoveries Payments to CBV or ChanBond may depend upon the final resolution of that arbitration and the outcome of Leane's claim against ChanBond and UnifiedOnline. CBV and ChanBond agree that in light of this possibility, ChanBond should withhold any additional Recoveries until the completion of the arbitration.

8

*Id.* at ¶ 7.

Based on a plain reading, the Receipt Agreement explicitly authorizes ChanBond to vary the payment schedule prescribed in § 3.2.2. In fact, the language of the Receipt Agreement reveals that CBV and ChanBond were uncertain about the pending arbitration's effect on the Settlement Funds. *See* D.I. 68-7 at ¶ 7 ("[D]ue to the ongoing arbitration . . . . in light of this possibility."). Thus, in acknowledgment "of the possibility that the arbitrators may rule in Leane's favor," CBV expressly authorized ChanBond to "withhold any additional Recoveries until the completion of the arbitration." *Id.* In consideration, ChanBond paid $10 million to CBV, which neither party disputes CBV received. While CBV correctly asserts that the Receipt Agreement does not waive its rights under the PPA (*see id.* at ¶ 10), its position mistakenly ignores that the Receipt Agreement expressly modifies ChanBond's obligation to timely disperse CBV's share of the Settlement Funds pursuant to § 3.2.2's payment schedule.

Additionally, CBV's allegation that ChanBond's failed to hold the disputed amount "on account until the dispute has been resolved" does not alter the Court's conclusion. *See* D.I. 81 at 8. This allegation relies on an amendment to the PPA, which requires the distributing firm to provide an allocation report calculating the shares of Gross Recoveries for distribution among ChanBond, CBV, and the distributing firm. D.I. 8, Ex. B at § 4.1. Although CBV asserts that it never received an allocation report for the funds distributed to "[itself], KWM, and others," *see* D.I. 8 at ¶¶ 94, 109, the PPA Amendment only requires the allocation report to enumerate "the planned distribution" of shares among ChanBond, CBV, and the distributing firm. D.I. 8, Ex. B at § 4.1. More importantly, CBV cannot contend that ChanBond's failure to provide an allocation report for the $10 million it paid pursuant to the Receipt Agreement constitutes a breach of the PPA because CBV expressly "waive[d] any requirement to prepare an accounting as to the

distribution of $10,000,000 to CBV." *See* D.I. 68-7 at ¶ 8. For these reasons, CBV has failed to demonstrate a likelihood of succeeding on its breach of contract claim based on ChanBond's violation of § 3.2.2 of the PPA.

### b. ChanBond's Ancillary Agreements

CBV further alleges that ChanBond breached the PPA by entering into an unauthorized ancillary agreement, i.e., the "Advisory Services Agreement" (the "ASA"), with IPNAV without CBV's prior approval. D.I. 44 at 7. CBV's claim relies on its interpretation of § 2.8 of the PPA as expressly prohibiting ChanBond from executing any agreement with a ChanBond-affiliate without first obtaining CBV's approval. D.I. 44 at 7-8; D.I. 81 at 5-8. Thus, ChanBond's entry into the ASA—which was signed by Diedre Leane on behalf of both ChanBond and IPNav— "without the knowledge or consent of CBV" constitutes a breach of the PPA. D.I. 44 at 7-8.

In response, Leane Defendants assert that § 2.8 is simply a definition which dictates the costs and expenses that can be categorized as "Net Recoveries" when calculating CVB's share of the Settlement Funds. D.I. 67 at 15-17. Based on the "unambiguous" and "plain meaning" of the provision, Leane Defendants argue that § 2.8 is not a limitation on *who* ChanBond can contract with, but rather *what* costs or fees require CBV's approval before being deducted from the "Net Recoveries" calculation. *Id.* (emphasis added). Therefore, simply entering into the ASA without CBV's approval cannot constitute a breach of the PPA. *Id.*

The PPA selects Delaware law. *See* D.I. 8, Ex. A at § 8.5. Both parties contend that the provision is unambiguous. However, both are in steadfast disagreement as to the provision's meaning. *See* D.I. 44 at 7; D.I. 67 at 16; D.I. 8-7. The initial determination of whether a provision in a contract is ambiguous or unambiguous is a question of law for the Court to decide. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("The determination of ambiguity lies within the sole province of the court."). When a contract is clear and unambiguous—meaning the

10

language is unequivocal to an objective, reasonable third party—the court will give effect to the plain meaning of the contract's terms and provisions. *See, e.g., Osborn*, 991 A.2d at 1160; *NBC Universal v. Paxson Commc'ns*, C.A. No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005). However, where the language is susceptible to more than one reasonable interpretation, the provision is ambiguous and extrinsic evidence is admissible to glean the intent of the parties. *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195-96 (Del. 1992).

> Section 2.8 provides:
>
> > "**Net Recoveries**" shall mean the total aggregate Gross Recoveries less the total aggregate amount of costs and expenses incurred by or on behalf of [ChanBond] in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and other reasonable costs and expenses related to the maintenance, prosecution, enforcement, and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents Notwithstanding the above, any cost or expense which is paid to an Affiliate of [ChanBond] or to a stakeholder of [ChanBond] shall require the prior approval of [CBV], such approval to not be unreasonably withheld.

D.I. 44, Ex. A at § 2.8 (emphasis in original).

Although the parties disagree as to the meaning of § 2.8, this alone does not render the provision ambiguous. *Rhone-Poulenc*, 616 A.2d at 1196 ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."). Rather, the Court finds that § 2.8 is unambiguous because it is susceptible to but one reasonable interpretation. When the PPA is "read as a whole," *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021), § 2.8 is a definition which provides a limitation to what costs and fees require pre-approval from CBV to be eligible as a deduction when calculating Net Recoveries. Contrary to its position, § 2.8 does not purport to grant CBV an unfettered right of consent before ChanBond

11

enters into any affiliate agreement. D.I. 44 at 7-8; D.I. 81 at 6-8. To be sure, when compared with the language of § 8.3—which expressly provides for "the provision of written notice to" CBV prior to ChanBond assigning its rights and obligations under the PPA—§ 2.8 plainly does not grant a consent requirement, let alone a requirement to provide CBV with written notice. *See* D.I. 44, Ex. A at § 8.3. Instead, to an objective, reasonable third party, it is clear that § 2.8 defines the costs and fees which are deductible from Net Recoveries and provides a limitation as to the costs and fees requiring pre-approval from CBV to be eligible as a deduction. Thus, ChanBond did not breach § 2.8 of the PPA when it, without the pre-approval of CBV, entered into the ASA with IPNAV.

For these separate reasons, CBV has failed to demonstrate a likelihood of succeeding on its breach of contract claim based on ChanBond entering into an ancillary agreement, i.e., the ASA, with IPNAV.

### c. Delaware's Three-Year Statute of Limitations

Notably, Leane Defendants raise the question of whether CBV's breach of contract claims are time-barred by Delaware's three-year statute of limitations. D.I. 67 at 13-15. Leane Defendants contend that CBV's Counts III, IV, V, and VI—brought six years after the alleged breach of the PPA—are untimely under Delaware's statute of limitations because (1) CBV knew, or should have known, of the breach when ChanBond and IPNAV executed the ASA in 2015;[5] and (2) CBV knew, or should have known, of the alleged breach through a publicly disclosed SEC filing which memorialized Diedre Leane's 2015 sale of her membership interest in ChanBond to

---

[5] Leane Defendants assert that CBV knew of the ASA as early as 2015 when (1) CBV signed a Common-Interest Agreement contemporaneously with the PPA which notified CBV that IPNAV would provide patent monetization services to ChanBond (*see* D.I. 67 at 15; D.I. 49-1 at 16); and (2) CBV received multiple emails disclosing that ChanBond had hired IPNAV to provide patent monetization services (D.I. 67 at 15; D.I. 49-3; D.I. 49-4).

UnifiedOnline[6] through the ISA.[7] In response, CBV—citing to multiple declarations by CBV's principals—asserts that its claims are not time-barred because all of the evidence purportedly demonstrating CBV's knowledge of the ASA pre-dates the execution of the ASA. D.I. 81 at 4; *see, e.g.*, D.I. 81-5 at ¶ 2; D.I. 81-6 at ¶ 2; D.I. 81-7 at ¶ 2. Further, CBV contends that it did not know, nor should it have known, of the existence of the ASA or the ISA from UnifiedOnline's November 2015 Form 10-Q SEC filings because these filings failed to disclose the contents of either agreement, "nor [did] they contain information regarding material terms of the ASA that would warrant a finding [that] CBV knew or should have known of a potential claim regarding the ASA." D.I. 81 at 5.

The PPA is governed by Delaware law (D.I. 44, Ex. A at § 8.5), so a claim for breach of contract must be brought within three years from the time the contract is breached. *See* DEL. CODE ANN. tit. 10, § 8106. Based on the present record before the Court, and in the absence of some clearer understanding of what CBV purportedly knew or should have known, no fully informed judgments can be made regarding the probability of success, or failure, on the merits of these breach of contract claims. However, Leane Defendants have at least raised critical questions regarding whether CBV's claims are barred by the statue of limitations, or merely tolled as claimed by CBV. In the absence of clearer, and more compelling, evidence on this crucial question, it simply cannot be said that CBV has carried its burden of proving a reasonable likelihood of success

---

[6] UnifiedOnline, Inc., who is the parent company of ChanBond and was a defendant in the arbitration between Diedre Leane and ChanBond, is not a party to this present action.

[7] Leane Defendants assert that CBV knew of the ISA, which CBV claims is the underlying breach in Counts III and IV of its Complaint, since at least November 2015 because (1) CBV had actual knowledge of the sale of ChanBond to UnifiedOnline (*see* D.I. 67 at 15; D.I. 49-2); and (2) CBV accessed UnifiedOnline's publicly filed Form 10-Q SEC report which included a copy of the ISA and specifically disclosed the existence of the ASA between ChanBond and IPNav (see D.I. 67 at 15; D.I. 50 at 49).

on the merits. *See Husain v. Abdallah*, 570 F. Supp. 2d 582, 586-87 (D. Del. 2008) (holding that substantial doubts raised as to whether a movant's claims are time-barred precludes a finding of "likelihood of success on the merits."). Therefore, CBV'S Motion for Preliminary Injunction is denied.

### ii. Irreparable Harm

Having found that, based on the present record, CBV has failed to show a likelihood of success on the merits, the Court must deny its Motion for Preliminary Injunction. *Reilly*, 858 F.3d at 179 (to be entitled to preliminary injunctive relief, a movant must establish that it is both likely to succeed on the merits *and* that it is more likely than not to suffer irreparable harm absent an injunction) (emphasis added). Nonetheless, the Court will proceed to address CBV's argument that failing to enjoin ChanBond from distributing the Settlement Funds will cause it to suffer irreparable harm.

The movant seeking the preliminary injunction must demonstrate "that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The irreparable harm must be actual and imminent, not merely speculative, *see Shabazz v. Delaware Dep't of Correction*, C.A. No. 16-570-RGA, 2020 WL 998541, at *2 (D. Del. Mar. 2, 2020) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)), and must not be compensable via monetary damages. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement."). When the claim is based on a breach of contract, as is here, "irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract,

it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

CBV asserts that, in the absence of a preliminary injunction, it will suffer irreparable harm as it "faces a total destruction of its contractually bargained benefit under the PPA" if ChanBond can distribute the Settlement Funds. D.I. 44 at 9. By the same token, CBV claims that it will be irreparably harmed because ChanBond will be rendered "judgment-proof" by distributing the Settlement Funds, which itself is "difficult or impossible" to trace to the third parties. *Id.* at 8; D.I. 81 at 9. In response, ChanBond asserts that CBV's fear that it would be difficult or impossible to trace the funds to third parties is pure speculation and an "unsubstantiated fear" which alone cannot demonstrate irreparable harm. D.I. 66 at 9; *see also* D.I. 67 at 18 (Leane Defendants asserting that CBV has "presented no fact in support of" its speculative fear it will not be able to trace the distributed funds). Further, any potential harm is "by definition, reparable because it can be redressed exclusively by the payment of monetary damages." D.I. 66 at 9; *see also* D.I. 67 at 17 (Leane Defendants agreeing with ChanBond that CBV alleges "*only* potential economic harm, for which it seeks *only* monetary damages," not injunctive relief) (emphasis in original).

On this record, CBV has established that it may be required to trace the distributed funds to third parties if it were to prevail against ChanBond. However, CBV's assertion that tracing may be "difficult or impossible" is speculative and cannot serve as the grounds for finding irreparable harm without additional evidence. *See Winter*, 555 U.S. at 22 ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."). CBV's contention that ChanBond will be rendered "judgment proof" if allowed to distribute the Settlement Funds fares no better. While the Court acknowledges that Leane Defendants agree with CBV on this point, like CBV, this self-serving statement is devoid of any evidence. In fact, equitable causes of

action exist for the purpose of reclaiming monies wrongfully distributed to third parties. *See, e.g., Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (a claim of unjust enrichment exists where a party unjustly retains "a benefit to the loss of another, or the retention of money or property of another" against the principles of justice or equity); *In re Green Field Energy Servs., Inc.*, 610 B.R. 760, 775 (D. Del. 2019), *aff'd*, 834 F. App'x 695 (3d Cir. 2020) ("[A] constructive trust is an equitable remedy of great flexibility and generality" which allows an aggrieved party to recover traceable monies unjustly retained by third parties). CBV and Leane Defendants offer no legal reasons, other than conclusory assertions, why they could not seek to pursue the third parties for any amounts that may later be found to have been wrongfully distributed.

In view of the above conclusions on the likelihood of success on the merits and on irreparable harm, the Court need not make any findings concerning the third and fourth factors. *Univar Sols. Inc. v. Geisenberger*, C.A. No. 18-1909 (MN), 2022 WL 2064990, at *10 (D. Del. June 8, 2022) ("The absence of either a reasonable likelihood of success or of irreparable harm is sufficient to deny Plaintiff's request for a preliminary injunction.") (citing *Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012)). Thus, because CBV failed to establish the first two factors, i.e., likelihood of success on the merits and irreparable harm, the court denies CBV's Motion for Preliminary Injunction.

The Court will issue an Order consistent with this Memorandum Opinion.