# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

(302) 658-9200
(302) 658-3989 FAX

**JENNIFER YING**
(302) 351-9243
(302) 225-2570 FAX
jying@morrisnichols.com

January 20, 2023

The Honorable Gregory B. Williams                                    *VIA ELECTRONIC FILING*
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

      Re:    <u>*CBV, Inc. v. ChanBond, LLC et al.*, C.A. No. 21-1456 (GBW)</u>

Dear Judge Williams:

      I write on behalf of the Non-Party Cable Companies[1] pursuant to the Court's January 13 Order directing us to file a letter brief demonstrating good cause for why the underlying settlement agreement and its terms should remain confidential and under seal consistent with applicable authority, including the directives in *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 924 F.3d 662, 670 (3d Cir. 2019).  (D.I. 200.)

      As discussed below, the private settlement would not have been executed but for the bargained-for confidentiality provision.  Filing this private agreement or its terms in the public record thus eviscerates the intention of the parties and causes a clearly defined and serious injury.  Moreover, the interests of the public are minimal in instances like here where the settlement was between private parties.  For these reasons and the reasons set forth herein, there is good cause for maintaining the confidential status of any documents filed in this case that reference the underlying settlement agreement and its terms.  Accordingly, the Non-Party Cable Companies respectfully request that the Court keep the underlying settlement agreement and its terms under seal.[2]

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

      In 2015, ChanBond, LLC ("ChanBond") filed a series of patent infringement lawsuits in

---

[1] The Non-Party Cable Companies are defendants in C.A. Nos. 15-842 through 15-854 (RGA) ("ChanBond-Cable Litigation").

[2] Counsel for the Non-Party Cable Companies conferred with counsel for ChanBond, CBV, and Deirdre Leane and IPNav regarding this request.  ChanBond does not oppose maintaining the confidentiality of the underlying settlement and its terms.  CBV, Deirdre Leane, and IPNav take no position on Non-Party Cable Companies' request.

the District of Delaware against the Non-Party Cable Companies. (D.I. 5, Redacted Compl., ¶ 42.) Those lawsuits were consolidated in 2017 and settled in the course of a jury trial four years later in 2021. (*Id*. ¶¶ 43–45.) The ChanBond-Cable Litigation was then dismissed in July 2021. (*See, e.g.*, C.A. No. 15-842, D.I. 591, 592.) This case was filed shortly thereafter, on October 15, 2021, and stems from a dispute between the named inventors of the patents at issue in the ChanBond-Cable Litigation, CBV, Inc. ("CBV"), and ChanBond regarding the distribution of settlement funds. (D.I. 5, ¶¶ 43–45.) Because the underlying settlement agreement between ChanBond and the Non-Party Cable Companies is highly confidential, CBV and ChanBond have requested (and been granted permission) to file several papers under seal containing references to the underlying settlement agreement and its terms.³

On May 19, 2022, Gregory Collins and Kamal Mian, two shareholders of UnifiedOnline, Inc. ("UOI") (the entity that owns ChanBond), moved to intervene in this action seeking to unseal various filings, including filings containing the amount of the underlying settlement. (D.I. 101.) Collins and Mian (the "UOI Shareholders") claimed to have been "unduly hampered in their efforts" by the under-seal filings when previously moving to intervene derivatively on behalf of UOI. (*Id*. at 1.) In their motion, the UOI Shareholders stated that one of the documents they seek to unseal is an arbitration award filed by ChanBond that contained a reference to the underlying settlement amount. (*Id*. at 6.) Their motion, however, does not reference or cite any filing of the underlying settlement agreement itself. (*Id*.) In their reply, the UOI Shareholders, with no citation to any filed document, request that the "Court unseal all records filed in this case, including a fully unredacted version of the Settlement Agreement." (D.I. 120.)

On August 5, 2022, counsel for the UOI Shareholders filed a letter with the Court notifying the Court that a complaint in a New York state court action contains references to the total amount of the underlying settlement. (D.I. 137.) That action was filed against ChanBond by its prior attorneys, Mishcon de Reya. On November 30, 2022, one day after learning of the improper disclosure of the settlement amount, counsel for the Non-Party Cable Companies sent a letter to counsel for Mishcon de Reya demanding that they seal the New York complaint. (Ying Decl., Ex B.) Counsel for Mishcon de Reya called counsel for the Non-Party Cable Companies the same day, and after conferring with other parties to their suit, filed a motion to seal, which is currently pending in that action. (*See* Ying Decl. Ex. C, NY Docket Sheet.) The Non-Party Cable Companies also immediately filed a letter with this Court requesting that the underlying settlement agreement and its terms, including the total settlement amount, remain confidential. (D.I. 190.)

On January 13, 2023, this Court ordered the Non-Party Cable Companies to file this letter brief setting forth "good cause" to maintain the confidentiality of the underlying settlement agreement and its terms. (D.I. 200.)

## II.   LEGAL STANDARD

Courts apply a "good cause" standard to justify sealing or redacting judicial records, which requires a "balancing process, in which courts weigh the harm of disclosing information against the importance of disclosure to the public." *Kaleo, Inc. v. Adamis Pharms. Corp*., No. 19-917-

---

³ CBV and ChanBond also filed under seal information related to other agreements. The Non-Party Cable Companies take no position regarding the confidentiality of documents other than documents containing information relating to the underlying settlement agreement of the ChanBond-Cable Litigation.

RGA, 2019 WL 11680196, at *1 (D. Del. July 16, 2019) (citing *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507–08 (D. Del. 2012)). While there is a strong presumptive right of access to judicial records, that right is not absolute. *In re Avandia*, 924 F.3d at 672. This presumption can be overcome if the movant seeking to maintain confidentiality shows "that the interest in secrecy outweighs the presumption" and that disclosure will cause "a clearly defined and serious injury" to the movant. *Kaleo, Inc.*, 2019 WL 11680196, at *1.

### III.   ARGUMENT

**a.   The ChanBond-Cable Litigation settlement agreement is not on the docket and therefore not subject to unsealing.**

As a threshold matter, the UOI Shareholders' motion to unseal (*see* D.I. 101) should be summarily rejected as it relates to the underlying settlement agreement because that document has not been filed in this case. Sealing refers to sealing *judicial records*, and to be clear, "only documents filed with the court clerk are judicial records." *In Re Search of 1993 Jeep Grand Cherokee*, Nos. 96–91M to 96–93M, 1996 WL 768293, at *2 n.3 (D. Del. 1996). Therefore, the UOI Shareholders' request that the "Court unseal all records filed in this case, including *a fully unredacted version of the Settlement Agreement*" (D.I. 120) (emphasis added), is meaningless with respect to a full version of the underlying settlement agreement since it has not been filed, and thus cannot be unsealed by motion.[4]

**b.   The disclosure of the underlying private settlement agreement or its terms would cause serious harm.**

The underlying settlement agreement and its terms should remain confidential because the settlement agreement was entered into contingent upon confidentiality. (Ying Decl., Ex. A, Decl. of M. Delgado ¶¶ 1–4); *In re: Paulsboro Derailment Cases*, No. 13-2358 (RBK/KMW), 2016 WL 6089700, at *2 (D. N.J. Oct. 17, 2016) ("Where [a party] would not have entered into the settlement agreement but for assurance of confidentiality, the court may grant a motion to seal."). Maintaining the confidential status of the documents referencing the underlying settlement agreement is thus crucial to maintain the bargain of the parties to the agreement. *See Morgan v. Wal-Mart Stores, Inc.*, CIV. A. 14-4388 MAS, 2015 WL 3882748, at *2 (D. N.J. June 23, 2015) (granting motion to seal where "disclosure would result in the dissemination of confidential settlement negotiations and confidential settlement amounts"); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 592 F. Supp. 2d 825, 827 (E.D. Pa. 2009) (upholding sealing of an arbitration award and noting that the parties entered into a confidentiality agreement).

Here, stripping the Non-Party Cable Companies of their bargain would cause them a clearly defined and serious injury. *E.g.*, *Volkswagen Grp. of Am., Inc. v. N. Am. Automotive Servs., Inc.*, No. 20-15319 (MCA) (LDW), 2021 WL 1413391, at *2 (D. N.J. Feb. 1, 2021) (citing *In re Avandia* and holding that the plaintiff will "suffer a clearly defined and serious injury if the terms of the Settlement Agreement are made public in that disclosure would deprive plaintiff of the benefit of a bargained-for contractual confidentiality provision"); *Bank of Hope v. Chen*, No. 2:14-

---

[4] To the extent that the UOI Shareholders are demanding that the settlement agreement be filed in the first instance, a motion to unseal is an improper vehicle for such a request. The standards for sealing records only apply to documents that are "judicial records." *In re Cendant Corp.*, 260 F.3d 183, 192–93 (3d Cir. 2001).

cv-01770-KM-JAD, 2020 WL 2793124, at *2 (D. N.J. May, 29 2020) ("The Movants would be injured if the settlement amount and the amount which effectively discloses the settlement amount in the Documents are not redacted, because public disclosure of that information would constitute breach of the Movants' Settlement Agreement.").

In addition to the harm of removing the Non-Party Cable Companies' bargained-for confidentiality, the disclosure of the settlement agreement and its terms would enact other specific and identifiable harms on the Non-Party Cable Companies. For example, if the settlement agreement or its terms were disclosed, there will be competitive business or reputational harms because the clients or customers of any of the parties to the settlement agreement could view the private settlement or learn of its terms. The Third Circuit has held that courts may exercise that power to deny access to judicial records, for example, "where they are sources of business information that might harm a litigant's competitive standing." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). For these same reasons, courts permit the sealing of pricing information. *See, e.g.*, *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) ("[T]erms that relate to pricing, valuation, monetary payments, and financial information should be protected.")

### c.     The public interest in the private settlement agreement or its terms is minimal.

The UOI Shareholders purport to bring their motion on behalf of the public; however, its specific alleged grievance is that *UOI shareholders* should know the amount of the settlement. (D.I. 101 at 6.) The UOI Shareholders have not shown that the public has any such interest in the settlement amount.

Here, the underlying settlement agreement was entered into by private litigants. And the subject matter of the patent lawsuits is not related to public health and safety. Nor is it a class action or an anti-trust matter. Therefore, the interest of the public is minimal. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (finding the public interest in settlement agreement is minimal when "[t]he parties are private entities, their dispute has no impact on the safety and health of the public, and their settlement agreements demonstrate a clear intent to maintain confidentiality"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783 (3d Cir. 1994) ("[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality."); *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-cv-01609-JFC, 2019 WL 3778090, at *10 (W.D. Pa. July 26, 2019) (noting that the public has a heightened interest in class actions and anti-trust matters).

Moreover, the parties to the underlying settlement agreement did not seek approval of the private settlement and have not sought the Court's assistance in interpreting or enforcing the settlement agreement, further diminishing the interest of the public. *C.f. Bank of Am. Nat'l Tr. v. Hotel Rittenhouse*, 800 F.2d 339, 345 (3d Cir.1986) ("Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements.").

For these reasons, the interests of the public in the underlying settlement agreement and its terms are minimal.

### d. Short-term disclosures of the settlement amount do not support unsealing.

The disclosure of the settlement amount by Mishcon de Reya, ChanBond's prior attorneys, in the New York state court action does not dictate a different outcome here. *See, e.g.*, *IsoNova Techs. LLC v. Rettig*, No. 20-CV-71-CJW-KEM, 2021 WL 7185229, at *3 (N.D. Iowa Mar. 16, 2021) ("That the information was available on the public docket for a relatively short period of time does not necessarily mean it must remain publicly available. The existence of some harm that has already occurred should not prevent the Court from trying to prevent additional harm in the future.")[5] First, Mishcon de Reya only revealed the total settlement amount. By contrast, UOI seeks to have the entirety of the settlement agreement made public. Further, once alerted to their error, Mishcon de Reya acknowledged that the settlement amount should not have been revealed and promptly moved to seal that information in the New York court. (Ying Decl. Ex. D) ("Counsel for the parties in this action conferred and agreed that the settlement value from the [ChanBond-Cable Litigation] is confidential."). Moreover, the Non-Party Cable Companies promptly contacted counsel in that case upon learning about the disclosure, demonstrating clear intent to maintain the confidentiality of the settlement amount. (Ying Decl. Ex. B.)

\* \* \*

The UOI Shareholders' improper attempt to publicize a private agreement—an agreement that was *never even filed*—in which the parties to that agreement specifically bargained-for confidentiality should be rejected. In summary, consistent with the *In re Avandia* directives, there is good cause to maintain confidentiality of the underlying settlement agreement and its terms because: (i) the private settlement would not have been executed but-for the confidentiality provision, and (ii) a destruction of the confidentiality provision of the settlement agreement is a clearly defined and serious injury. Balancing this injury with the minimal interest of the public supports continued sealing. The Non-Party Cable Companies thus respectfully request that the Court maintain the confidentiality of the underlying settlement agreement by upholding the sealing of any documents filed in this case that reference the underlying settlement agreement and its terms.

Respectfully,

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

JY/lo
cc: Clerk of the Court (via hand delivery)
     All Counsel of Record (via CM/ECF and email)
     Krishnan Padmanabhan, Esq. (via email)
     David Enzminger, Esq. (via email)

---

[5] In a footnote in their reply brief, the UOI Shareholders argue that a promptly corrected inadvertent disclosure by ChanBond also suggests that the underlying settlement agreement amount should not remain confidential. (D.I. 120 n.1.) This is also unavailing. *See IsoNova Techs. LLC*, 2021 WL 7185229, at *3.