# EXHIBIT C

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "**Agreement**"), made effective as of April 20, 2023 ("**Effective Date**"), is entered into by and between CBV, Inc. ("**CBV**") and ChanBond, LLC ("**ChanBond**"). CBV and ChanBond will at times hereinafter be referred to collectively as "Parties" and individually as "Party."

### RECITALS

A. A dispute has arisen between the Parties regarding the Patent Purchase Agreement between CBV and ChanBond dated April 9, 2015 (the "**PPA**").

B. The Parties are presently litigating the above-mentioned dispute in *CBV, Inc. v. ChanBond, LLC, Dierdre Leane and IPNAV, LLC*, C.A. No. 1:21-cv-01456-GBW, currently pending in the United States District Court for the District of Delaware (the "**Action**").

C. Each Party denies and does not admit to any liability, but in order to avoid the expense, inconvenience, and uncertainty of continuing of this dispute, the Parties have agreed to this confidential settlement agreement containing mutual releases.

D. This Agreement shall provide for, without limitation, the full settlement and release of all claims, counterclaims, and causes of action of any kind whatsoever, known or unknown that have been or could be asserted between the Parties, including but not limited to those asserted by both parties in the Action.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained in this Agreement, and for other good and valuable consideration, the receipt of which the Parties hereby acknowledge, the Parties agree as follows:

### TERMS

**1. Purpose of Agreement.**

This Agreement is entered into by the Parties in good faith for the purpose of settling the Action. Each Party acknowledges that this Agreement affects, among other things, the settlement of claims which are denied and contested by the other, and that nothing contained herein shall be construed as an admission of liability or wrongdoing by or on behalf of either Party, all of which liability is expressly denied.

**2. Settlement Payments and Cooperation.**

In consideration for the releases set forth below:

2.1 ChanBond shall pay CBV Four Million Dollars ($4,000,000.00) by electronic transfer within seven (7) calendar days of the execution of this Agreement setting forth the attendant release referenced below in Section 3.

2.2 Within seven (7) calendar days of receipt thereof, CBV shall pay ChanBond Twenty-Five Percent (25%) of any net recovery received from the Leane Defendants less documented litigation expenses incurred by CBV after the Effective Date, up to Two Hundred Fifty Thousand Dollars ($250,000.00) (the "**ChanBond Recovery Payment**"), which ChanBond Recovery Payment shall not exceed Five Hundred Thousand Dollars ($500,000.00).

2.3 ChanBond shall provide reasonable cooperation in CBV's pursuit of claims against Deirdre Leane and IPNAV, LLC, including, but not limited to not opposing CBV's Second Amended Complaint in the Action, and to providing truthful affidavits in support of CBV's Court submissions in the Action.

2.4 CBV shall have the sole authority to enter into any settlement agreement with Leane Defendants, but shall provide updates to ChanBond about the status of any such negotiations and disclose to ChanBond drafts and execution versions of any such agreements upon request.

3. **Mutual Release of Claims**.

3.1 Upon receipt of the fully executed Agreement and total payment of the Settlement Sum referenced in Section 2, CBV, on behalf of itself and its respective parents, affiliated corporations, companies and divisions, subject to the deferred dismissal of 4.2 below, hereby generally releases, acquits and forever discharges ChanBond, Unified Online, Inc., William R. Carter, Jr. and any of their respective parents, subsidiaries, affiliates, present and former officers, directors, shareholders, partners, managers, members, employees, agents, insurers, customers, and attorneys, and, where applicable, their respective predecessors, heirs, executors, assigns, administrators and representatives (collectively the "**ChanBond Released Parties**"), and each of them, of and from any and all agreements, complaints, controversies, damages, duties, grievances, loss, liability, omissions, promises, remedies, claims, expenses, debts, demands, costs, contracts, obligations, actions, causes of action, and rights (contingent, accrued, inchoate, or otherwise), known or unknown, foreseen or unforeseen, directly or indirectly arising from or out of, growing out of, or based upon, in whole or in part, or attributable to, events, acts or omissions, occurring in whole or in part from the beginning of time to the Effective Date, regardless of whether any such claims or causes of action have yet accrued, including all claims relating to the PPA, except for those obligations set forth in this Agreement, which shall not be released until performed or waived.

3.2 Upon receipt of the fully executed Agreement and total payment of the Settlement Sum referenced in Section 2, ChanBond, on behalf of itself and its respective parents, affiliated corporations, companies and divisions, hereby generally releases, acquits and forever discharges CBV and any of its respective parents, subsidiaries, affiliates, present and former officers, directors, shareholders, partners, managers, members, employees, agents, insurers, customers, and attorneys, and, where applicable, their respective predecessors, heirs, executors, assigns, administrators and representatives, and each of them, of and from any and all agreements, complaints, controversies, damages, duties, grievances, loss, liability, omissions, promises, remedies, claims, expenses, debts, demands, costs, contracts, obligations, actions, causes of action, and rights (contingent, accrued, inchoate, or otherwise), known or unknown, foreseen or unforeseen, directly or indirectly arising from or out of, growing out of, or based upon, in whole or in part, or attributable to, events, acts or omissions, occurring in whole or in part from the beginning of time to the Effective Date, regardless of whether any such claims or causes of action have yet accrued, including all claims relating to the PPA, except for those obligations set forth in this Agreement, which shall not be released until performed or waived.

3.3 For the avoidance of doubt, the Parties acknowledge that the releases provided for in this Agreement do not in any way constitute satisfaction of the obligations provided for in the PPA. Notwithstanding the acknowledgement contained in this Section 3.3, all mutual releases contained in this agreement are fully binding and enforceable between the Parties.

4. **Dismissal with Prejudice.**

    4.1 CBV agrees to dismiss with prejudice and release all breach of contract claims against ChanBond, said dismissal indicating that the parties shall bear their own attorneys' fees and costs.

    4.2 As soon as reasonably practicable and without further consideration, CBV will dismiss with prejudice the remaining declaratory judgment and specific performance claims against ChanBond once CBV's claims against Leane Defendants are completely resolved (i.e., deferred dismissal). CBV will not seek any monetary or other relief against ChanBond, and such claims shall remain only because CBV believes they are necessary to recover against the Leane Defendants. CBV will hold the ChanBond Releasees harmless in connection with any counts that remain.

5. **Additional Representations and Warranties.**

CONFIDENTIAL                    FOR ATTORNEYS' EYES ONLY                    CBV-00006439

5.1  Each Party acknowledges the risk that subsequent to the execution of this Agreement, a Party may discover facts or may incur, suffer or discover losses, damage or injuries which are unknown and unanticipated at the time this Agreement is signed, which if known on the date of this Agreement, may have materially affected its decision to give the release contained in this Agreement. Despite this knowledge and understanding, each Party hereby assumes the risk of such unknown and unanticipated facts and claims, and, except as otherwise provided in this Agreement, hereby waives any alleged right to set aside or rescind this Agreement.

5.2  Each of the Parties represents and warrants that it has been represented by or had an opportunity to consult legal counsel as to its rights and the consequences of signing this Agreement. The Parties further represent and acknowledge that they fully understand and appreciate the meaning of each of the terms of this Agreement and that they understand that they may be waiving legal rights or claims by signing this Agreement and that they are voluntarily entering into this Agreement with a full and complete understanding of its terms and legal effect and with the intent to be legally bound by this Agreement.

5.3  Each of the Parties represents and warrants that, in executing this Agreement, it has relied solely on the statements expressly set forth herein, and has placed no reliance whatsoever on any statement, representation, or promise of the other Party, or any other person or entity, not expressly set forth herein, or upon the failure of the other Party or any other person or entity to make any statement, representation or disclosure of anything whatsoever. The discovery by a Party, subsequent to the execution of this Agreement, of any facts not heretofore known to that Party, or that the facts or law upon which a Party relied in executing this Agreement was not as that Party believed it to be (other than as expressly set forth herein), shall *not* constitute grounds for declaring this Agreement void, avoidable or otherwise unenforceable. This paragraph is intended by the Parties to preclude any claim that either Party was fraudulently induced to enter this Agreement, or was induced to enter this Agreement by a mistake of fact or law.

## 6. Delaware Law.

All questions with respect to the construction of this Agreement and the rights and liabilities of the Parties hereto shall be governed by the substantive laws of the State of Delaware, or where pre-empted, by the appropriate body of federal law, and any complaint or lawsuit seeking adjudication or redress of same shall be brought in the United States District Court for the District of Delaware.

## 7. Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or otherwise electronically transmitted signatures may be used with the same force and effect as original signatures.

8. <u>Captions</u>.

The captions of paragraphs contained in this Agreement are for reference only and are not to be construed in any way as a part of this Agreement.

9. <u>Costs</u>.

Each Party will bear its own costs, expenses, and attorneys' fees that it has heretofore incurred in connection with or arising out of the matters set forth in the Recitals hereinabove, the matters and claims released hereunder and the negotiation of this Agreement.

10. <u>Entire Agreement</u>.

This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. Each of the Parties hereto covenants that it has not entered into this Agreement as a result of any representation, agreement, inducement or coercion, except to the extent specifically provided herein. Each Party hereto further covenants that the consideration recited herein is the only consideration for entering into this Agreement, and that no promises or representations of other or further consideration have been made by any person.

11. <u>Binding Effect</u>.

This Agreement shall be binding upon and inure to the benefit of the Parties hereto and to their respective heirs, representatives, successors and assigns.

12. <u>Further Assurances and Cooperation</u>.

Each Party agrees that it will take such action and execute such further documents as may be reasonably necessary or appropriate to fulfill the purposes expressed in this Agreement and to perform the terms and conditions of it.

13. <u>No Oral Modification</u>.

The Parties agree that any subsequent amendment or modification to this Agreement shall be deemed to be null and void unless such amendment or modification is in writing, specifically refers to this Agreement, and is signed by both Parties.

CONFIDENTIAL                    FOR ATTORNEYS' EYES ONLY                    CBV-00006441

## 14. Confidentiality.

Unless otherwise agreed to in writing by each of the Parties, ordered by the Court, or otherwise compelled to by legal process, each Party shall hold this Agreement and each of its terms in strict confidence. No Party shall communicate any of the terms of this Agreement, other than that it represents an amicable resolution of the Action, with no admission of liability, and is confidential, to any person or entity except under the compulsion of legal process. Any Party compelled by Court Order to make such communication shall give every other Party to the Agreement written notice within five (5) business days after receipt or notice of such legal process. The notice shall set forth with particularity the person or entity to whom such disclosure or communication is to be made, the information to be communicated, and the purpose(s) (if known) for such communication, and shall include a copy of the legal process compelling such communication. In no event shall production or disclosure of the Agreement be made before twenty (20) days after giving such notice to the other Parties, unless ordered by a court or otherwise required by law to make such disclosure prior to the expiration of twenty (20) days.

## 15. Miscellaneous.

15.1   The terms of this Agreement have been negotiated at arm's length between sophisticated Parties. As a result, the rule of "interpretation against the draftsman" shall not apply in any dispute over interpretation of the terms of this Agreement.

15.2   When necessary, all terms used in the singular shall apply to the plural, the masculine shall include the feminine, and all terms used in the plural shall apply to the singular.

## 16. Severability.

If any term or provision of this Agreement is held to be invalid or unenforceable, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable term shall be deemed amended and limited in accordance with the intent of the Parties, as determined from the face of the Agreement, to the extent necessary to permit the maximum enforceability or validation of the term or provision.

**PARTY SIGNATURES IN ACKNOWLEDGEMENT OF THE FOREGOING**

I HAVE READ THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE AND I ACCEPT AND AGREE TO THE PROVISIONS CONTAINED THEREIN AND HEREBY EXECUTE IT VOLUNTARILY AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

Dated: ~~March~~ 20, 2023
APRIL

CBV, INC.

Name: *[signature] Earl Hennenhoefer*
Title: CEO

Dated: April 19, 2023

CHANBOND, LLC

Name: William Carter
Title: Manager

**CONFIDETNTIAL**

**CBV/ChanBond Settlement Term Sheet**

-ChanBond shall pay CBV $4,000,000 of the remaining amounts held by ChanBond in escrow, within seven (7) days of the later of execution of a definitive agreement or receipt of the releases referenced below.

-CBV agrees to dismiss with prejudice and release all breach of contract claims against ChanBond. CBV will dismiss the remaining declaratory judgment and specific performance claims against ChanBond once CBV's claims against Leane Defendants are completely resolved. Nevertheless, CBV will hold ChanBond harmless in connection with any relief sought in any counts that remain.

- CBV will provide general releases to ChanBond, Unified Online, Inc., William R. Carter, Jr., and any of their affiliates or related entities, and releasing any and all causes of action, claims and remedies, and holding such individuals harmless for any liability for any counts that remain against ChanBond.

-CBV shall pay ChanBond 25% of an amount equal to gross recoveries received from the Leane Defendants less CBV's litigation expenses up to $250,000 (the "ChanBond Recovery Payment"), which shall not exceed $500,000, and shall be made to ChanBond within seven (7) days of receipt of such funds. For example, on a recovery from Leane Defendants of $2,250,000 (or greater), CBV shall pay ChanBond 25% (2,250,000 - $250,000) = $500,000. On a recovery of $1,250,000 less litigation expenses capped at $250,000, CBV shall receive $750,000 and ChanBond shall receive $250,000.

-ChanBond shall provide reasonable cooperation in CBV's pursuit of claims against Leane Defendants, including but not limited providing affidavits in support of submissions.

-All terms of this agreement shall remain confidential.

- The parties intend to memorialize the terms of their settlement in a fully integrated agreement. In the event those efforts are unsuccessful, this term sheet shall be binding and enforceable.

SIGNED AND AGREED:

| | |
|---|---|
| **BUCHANAN INGERSOLL & ROONEY PC** | **BAYARD, P.A.** |
| */s/ Geoffrey G. Grivner* | */s/ Stephen B. Brauerman* |
| Geoffrey G. Grivner (No. 4711)<br>Kody M. Sparks (No. 6464)<br>500 Delaware Avenue, Suite 720<br>Wilmington, DE 19801<br>(302) 552-4200<br>geoffrey.grivner@bipc.com<br>kody.sparks@bipc.com | Stephen B. Brauerman (No. 4952)<br>Ronald P. Golden III (No. 6254)<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>rgolden@bayardlaw.com |
| *Attorneys for CBV, Inc.* | *Attorneys for ChanBond, LLC* |

CONFIDENTIAL   FOR ATTORNEYS' EYES ONLY   CBV-00006445