# **EXHIBIT 2**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is made and entered into as of the date on which the final party executes the Agreement (the "Effective Date"), by and among IPNAV, LLC ("IPNAV") and Deirdre Leane ("Leane" and, collectively with IPNAV, the "IPNAV Parties"), on the one hand, and ChanBond, LLC ("ChanBond"), UnifiedOnline, Inc. ("Unified"), and William Ralph Carter, Jr. ("Carter" and, collectively with ChanBond and Unified, the "ChanBond Parties," and, collectively with the IPNAV Parties, the "Parties" and each a "Party").

## RECITALS

WHEREAS, IPNAV and ChanBond are parties to an Advisory Services Agreement dated as of April 9, 2015 (the "ASA"); and

WHEREAS, the IPNAV Parties on the one hand, and ChanBond and Unified on the other, participated in an arbitration before the American Arbitration Association, captioned *IPNAV, LLC and Deirdre Leane v. UnifiedOnline, Inc. and ChanBond, LLC* (the "Arbitration"), which addressed, *inter alia*, the validity of the ASA and the IPNAV Parties' assertion that ChanBond was required to pay IPNAV pursuant to its terms; and

WHEREAS, on May 18, 2022, the panel in the Arbitration issued a final award in favor of the IPNAV Parties, finding the ASA valid and enforceable and directing the respondents to pay $27,500,000.00 in damages, plus interest, costs, and attorneys' fees (the "Award"); and

WHEREAS, the IPNAV Parties have brought a claim in the District of Delaware to confirm the Award, in the case captioned *CBV, Inc. v. ChanBond, LLC, Deirdre Leane, and IPNAV, LLC*, C.A. No. 21-1456-GBW (the "Action"); and

WHEREAS, ChanBond interposed an Answer opposing confirmation of the Award, and a Counterclaim for vacatur of the Award, alleging, among other reasons, the Panel had exceeded its

authority by failing to declare the ASA void as purportedly executed in breach of Section 2.8 of the Patent Purchase Agreement between ChanBond and CBV, Inc. ("CBV") dated April 9, 2015 (the "PPA"); and

WHEREAS, in response to a motion filed by CBV in the Action, the Court entered a decision and order finding that the PPA unambiguously did not bar ChanBond from entering the ASA without CBV's approval and that the execution of the ASA therefore did not breach Section 2.8 of the PPA; and

WHEREAS, the amount due on the Award as of the Effective Date is $31,269,260.14, with interest that would continue to accrue in the amount of $4,197.22 per day; and

WHEREAS, the Court's decision and order substantially diminished ChanBond's likelihood of success on the pending claim to vacate the Award and in light of the daily interest obligation owed on the Award, which would quickly deplete ChanBond's remaining resources, ChanBond determined to enter into this Agreement; and

WHEREAS, Leane has filed an action in North Carolina, captioned *Dr. Deirdre Leane, derivatively on behalf of Unified Online, Inc. v. William Ralph Carter, Jr.*, No. 21 CVS 5405 (Superior Court, Guilford County) alleging certain derivative claims against Carter on behalf of Unified (the "Derivative Action"); and

WHEREAS, Carter has denied the allegations against him in the Derivative Action; and

WHEREAS, the Parties have agreed to settle all disagreements and disputes which exist between them.

## AGREEMENT

1.  **Payment**. ChanBond shall pay IPNAV $30,000,000.00 by wire transfer to IPNAV's attorneys, Kamerman, Uncyk, Soniker & Klein, P.C., pursuant to the wire instructions annexed

hereto as Exhibit A (the "Payment"), in full satisfaction of the amount due pursuant to the Award and ASA. The wire transfer shall be initiated on or before October 25, 2022.

2. **Surrender of Unified Shares**. Within five (5) business days of the later of receipt of the Payment and the Parties' full execution of this Agreement, Leane shall execute a share transfer power in the form annexed hereto as Exhibit B, surrendering to Unified each and all of her shares in Unified.

3. **Resolution of Claim for Confirmation of Arbitration Award**. Within five (5) business days of the later of receipt of the Payment and the Parties' full execution of this Agreement, counsel for ChanBond and the IPNAV Parties in the Action shall cause to be filed a stipulation and Proposed Order, in the form annexed hereto as Exhibit C, dismissing the IPNAV Parties' claims for confirmation of the Award and ChanBond's claim for vacatur of the Award.

4. **Dismissal of the Derivative Action**. Within five (5) business days of the later of receipt of the Payment and the Parties' full execution of this Agreement, Leane shall, jointly with Carter and Unified, submit a joint motion to dismiss the Derivative Action on the basis that Leane is no longer a shareholder in Unified and therefore lacks standing to pursue derivative claims on its behalf.

5. **Releases**.

   a. **By IPNAV Parties**. For the consideration herein recited, and effective upon the later of receipt of the Payment and the Parties' full execution of this Agreement, IPNAV Parties, jointly and severally, on their own behalf, on behalf of any corporation, trust, or other entity they control, have an ownership stake in, or represent, and on behalf of their respective present and former officers, directors, shareholders, managers, agents, servants, attorneys, accountants, insurers, representatives, employees, partners (including limited partners), members, equity holders, subsidiaries, executors, affiliates, spouses, children,

ancestors, descendants, other family members, beneficiaries and heirs, administrators and successors in interest, each in their capacity as such (the "IPNAV Releasors"), knowingly, voluntarily, irrevocably release and waive all claims, known or unknown, that each has, had or may have against the ChanBond Parties, their children, any corporation, limited liability company, trust entities, or any other entities now or previously under their control or owned by them (including their successors in interest, officers, directors, shareholders, managers), agents, servants, attorneys, accountants, insurers, representatives, employees, partners, transferees, limited partners, equity holders, subsidiaries, executors, affiliates, spouses, descendants, beneficiaries and heirs, administrators and successors in interest, each in their capacity as such (the "ChanBond Releasees") arising from or relating to any matter or dispute, including without limitation any and all claims, demands, obligations, losses, causes of actions, damages, penalties, costs, expenses, attorneys' fees, obligations and liabilities, of whatever kind or nature, whether based on contract, tort, statute or other legal or equitable theory of recovery, which accrued or could have accrued at any time prior to and through the Execution Date of this Agreement (the "IPNAV Release"). Notwithstanding the foregoing, the IPNAV Release shall not apply to any obligations of the ChanBond Releasees that are created by and expressly set forth in this Agreement.

    b.    **By ChanBond Parties**. For the consideration herein recited, and effective immediately upon full execution of this Agreement, ChanBond Parties, jointly and severally, on their own behalf, on behalf of any corporation, trust, or other entity they control, have an ownership stake in, or represent, and on behalf of their respective present and former officers, directors, shareholders, managers, agents, servants, attorneys, accountants, insurers, representatives, employees, partners (including limited partners), members, equity holders, subsidiaries, executors, affiliates, spouses, children, ancestors, descendants, other family

4

members, beneficiaries and heirs, administrators and successors in interest, each in their capacity as such (the "ChanBond Releasors"), knowingly, voluntarily, irrevocably release and waive all claims, known or unknown, that each has, had or may have against the IPNAV Parties, their children, any corporation or trust entities now or previously under their control or owned by them (including their successors in interest, officers, directors, shareholders, managers), agents, servants, attorneys, accountants, insurers, representatives, employees, partners, transferees, limited partners, equity holders, subsidiaries, executors, affiliates, spouses, descendants, beneficiaries and heirs, administrators and successors in interest, each in their capacity as such (the "IPNAV Releasees") arising from or relating to any matter or dispute, including without limitation any and all claims, demands, obligations, losses, causes of actions, damages, penalties, costs, expenses, attorneys' fees, obligations and liabilities, of whatever kind or nature, whether based on contract, tort, statute or other legal or equitable theory of recovery, which accrued or could have accrued at any time prior to and through the Execution Date of this Agreement (the "ChanBond Release"). Notwithstanding the foregoing, the ChanBond Release shall not apply to any obligations of the IPNAV Releasees that are created by and expressly set forth in this Agreement.

    c.    **Waiver of Cal Civ. Code § 1542**. With respect to any and all claims released herein, the Parties waive the provisions, rights, and benefits of California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties waive any and all provisions, rights and benefits conferred by any law of any jurisdiction, state or territory of the United States, or principle of common law, which is similar,

5

comparable or equivalent to California Civil Code § 1542. Any of the Parties may hereafter discover facts in addition to or different from those which he, they, or it now knows or believes to be true with respect to the claims released herein but, upon the execution of this Settlement Agreement, shall have, fully, finally, and forever settled and released any and all of the claims released herein, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties shall be deemed by execution of the Settlement Agreement to have acknowledged that the foregoing waivers were separately bargained for and are key elements of the Settlement Agreement of which this release is a part.

6. **No Admission.** This Settlement Agreement constitutes a compromise, and nothing contained herein shall constitute or be deemed to be an admission or concession by any Party as to any matter, including, without limitation, with respect to the truth of any fact alleged by any Party against any of the other Parties to this Agreement. This Agreement, and the negotiation thereof, shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in any potential claims or defenses of any of the Parties to this Agreement.

7. **Time Is of The Essence.** Time is of the essence as to any date or deadline set forth in this Agreement.

8. **Authority.** Each Party represents and warrants that it has all necessary power and authority to execute this Agreement and to take all actions contemplated hereby and in so doing will not violate any law, or any other agreement or other commitment to which it is a Party.

Notwithstanding the foregoing, the IPNAV Parties have been advised and are aware of certain complaints questioning Carter's ability to act on behalf of Unified and/or ChanBond and covenant that they shall not seek to void this Agreement on the basis of any such claims.

9. **Confidentiality**. The Parties agree and promise to keep the terms of this Agreement confidential. The Parties further agree that they will not disclose or discuss the terms of this Agreement except: (a) to the extent that the disclosure is required by generally accepted legal or accounting principles or to carry out or enforce the terms of this Agreement, (b) where disclosure is required by order of court, (c) where disclosure is required to enforce a non-breaching party's rights under this Agreement, or (d) if required under any applicable law. The duties imposed by this Section will continue irrespective of any inadvertent disclosure or the termination of this Agreement for whatever reason.

10. **Reasonable Cooperation**. The Parties agree to cooperate and agree to take all action necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

11. **Jurisdiction and Applicable Law**. This Agreement will in all respects be governed by the laws of the State of Delaware. The Parties agree that all disputes, claims, actions or proceedings arising out of or related to this Agreement or with respect to the enforcement of this Agreement will be litigated exclusively in the United States District Court for the District of Delaware or the state courts located in the District of Delaware, and the Parties expressly consent and submit to jurisdiction and venue in such courts with respect to the enforcement of this Agreement or to disputes, claims, actions or proceedings arising out of or related to this Agreement.

12. **Complete Agreement and Non-Reliance**. This Agreement constitutes the entire agreement among the Parties and supersedes any and all prior understandings, agreements, negotiations, communications, or representations by or among the Parties, written or oral,

relating to the subject matter of this Agreement.  Each Party agrees, acknowledges, and expressly represents and warrants that he/it will not and has not relied on any statement, omission, promise, representation, warranty, condition, inducement, agreement, or communication made by or on behalf of any other Party (whether oral, written, or implied or made through a course of conduct), unless the matter relied upon is specifically contained within the text of this Agreement.  Each Party agrees, acknowledges, and expressly represents and warrants that he/she/it: (i) has made such investigation or inquiry as he/it deems necessary or appropriate in connection with the subject matter of this Agreement, (ii) has been afforded the opportunity to negotiate as to any and all terms hereof, and (iii) is executing this Agreement voluntarily, free from any undue influence, coercion, duress, or menace of any kind.

13. **No Duress.** The Parties agree that this Agreement is executed voluntarily and without duress or undue influence on the Parties, their officers, employees, agents or attorneys and no Party is relying on any inducements, promises or representations made by any other Party other than as set forth herein.

14. **Amendment.** This Agreement may not be amended, modified, or changed, except by a written agreement signed by all of the Parties. No purported oral modification, amendment or change will have any effect, and no action, or failure to act, by any Party, even if intentional and intended as a waiver, shall constitute a waiver of any rights hereunder unless reflected in a written agreement signed by the Party to be charged with the waiver. For the avoidance of doubt, and without any implications beyond this provision, an "email signature" will not constitute a "signature" under this provision.

15. **Severability.** This Agreement will be enforced to the fullest extent permitted by applicable law. If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent, then the provision will be interpreted, construed, or reformed to the

8

extent reasonably required to render the agreement valid, enforceable and consistent with the original intent underlying the provision, and the invalidity or unenforceability of any such provision will not affect the validity, enforceability, or interpretation of any other provision of this Agreement.

16. **Captions.** The title or captions contained in this Agreement are for convenience only and will neither restrict nor amplify the provisions hereof. The titles and captions used in this Agreement will not be used in construing or interpreting this Agreement.

17. **Non-Wet Ink Signature.** This Agreement may be signed by electronic signature, facsimile, and/or scan, each of which will be deemed an original but all of which together will constitute one instrument binding upon all parties hereto. However, the Parties' signatures shall not be effective unless and until each Party's signature (or a scan or facsimile thereof) has been appended to the same counterpart. For the avoidance of doubt, the Parties' signatures shall be effective when the final party to sign executes (whether electronically or in ink) a counterpart containing the signatures (whether electronic, facsimile, scan, or wet-ink) of each other Party.

18. **Understanding of the Agreement.** Each Party acknowledges, represents, and agrees that the person signing has read this Agreement including the Exhibits hereto, fully understands its terms, and has either been fully advised by legal counsel with respect to the Agreement, or voluntarily opted not to seek counsel. Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement. Each of the Parties has had the opportunity to participate in the drafting of this Agreement..

19. **Waiver.** Except as otherwise expressly provided in this Agreement, nothing in this Agreement will be construed as a waiver by the Parties of any of their rights or defenses under applicable law.  The failure by any Party at any time or times hereafter to require strict performance by any other Party of any provision of this Agreement will not waive, affect, or diminish any right of such Party to thereafter demand strict compliance therewith.

**IN WITNESS WHEREOF**, the parties have executed this Agreement effective for all purposes as of the Effective Date.

_____  	10/25/2022
Deirdre Leane                     	DATE

IPNAV, LLC

_____  	10/25/2022
By: Deirdre Leane                 	DATE
Title: Member/Manager

CHANBOND, LLC

_____  	11/10/2022
By: William Ralph Carter, Jr.     	DATE
Title: Manager

UNIFIEDONLINE, INC.

_____  	11/10/2022
By: William Ralph Carter, Jr.     	DATE
Title: Authorized Signatory

_____  	11/10/2022
William Ralph Carter, Jr.         	DATE

10

**EXHIBIT A**

SIGNATURE BANK
50 WEST 57TH STREET
NEW YORK, NY  10019

ABA 026013576

SWIFT Code # SIGNUS33

Kamerman, Uncyk, Soniker & Klein PC
1700 Broadway
New York, NY  10019

Master Escrow
Account # 1501361689

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CBV, INC.,                                               Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> CHANBOND, LLC, <br><br>                           Defendant/Crossclaim-Defendant/Crossclaim-Plaintiff, <br><br> DEIRDRE LEANE and IPNAV, LLC <br><br>                           Defendants/Counterclaim-Plaintiffs/Crossclaim-Plaintiffs. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 21-1456-GBW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**STIPULATION AND [PROPOSED] ORDER DISMISSING
CROSS-CLAIMS AND COUNTERCLAIMS**

ChanBond, LLC ("ChanBond"), and Deirdre Leane ("Leane") and IPNAV, LLC ("IPNAV," and collectively with Leane, the "Leane Defendants"), by and through undersigned counsel, and subject to approval of the Court, hereby stipulate and agree that pursuant to Federal Rule of Civil Procedure 41(a)(1), Leane Defendants' Cross-Claim for Confirmation of Arbitration Award (D.I. 41), and ChanBond's Counterclaim to Vacate Arbitration Award (D.I. 117) are DISMISSED.

| | |
|---|---|
| BAYARD, P.A. | TROUTMAN PEPPER <br> HAMILTON SANDERS LLP |
| */s/ DRAFT* <br> Stephen B. Brauerman (No. 4952) <br> Ronald P. Golden III (No. 6254) <br> 600 North King Street, Suite 400 <br> Wilmington, DE 19801 <br> (302) 655-5000 <br> sbrauerman@bayardlaw.com | */s/ DRAFT* <br> James H. S. Levine (No. 5355) <br> Hercules Plaza, Suite 5100 <br> 1313 Market Street, P.O. Box 1709 <br> Wilmington, DE 19899-1709 <br> (302) 777-6500 |

| | |
|---|---|
| rgolden@bayardlaw.com | James.Levine@troutman.com |
| *Attorneys for ChanBond, LLC* | OF COUNSEL: |
| Dated: October \_\_\_, 2022 | Akiva M. Cohen<br>Dylan M. Schmeyer<br>KAMERMAN, UNCYK,<br>SONIKER & KLEIN P.C,<br>1700 Broadway, 16th Floor<br>New York, NY 10019<br>212.400.4930<br>acohen@kusklaw.com<br>dschmeyer@kusklaw.com |
| | *Attorneys for Deirdre Leane and IPNAV, LLC* |

IT IS SO ORDERED THIS \_\_\_\_\_ DAY OF _____, 2022:

                                                 _____
The Honorable Gregory B. Williams, U.S.D.J.

2

**EXHIBIT C**

## SHARE TRANSFER AND STOCK POWER OF ATTORNEY

FOR VALUE RECEIVED, Deirdre Leane (the "**Assignor**") hereby assigns and transfers unto UnifiedOnline, Inc., a Delaware corporation (the "**Corporation**") FORTY-FOUR MILLION SEVEN HUNDRED THOUSAND (44,700,000) shares (the "**Shares**") of the common stock of the Corporation registered in the name of the Assignor in the share register of the Corporation and does hereby irrevocably constitute and appoint William R. Carter, Jr. as her attorney to transfer the Shares in the share register of the Corporation with full power of substitution.

**EFFECTIVE DATE OF TRANSFER** the _____ day of _____, _____.

By: _____

Name:   Deirdre Leane

Dated: _____