# EXHIBIT 3

## AAA CASE NO. 01-22-0001-6368
## JAMS REF. NO. 1425037873

----------------------------X

MISHCON de REYA NEW     :
YORK LLP,

           :

      Claimant,

           :

   and

           :

CHANBOND LLC and KING &
WOOD MALLESONS LLP,     :

      Respondents. :

----------------------------X

### FINAL AWARD

### Counsel

   David Slarskey, Esq.
   Evan Fried, Esq.
   Keith Dore, Esq.
   Slarskey LLC
   767 Third Avenue
   14th Floor
   New York, New York  10017
   (212) 658-0661
   dslarskey@slarskey.com
   efried@slarskey.com
   kdore@slarskey.com
   Counsel for Claimant
   and Counterclaim Respondent

David G. Keyko, Esq.
Jay D. Dealy, Esq.
Roland C. Reimers, Esq.
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, New York  10019
(212) 858-1000
(212) 858-1500 (fax)
david.keyko@pillsburylaw.com
jay.dealy@pillsburylaw.com
roland.reimers@pillsburylaw.com
Counsel for Respondent-
Counterclaimant King & Wood
Mallesons LLP

Thomas M. Mullaney, Esq.
The Law Office of
Thomas M. Mullaney
530 Fifth Avenue
23rd Floor
New York, New York  10036
(212) 223-0800
tmm@mullaw.org
Counsel for Respondent-
Counterclaimant
ChanBond LLC

**Arbitration Panel**

Hon. Henry Pitman (Ret.), Chair
JAMS
620 Eighth Avenue
New York, New York  10018
(212) 751-2700
(212) 751-4099 (fax)
hpitman@jamsadr.com

Hon. Helen E. Freedman (ret.)
JAMS
620 Eighth Avenue
New York, New York  10018
(212) 751-2700
(212) 751-4099
hfreedman@jamsadr.com

Hon. Steven M. Gold (ret.)
JAMS
620 Eighth Avenue
New York, New York  10018
(212) 751-2700
(212) 751-4099 (fax)
sgold@jamsadr.com

**Place of Arbitration:**  New York, New York

**Date of Final Award**:  January 18, 2024

THE UNDERSIGNED ARBITRATORS, having been designated pursuant to the Stipulation and Order of the Honorable Jennifer A. Schecter, Justice of the Supreme Court, dated April 14, 2022 in the matter entitled <u>Mishcon de Reya New York LLP v. ChanBond LLC and King & Wood Mallesons LLP</u>, Index No. 650575/2022, and a Retention Agreement between Claimant Mishcon de Reya New York LLP ("MNY") and ChanBond, LLC ("ChanBond") dated April 20, 2015[1], and having examined the submissions, proof and

---

[1]The agreement between MNY and ChanBond provides, in pertinent part:

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 5 of 53 PageID #: 7868

allegations of the parties, find, conclude and issue this

Award this 18th day of January, 2024 as follows:

## I.   Introduction and Procedural History

### A.   Pre-Arbitration Proceedings

From April 2015 through the cessation of its

operations in December 2019, MNY, a New York law firm, served as

counsel for Respondent ChanBond in thirteen parallel patent

infringement litigations brought by ChanBond in the United

States District Court for the District of Delaware.

For reasons that are discussed in detail below,

MNY ceased operating in December 2019, and in January 2020,

---

All parties to this Agreement agree that any dispute
or controversy arising out of relating to any
interpretation, construction, performance or breach of
this Agreement, or arising out of or relating to
[MNY's] representation of the Client, including
disputes concering [MNY's] fees or charges or any
claims of malpractice, shall be finally settled by
mandatory arbitration held in New York, New York and
conducted in accordance with the applicable rules of
the American Arbitration Association ("AAA"), with
each party to bear its own costs and attorney's fees
and disbursements.  Such proceeding shall be conducted
before a single arbitrator, except in matters
involving a dispute greater than five hundred thousand
dollars, which shall be conducted before a three (3)
arbitrator panel with each side selecting one
arbitrator and the two arbitrators selected by the
Parties choosing the third arbitrator.

the representation of ChanBond was taken over by Respondent King & Wood Mallesons LLP ("KWM"). The MNY attorneys with principal responsibility for representing ChanBond -- Mark Raskin, Robert Whitman and Michael DeVincenzo -- and others, all moved to KWM where they continued to represent ChanBond.

The first ChanBond matter went to trial in May 2021, and, after the close of ChanBond's direct case, all the ChanBond matters settled for $125 million. The parties' dispute arises out of MNY's claim that it is entitled to a portion of this sum as either its contingent fee or its quantum meruit recovery for the work it performed prior to its cessation of operations. Respondents contend that MNY abandoned ChanBond, that MNY was terminated for cause and that MNY is, therefore, not entitled to recover any compensation for its services.

On February 4, 2022, MNY commenced an action against ChanBond and KWM in the Supreme Court of the State of New York for New York County entitled Mishcon de Reya New York LLP v. ChanBond LLC and King & Wood Mallesons LLP, Index No. 650575/2022. In that action, MNY asserted claims for breach of contract, quantum meruit, a proportionate share of the contingency fee received by KWM and asserted a charging lien under New York Judiciary Law § 475.

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 7 of 53 PageID #: 7870

Four days later, on February 8, 2022, KWM commenced an action against MNY in the Supreme Court of New York, Index No. 650616/2022.  In that action, KWM sought a declaratory judgment, asserting the inverse of MNY's claims, namely that MNY does not have or waived any lien against the settlement funds.

After the foregoing actions were commenced, ChanBond appeared through counsel in the action commenced by MNY and requested arbitration pursuant to the Retention Agreement; MNY consented.  Thereafter, both actions were consolidated, and, with the Court's approval, all parties agreed to stay the consolidated action and to resolve their claims and counterclaims through binding arbitration.

B.  **Proceedings in Arbitration**

MNY filed its demand for arbitration on or about April 20, 2022, asserting the same claims that it had previously asserted in the Supreme Court.  KWM and ChanBond filed their response on or about May 9, 2022, also asserting the same defenses and counterclaims that KWM had asserted in the Supreme Court.  At that time, both KWM and ChanBond were represented by attorneys Charles Wizenfeld,

Esq., Meg Utterback, Esq., Vincent Filardo, Esq. and
Fernando Lee, Esq., all of KWM.

MNY appointed the Hon. Steven M. Gold (ret.) as
its party-appointed arbitrator and KWM and ChanBond
appointed the Hon. Richard J. Holwell (ret.) as its party-
appointed arbitrator.  Judges Holwell and Gold then
selected the Hon. Henry Pitman (ret.) to serve as Chair.

The Panel conducted an initial telephonic
scheduling conference with all counsel on August 16, 2022.
During the conference call, all parties agreed that the
matter was properly in arbitration, that the matter was
governed by New York's substantive law and the Federal
Arbitration Act and that the Panel had jurisdiction to
resolve all claims raised in Claimant's Demand for
Arbitration and Respondents' Answering Statement and
Counterclaims.  In addition, deadline dates were set for
the following events:  (1) threshold dispositive motions
that did not require consideration of the entire case; (2)
submission of a list of stipulated factual and legal
issues; (3) submission of a list of disputed factual and
legal issues; (4) production of witness statements; (5)
service of document requests; (6) submission of a report
concerning the number of depositions to be conducted; (7)
statements concerning the need for expert testimony; (8)

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 9 of 53 PageID #: 7872

submission of damages calculations; (9) submission of a
list of hearing witnesses; (10) completion of all
discovery; (11) submission of a list of exhibits to be used
at the hearing, and (12) submission of pre-hearing
memoranda of law.  During the conference call, the parties
also agreed that discovery disputes would be resolved by
the Chair alone and that the hearing would commence on May
1, 2023.  The Panel issued a scheduling order reflecting
the foregoing on August 20, 2022.

Claimant submitted a letter on September 13, 2022
seeking expedited discovery of certain documents.  Claimant
contended that the documents were relevant to a threshold
dispositive motion it intended to make by the September 22,
2022 deadline for such motions.  The Chair denied the
application, finding that good cause had not been shown to
depart from the schedule set only a few weeks earlier.  The
Chair did, however, extend the deadline for making
threshold dispositive motions to October 31, 2022.

In mid-September, 2022, Judge Holwell discovered
that, due to an error in his firm's conflict-checking
procedures, he had inadvertently overlooked the fact that
one of his partners had provided legal advice to counsel
for ChanBond in a then-pending litigation.  As a result,
Judge Holwell concluded that the most prudent course was to

recuse himself from the arbitration which he did in late September 2022. ChanBond and KWM appointed the Hon. Helen E. Freedman (ret.) to replace Judge Holwell, and her appointment was confirmed on November 1, 2022.

During the interval between Judge Holwell's recusal and Judge Freedman's appointment, both sides sought leave to make dispositive motions. Judge Gold and the Chair issued an Order on October 19, 2022 in which they concluded that resolution of the application should be deferred until the Panel was fully constituted. The Panel revisited the issue in an Order dated November 9, 2022 and denied both sides' applications. The Panel concluded that the existence of core factual issues would render MNY's proposed motion futile. With respect to KWM and ChanBond's proposed motion, the Panel concluded that, in light of the presence of numerous claims and factual issues which would require extensive effort to examine, the proposed motion would not shorten discovery and would not promote the expeditious and inexpensive resolution of the case.

The parties raised several discovery disputes in correspondence dated November 23, 2002 and subsequent correspondence. After hearing oral argument, the Chair resolved these issues in an Order dated December 6, 2022 that (1) denied MNY's request to serve interrogatories and

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 11 of 53 PageID #: 7874

(2) established a protocol concerning MNY's production of electronically stored information ("ESI").

The Panel conducted a conference call with counsel for all parties to assess their progress in conducting discovery and moving the matter forward on December 5, 2022.  Upon the application of and with the consent of all parties, the deadlines previously set in the Panel's August 5, 2022 Order were extended, and the hearing was adjourned to July 17, 2023.  The Panel issued an Order setting the new dates on December 7, 2022.

In response to counsel's joint application, the Panel issued an Order on December 22, 2022 (1) extending the date on which counsel were to submit their discovery plan concerning the taking of depositions and (2) directing the parties to submit corporate deposition notices no later than December 30, 2022.

By letter dated January 9, 2023, MNY moved for sanctions based on ChanBond's continued failure to produce documents that were due on October 24, 2022.  Specifically, MNY sought:  (1) to strike ChanBond's answer; (2) the fees MNY incurred in making the application, and (3) leave to move for summary disposition upon the completion of discovery.  In an Order dated January 17, 2023, the Chair granted the application in part and denied the application

in part.  The Chair found that ChanBond had waived any
objection based on the attorney-client privilege or the
work-product doctrine and ordered ChanBond to produce all
documents requested by MNY no later than January 24, 2023.
In addition, the Chair directed ChanBond to pay MNY
$1,500.00 to reimburse it for the cost of making the
application and granted MNY leave to move for summary
disposition at the close of discovery.

All parties subsequently agreed that the factual
statement by MNY's counsel that was the predicate for the
Chair's finding of ChanBond's waiver was an inadvertent
error.  Accordingly, the Chair's finding of waiver was
vacated in an Order dated January 24, 2023.  The January 24
Order also extended the date on which ChanBond was to
complete its document production to January 27, 2023.

By letters dated January 9 and 13, 2023,
respectively, the parties raised an issue concerning what
depositions should be permitted and whether MNY had
complied with the ESI protocol established in the December
6, 2022 Order.  With respect to the dispute concerning
depositions, the Chair concluded that MNY was entitled to
depose Messrs. Raskin and Whitman and that KWM was entitled

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 13 of 53 PageID #: 7876

to depose a corporate representative and Kevin Gold.[2]  This aspect of the Chair's decision was without prejudice to a subsequent application for additional depositions if the foregoing depositions proved unproductive.  With respect to MNY's compliance with the December 6, 2022 Order, the Chair concluded that KWM's application sought to impose obligations that were not required by the December 6 Order. The Chair's rulings were memorialized in an Order dated January 30, 2023.

Counsel sought clarification of the Chair's January 30 Order, and in an Order dated February 7, 2023, the Chair clarified that the earlier Order permitted a total of four depositions, each of which was subject to a presumptive seven-hour limit.  The Chair's February 7 Order also addressed an issue raised in counsel's joint letter dated February 2, 2023 concerning KWM's production of an index of documents withheld on the ground of privilege; KWM sought to defer the production of its index until the completion of all parties' document production.  The Chair rejected KWM's contention and directed that KWM produce a categorical index of withheld documents no later than February 15, 2023.

---

[2]Kevin Gold is not related to the Hon. Steven M. Gold (ret.).

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 14 of 53 PageID #: 7877

Respondents raised additional discovery disputes in a letter dated February 16, 2023. Specifically, Respondents sought to compel MNY to search: (1) the physical servers that were previously located in MNY's office; (2) the files of six individuals; (3) the files of Mishcon Holdings LLC ("Holdings"), and (4) to produce a copy of MNY's engagement letter with the counsel representing it in this arbitration. After hearing oral argument on February 21, 2023, the Chair issued an Order, dated March 10, 2023: (1) conditionally ordering MNY to search its accounting database server;[3] (2) denying the application to search the files of the six named individuals and Holdings on the ground that they were not parties and their documents were not within MNY's possession, custody or control, and (3) denying, on relevance grounds, the application to compel production of the retainer agreement between MNY and its counsel in this arbitration.

On February 16, 2023, KWM moved to preclude MNY from calling Vincent Filardo, Jr., Esq., as a witness. Filardo had been a partner at MNY and became a partner at KWM when MNY ceased operating and ChanBond's representation

---

[3]In lieu of searching the accounting database server, the Order gave the parties the option of resolving the issue by agreement.

Case 1:21-cv-01456-GBW  Document 243-3  Filed 02/12/24  Page 15 of 53 PageID #: 7878

was taken over by KWM.  Because KWM's application went
beyond a discovery dispute, it was considered by the entire
Panel.  In an Order dated March 14, 2023, the Panel
deferred decision on the application, finding that it was
impossible to determine at the then present stage of the
proceedings whether Filardo's testimony was relevant.

KWM also moved on March 3, 2023 to preclude MNY's
damages expert from testifying on the grounds that he was
not disclosed in a timely manner and that expert testimony
concerning the reasonableness of MNY's fees was not
necessary.  This application was also considered by the
entire Panel.  Although the Panel concluded that MNY's
damages expert was disclosed 14 days after the applicable
deadline, it also concluded that preclusion would be a
disproportionate sanction.  In a March 14, 2023 Order, the
Panel denied KWM's application for preclusion, but imposed
a $500 sanction to compensate KWM for the unnecessary
expense it incurred as a result of MNY's actions.

By a joint letter dated February 28, 2023,
counsel addressed MNY's contention that Respondents'
document production was incomplete and that there were both
deficiencies of form and substance in Respondents' index of
documents withheld on the ground of privilege.  By an Order
dated March 22, 2023, the Chair concluded that MNY had not

made a sufficient showing that Respondents' document production was incomplete. With respect to the index of withheld documents, given the relatively modest number of documents involved, the Chair concluded that the most efficient method to resolve the matter was to conduct an in camera review of the documents.

Given MNY's stated interest in calling Filardo as a witness, KWM, which had been appearing pro se up to that point, determined that it should retain outside counsel. Accordingly, in or about the end of March 2023, the firm of Pillsbury Winthrop Shaw Pittman LLP took over the representation of KWM.

During a conference call on March 23, 2023, the Panel also considered all parties' applications to file motions for summary disposition. In an Order dated March 24, 2023, the Panel concluded that motions for summary disposition would not be permitted. The Hearing was expected to be relatively short and, given the inability to resolve disputed issues of fact on a motion for summary disposition, the Panel concluded that permitting such motions would be inefficient and result in unnecessary cost and delay. In an Order dated March 28, 2023, the Panel denied an application to reconsider this issue.

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 17 of 53 PageID #: 7880

After conducting an in camera review, the Chair
issued an Order on April 18, 2023 resolving the dispute
concerning Respondents' documents withheld on the ground of
privilege or the work-product doctrine.  The Chair
concluded that 14 of the withheld documents should be
produced either in whole or in part.

The Panel granted the parties' joint application
to adjourn the Hearing date and to extend the dates for
pre-Hearing submissions in an Order dated May 5, 2023.
Among other things, that Order adjourned the Hearing to
September 6, 7, 11, 12 and 13, 2023.

The Panel issued an Order on May 25, 2023
adjusting the schedule of the Raskin deposition.  The
adjustment was necessary because KWM's lead counsel had
been summoned for jury duty on the same day as the Raskin
deposition.

In a joint letter dated May 22, 2023, counsel
addressed Respondents' failure to designate its rebuttal
expert in accordance with the applicable deadline.  In an
Order dated June 7, 2023, the Panel concluded that this
dispute should be resolved in the same manner as MNY's
untimely designation of its expert witness -- Respondents'
rebuttal expert would be permitted to offer testimony that
rebutted the subject matter of the opinions expressed by

MNY's expert and Respondents were ordered to pay $500 to MNY as reimbursement for the expenses caused by the untimely designation.

On June 26, 2023, Respondents sought an Order compelling the production of documents from non-party Bambos Georgiou and directing MNY to produce Georgiou for deposition. Respondents sought this relief because the MNY witnesses who had been deposed -- Gold and Libson -- did not know the answers to a number of questions, and Respondents believed that Georgiou would know the answers to those questions. After reviewing the transcripts of the Gold and Libson depositions, the Chair issued an Order dated July 19, 2023, finding that: (1) the Gold and Libson depositions were productive; (2) Respondents had not demonstrated that Gold and Libson were not properly prepared, and (3) pre-Hearing discovery from Georgiou was not permitted by the Federal Arbitration Act because he was not a party.[4]

On July 24, 2023, the Panel granted the parties' joint application to adjust certain dates for certain pre-Hearing submissions.

---

[4]In a subsequent Order, dated July 24, 2023, the Chair granted an application to reconsider this decision, and upon reconsideration, adhered to the decision set out in the July 19, 2023 Order.

In an Order dated September 1, 2023, the Panel denied an application to preclude Gregory Campbell from attending the hearing.  Despite the Panel's Order, however, Campbell did not attend the Hearing.

On September 3, 2023, the Panel issued an Order resolving several motions in limine.  The Panel denied an application to preclude certain hearsay testimony, citing AAA Commercial Arbitration Rule 35(a).  The Panel also granted in part and denied in part MNY's motion to preclude entirely the testimony of Respondents' rebuttal expert witness.  Certain aspects of his testimony were precluded because they did not rebut any opinion expressed by MNY's expert.  In addition, Respondents' rebuttal expert was precluded from testifying regarding the validity of MNY's quantum meruit claim.

The Hearing was conducted in New York, New York on September 6,7 and 11-13, 2023.  The Panel heard testimony from James Libson on behalf of MNY and Michael DeVincenzo, Robert Whitman, Mark Raskin and William Carter on behalf of Respondents.  The Panel also heard testimony from Claimant's expert, Laurence Rosenberg, and Respondent's expert, Roy D. Simon, Jr.  Apart from some brief introductory testimony, the witnesses' direct testimony was submitted in written form prior to the

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 20 of 53 PageID #: 7883

Hearing.  All parties submitted post-Hearing briefs on
November 3, 2023 and reply briefs on November 22, 2023.  At
the close of the Hearing, the Panel raised the possibility
of having a question and answer session with counsel after
the Panel had reviewed their post-Hearing briefing.  The
Panel subsequently concluded that a question and answer
session was not necessary and the Record was declared
closed on December 19, 2023.

## II.  Overview of the Facts
    Giving Rise to the Dispute[5]

As noted above, this dispute arises out of MNY's
claim for compensation for work it performed for ChanBond
prior to the cessation of MNY's operations in December
2019.  ChanBond and successor counsel -- KWM -- contend
that MNY abandoned ChanBond and was terminated for cause
and is, therefore, not entitled to any compensation for the

---

[5]The factual findings that were made above and that follow
are necessary to the Award.  They are derived from the
admissions in the pleadings and the testimony and
evidentiary exhibits presented at the hearing.  To the
extent that these findings differ from any party's
position, that is the result of determinations by the Panel
concerning credibility and relevance, burden of proof
considerations, legal principles, and the weighing of the
evidence, both oral and written.

Additional facts relevant to the specific claims and
counterclaims are set forth within the analysis of those
claims and counterclaims.

4.5 years of service it provided to ChanBond.  MNY disagrees, claiming that its cessation of operations did not constitute abandonment and that it is entitled to recover for its services either in _quantum_ _meruit_ or on a contingent fee basis.

### A.   **Background of MNY**

Mishcon de Reya LLP ("Mishcon London") is a large international law firm which currently has offices in England, Singapore and Hong Kong.  It currently employs more than 600 lawyers.

In 2010 Mishcon London established MNY primarily to handle commercial litigation; Mishcon London wanted to be able to send U.S. work to an affiliated office rather than refer such work to unaffiliated firms.  At the time it opened, MNY had a commercial litigation group; in 2011, it added a family practice group.  In 2014, it expanded again, adding an intellectual property ("IP") litigation group.

Holdings was the vehicle through which certain partners of Mishcon London invested in MNY and financed its operations.  MNY's partnership agreement designated Holdings as the "Entity Partner" of MNY.  MNY's 2014 Amended Partnership Agreement provided, in pertinent part:

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 22 of 53 PageID #: 7885

> The Entity Partner shall pay to the Partnership from time to time, for the credit of its Current Account, such sums as it may at its discretion agree in writing with the Managing Partner (NY) to be applied towards the day to day operation of the Partnership business and may withdraw such sums in whole or in part when, having consulted the Managing Partner (NY), it considers that they should no longer be required for that purpose.

(Ex.[6] D at 12).  Between 2010 and December 2019, the partners of Mishcon London, through Holdings, invested approximately $29 million in MNY; MNY claims that $14 million of that sum went to fund the IP group (JX 2). Mishcon London exerted extensive oversight of MNY's operations throughout the duration of the latter's existence, and had the deciding vote concerning such things as the salaries paid to employees and the hiring and firing of employees.

## B. MNY's Representation of ChanBond

At all relevant times, ChanBond, a non-practicing patent entity, was the owner of four United States Patents relating to the distribution of digital signals on a

---

[6]"Ex." followed by a number refers to an exhibit offered by Claimant.  "Ex." followed by a letter or letters refers to an exhibit offered by Respondents.  "JX" followed by a number refers to a joint exhibit offered by all parties.  "Tr." refers to the transcript of the Hearing.  "[Name] Decl." refers to the direct testimony of a witness, offered by declaration.

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 23 of 53 PageID #: 7886

wideband signal distribution system.  In April 2015,
ChanBond retained MNY to bring infringement actions against
a number of entities[7] it believed were infringing its
patents.

ChanBond retained MNY on a contingent basis.  The
Retention Agreement provided that the first $1 million of
any recovery would be paid to ChanBond.  The percentage of
MNY's entitlement to a portion of any remainder varied with
the stage of the proceedings at which a settlement or
judgment was obtained.  The Retention Agreement provided
that MNY was entitled to a 15% contingency fee with respect
to settlements obtained between the filing of the complaint
and the initial scheduling conference, a 28.5% contingency
fee for settlements obtained after the 45th day before
trial and intermediate percentages for settlements obtained
at intermediate points.

The Retention Agreement also contained a
provision governing MNY's entitlement to compensation in
the event it withdrew from ChanBond's representation before
a settlement or judgment in ChanBond's favor.
Specifically, it provided that, in that circumstance, MNY

_____

[7]The Retention Agreement between ChanBond and MNY identified 57
potential infringers.

22

would "be entitled to collect <u>quantum</u> <u>meruit</u> for work
performed up to the date of withdrawal . . ." (JX 1 at 6).
Paragraph 3(d) of the Retention Agreement defined "<u>quantum</u>
<u>meruit</u>" as "the reasonable value of the services [MNY] has
rendered, as well as any costs advanced on [ChanBond's]
behalf" (JX 1 at 5).

In September 2015, MNY commenced an action on
ChanBond's behalf against numerous alleged infringers[8] in the
United States District Court for the District of Delaware.

Between the commencement of the action and the
termination of MNY's representation, MNY conducted document
discovery and took or defended 55 depositions.  In addition, the
record reflects that MNY argued a number of motions concerning
claim construction.  The District Court issued claim
construction decisions on December 9, 2016[9] and December 15,
2016.[10]  In addition, on May 14, 2019, the Court issued a

---

[8]The Docket Sheet for the Delaware action indicates there were
originally 17 defendants (JX 20).  There is no dispute that by
2021, ChanBond was facing thirteen separate infringement trials.
The inconsistency between the number of defendants indicated on
the Docket Sheet and the number of trials ChanBond was facing is
not material.

[9]<u>ChanBond, LLC v. Atlantic Broadband Group, LLC</u>, 2016 WL 7177612
(D. Del. Dec. 9, 2016)

[10]<u>ChanBond, LLC v. Atlantic Broadband Group, LLC</u>,
2016 WL 10950688 (D. Del. Dec. 15, 2016).

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 25 of 53 PageID #: 7888

decision granting defendants leave to amend one of their invalidity theories.[11]  MNY also briefed and defeated defendants' motion for summary judgment and drafted opposition to defendants' motion to exclude ChanBond's expert witness.[12]  In total, MNY drafted nine briefs with respect to six motions.  MNY successfully opposed two motions to stay the Delaware action while related proceedings were occurring before the United States Patent and Trademark Office (Libson Decl. ¶ 20).  The docket sheet for the Delaware action for the period during which MNY represented ChanBond spans 63 pages and reflects more than 95 entries made on behalf of ChanBond (JX 20).[13]

The events most relevant to MNY's claim for fees began in July 2019.  As of July 2019 neither MNY as a whole nor its IP group had been economically successful (Libson Decl. ¶ 35).  Although the partners principally responsible for the ChanBond litigation -- Mark Raskin and Robert Whitman -- had continually provided positive revenue projections, MNY had consistently

---

[11]In re ChanBond, LLC Pat. Litig., 2019 WL 2098316 (D. Del. May 14, 2019).

[12]Raskin described the work that the MNY team did in defeating defendants' motion for summary judgment and opposing defendants' motion to exclude ChanBond's expert witnesses as "an amazing job" (Ex. 38).

[13]Raskin testified 2019 was a "busy time" at MNY and that there were "a couple of months" when the ChanBond litigation was the only matter on which MNY focused (Ex. 118 at 66).

failed to meet those projections. (Id.)  MNY's revenue failed to cover its costs (Libson Decl. ¶¶ 34-36), and the Mishcon London partners who had funded MNY through Holdings had sustained an average loss of £750,000 (Libson Decl. ¶ 36).

In July 2019, a meeting was convened among Messrs. Raskin and Whitman, Kevin Gold (then managing partner of Mishcon London) and James Libson (Gold's deputy and successor).  That meeting resulted in a defunding agreement with respect to MNY that was signed by all attendees (JX 3).  The defunding agreement provided:

1.  Mishcon de Reya LLP ("MdR") has been funding Mishcon de Reya (New York) LLP ("New York") since its inception.

2.  The Partners of MdR have made the decision to cease the funding of New York.  In order to achieve and [sic] orderly cessation of the funding, due notice of the cessation of funding has been given to New York.

3.  New York has an existing case load, including substantial work in progress.  A number of cases are likely to have significant value.

4.  New York was in the process of raising third party funding for a substantial number of these cases, including the "buy out" of historic work in progress.

5.  Term sheets have been signed in respect of these cases and the Funder is presently undertaking due diligence on these cases at a substantial cost to it.

6.  If the Funder agrees to fund these cases, New York will have sufficient funds on an ongoing

basis to fund its day to day needs with no further funding from MdR.

7. The following has been agreed:

7.1 MdR will cease funding New York on 30 November 2019 when its existing lease of New York terminates.

7.2 If the third party funding referred to above materialises by 30 November 2019 then the office will continue.

7.3 If the funding does not materialise, then the Practice in New York will use their best efforts to "merge" with another Firm. Nothing in this agreement is intended to alter MdR's interest in the cases on a quantum meruit basis, and nothing in this agreement is intended to alter the partnership agreement of any New York partner. In any event, MdR's funding of New York will cease on 30 November 2019.

In August and September, Raskin and Whitman entered into discussions about possible employment with KWM. Raskin met with representatives of KWM in Italy in August (JX 4), and both Raskin and Whitman flew to China in September to discuss joining KWM (JX 5). In October, KWM sent offer letters to all the MNY attorneys who were working on the ChanBond litigation (Whitman Decl. ¶ 79); they were all executed and returned to KWM by November 19, 2019 (Id.; JX 6; see Exs. 23-25, 34). Raskin explained that he believed signing the letter was, among other things, in the best interest of ChanBond because it would promote continued representation of ChanBond by the attorneys who had represented it to date (Raskin Decl. ¶ 68).

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 28 of 53 PageID #: 7891

There is no dispute that throughout the fall of 2019, Raskin and Whitman worked diligently to obtain funding to keep MNY operating (Tr. 217-18). Despite those efforts, however, they were not able to secure funding that was acceptable to all parties.[14]

Oral argument on defendants' motion for summary judgment in the ChanBond litigation was scheduled for November 25, 2019 and as of mid-November, Holdings and Mishcon London were tentatively willing to extend funding past the November 30 deadline (Ex. 29; Ex. AE; JX 7; Libson Decl. ¶ 43; Whitman Decl. ¶ 80). In response to a request from Mishcon London, Raskin and Whitman transmitted information to London regarding the ChanBond litigation (Whitman Decl. ¶ 81), and on November 18, Raskin sent a list of cost-cutting proposals to Mishcon London (Ex. AF). ChanBond succeeded in defeating defendants' motion for summary judgment on November 25, 2019, and advised Mishcon London that same day (Ex. AJ). MNY and London had a video call on November 26 to discuss the ChanBond case and potential further funding; on November 27 Mishcon London agreed to continue funding MNY through the end of December, 2019 (Whitman Decl. ¶ 87).

---

[14]Although there was substantial evidence offered concerning the efforts to secure funding for MNY in the fall of 2019 and who was responsible for the failure of those efforts, the Panel finds that that evidence is not relevant to the issues to be decided, and, therefore, there is no need to make findings concerning these efforts.

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 29 of 53 PageID #: 7892

On November 29, 2019, Mishcon London offered to
continue funding MNY at the rate of $275,000 per month through
the conclusion of the ChanBond trial (Ex. 42; Ex. AL; Whitman
Decl. ¶ 88).  This offer of support was subject to a number of
conditions including the following:  (1) Mishcon London would
have a priority claim to any settlement proceeds; (2) Mishcon
London reserved the right to terminate funding on one month's
notice "should there be a reverse that, in [Mishcon London's]
opinion, makes the case no longer investable"; (3) MNY would
have to repay the $14 million that Mishcon London partners had
invested in the MNY's patent practice; and (4) MNY would be
prohibited from taking on new matters or employees (Id.).  The
terms were not acceptable to MNY's attorneys (JX 9; Raskin Decl.
¶ 51 n.28).

MNY wound up its operations in December 2019,
terminating the employment of all staff members on December 18,
2019 (Libson Decl. ¶¶ 54, 59).

Raskin and Whitman were ordinarily paid prospectively
at the beginning of each calendar month; they were not paid on
or after December 1, 2019 and considered themselves fired as of
November 30, 2019 (Whitman Decl. ¶¶ 94-96).  Despite this
assertion, Raskin and Whitman continued to file papers on behalf
of MNY in December 2019 in several actions.  Interactive
Wearables v. Polar Electrro Oy, Docket No. 2:19-cv-03084

(E.D.N.Y.)(Docket Item 242, filed Dec. 11, 2019); Sensoriant, Inc. v. GNJ Manufacturing, Inc., Docket No. 0:19-cv-62892 (S.D. Fla.)(Docket Item 9, filed Dec. 9, 2019). Whitman admitted that he continued to service MNY clients after his purported termination on November 30, 2019 (Whitman Decl. ¶ 96). In addition, internal MNY emails show that MNY attorneys continued to work on the ChanBond litigation through at least December 19, 2019 (Ex. 55; see also Ex. 62 (stating that, as of December 23, 2019, MNY "partners have not yet resigned")). Finally, two other documents confirm that Raskin, Whitman and the other attorneys working on the ChanBond matter remained employed by MNY through December 31, 2019. On December 24, 2019, Whitman wrote to ChanBond's Managing Member advising that he and his "team" would no longer be practicing law at MNY "[a]s of December 31, 2019" (Ex. 65). And on December 31, 2019, Whitman sent an email to various members of Mishcon London stating: "This is a reminder that, starting tomorrow, no attorneys will be associated with Mishcon New York, including Mark, Vin and myself" (PX 70 (emphasis added)).

At the same time MNY was winding up its operations, Raskin and Whitman were taking steps to move the ChanBond litigation to KWM. In mid-December, Raskin called ChanBond's Managing Member and advised that MNY was terminating its operations (Carter Decl. ¶ 16). On December 20, 2019, Raskin

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 31 of 53 PageID #: 7894

sent ChanBond's Managing Member an email annexing a retainer agreement with KWM (Ex. 59).[15] On December 24, 2019, Whitman wrote to ChanBond's Managing Member on MNY letterhead stating:

> As of December 31, 2019, my team and I will no longer be practicing law at [MNY].  We will be practicing law at a new law firm as of January 2, 2020.
>
> [MNY] will no longer have any practicing attorneys on staff after December 31, 2019.  You have the right to choose to have me (and my team) continue to represent you by retaining me at my new firm.  After making your selections among the options listed on the next page, please sign and return this letter via email to me at robert.whitman@mishcon.com and rwhitman777@gmail.com. In order to ensure that this process goes smoothly, please send me your response by December 31, 2019.
>
> *    *    *
>
> If you have any questions, please do not hesitate to contact me at 908-456-0010 or 212-257-4455.

(Ex. 65).[16]

Three days later, ChanBond's Managing Member wrote to Gold, advising that he had learned that MNY no longer had any attorneys and expressing the belief that MNY was no longer able to represent ChanBond.  He further asserted that MNY "effectively abandoned the ChanBond litigations" and that "ChanBond [was] terminating [MNY] for cause" (Ex. 66).

---

[15]ChanBond's Managing Member testified that he did not recall receiving or reviewing the email at any time before January 2020 (Carter Decl. ¶ 20).

[16]The second call back number provided in this letter was Whitman's direct line at MNY.

The entire team of MNY attorneys who represented ChanBond moved to KWM, and as of January 1, 2020, ChanBond was represented by KWM (Whitman Decl. ¶ 100). ChanBond executed a retainer agreement with KWM on January 13, 2020. Section 8 of the retainer provided:

> 8. <u>Mishcon de Reya New York LLP Quantum Meruit</u>. In the event that [MNY] seeks quantum meruit, related to its prior representation of [ChanBond], KWM will use best efforts to resolve those issues on [ChanBond's] behalf. In addition, KWM will pay the amount of Mishcon de Reya New York LLP's <u>quantum meruit</u>, up to the amount of KWM's respective distribution of Proceeds or Net Proceeds, from KWM's respective distribution of Proceeds or Net Proceeds.

(JE 16 at 5).

On June 1, 2020, KWM entered into a financing agreement with Validity Finance, LLC ("Validity") and Security Vigilance LLC under (JX 17). Among other things, this agreement provided that Validity would provide non-recourse funding to KWM up to a maximum of $10 million under certain conditions. The agreement further provided, among other things, that KWM would pay Validity one-half of any fee it earned in the ChanBond litigation (<u>Id</u>.).

ChanBond's infringement action went to trial in May 2021 and settled at the close of ChanBond's direct case for $125 million (Ex. 97; Whitman Decl. ¶ 126). KWM's share of the settlement amounted to $33,784,904, one-half of which was owed to Validity (Ex. 100). Neither ChanBond nor KWM could identify

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 33 of 53 PageID #: 7896

any specific instance of prejudice suffered by ChanBond as a
result of the change of counsel from MNY to KWM (Tr. 456-57;
Ex.81 (ChanBond's Managing Member commenting in January 2020
that MDR's attorney's move to KWM "will have absolutely no
impact on the ChanBond case")).

III. **Analysis**

    A. **MNY Did Not Abandon
ChanBond and Was Not
Terminated for Cause**

> "It is well-settled [under New York law] that an
> attorney loses his right to enforce a charging lien if
> the attorney withdraws or is discharged for cause."
> Harley & Brown v. Ressler & Ressler, 957 F. Supp. 44,
> 48 (S.D.N.Y. 1997). Accord First Nat'l Bank of
> Cincinnati v. Pepper, 454 F.2d 626, 633 (2d Cir. 1972)
> ("[A]n attorney discharged for cause or guilty of
> professional misconduct in the handling of his
> client's affairs has no right to payment of fees . . .
> ."); Winter Garden Co. v. Globe & Rutgers Fire Ins.
> Co., 9 F.2d 560, 562 (2d Cir. 1925); Campagnola v.
> Mulholland, Minion & Roe, 76 N.Y.2d 38, 44, 555 N.E.2d
> 611, 614, 556 N.Y.S.2d 239, 242 (1990); Papadopoulos
> v. Goldstein, Goldstein & Rikon, P.C., 283 A.D.2d 649,
> 649, 725 N.Y.S.2d 364, 365 (2d Dep't 2001). If, on
> the other hand, an attorney is discharged without
> cause, he is entitled to be compensated for his
> services . . . .

Cruz v. Olympia Trails Bus Co., 99 Civ. 10861 (JSR)(HBP), 2002
WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002); accord Jeon v. Riley,
1:18-cv-2612 (NGG)(PK), 2020 WL 9208777, at 3 (E.D.N.Y. Nov. 23,
2020) (Report & Recommendation), adopted, 2021 WL 926086
(E.D.N.Y. Mar. 11, 2021). A "client's statement . . . that the

discharge was 'for cause' is not dispositive, as the determination requires an objective legal analysis of the attorney's conduct and the client's reasons for terminating the employment." Wiggins v. Kopko, 105 A.D.3d 1132, 1134, 962 N.Y.S.2d 776, 779 (3rd Dep't 2013). An attorney who withdraws with good cause is entitled to be paid for her services. Guzik v. Albright, 16 Civ. 2257 (JPO), 2019 WL 3334487, at *9 (S.D.N.Y. July 25, 2019); accord Cobell v. Jewell, 234 F. Supp. 3d 126, 158-59 (D.D.C. 2017), aff'd sub nom., Cobell v. Zinke, 741 F. App'x 811 (D.C. Cir. 2018). An attorney who abandons a client or withdraws without good cause is not entitled to compensation. Nassour v. Lutheran Med. Ctr., 78 A.D.3d 671, 672, 910 N.Y.S.2d 144, 146 (2d Dep't 2010), citing Lansky v. Easow, 304 A.D.2d 533, 534, 756 N.Y.S.2d 885, 885-86 (2d Dep't 2003). An attorney who withdraws from a matter bears the burden of demonstrating his withdrawal was justified. See Nassour v. Lutheran Med. Ctr., supra, 78 A.D.3d at 672, 910 N.Y.S.2d at 146.

Notwithstanding ChanBond's assertion to the contrary (Ex. 66), ChanBond did not terminate MNY for cause.

> While it is true . . . that New York courts have not explicitly defined "cause" as a basis for an attorney's discharge, the case law reflects that the term means that the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case (see Garcia v Teitler, 2004 WL 1636982, 2004

US Dist LEXIS 13854 [ED NY, July 22, *46 2004, No. 04 CV 832(JG)], affd 443 F3d 202 [2d Cir 2006]). Courts typically find that a discharge is "for cause" where there has been a significant breach of a legal duty (see Allstate Ins. Co. v Nandi, 258 F Supp 2d 309, 312 [SD NY 2003]).

Filler v. Motta, 45 Misc. 3d 41, 45-46, 994 N.Y.S.2d 759, 763 (App. T. 2d Dep't 2014). There was no evidence that MNY was guilty of any misconduct in connection with its handling of the ChanBond litigation. To the contrary, ChanBond was satisfied with MNY's work (Tr. 1202-03). The best evidence of ChanBond's satisfaction with the services rendered by MNY's attorneys is the fact that ChanBond continued to use those same attorneys after MNY ceased operating.

The Panel also concludes that MNY did not abandon ChanBond. This conclusion is supported on at least two bases. First, the evidence demonstrates that in December 2019, Raskin and Whitman not only advised ChanBond of their move, and the move of the entire litigation team, to KWM, they provided ChanBond with the option of continuing with the same team of attorneys. ChanBond ultimately chose this option, and there was a seamless, prejudice-free transition of representation from MNY to KWM. In an effort to avoid their efforts to assure continuity of representation for ChanBond from being attributed to MNY, Raskin and Whitman now claim that they were terminated as of November 30, 2019 as a result of non-payment. The

evidence contradicts this contention.  As noted above, Raskin
and Whitman continued to file papers in at least two actions in
December 2019 as attorneys with MNY, they continued to use their
MNY email addresses, they continued to send correspondence on
MNY letterhead, they advised ChanBond to respond to their MNY
telephone number and they advised both ChanBond and Mishcon
London that there would be no attorneys working at MNY after
December 31, 2019.  Based on these undisputed facts, the Panel
concludes that Raskin and Whitman continued to be associated
with MNY throughout December 2019 and their efforts to ensure
ChanBond's continued representation are, therefore, attributable
to MNY.  Because MNY, through its agents -- Raskin and Whitman -
- provided for ChanBond's continued representation, there was no
abandonment.

Even if Raskin and Whitman's actions in December 2019
are not attributable to MNY, the Panel still concludes there was
no abandonment.  This was not a situation in which a firm, which
was going to continue to operate, walked away from a client
because it believed the litigation would be unprofitable.  Cf.
Guzik v. Albright, supra, 2019 WL 3334787; Suffolk Roadways,
Inc. v. Minuse, 56 Misc. 2d 6, 287 N.Y.S.2d 965 (Sup. Ct.
Suffolk Co. 1968).  Rather, after nine years of unprofitable
operations, MNY shut down all of its operations.  MNY was
financed by certain members of Mishcon London through Holdings,

neither of which are subject to the ethical obligations of
members of the New York Bar and were under no obligation of any
kind to continue to finance MNY.  Mishcon London gave Raskin and
Whitman more than four months' notice that its financing would
terminate, made clear to them they were free to take the
ChanBond litigation with them (Libson Decl. ¶ 70) and assumed,
correctly, that Raskin and Whitman would ensure the continued
representation of ChanBond (Tr. 322-23).  ChanBond suffered no
articulable prejudice as a result of the cessation of MNY's
operations (see Tr. 465-67).  If MNY's conduct here constitutes
abandonment, no law firm could ever go out of business without
forfeiting payment for services rendered up to the date of
termination -- an absurd result.[17]  MNY's cessation of operations
did not result in ChanBond being abandoned.

Accordingly, for all the foregoing reasons, the Panel
concludes that MNY was not terminated for cause and did not
abandon ChanBond.  It is, therefore, entitled to recover for the
services it rendered to ChanBond prior to December 31, 2019.

---

[17]The Panel notes that the Retention Agreement gave MNY the
unconditional right to withdraw from its representation of
ChanBond on fifteen days' notice without losing its right to be
compensated for work performed (JX 1 at 5).  Thus, MNY's
withdrawal prior to the conclusion of ChanBond's Delaware
litigation was always within the contemplation of MNY and
ChanBond.

### B.  MNY's Damages

MNY contends that it is entitled to almost a two-thirds proportionate share of the $33.78 million or 65% of KWM's fee because its attorneys worked on ChanBond matters for 4.5 years as opposed to the 1.5 years that KWM's attorneys worked on them.  That would entitle MNY to approximately $22 million.  Alternatively, MNY avers that it is entitled to $9.3 million representing the lodestar amount, or "WIP 'work in progress'," meaning hours worked multiplied by rate charged.  Contemporaneous time records show this figure to be $7,663,696, to which MNY adds an additional $1.7 million that its expert, Laurence Rosenberg, claimed represents time spent from April to December 2019 that was not recorded.  MNY further avers that if the Panel were to use WIP as the basis for its decision, it is entitled to a multiple of the lodestar or at least some additional bonus to raise its recovery to a proportionate share of the work performed.

Respondents assert that, assuming the Panel (as it has) rejects the claim that MNY was terminated for cause, MNY's recovery rights are limited to quantum meruit, as set forth in the April 2015 Retention Agreement between ChanBond and MNY and subsequent correspondence between Mishcon London's lawyers and Raskin and Whitman (JX 1, 12, 13).  Respondents contend that

37

quantum meruit, in the context in which it was used here, is
limited to reasonable WIP charges.  Respondents further contend
that $7,663,696 is an overstatement of the actual hourly work
performed and exceeds the reasonable value of the legal work
performed by MNY.  Thus, they seek to reduce the $7,663,696 to
at most $5 million based on the claim that some of the hours
were nonproductive and would not have been charged for any
hourly based work, that some of the hours posted were wrongly
attributed to the ChanBond actions, and that attorneys in patent
cases customarily reduce fees based on time spent by 10 to 20
percent.  Respondents assert that the WIP should be $5 million
because that is the most MNY would be entitled to under any
reasonable fee calculation.  Respondents reject any other means
of calculating damages.[18]

     The parties acknowledge that MNY has the burden of
proving the amount of attorney's fees to which it is entitled.
ChanBond and KWM are both Respondents in this action.  While the
ChanBond-KWM Retention Agreement of January 13, 2020 provides

---

[18]Raskin and Whitman also claim that they had an agreement with
MNY under which they, personally, would receive one-half of any
settlement or judgment in the patent litigation to distribute to
team members as they saw fit.  They go on to argue that MNY's
fees should be reduced by one-half to account for this
agreement.  Raskin and Whitman, individually, are not parties to
this arbitration and there is no agreement between MNY and
Raskin and Whitman to submit this claim to arbitration.  Thus,
the Panel does not have jurisdiction to consider it.

that KWM will assume costs of any fee claims brought by MNY,
ChanBond is still liable for MNY's fees incurred in the Delaware
litigation under the April 2015 Retention Agreement with MNY.
That agreement specifically provides in paragraph 7(c) that:

> In the event that [ChanBond] terminates its engagement
> with Mishcon or Mishcon withdraws from representation
> of Client, Mishcon:
>
>    (i) shall retain its Vested Contingent fee
> interest in accordance with Paragraph 3(c)[19] above in
> any settlement of any Lawsuit or transfer of interest
> in any Patents negotiated, and for which an agreement
> in principal has been reached on financial terms prior
> to the date of termination or withdrawal, but for
> which Proceeds have not been received prior to the
> date of termination or withdrawal; and
>
>    (ii) shall be entitled to collect quantum
> meruit for work performed up to date of withdrawal, in
> the event of a settlement, successful outcome of a
> Lawsuit, or a transfer of interest in any of the
> Patents entered into after the date of termination or
> withdrawal.

(JX 1 at 5-6).

Paragraph 3(d) of the Retention Agreement defines
"quantum meruit" as the "reasonable value of services Mishcon
has rendered . . . at our scheduled hourly rates for each
attorney . . . ."

The matter was not settled until long after MNY was
terminated, various pre-trial proceedings took place, a jury

---

[19]Paragraph 3(c) defined the amount of the contingency fee MNY
was entitled to receive.

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 41 of 53 PageID #: 7904

consultant was hired and conducted a mock proceeding, and the first trial began.

The July 21, 2019 defunding agreement in which Mishcon London stated its intention to cease funding MNY as of November 30, 2019, provides in paragraph 7.3 that "Nothing in this agreement is intended to alter MdR's interest in the cases on a quantum meruit basis."  There are various emails in which the partners of Mishcon London refer to their quantum meruit rights in ongoing cases subsequent to the defunding agreement (JX 12, 13).  Mark Raskin, former managing partner of MNY and now partner in KWM, however, cautioned in responsive emails to the London partners that if MNY were terminated for cause, there would be no attorney's fees for MNY (Tr. 266-67).  Nevertheless, James Libson wrote to Raskin and Whitman on December 16, 2019 requesting that any new firm employing them be given notice that "London believes it has a claim for quantum meruit in relation [to] the wip" (Ex. 52 at 2).  In response to the termination email from ChanBond to Kevin Gold of Mishcon London, Gold wrote, "we reserve all rights to make a claim for payment of our fees on a quantum meruit basis" (Ex. 143; Tr. 1189).

MNY acknowledges that various documents relating to fees payable use the phrase quantum meruit, but asserts that quantum meruit could mean either an amount based on WIP or an amount based on a proportionate share of the total work

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 42 of 53 PageID #: 7905

performed. See, e.g., SBC 2010-1, LLC v. Smits Structure Corp.,
167 A.D.3d 795, 795-96, 87 N.Y.S.3d 484, 484-85 (2d Dep't 2018);
Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer,
P.C., 304 A.D.2d 86, 92, 756 N.Y.S.2d 147, 151 (1st Dep't 2003).
It compares its 4.5 years of work, which included the taking of
or defense of 55 depositions, defense of challenges to the
patents at issue, and summary judgment motions to KWM's 1.5
years devoted to primarily to preparation for trial, including
performing before a mock jury, extensive preparation of
witnesses, and three intense days of trial.

          MNY cites a number of personal injury contingent fee
cases specifically holding that where a discharged attorney is
seeking a portion of fees from a subsequently engaged attorney,
the discharged attorney has a statutory lien for his/her fees on
proceeds of the settlement or verdict and can elect to receive
either a fixed fee based on the reasonable value of services or
a proportionate share. The default position where no election
has been made is a proportionate share. Cohen v. Grainger,
Tesoriero & Bell, 81 N.Y.2d 655, 659, 622 N.E.2d 288, 290, 602
N.Y.S.2d 788, 790 (1993); see also Lai Ling Chang v. Modansky
Leasing Co., 73 N.Y.2d 454, 458, 539 N.E.2d 570, 572, 541
N.Y.S.2d 742, 744 (1989); Nabi v. Sells, 70 A.D.3d 252, 255, 892
N.Y.S.2d 41, 44 (1st Dep't 2009); Santalucia v. Sebright Transp.
Inc., 232 F.3d 293, 298 n.2(2d Cir. 2000).

However, where the dispute is with the client, the fee
for a discharged attorney is based on the reasonable value of
the services actually rendered.  See Cohen v. Grainger,
Tesoriero & Bell, supra, 81 N.Y.2d at 659, 622 N.E.2d at 290,
602 N.Y.S.2d at 790; see also Lai Ling Cheng v. Modansky Leasing
Co., supra, 73 N.Y.2d at 457-58, 539 N.E.2d at 572, 541 N.Y.S.2d
at 744; Nabi v. Sells, supra, 70 A.D.3d at 254, 892 N.Y.S.2d at
43-44; Santalucia v. Sebright Transportation Inc., supra, 232
F.3d at 298 n.2.

Some cases have indicated that the term quantum meruit
could mean either a proportionate share or the value of the
services rendered.  SBC 2010-1 LLC v. Smith Structure Corp.,
supra, 167 A.D.3d at 795-96, 87 N.Y.S.3d at 484-85; Nabi v.
Sells, supra, 70 A.D.3d at 254, 892 N.Y.S.2d at 44.  Other cases
use the term quantum meruit as meaning reasonable value of
services as distinguished from proportionate share.  See Cohen
v. Grainger, Tesoriero & Bell, supra, 81 N.Y.2d at 658, 622
N.E.2d at 290, 290, 602 N.Y.S.2d at 790; Santalucia v. Sebright
Transportation Inc., supra, 232 F.3d  at 298 n.2.  Both Lai Ling
Cheng, supra, and Cohen, supra, hold that in a claim against a
client, only if the client and attorney agree, may the attorney
receive a fee based on a proportionate share.

MNY used the term quantum meruit in paragraph 7(c)(ii)
of its Retention Agreement with ChanBond to provide that in the

event of termination of the Agreement by either party prior to the settlement or successful outcome, MNY would be entitled to collect quantum meruit for work performed up to the date of withdrawal.  Paragraph 3(d) defines quantum meruit as "reasonable value of the services [MNY] has rendered."  In paragraph 7.3 of the defunding agreement, Mishcon London stated: "Nothing in this agreement is intended to alter MdR's interest in the cases on a quantum meruit basis . . . ."  Presumably, Mishcon London was referring to the provision in ChanBond's Retention Agreement with MNY inasmuch as there was no prior reference to quantum meruit during Mishcon London and ChanBond's course of dealings.  James Libson, MNY's only fact witness at the hearing, testified that quantum meruit was not a familiar expression in England, at least as it is used in the United States (Tr. 263).  However, emails make reference to quantum meruit as the amount of MNY would claim in the event of a recovery against ChanBond (JX 12).   Libson stated MNY was owed $7,663,696 for WIP in his direct statement in reference to quantum meruit although he also talked about seeking "proportionate share" (Libson Decl. ¶¶ 106, 110).

Respondents contend, through DiVincenzo's testimony, that notwithstanding the number of hours MNY's lawyers attributed to ChanBond, the reasonable value of the services MNY actually performed was of significantly less value than $7,663,

696. Raskin also testified that some of the hours attributed to the ChanBond litigation were erroneously charged by James Parker, the paralegal in charge of recording time.

On the other hand, MNY's expert, Rosenberg, using the hours attributed to ChanBond prior to 2019, determined that Raskin and Whitman, who had failed to record any hours after April of 2019 and other Mishcon lawyers whose records were incomplete, must have spent at least an additional $1.7 million worth of time on the ChanBond litigation from April to December 2019. He arrived at this number by using various extrapolation techniques and algorithms from this and other cases and assuming linear performance over at least a year.

The Panel regards the results of the extrapolation as speculative and insufficient to satisfy Claimant's burden of proof as to unrecorded time. Although New York State courts allow for recovery of attorney's fees for unrecorded time, they place a heavy burden on a party seeking to recover for it. See Matter of Phelan, 173 A.D.2d 621, 622, 570 N.Y.S.2d 202, 203 (2d Dep't 1991), ("We have also repeatedly emphasized the significance of contemporaneously-maintained time records as a component of an attorney's affirmation of legal services, and have given little weight to 'after the fact' estimations of time expended.").

Rosenberg also opined as to the appropriateness of
using multiples of the lodestar and of MNY's proportionate 65%
share of the entire attorney's fee.  He opined that MNY should
get $22 million representing 65% of the attorney's fees and
stated that the money paid to Validity, KWM's litigation funder,
should not be deducted from the attorney's fee before making the
allocation.  As to the award of a multiple of the lodestar
amount or any other bonus amount, the Panel finds such additions
to be inappropriate for this non-class action case.

The Panel concludes that MNY is bound by Section
7(c)(ii) of its Retention Agreement with ChanBond.  Because that
Retention Agreement expressly addressed MNY's compensation in
the event MNY ceased representing ChanBond prior to a judgment
or settlement, it was unnecessary for MNY to make any election
regarding attorney's fees when ChanBond discharged it on
December 27, 2019.  The Retention Agreement provided that MNY
was entitled to a quantum meruit recovery defined as WIP.  The
Panel also finds that was what MNY was seeking when Mishcon
London notified key lawyers of MNY in July 2019 that it was
closing down (but not dissolving) the New York Office as of
November 30, 2019.  The Panel finds that both Mishcon London's
and MNY's lawyers, Raskin and Whitman, understood quantum meruit
to mean WIP in reference to the statement in the defunding
agreement that "[n]othing in this agreement is intended to alter

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 47 of 53 PageID #: 7910

MDR's interest in the cases on a quantum meruit basis . . . ."
Thus, the Panel rejects MNY's claim for a proportionate share of
KWM's contingent fee.

As noted above, the time records prepared by attorneys
at MNY indicate that $7,663,696 in billable work was performed.
As was also discussed above, KWM and ChanBond contend that this
amount should be reduced because it includes time not properly
attributable to the ChanBond patent litigation.  MNY argues that
this amount should be increased because certain attorneys
stopped recording their time in March or June of 2019.

In his hearing testimony and in his witness statement
submitted in advance of the hearing, Raskin states that he
reviewed MNY's time records and identified $1.14 million of time
that was improperly attributed to the ChanBond litigation (Tr.
969; Raskin Decl. ¶ 38).  During the hearing, Raskin
acknowledged that only some portion of the $1.14 million he
calculated was in fact improperly billed (Tr. 985).  Apparently,
Raskin excluded billing entries in their entirety whenever the
billing entries included any time that was not properly billed
to the ChanBond litigation, even if those entries also described
work that was properly billed to ChanBond (see, e.g., Tr. 973-
74, 1116-18).  After much discussion with counsel, it was
finally determined that the calculation of $1.14 million
overstated the amount of improper billing but that it was not

46

possible to determine the amount of the overstatement from the evidence in the record (Tr. 1115). Accordingly, the Panel concludes that some downward adjustment in an amount less than $1.14 million is warranted.

On the other hand, an upward adjustment is warranted as well. Three of the attorneys working on the ChanBond litigation -- Whitman, Raskin, and Petrsoric -- ceased recording time attributable to that litigation in March 2019, and a fourth -- Berger -- ceased recording time at the end of June, 2019 (Rosenberg Decl. at 10). By extrapolating from the time each of these attorneys billed during earlier periods, MNY's expert estimates that these attorneys failed to record $1.7 million of billable time (Rosenberg Decl. at 11-12). KWM's expert, Roy Simon, takes issue with Mr. Rosenberg's methodology and challenges the calculation of $1.7 million in unrecorded billable time (Simon Decl. ¶¶ 36-45). Simon offers his own estimation of the unrecorded time, which he values at $455,760 (Simon Decl. ¶ 46). Simon's calculation is quite conservative, at least to the extent it includes a 40% reduction to account for what he describes as the unreliability of MNY's time records (Id. n.12).

In sum, then, KWM argues that the amount reflected in MNY's billing records should be reduced by some unknown amount between $1 and and $1.14 million. MNY argues that the amount

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 49 of 53 PageID #: 7912

reflected in the billing records should be increased by $1.7 million while KWM essentially acknowledges that an increase of $455,760 is appropriate.  Although the Panel is reluctant to reduce MNY's billable work of $7,663,696 substantially, there is strong evidence that there are some charges improperly included in this figure.  Therefore, the Panel concludes that $7,500,000 more accurately represents MNY's WIP.  The Panel also concludes that the rationale for any increase in excess of the acknowledged $455,760 is speculative, and that to the extent there are cogent arguments for additional adjustments either up or down on either side, they essentially cancel each other out. The Panel therefore concludes that the $7,663,696 reflected in the billing records should be decreased to $7,500,000 and that the sum of $455,760 should be added to that to account for the unbilled time MNY devoted to the litigation in 2019.  The Panel, therefore, awards MNY fees in the total amount of $7,955,760.

As to the date from which interest should be calculated, the Panel finds that the appropriate date is July 21, 2021 when Claimant made its first demand for payment from the proceeds of the settlement ChanBond was to receive, shortly after the matter was fully settled in the Delaware District Court and the right to attorney's fees obtained.

## C. __Attorney's Fees__

MNY asks the Panel to rule that, as the prevailing party, it is entitled to recover its attorney's fees. KWM opposes MNY's request primarily on the basis that the applicable arbitration agreement does not provide for an award of fees.

The Retention Agreement between MNY and ChanBond provides for arbitration of any dispute pursuant to the rules of the AAA (JX 1, ¶ 12(a)). The arbitration clause in the agreement explicitly provides that each party will bear its own costs, attorney's fees, and disbursements (Id.).

Under the circumstances here, the terms of the Retention Agreement between MNY and ChanBond do not preclude a fee award. That is because, in this case, both MNY and Respondents sought attorney's fees in their pleadings and pre-hearing briefs (see Mishcon Ltr. Dated Dec. 13, 2023 at n.1). AAA Commercial Rule 47(d) ("R-47(d)") provides that arbitrators may award attorney's fees "if all parties have requested such an award **or** it is authorized by law or their arbitration agreement" (emphasis added)). See also Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, 653 F.3d 702, 713-14 (8th Cir. 2011); Matter of Goldberg v. Thelen Reid Brown Raysman & Steiner LLP, 52 A.D.3d 392, 392-93, 860 N.Y.S.2d 93, 94 (1st Dep't 2008).

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 51 of 53 PageID #: 7914

Respondents have submitted a joint letter dated
December 7, 2023, asserting that their demands for attorney's
fees were made inadvertently and seeking to withdraw them.
Respondents, however, demanded attorney's fees on at least two
earlier occasions and sought to withdraw those demands only at a
very the late stage of the proceedings (<u>see</u> Respondents'
Answering Statement and Counterclaim, dated May 9, 2022, Prayer
for Relief, at 17; Respondents' Pre-Hearing Brief, dated Aug.
25, 2023, at 35).  Accordingly, the Panel declines to give
effect to this attempted withdrawal and concludes that it has
authority under R-47 to consider Mishcon's request for fees.

R-47, though, provides that fees "may" be awarded; it
does not require an award of fees to a prevailing party.  In
considering whether a fee award is appropriate here, the Panel
first notes that common law claims, such as the ones brought by
MNY, generally do not permit a prevailing party to recover its
fees.  In addition, the arbitration agreement between MNY and
ChanBond provides that each side will bear its own attorney's
fees and costs.  Accordingly, when MNY filed its demand for
arbitration, it had no reason to expect that Respondents would
seek to recover their attorney's fees as well, and thus no basis
to believe that fees might be recoverable.  The Panel further
notes that Respondents did not assert frivolous positions or
engage in vexatious litigation tactics.  Finally, while MNY may

Case 1:21-cv-01456-GBW   Document 243-3   Filed 02/12/24   Page 52 of 53 PageID #: 7915

properly be considered the prevailing party, the Panel did not accept its positions on some of the issues that were most hotly contested.

For all these reasons, the Panel denies MNY's request for an award of attorney's fees and costs.

## IV.  Conclusion

Accordingly, for all the foregoing reasons the Panel awards MNY the sum of $9,745,806, calculated as follows:

| | |
|---|---|
| Quantum Meruit Recovery: | $7,955,760 |
| Simple 9% per annum interest from July 21, 2021 (2.5 years) | $1,790,046 |
| **TOTAL** | **$9,745,806** |

This award shall earn simple interest at the rate of 9% per annum until paid.

Respondents' counterclaims are dismissed.

## V.  Billing

The administrative fees and expenses of the American Arbitration Association total $26,042.50.  MNY has paid $17,792.50 of these fees.  ChanBond has paid $8,250.00 of these fees.  Unless otherwise agreed among the parties, the Panel concludes that these administrative fees and expenses should be allocated 50%-25%-25% among MNY, KWM and Chanbond, respectively.

Case 1:21-cv-01456-GBW Document 243-3 Filed 02/12/24 Page 53 of 53 PageID #: 7916

Thus, unless otherwise agreed among the parties, KWM is to reim—burse MNY $4,771.25, i.e. the amount by which MNY's payment ex—ceeds its 50% share of the administrative fees. Similarly, unless otherwise agreed among the parties, KWM is to reimburse ChanBond $1,739.38, i.e., the amount by which ChanBond's payment exceeds its 25% share of the administrative fees.

The compensation and expenses of the arbitrators to—taling $337,175.00 shall be borne, unless otherwise agreed among the parties, $168,587.50 by MNY (50%); $84,293.75 by KWM (25%); and $84,293.75 by ChanBond (25%).

Dated:  January 23, 2024

_____
Henry Pitman

_____
Helen E. Freedman

_____
Steven M. Gold

52

52