## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CBV, INC., | ) |
| | ) |
|        Plaintiff, | ) |
|    v. | )  C.A. No. 1:21-cv-01456-GBW |
| | ) |
| CHANBOND, LLC, DEIRDRE LEANE, | ) |
| and IPNAV, LLC, | ) |
| | ) |
|        Defendants. | ) |

## DECLARATION OF DEIRDRE LEANE

1. I am the founder, CEO and sole member of IPNAV, LLC ("IPNAV") and submit this declaration in support of the Leane Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction. I have personal knowledge of the facts submitted herein, and could and would testify competently to them if called to do so.

2. I am a Texas resident and patent monetization professional with decades of experience identifying valuable patents and developing and running campaigns to generate revenue from them. IPNAV has no predecessor, and has never had any members or employees other than me.

3. At the time I formed IPNAV, I was working at IP Navigation Group (which people referred to as "IP Nav"), a patent monetization advisor that had been founded and run by Erich Spangenberg. I formed IPNAV in connection with discussions I was having with Spangenberg about taking over IP Nav upon his retirement. That planned acquisition never occurred.

4. While that deal was being negotiated and after it fell through, I continued doing business through IPNAV.

5. ChanBond is a Delaware LLC formed to purchase that intellectual property from CBV. From its formation through October 2015, I was ChanBond's Manager and sole member.

6. In October 2015, pursuant to the terms of an Interest Sale Agreement ("ISA"), I sold my membership interests in ChanBond to UnifiedOnline, Inc. ("Unified"), which became (and remains) ChanBond's sole member.

7. On April 9, 2015, CBV and ChanBond entered into the PPA, by which ChanBond acquired CBV's intellectual property and patents. At the same time, CBV and ChanBond executed two other contracts that were annexed as Exhibits B and C to the PPA: a "Mutual Nondisclosure Agreement" ("NDA") and a "Common Interest Agreement" ("CIA"). IPNAV was a party to the NDA and CIA, and I signed both agreements on behalf of each ChanBond and IPNAV. The CIA includes CBV's acknowledgement and agreement that IPNAV "will act as the worldwide intellectual property enforcement and licensing agent of [ChanBond] and will provide services related to the existing and future enforcement and monetization opportunities of the patents and related rights".

8. CBV and ChanBond amended the PPA later in 2015. A true and correct copy of the amended PPA is attached hereto as **Exhibit 1.**

9. While I was still the sole member of ChanBond, ChanBond and IPNAV entered into an "Advisory Services Agreement" (the "ASA") by which ChanBond agreed to pay IPNAV a fee of 22% of any amounts recovered from the monetization campaign, as well as to indemnify both IPNAV and myself for any losses or expenses relating to the ASA, IPNAV's services, or the intellectual property rights ChanBond had purchased from CBV. Annexed hereto as **Exhibit 2** is a true and correct copy of the ASA.

10. Unified was fully aware of the existence of the ASA when it purchased ChanBond, and Billy Carter, who negotiated the purchase for Unified, expressly confirmed that Unified would purchase ChanBond subject to the terms of the ASA. *See* **Exhibit 3** hereto.

11. In 2020, Carter began to dispute IPNAV's entitlement to receive its 22% fee, for reasons not relevant to this litigation. On September 30, 2020, I (together with IPNAV) commenced AAA arbitration against ChanBond and Unified over that issue (the "Arbitration"). On May 18, 2022, the Arbitration panel issued a unanimous final award in our favor, awarding us $ 29,378,113.75, plus additional sums as pre- and post-judgment interest at 5% per year. Annexed hereto as **Exhibit 4** is a true and correct copy of the Final Arbitration Award.

12. IPNAV is not an affiliate of ChanBond. I am the sole member of IPNAV and IPNAV does not control, is not controlled by, and is not under common control with ChanBond.

13. Though the PPA does not define the term "stakeholders" in ChanBond, its meaning was always clear to me: a "stakeholder in ChanBond" is a person or entity that has an ownership interest in the company itself, whether directly or indirectly. That was how I understood it at the time I executed the agreement and it is how I understand it now.

14. I am informed that CBV now contends that any person or party with an economic interest in ChanBond's patent litigation is a "stakeholder" in ChanBond as defined by the PPA. That clearly was not what the parties' intended by the term "stakeholder in ChanBond"; among other things, that would have made ChanBond's patent litigation counsel a "stakeholder" whose payment CBV would have to specifically approve before it could be deducted in calculating Net Recoveries, because that counsel was going to be paid on contingency. Not only had the parties expressly identified those fees as deductible in Section 2.8 of the PPA, but, from ChanBond's

perspective, CBV's agreement that those contingency fees would be deductible was a key deal term and the point of Section 2.8.

      15. Annexed hereto as **Exhibit 5** is a copy of ChanBond's first litigation funding agreement.

_____<br>Deirdre Leane

February 12, 2024