**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CBV, INC.,

     Plaintiff,

  v.

CHANBOND, LLC, DEIRDRE LEANE,
and IPNAV, LLC,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:21-cv-01456-GBW

LEANE DEFENDANTS' BRIEF IN
OPPOSITION TO PLAINTIFF CBV'S MOTION
FOR SUMMARY JUDGMENT

███████████████████

---

**LEANE DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF CBV'S
MOTION FOR SUMMARY JUDGMENT**

---

James H. S. Levine (DE No. 5355)
TROUTMAN PEPPER HAMILTON
 SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500
*james.levine@troutman.com*

Akiva M. Cohen
Dylan M. Schmeyer
KAMERMAN, UNCYK, SONIKER &
 KLEIN P.C,
1700 Broadway, 16th Floor
New York, NY 10019
212.400.4930
*acohen@kusklaw.com*
*dschmeyer@kusklaw.com*

Dated:  February 12, 2024

*Attorneys for IPNAV, LLC and Deirdre
 Leane*

## <u>Table of Contents</u>

I.   Current Procedural Posture ....................................................................................... 8

I.   The Parties and Players .......................................................................................... 10

II.  CBV Sells Patents to ChanBond, and Agrees That IPNAV Will Advise ChanBond............. 11

III. ChanBond's Agreement with IPNAV and the Arbitration ....................................... 12

IV.  The Parties' Various Settlements............................................................................ 14

V.   This Action and the Court's Prior Ruling............................................................... 16

I.   THE REMAINING CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT
     MATTER JURISDICTION AND AS MOOT     18

     A.  The Court Lacks Subject Matter Jurisdiction Over Any Remaining Claims Because
     ChanBond and CBV Are Not Adverse Parties     18

     B.  All Remaining Declaratory Judgment Claims Are Moot ..................................... 21

     C.  The Claims are Moot Because CBV Released Defendants .............................. 24

     D.  The Claims are Moot Because CBV Indemnified ChanBond, Which Indemnified IPNAV
     26

II.  CBV'S MOTION FOR SUMMARY JUDGMENT FAILS ON THE MERITS .................. 27

     A.  CBV Seeks a Declaration not Requested in the Pleadings, That is not a Proper Subject for
     Declaratory Relief, and, in Any Event, Requires the Court to Make Factual Findings For
     Which CBV Has Submitted No Evidence ................................................................ 27

     B.  Section 2.8 of the PPA Is a Rule of Allocation, Not an Approval Right........................... 29

     C.  Section 2.8 Does not Apply to ChanBond's Payment to IPNAV Because IPNAV is
     Neither a ChanBond Affiliate nor a ChanBond Stakeholder.................................. 32

     D.  Issues of Fact Would Preclude Summary Judgment and Require Additional Discovery and
     Trial............................................................................................................................ 34

## TABLE OF AUTHORITIES

# Cases

*Apotex Inc. v. Alcon Rsch., Ltd.*, 238 F. Supp. 3d 1104 (S.D. Ind. 2017).............................. 20, 21

*Averill v. Jones*, 2022 WL 605815 (D. Del. Jan. 19, 2022)................................................. 32

*Bryan v. All Out Die Cutting, Inc.*, 32 F. App'x 651 (3d Cir. 2002)............................................ 20

*Chase Manhattan Bank v. Iridium Afr. Corp.*, 197 F. Supp. 2d 120 (D. Del. 2002)................... 35

*Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F. Supp. 1210 (D. Del. 1982) ............ 25

*Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163 (3d Cir. 1987) .................................... 31

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367
  (D. Del. 2008) ................................................................................................................... 21

*Delaware State Univ. v. Thomas Co., Inc.*, 2020 WL 6799605 (D. Del. Nov. 19, 2020) ........... 35

*E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108 (Del. 1985) ............................ 31

*Hewitt v. Helms*, 482 U.S. 755 (1987) ...................................................................................... 21

*Insignia Cap. Advisors, Inc. v. Stockbridge Corp.*, 2000 WL 267495
  (Tex. App. Mar. 13, 2000) ................................................................................................ 24

*Johnson v. U. S.*, No. CR 06-74-GBW, 2022 WL 17403476 (D. Del. Dec. 2, 2022) ................. 21

*Koons v. XL Ins. Am., Inc.*, 620 F. App'x 110 (3d Cir. 2015)...................................................... 27

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572 (Del. Ch. 2006).......................... 26

*Moore Corp. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089 (D. Del. 1995) ................... 19

*OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211 (D. Del. Sept. 27, 2018)............... 21, 28

*Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010) ....................................................... 30

*Shah v. Shah*, 1988 WL 67403 (Del. Ch. June 28, 1988), *on reconsideration*,
  1988 WL 81159 (Del. Ch. Aug. 3, 1988) ........................................................................ 25

*Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990)........................................ 19

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)................................................................. 25

*Univar Sols. Inc. v. Geisenberger*, 2022 WL 2064990 (D. Del. June 8, 2022)........................... 19

*Wheeler v. Travelers Ins. Co.*, 22 F.3d 534 (3d Cir. 1994).......................................................... 27

*Wonderland Switzerland AG v. Evenflo Co., Inc.*, 2022 WL 20590003 (D. Del. Dec. 6, 2022).. 35

*Zandford v. S.E.C.*, 2012 WL 628002 (D. Del. Feb. 27, 2012) ................................................... 21

## INTRODUCTION

In what it styles a motion for summary judgment, Plaintiff CBV, Inc. ("CBV") asks this Court to issue "a declaration …that any reasonable construction of PPA[1] Section 2.8 grants CBV a pre-approval right over the $30 million stakeholder expense fee paid to Leane Defendants for their 22% stake in ChanBond per the ASA, such payment having been made without notice to or approval by CBV, thereby unjustly enriching Leane Defendants to the detriment of CBV." D.I. 239 at 18-19.[2] For multiple independent reasons, however – lack of adversity, mootness, the fact that CBV is seeking an advisory opinion rather than a declaratory judgment, and the fact that CBV released all claims against Defendants Deirdre Leane and IPNAV, LLC ("IPNAV") – CBV's own actions have deprived the Court of the subject matter jurisdiction required to enter such a declaration. In any event, CBV failed to demonstrate its entitlement to summary judgment, also for several independent reasons.

This Court lacks jurisdiction because CBV eliminated the adverse party required for subject matter jurisdiction by settling its claims against Defendant ChanBond, Inc. ("ChanBond"). Though CBV's motion ostensibly seeks a declaration that ChanBond breached its obligations to CBV, ChanBond will not be opposing it, for obvious reasons. Win or lose, CBV promised to seek no remedies from ChanBond and hold ChanBond harmless from any damage it incurs as a result of CBV's continued litigation. More than that, CBV has agreed to *pay* ChanBond if, effectively, ChanBond 'loses' this motion (though CBV, rather than ChanBond, is

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Leane Defendants' Answer, D.I. 41.

[2] Plaintiff's Proposed Order, D.I. 238-1, omits "thereby unjustly enriching Leane Defendants to the detriment of CBV." It is unclear whether the proposed order inadvertently omitted material or if the Brief included relief not actually being sought. Out of an abundance of caution, Leane Defendants will assume Plaintiff intended to seek the broader declaration that included unjust enrichment.

the moving party) and CBV subsequently recovers damages from Leane Defendants.[3] Yet, though ChanBond is now fully aligned with CBV, both economically and practically, the declarations CBV seeks are declarations of *ChanBond's* contractual obligations to CBV. In the absence of an adverse relationship between CBV and ChanBond, the Court does not have subject matter jurisdiction to declare the rights and obligations of these parties. For that reason alone, the Court should find that it lacks subject matter jurisdiction over the remaining claims and dismiss the case.

The Court also lacks jurisdiction over the declaratory judgment claims[4] because those claims are moot. In fact, CBV is not truly seeking a declaratory judgment, but rather an advisory opinion it hopes to use in a hypothetical future action it might later file against the Leane Defendants. But federal courts do not have subject matter jurisdiction to provide advisory opinions. As discussed in Section I(B), *infra*, what distinguishes a proper declaratory judgment action from an improper request for an advisory opinion is the ability for the Court's declaration to allow the parties to, **moving forward**, comply with the contractual (or other) rights clarified by the Court. Here, Plaintiff seeks only a declaration that goes to the **past conduct** of Defendant ChanBond – that ChanBond breached the PPA by paying Leane Defendants without CBV's pre-approval – which it hopes to then use as a building block for some unfiled future action against Leane Defendants. Because ChanBond has indisputably **already** paid IPNAV, and CBV identifies no other payment to which its requested ruling might apply in the future, a

---

[3] CBV is in effect seeking to hold Leane Defendants *exclusively* responsible for paying an award of contractual damages it hopes would be issued against ChanBond based on a finding that ChanBond breached contractual obligations to CBV.

[4] In its settlement with ChanBond, CBV agreed to immediately dismiss with prejudice all of its breach of contract claims against ChanBond, leaving only its declaratory judgment actions – which it would "dismiss with prejudice … once CBV's claims against Leane Defendants are completely resolved (i.e. deferred dismissal)." D.I. 214 Ex. A ¶ 4.2.

"declaration" from the Court regarding CBV's purported right to "pre-approve" is inappropriate, unavailable, and beyond the Court's jurisdiction.

Were all of that not enough, CBV has also already released ChanBond and the Leane Defendants from liability. The settlement agreement between ChanBond and CBV includes broad release language that extends to releasing ChanBond's "affiliates" from "all claims relating to the PPA," and CBV's claims in this action expressly relied upon asserting that IPNAV is a ChanBond affiliate. The settlement agreement also expressly releases ChanBond's (and UnifiedOnline, Inc.'s) current and former officers, shareholders, managers, members, and agents – categories that include both Leane and IPNAV.  More, CBV's settlement with ChanBond requires CBV to indemnify ChanBond for any judgment against ChanBond, while IPNAV's prior agreement with ChanBond requires ChanBond to indemnify IPNAV for any damages arising out of ChanBond's breach of an obligation to a third party, such as CBV. In combination, those clauses create a situation in which CBV itself would ultimately be required to make Leane Defendants whole for any damages CBV could recover from Leane Defendants. This renders any ruling this Court might issue academic – whatever wrongs CBV may feel it has suffered, by the express terms of its own agreement with ChanBond to resolve them, they are no longer redressable.

Each of those issues is independently sufficient to deprive this Court of subject matter jurisdiction, and this Court should dismiss the case pursuant to Fed. R. Civ. P 12(b)(1) and (h)(3). But if the Court finds that it retains subject matter jurisdiction, it should deny CBV's motion for summary judgment on the merits.

At the outset, it is unclear what claimed cause of action in any of the active pleadings would entitle CBV to the declaration it seeks. Although there may be declaratory judgment

claims, none seeks the declaration CBV requests by its motion. Nor can CBV receive a declaration that the Leane Defendants have been unjustly enriched by anything, because the complaint contains no unjust enrichment claim and the Court has already denied Plaintiff leave to amend to include such a claim.

Plaintiff's legal argument also fails on the merits. The Court has already declared that Section 2.8 of the PPA "plainly does not grant a consent requirement," D.I. 151 at 12, but instead provides a rule that defines what expenses can be deducted from Gross Recoveries when determining the Net Recoveries that define how much money ChanBond was responsible for paying CBV. CBV's attempt to read a payment consent requirement into the provision fares no better than its prior effort at reading a contract entry consent requirement into the provision. Nor is IPNAV a "ChanBond stakeholder," D.I. 239 at 5, at all; it owns no interest in ChanBond, directly or indirectly.[5] In the end, CBV's true claim is not that ChanBond breached the PPA by paying IPNAV on a duly issued arbitration award, but that CBV granted IPNAV a preference, paying IPNAV more than its proportionate share of the amounts due to IPNAV and CBV when ChanBond allegedly did not have enough money to pay both obligations in full. Not only is that claim foreclosed by CBV's failure to file a preference action within the relevant clawback period, but CBV's inexplicable decision to allow ChanBond to itself keep roughly $14,000,000 of the patent proceeds precludes any claim that ChanBond is insolvent, as would be necessary to trigger a preference action.

---

[5] CBV's claim that IPNAV is a "stakeholder in *ChanBond*" (because its fee was a percentage of the *recovery* on ChanBond's patents) – rather than an "affiliate" of ChanBond – is new, raised for the first time on this summary judgment motion. As discussed below, that interpretation of the term "stakeholder in ChanBond" is wrong. But to the extent that the meaning of "stakeholder in ChanBond" is ambiguous, the parties would be entitled to discovery regarding its meaning, and summary judgment would be inappropriate for that reason as well.

Finally, CBV also fails to provide evidence to support numerous key factual assertions. It has provided no declarations to support the motion for summary judgment, repeatedly referenced the **unverified** complaint as its sole evidence for facts, and – in some cases – simply not provided anything but bare assertions for facts. Those unsourced facts include CBV's assertion that payment was in fact made to Leane Defendants without CBV's knowledge or consent.[6]  Yet CBV wants the Court to declare that the payment "[had] been made without notice to or approval by CBV." Op. Br., D.I. 239 at 18-19. A declaration to that effect cannot issue when the moving party has not deigned to even attempt to support that statement with competent, record evidence. And even if CBV had provided declarations in support of its claim that it had not approved payment to IPNAV, that would merely raise an issue of fact in light of IPNAV's evidence that CBV was long aware that ChanBond had retained IPNAV for a fee of a percentage of the patent recovery, and allowed IPNAV to provide services to ChanBond on that basis.

For all those reasons, if the Court does not dismiss the case for want of subject matter jurisdiction, it should deny CBV's motion for summary judgment and grant Leane Defendants' cross-motion.

## NATURE AND STAGE OF PROCEEDINGS

### I.  Current Procedural Posture

The current procedural posture of this case can charitably be described as "a shambles." The operative pleadings are the First Amended Complaint ("FAC"), D.I. 6, and Leane Defendants' Answer and Counterclaims. D.I. 41. These pleadings contain the following causes of action:

1.  FAC Count 1: Specific Performance

---

[6] Leane Defendants do not contest that a payment was made, but have no first-hand knowledge of Plaintiff's knowledge or actions in this regard.

2. FAC Count 2: Breach of Contract (PPA Sections 3.3.2 & 4.1 and PPA Amendment Section 3.5) (plead in the alternative)
3. FAC Count 3: Breach of Contract (ISA)
4. FAC Count 4: Declaratory Judgment (ISA)
5. FAC Count 5: Declaratory Judgment (Section 2.8)
6. FAC Count 6: Declaratory Judgment (Section 2.8) ("Against ChanBond")
7. FAC Count 7: Injunctive Relief
8. Leane Counterclaim 1: Declaratory Judgment (Section 2.8)
9. Leane Counterclaim 2: Unjust Enrichment
10. Leane Cross-Claim 1: Confirmation of Arbitration Award
11. ChanBond Counterclaim 1: Vacatur of Arbitration Award

Leane Cross-Claim 1 and ChanBond Counterclaim 1 were both voluntarily dismissed via D.I. 178.

CBV contractually committed to immediately dismiss with prejudice "all breach of contract claims against ChanBond" as part of its settlement with ChanBond, D.I. 214 Ex. A (the "Final Settlement Agreement"),[7] ¶ 4.1, a provision it promptly breached. Although the Final Settlement Agreement also committed CBV to "dismiss with prejudice the remaining declaratory judgment and specific performance claims against ChanBond once CBV's claims against Leane Defendants are completely resolved," and to do so "[a]s soon as reasonably practicable and without further consideration," *id.*, ¶ 4.2, and released ChanBond "from ***any and all*** agreements, complaints, controversies … duties, grievances… promises … remedies, claims … demands …

---

[7] In addition to the Final Settlement Agreement, two other agreements settled claims at issue in this action. On August 27, 2021, CBV entered into a settlement agreement with ChanBond that resolved CBV's claims relating to the timing of CBV's distributions from the patent proceeds and its claim that ChanBond could not pay its litigation funders without CBV's pre-approval (the "First Settlement Agreement"). D.I. 49-7. (FAC Count 1 nevertheless asserted claims resolved by the First Settlement Agreement). *See* Declaration of Akiva M. Cohen ("Cohen Dec"), Ex. 1 at 73:18-74:17 (CBV agreed the payment to the litigation funder was deductible), 78:2-14 (CBV agreed ChanBond should withhold further payments to CBV), 82:1-90:7 (testifying that CBV knowingly and deliberately asserted claims barred by its First Settlement Agreement with ChanBond, on the undisclosed theory that CBV wasn't bound by its agreement). And Leane, IPNAV, and ChanBond entered into a settlement agreement on November 10, 2022 resolving the claims between them (the "Second Settlement Agreement").

contracts, obligations, actions, causes of action, and rights," *id.*, ¶ 3.1, CBV maintains that it did not settle, "its declaratory judgment claims." D.I. 233 at 3. To the extent the Court accepts CBV's characterization of the Final Settlement Agreement as not having settled CBV's declaratory judgment claims, that would leave FAC Counts 4-6 and Leane Counterclaims 1-2 (which Leane and IPNAV recognize as moot and no longer seek to affirmatively assert) as potentially the subject of CBV's summary judgment motion. Because none of those causes of action sought the declaration CBV now requests, it is unclear whether CBV's Motion for Summary Judgement seeks a judgment on some, all, or none of those claims.

Ultimately, the current procedural posture of the case boils down to this: CBV settled its dispute with ChanBond, accepting payment in exchange for executing a contract in which it agreed to seek no further remedies of any kind from ChanBond relating to the PPA. Nevertheless, CBV asks the Court to declare what ChanBond's duties would hypothetically be were ChanBond still required to make future payments to CBV under the PPA.

A fuller procedural background of this case is set forth *infra* on pages 12-14. With respect to the instant motions, on December 19, 2023, the Court granted the parties' requests to seek summary judgment. D.I. 236.  On January 16, 2024, CBV moved for summary judgment and filed its opening brief in support thereof. D.I. 238-39.  This is Leane Defendants' combined answering brief in opposition to CBV's summary judgment motion and opening brief in support of their cross-motion for summary judgment or dismissal.

## RELEVANT FACTS

### I. The Parties and Players

Ms. Leane is a Texas resident and patent monetization professional with decades of experience in the space. Declaration of Deirdre Leane ("Leane Dec"), ¶ 2. She is the sole member of IPNAV, a Texas limited liability company that provides patent monetization services.

*Id.* At the time she formed IPNAV, Ms. Leane was working at IP Navigation Group (colloquially known as "IP Nav"), a patent monetization advisor that had been founded and run by Erich Spangenberg. *Id.*, ¶ 3. She formed IPNAV in connection with discussions with Spangenberg for Leane to take over his company's business upon his retirement, in a planned acquisition that, in the end, never occurred. *Id.*

CBV is a Pennsylvania corporation formed by Earl Hennenhoefer, Dick Snyder, and Bob Stine to hold intellectual property, including patents, relating to technology the trio had invented. D.I. 107 at 9:16-10:4 Hennenhoefer was CBV's CEO. Cohen Dec. Ex. 1 at 61:20-23**.**

ChanBond is a Delaware LLC formed to purchase that intellectual property from CBV. Leane Dec, ¶ 5. Ms. Leane was ChanBond's founder, and from its formation through October 2015, Ms. Leane was its Manager and sole member. *Id.* In October 2015, pursuant to the terms of an Interest Sale Agreement ("ISA"), Ms. Leane sold her membership interests in ChanBond to UnifiedOnline, Inc. ("Unified"), which became (and remains) ChanBond's sole member. *Id.*, ¶ 6 D.I. 42. Pursuant to the terms of the ISA, Unified appointed its majority shareholder, William "Billy" Carter, as ChanBond's Manager. D.I. 42 § 2.2.2.

**II.  CBV Sells Patents to ChanBond, and Agrees That IPNAV Will Advise ChanBond**

On April 9, 2015, CBV and ChanBond entered into the PPA, by which ChanBond acquired CBV's intellectual property and patents. D.I. 49-1.[8] At the same time, CBV and ChanBond executed two other contracts that were annexed as Exhibits B and C to the PPA: a "Mutual Nondisclosure Agreement" ("NDA") and a "Common Interest Agreement" ("CIA"). *Id.* IPNAV was a party to the NDA and CIA, and Ms. Leane signed both agreements on behalf of each ChanBond *and* IPNAV. *Id.* The CIA includes CBV's acknowledgement and agreement that

---

[8] CBV and ChanBond amended the PPA later in 2015. Leane Dec, Ex. 1.

IPNAV "will act as the worldwide intellectual property enforcement and licensing agent of [ChanBond] and will provide services related to the existing and future enforcement and monetization opportunities of the patents and related rights." *Id.* at 16, §1.1.[9]

The PPA provided, in relevant part, that CBV would be paid for the sale of its intellectual property by receiving a share of any eventual recovery by ChanBond from ChanBond's monetization of the patents. D.I. 49-1 § 3.3.2. CBV was entitled to $1,000,000.00, plus 50% of the "Net Recoveries." *Id.* And Section 2.8 of the PPA defined "Net Recoveries" by identifying which expenses could be deducted from funds recovered by ChanBond:

> "***Net Recoveries***" shall mean the total aggregate Gross Recoveries less the total amount of costs and expenses incurred by or on behalf of [ChanBond] in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and other reasonable costs and expenses related to the maintenance, prosecution, enforcement and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents Notwithstanding the above, any cost or expense which is paid to an Affiliate of [ChanBond] or to a stakeholder of [ChanBond] shall require the prior approval of Seller, such approval to not be unreasonably withheld.

*Id.* at 2.

### III. ChanBond's Agreement with IPNAV and the Arbitration

While Ms. Leane was still the sole member of ChanBond, ChanBond and IPNAV entered into an "Advisory Services Agreement" (the "ASA") by which ChanBond agreed to pay IPNAV a fee of 22% of any amounts recovered from the monetization campaign, as well as to indemnify

---

[9] CBV was well aware both that Ms. Leane was executing the agreements on behalf of both entities and that IPNAV was not IP Navigation Group; Mr. Hennenhoefer testified that he had been specifically informed of that by CBV's attorney in advance of executing the PPA and knew both that IPNAV and ChanBond were separate entities each owned by Ms. Leane and that IPNAV was going to be ChanBond's agent. D.I. 107 at 45:23-46:6, 148:5-18, 149:9-13.

IPNAV (and Ms. Leane) for any losses or expenses relating to the ASA, IPNAV's services, or the intellectual property rights ChanBond had purchased from CBV. Leane Dec, Ex. 2 at §§ 5, 15.[10]

In 2020, Carter began to dispute IPNAV's entitlement[11] to receive its 22% fee, and on September 30, 2020, Leane and IPNAV commenced AAA arbitration against ChanBond and Unified over that issue (the "Arbitration"). Leane Dec, ¶ 11. On May 18, 2022, the Arbitration panel issued a unanimous final award in favor of Leane and IPNAV, awarding them $ 29,378,113.75, plus additional sums as pre- and post-judgment interest at 5% per year. *Id.*, Ex. 4.

Contrary to Plaintiff's misstatement to the Court, the Panel did **not** "recognize[] CBV's [purported] pre-approval right in the PPA over any payment by ChanBond pursuant [to] the ASA." D.I. 240 at 3.[12] To the contrary, rejecting ChanBond's argument that it owed IPNAV nothing because the PPA was allegedly void as not having been pre-approved by CBV – the same argument CBV [and, initially, ChanBond] made in this action – the Panel held: (1) its determination was "strictly limited to the enforceability of the parties to this arbitration only," Leane Dec, Ex. 4 at ¶ 22, and that as between those parties "the ASA was in force and effect as of April 30, 2018," *id.*, ¶ 26; and (2) as to whether **CBV** had a claim that ChanBond breached the PPA by executing the ASA, that "interpretation of the terms of the [PPA] is outside the

---

[10] When Unified purchased ChanBond, it did so aware of the existence of the ASA and expressly subject to its terms. D.I. 42, § 1.3; Leane Dec. Ex. 3.

[11] The underlying factual background of that dispute is set out in the Final Arbitration Award discussed below and annexed to the Leane Declaration as Exhibit 4; because that underlying dispute was resolved in the arbitration and is not directly relevant to the motions before this Court, it is not recapitulated here.

[12] Plaintiff cites Paragraph 22 of the Interim Final Award in support of this contention, while this brief references the Final Award; the Interim Final Award is identical in relevant part, as the outstanding issue resolved by the Final Award was the amount of attorneys' fees and costs to be awarded to Leane Defendants.

jurisdiction of [the Arbitration]" and would be litigated in this action. *Id.*, ¶ 22.[13] As discussed

below, the Court has already held that Section 2.8 does not provide CBV with any "pre-approval

right" at all, but merely provides that non-pre-approved payments to certain types of vendors

could not be deducted as expenses when ChanBond calculated the "Net Recoveries" on which its

payment obligation to CBV would be calculated.

## IV. The Parties' Various Settlements

Since the initiation of the arbitration, CBV and ChanBond have entered into two

settlement agreements impacting this litigation, and Leane Defendants and ChanBond have

entered into another.

On August 27, 2021, nearly two months prior to the filing of this action, CBV entered

into the First Settlement Agreement – a "Receipt, Release, and Consent to Distribute" that

partially resolved some of the issues that CBV subsequently raised in this action. D.I. 49-7. CBV

agreed to accept $10,000,000.00 from ChanBond toward its payment obligations under the PPA.

*Id.* at ¶ 5. The agreement provided both that the payment be made upon execution of the First

Settlement Agreement, notwithstanding the fact that payment would not be due until October 30,

2021 at the earliest, *id.* at ¶ 4, and that no further payments would be made until the resolution of

the then-pending arbitration between ChanBond and Leane Defendants. *Id.* at ¶ 6. The First

Settlement Agreement also acknowledged that payments ChanBond made to the litigation funder

would be treated as a shared litigation expense. *Id.* at ¶ 11. And it expressly permitted the

distribution of $9,000,000.00 to ChanBond, for Chanbond's use. *Id.* at ¶ 8. As discussed below,

CBV's Complaint in this action contains several causes of action that were entirely foreclosed by

---

[13] Leane Defendants are at a loss to explain how Plaintiff could conceivably have interpreted the Panel's express determination that it *would not* construe Section 2.8 of the PPA or assess CBV's rights as having instead affirmatively construed Section 2.8 in a manner that recognized the existence of the purported "pre-approval right."

the First Settlement Agreement – yet neither the Complaint nor the First Amended Complaint disclosed the existence of the First Settlement Agreement to the Court.

Indeed, in the First Settlement Agreement, CBV expressly negotiated for an express approval right over any payment ChanBond might seek to make in settlement of ChanBond's arbitration with Leane Defendants. *Id.* at ¶ 6. But CBV cannot avail itself of a breach of contract action against ChanBond despite its allegations that ChanBond made exactly such a payment. Not only has CBV released any such claim as part of the Final Settlement Agreement discussed below, CBV would in any event not be able to claim the benefits of the First Settlement Agreement – because CBV had long since breached it by bringing an action against ChanBond demanding payments that the parties had agreed in the First Settlement Agreement were not yet due. Indeed, Hennenhoefer testified that CBV brought those claims because it did not believe it was truly bound by the First Settlement Agreement, which it simply signed in order to get ten million dollars. CITE Cohen Dec. Ex. 1 at 82:1-82:22 (testifying forced to sign to get the money), 84:13-85:5 (testifying CBV did not believe it was binding on them because it was signed under duress).

ChanBond and the Leane Defendants settled on November 10, 2022, Cohen Dec. Ex. 2, and the settled claims were promptly dismissed. D.I.178. On April 20, 2023, ChanBond and CBV entered into another agreement (the Final Settlement Agreement) that effectively disposed of all remaining claims between CBV and ChanBond in this action. D.I. 214. The Final Settlement Agreement provided for ChanBond's payment of $4,000,000.00 to CBV, *id.* at ¶ 2.1, broadly worded mutual releases, *id.* at ¶ 3, and the dismissal with prejudice and that CBV would release of "all breach of contract claims against ChanBond." *Id.* at ¶ 4.1. The CBV Settlement also provided that ChanBond would cooperate with CBV in pursuing claims against Leane

Defendants, *id.* at ¶ 2.3, that CBV would release its remaining declaratory judgment claims against ChanBond "once CBV's claims against Leane Defendants are completely resolved," *id.* at ¶ 4.1, and that, in the event that CBV recovered any funds from Leane Defendants, it would pay a kickback of 25% of the net recoveries to ChanBond, up to a maximum of $500,000. *Id.* at 2.2. The CBV Settlement also contained CBV's agreement to "hold the ChanBond Releasees harmless in connection with any counts that remain" against ChanBond *Id.* at 4.2.

## V.  This Action and the Court's Prior Ruling

This action was filed on October 15, 2021; the First Amended Complaint, which is the operative pleading, was filed on Dec. 6, 2021. In both Complaint and First Amended Complaint, CBV made numerous assertions that were demonstrably false in light of the contents of the First Settlement Agreement – the existence of which CBV did not disclose to the Court. Most notably, CBV's **entire cause of action demanding specific performance**, D.I. 6 at ¶¶ 85-99, was expressly contradicted by, and in breach of, CBV's agreement that "ChanBond should withhold any additional Recoveries until the completion of the arbitration." First Settlement Agreement, ¶ 6. And this was hardly the only such contradiction. For example:

- CBV asserted that "Payment of these amounts are to be made to CBV "within thirty (30) calendar days after each applicable calendar quarter." D.I. 6, ¶ 64. But CBV had already agreed to the modification of that schedule. D.I. 49-7 ¶¶ 4-6;

- CBV claimed that "Bentham [the litigation funder] is only entitled to 22.5% of the gross recoveries, rather than 25% minus principal," D.I. 6, ¶ 67. But CBV had agreed that "the payment to the litigation funder…of the reimbursement of their funding plus investment return is a litigation cost…and will be considered a shared expense." D.I.49-7, ¶ 11.

In March, 2022, after the arbitration award was issued, Leane Defendants intervened in this action to protect their interests in the property at stake in this litigation. D.I. 28. On March 15, 2022, CBV moved for a preliminary injunction and temporary restraining order seeking to prevent ChanBond from distributing the funds obtained as a result of the settlement of the patent lawsuits. D.I. 43, 44. CBV's core argument on that motion was that Section 2.8 of the PPA was not merely a definition of Net Revenues, but rather provided CBV with a right to "pre-approve" certain contracts ChanBond might enter into, rendering those contracts void if not pre-approved by CBV. D.I. 65 at 2.

On October 5, 2022, the Court denied CBV's motion for preliminary injunction and rejected CBV's construction of Section 2.8, finding that it was simply a definition of which costs and fees were eligible to be deducted when calculating Net Recoveries, not a provision that provided CBV with a pre-approval right that limited what ChanBond could or could not do in the first instance:

> § 2.8 is unambiguous because it is susceptible to but one reasonable interpretation. When the PPA is "read as a whole," § 2.8 is a definition which provides a limitation to what costs and fees require pre-approval from CBV to be eligible as a deduction when calculating Net Recoveries. … to an objective, reasonable third party, it is clear that § 2.8 defines the costs and fees which are deductible from Net Recoveries and provides a limitation as to the costs and fees requiring pre-approval from CBV to be eligible as a deduction.

D.I. 151 at 11-12.

After the settlement discussions and Final Settlement Agreement detailed *supra*, CBV sought leave to amend to assert a claim for unjust enrichment against Leane Defendants and seek a constructive trust, and the Court denied that request. D.I. 220. On June 16, 2023, the parties submitted a Joint Status Report in which they agreed that "in light of the Court's prior rulings

and the parties' respective settlements, there are no claims remaining to be tried." D.I. 224, ¶ 1. The present motion followed.

## ARGUMENT

### I. THE REMAINING CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND AS MOOT

This case – and each of the claims asserted in it (other than Leane Defendants' claim for confirmation of the arbitration award) – was filed to address the question of how much money ChanBond was obligated to pay CBV under the terms of the PPA. But CBV has settled with ChanBond. As such, regardless of what amount CBV was actually paid by ChanBond pursuant to that settlement, ChanBond does not owe CBV another dime. And ChanBond is the only party in this case who had a payment obligation to CBV. Because ChanBond and CBV are no longer adverse, there is no longer subject matter jurisdiction in this case. And because, in any event, the question of how much money CBV is due from ChanBond has been conclusively resolved by the settlement between those parties, this case is moot. There is nothing left for the Court to "declare" that would affect the behavior of the parties, and CBV's settlement with ChanBond both included releases that encompassed Leane Defendants and also, through CBV's agreement to indemnify ChanBond, precludes CBV from ever recovering on any claim that Leane Defendants were "unjustly enriched." As such, the case should be dismissed.

### A. The Court Lacks Subject Matter Jurisdiction Over Any Remaining Claims Because ChanBond and CBV Are Not Adverse Parties

The Court cannot award "relief" on CBV's motion because CBV and ChanBond are no longer adverse. Federal courts have no subject matter jurisdiction over claims between non-adverse parties. "Because the Constitution prohibits federal courts from deciding issues in which there is no 'case' or 'controversy,' declaratory judgments can be issued only when there is 'an actual controversy.'" *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)

(cleaned up). Fundamental to the existence of such a controversy is the requirement that the litigants be adverse. *Id.*, 912 F.2d at 648. *See also Univar Sols. Inc. v. Geisenberger*, 2022 WL 2064990, at *6 (D. Del. June 8, 2022) ("the parties lack sufficient adversity to entertain these claims at this juncture"); *Moore Corp. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089, 1095 (D. Del. 1995) (adversity requires either presently adverse interests or imminent future harm that will create adverse interests).

For purposes of assessing adversity, the relevant parties are CBV and ChanBond. CBV acknowledges that its remaining claim is against **ChanBond**, not Leane Defendants: "CBV has preserved its claim **against ChanBond** for the single payment of $30 million made to Leane Defendants,[14] unjustly enriching Leane Defendants." Op. Br. at 14 (emphasis added) D.I. 239. In CBV's view, "[t]he critical question raised by the Court's Memorandum Opinion is the scope of CBV's pre-approval right with respect to the subsequent $30 million payment **made by ChanBond** to Leane Defendants as a stakeholder expense fee for their 22% stake in ChanBond as proposed in the ASA." *Id.* (emphasis added). This issue CBV asks the Court to resolve – the meaning of the PPA – is between CBV and ChanBond. IPNAV is not a party to the PPA.

But CBV and ChanBond are no longer adverse parties. CBV has agreed to seek no remedies of any kind from ChanBond, to hold ChanBond harmless from in connection with all remaining claims, and to pay a kickback of up to $500,000 to ChanBond if it recovers damages from Leane Defendants.[15] Final Settlement Agreement, ¶¶ 2.2, 3.1, 4.2. Indeed, the Final

---

[14] The payment at issue was made to IPNAV in connection with an arbitration award issued in favor of IPNAV, not to Deirdre Leane individually or the "Leane Defendants" collectively. Cohen Dec. ¶ 4, Ex. 2 at 2.

[15] In essence, CBV and ChanBond have agreed in private negotiations that both deserve proceeds from the Patent Cases and Leane Defendants do not – regardless of the award issued in the binding arbitration between ChanBond and Leane Defendants. CBV has therefore agreed to

Settlement Agreement affirmatively bound ChanBond to **cooperate** with CBV on this motion. *Id.*, ¶ 2.3. There is no longer a legal dispute between these two parties for this Court to adjudicate. Leane Defendants intervened in the matter after they obtained an award against ChanBond in arbitration in order to protect their interests in the property at issue in this case, but they are not a party to the PPA, IPNAV has already been paid in full satisfaction of the arbitration award, and CBV is not seeking relief against Leane Defendants in this action. Instead, CBV in effect seeks to have this Court adjudicate its fully settled dispute with ChanBond, so that it can later attempt to collect from Leane Defendants funds it claims were owed to it by ChanBond. But that does not make Leane Defendants an adverse party to CBV in this action. *See, e.g.¸ Bryan v. All Out Die Cutting, Inc.*, 32 F. App'x 651, 652 (3d Cir. 2002) (finding lack of jurisdiction and declining to let case continue against insurer where party had settled with defendants); *Apotex Inc. v. Alcon Rsch., Ltd.*, 238 F. Supp. 3d 1104, 1107 (S.D. Ind. 2017) (granting Intervenor-Defendant Barr's motion to dismiss for lack of subject matter jurisdiction to grant declaratory judgment where plaintiff had settled with the named defendant: "[b]ecause that declaration will not resolve any dispute between Apotex and Alcon, and that declaration is the only thing sought in this suit, it appears on the face of the complaint that there is no case or controversy").

ChanBond understandably does not oppose CBV's motion seeking a declaration that ChanBond breached its contractual obligations. There is no reason for it to do so; it lacks any cognizable interest in the outcome of this case, and it would be breaching the Final Settlement Agreement were it to oppose the motion. As in *Apotex*, then, CBV "now asks this Court to

---

leave money in ChanBond's hands and seek recovery of damages caused by ChanBond's alleged breaches of contract solely from Leane Defendants.

declare the legal import of a contract between two private parties, something that Article III does not permit this Court to do." *Apotex*, 238 F. Supp. 3d at 1112. The motion must be denied, and the case dismissed for lack of subject matter jurisdiction.

### B. All Remaining Declaratory Judgment Claims Are Moot

The declaratory judgment claims are also moot, because they relate only to events that have already occurred: ChanBond's payments to IPNAV and CBV. It is black letter law that declaratory judgment actions are intended to govern the future conduct of the parties and "inappropriate solely to adjudicate past conduct." *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (*quoting Gruntal & Co. v. Steinberg,* 837 F. Supp. 85, 89 (D.N.J. 1993). *See also Johnson v. U. S.*, No. CR 06-74-GBW, 2022 WL 17403476, at *3 (D. Del. Dec. 2, 2022) (movant was not seeking a declaratory judgment in the "true legal sense" where he requested declaration that his rights *had been* violated in the past); *OC Tint Shop, Inc. v. CPFilms, Inc.*, No. CV 17-1677-RGA, 2018 WL 4658211, at *9 (D. Del. Sept. 27, 2018) (dismissing declaratory judgment claim brought "solely to adjudicate past conduct").

The requirement that a declaratory judgment relate to future conduct is not an abstract principle; it is necessary to the Court's subject matter jurisdiction:

> The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in the original). *See also Zandford v. S.E.C.*, No. CIV. 11-172-GMS, 2012 WL 628002, at *5 (D. Del. Feb. 27, 2012) (dismissing declaratory judgment claim *sua sponte* for lack of jurisdiction). Here, the requested declaration can have no effect on future conduct.

First, the declaration can have no effect on ChanBond's future behavior towards CBV. CBV settled its dispute with ChanBond, released all claims against it, covenanted not to seek further recovery from it, and agreed that ChanBond had no further obligations or duties to CBV. Final Settlement Agreement, ¶ 3.1. And that will remain the case even if the Court declared that, under the PPA as properly construed, ChanBond would theoretically have owed CBV more money than it paid them if, hypothetically, the parties had not settled.

Leane Defendants, meanwhile, are not party to the contract between CBV and ChanBond, and Leane Defendants' behavior toward CBV cannot be affected by the declaration sought. To the extent that the declaration ever could have regulated any behavior of any party, it would have been in informing **ChanBond** of what portion of the patent proceeds it owed to each of CBV and Leane Defendants, which might have impacted ChanBond's decision about how it would pay the debt it had legally incurred to the Leane Defendants. But time is linear. ChanBond has already paid that debt, and no declaration by the Court **now** can reach back in time and affect ChanBond's behavior **then**.

Second, CBV's argument that a declaration regarding the meaning of § 2.8 could shape the future behavior of the parties because it has "significant impact on the final distribution owed to CBV from the Patent Settlement Fund," D.I. 239 at 17, is just wrong. A declaratory judgment can have no impact on the distribution owed to CBV from the 'Patent Settlement Fund' for two separate reasons: The only contract giving rise to any obligation for anyone to make payment to CBV is the PPA, and that is a contract exclusively between CBV and ChanBond, and in any event no "Patent Settlement Fund" exists as an independent entity capable of owing CBV anything.

Although CBV uses leading capitals for the term and repeats "Patent Settlement Fund" 17 times in its Opening Brief, the term was never defined and appears to simply refer to the total funds ChanBond recovered on its patent suit. **ChanBond**, in turn, owes CBV nothing. By the express terms of the Final Settlement Agreement, it has no further payment obligations to CBV at all  Whatever other distributions ChanBond might make out of the funds left to it by means of the Final Settlement Agreement (to its parent corporation, its manager, other creditors, or otherwise), none of that will go to either CBV or Leane Defendants, because CBV and Leane Defendants each fully and finally resolved their claims to further distributions from ChanBond. As between ChanBond and CBV (or the Leane Defendants), then, "the final distribution [] from the [']Patent Settlement Fund[']," D.I. 239 at 17, is not a future event at all; it has already occurred. Indeed, with respect to CBV, that "final distribution" was determined by CBV's freely given accord in the Final Settlement Agreement.

Third, CBV does not rescue its motion by including its request that the declaration find that Leane Defendants were unjustly enriched by that already made payment. For one thing, the smuggled request for a ruling on CBV's planned unjust enrichment claim is contemptuous of the Court's ruling that CBV could not include that claim in this action. D.I. 220. For another, CBV does not even gesture at supporting its contention that construing the PPA in that manner would render IPNAV "unjustly enriched" by being paid for its services (and in an amount **less** than it was owed) pursuant to a valid arbitration award. CBV does not identify what state's law it thinks would apply to such a claim, let alone make a legal argument attempting to apply that state's unjust enrichment law to these facts or citing any precedent relevant to it. *See* D.I. 239 at 15-18. And Leane Defendants are unaware of any state's law that would allow an unjust enrichment claim based on a payment made to satisfy an arbitration award. *Cf. Insignia Cap. Advisors, Inc.*

*v. Stockbridge Corp.*, No. 05-99-01126-CV, 2000 WL 267495, at *4 (Tex. App. Mar. 13, 2000) (under Texas law, unjust enrichment requires a showing of "fraud, duress, or the taking of an undue advantage"). But more fundamentally, while CBV's hoped-for lawsuit might be in the future, that lawsuit would likewise be "solely to adjudicate past conduct": whether IPNAV **had been** unjustly enriched when it received its payment from ChanBond.

CBV's requested declaration, then, is intended "solely to adjudicate past conduct": whether ChanBond's payment to the Leane Defendants **in November 2022** somehow breached ChanBond's obligations to CBV under the PPA. As such, the Court lacks jurisdiction to grant or deny it.

### C. The Claims are Moot Because CBV Released Defendants

Even were none of that true, the remaining causes of action are moot because the Final Settlement Agreement includes CBV's release of ChanBond, Ms. Leane, and IPNAV. CBV and ChanBond entered into an agreement by which CBV released any and all claims against not only ChanBond, but also ChanBond's parent corporation, UnifiedOnline, Inc. ("Unified"), ChanBond's Manager, Billy Carter, and also ChanBond's and Unified's "present and former officers … shareholders … managers, members … agents … and, where applicable their respective predecessors … (collectively, the "ChanBond Released Parties"), and each of them." D.I. 214 Ex. A, ¶ 3.3 (emphasis in original). Ms. Leane is, undisputedly, a former officer, manager, and member of ChanBond – prior to its sale to Unified, she was ChanBond's sole member and Manager, *see* D.I. 49-1 at 11 (Ms. Leane signing as "Manager"); D.I. 42 at 1 (reciting that Ms. Leane owned and was selling 100% of the member interests in ChanBond) – while IPNAV was expressly ChanBond's agent. *See* D.I.49-1 at 16 (CIA reciting that IPNAV would act as ChanBond's "worldwide intellectual property enforcement and licensing agent");

Leane Dec. Ex. 2. And CBV's release did not carve out its claims against Ms. Leane or IPNAV. As such, those claims are released, and the case is moot.

Of course, it is clear that CBV did not think through the legal consequences of the broad release to which it was agreeing, or recognize that many of the categories of people and entities it was agreeing to release encompassed Leane Defendants; elsewhere in the Final Settlement Agreement, CBV made clear that it intended to pursue further claims against Leane Defendants.[16] But it is well-settled that CBV's hopes and expectations for future conduct cannot change the meaning of the release. *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent"); *Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F. Supp. 1210, 1218 (D. Del. 1982) ("when the words are clear and unambiguous, the intent of the parties is to be determined only from the express language of the contract"). And this contract unambiguously released CBV's claims against Leane Defendants. That, too, is an independent reason to end this litigation.

---

[16] It is relatively clear what happened here: either ChanBond proposed broad release language (which would insulate ChanBond from the need to spend money litigating the indemnification claims referenced in Section I.D, *infra*), and CBV failed to appreciate its impact before agreeing to that language, or CBV's counsel proposed boilerplate release language from another contract without considering how that release would impact CBV's future plans, and ChanBond accepted. Regardless of the order of events, the outcome is the same: CBV's failure to appreciate the legal impact of what it agreed to is no basis for the Court to relieve it of that agreement, and the release must be enforced as written. *See Shah v. Shah*, No. CIV.A. 904K, 1988 WL 67403, at *4 (Del. Ch. June 28, 1988), *on reconsideration*, No. CIV.A. 904K, 1988 WL 81159 (Del. Ch. Aug. 3, 1988) ("Shashi's argument appears to be that he did not appreciate the legal consequences of the transaction to which he (represented by counsel) agreed. However, where the parties written agreement accurately expresses the contract which they intended to make, the fact that one party was mistaken as to the legal effect of his contract will not justify a court of equity, absent any other circumstances, interposing its remedies against it").

### D. The Claims are Moot Because CBV Indemnified ChanBond, Which Indemnified IPNAV

Finally, even if CBV hadn't released its claims against Leane Defendants, it separately mooted them by creating an ouroboros of indemnification agreements by which, even in the unlikely event that such a claim was ever successful, CBV would ultimately need to pay over to Leane Defendants any amounts it could recover from them. In the Final Settlement Agreement, CBV agreed to hold ChanBond and its releasees harmless[17] in connection with CBV's planned claims against the Leane Defendants. Final Settlement Agreement, ¶ 4.2. ChanBond, however, already has an existing indemnification obligation to IPNAV under the ASA: to "indemnify, hold harmless, and reimburse IPNAV [and Ms. Leane] … against any and all claims, losses, damages, liabilities, expenses, costs, actions, joint or several" that relate to or arise from the ASA, IPNAV's work as ChanBond's patent monetization agent, or in any way involving the patents. Leane Dec Ex. 2, ¶ 15. There is no conceivable dispute that CBV's claims – both in this action and in the "anticipated" future claim it says it wants to bring – qualify for such an indemnity. Indeed, Leane Defendants **already** have a right under that provision to seek indemnification from ChanBond for the attorneys' fees incurred related to CBV's claims. And Section 4.2 of the Final Settlement Agreement grants ChanBond the right to have CBV indemnify it for those costs. CBV, in other words, **already** owes Leane Defendants significant sums related to its frivolous attempt to continue this litigation. And the same would apply to any future litigation: CBV's claims against Leane Defendants would trigger Leane Defendants' right to indemnification from ChanBond, which would in turn trigger ChanBond's right to indemnification from CBV. The only parties who could conceivably be enriched in such a

---

[17] A "hold harmless" agreement is an agreement to indemnify. *See Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 589 (Del. Ch. 2006) ("the phrase 'hold harmless' is actually defined by reference to indemnification rights").

situation are the lawyers; any hypothetical award to CBV would be directly offset by CBV's

obligation to pay over that sum to Leane Defendants to satisfy the circular indemnification loop.

As such, CBV's claims against Leane Defendants are moot. It is well settled that a

plaintiff who must remit to another entity any recovery it receives on its claims lacks standing to

bring those claims. *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994). Where, as

here, the plaintiff had standing when the litigation commenced and then became obliged to remit

any recovery, the case is moot. *Koons v. XL Ins. Am., Inc.*, 620 F. App'x 110, 113 (3d Cir. 2015)

(dismissing appeal as moot because "Koons no longer has anything personally to gain from a

favorable outcome to this litigation" given that Koons was indemnified and would need to turn

over any recovery). Clearly, this is not the legal **outcome** CBV intended when it settled with

ChanBond and agreed to an indemnification provision. But it is the legal **impact** of that

provision, whether or not CBV recognized it at the time it agreed to indemnify ChanBond, and

the case must be dismissed for that reason as well.

## II. CBV'S MOTION FOR SUMMARY JUDGMENT FAILS ON THE MERITS

### A. CBV Seeks a Declaration not Requested in the Pleadings, That is not a Proper Subject for Declaratory Relief, and, in Any Event, Requires the Court to Make Factual Findings For Which CBV Has Submitted No Evidence

CBV seeks, in its Opening Brief:

> a declaration from this Court any reasonable construction of PPA
> Section 2.8 grants CBV a pre-approval right over the $30 million
> stakeholder expense fee paid to Leane Defendants for their 22%
> stake in ChanBond per the ASA, such payment having been made
> without notice to or approval by CBV, thereby unjustly enriching
> Leane Defendants to the detriment of CBV. MB at 18-19.

It is unclear what provisions, if any, in the operative pleading would lead to this relief. At the

outset, the Court **denied** CBV leave to amend its complaint to include an unjust enrichment

claim D.I. 220. Even if unjust enrichment were susceptible to declaratory judgment – which it is

not; it is a claim for relief – there is no such claim in this action, CBV has presented no argument to support such a claim, and there is no evidence in the record supporting such a claim.

Likewise, although the declaration includes language that seeks, in effect, a judicial finding that the payment had been made without notice to or approval of CBV, this is simply not cognizable relief that can be granted as part of a declaration. Not only is this by its very language an entirely backward-looking statement and therefore inappropriate for declaratory relief, *OC Tint Shop*, 2018 WL 4658211, at *9, it contains several distinct finding of fact: that (1) a payment was made; (2) to Leane Defendants; (3) that the payment was "a stakeholder expense fee;" (4) for the (supposed) 22% stake in ChanBond per the ASA; (5) that CBV had no notice of the payment; and (6) that CBV did not approve the payment. CBV has not submitted competent evidence to support any of those purported facts.[18]

Neither of the declarations previously sought by CBV even makes mention of a payment right. Nor is such a right fairly encompassed by the remaining declaratory judgment claim in the counterclaim, which sought a declaration that Section 2.8 is a rule of allocation governing whether payments made by ChanBond are deductible for the purpose of calculating Net Recoveries; that such a payment would be deductible regardless of CBV's approval; and that CBV's silence constituted sufficient approval in any event. D.I. 41 at 70.

None of the active claims fits the declaration sought, and, critically, CBV has not even attempted to argue for how its newly sought declaration relates to the claims in this case. It is not clear to Leane Defendants which claim CBV is asking for relief under. To the extent it is a claim

---

[18] To be clear: Leane Defendants do not argue that they did not receive a payment from ChanBond. But it is not their burden to provide evidence of the payment. Leane Defendants very much dispute CBV's claims about the alleged purpose of the payment and the approval status, and the evidence submitted is insufficient to establish CBV's claims.

against ChanBond, it must fail for lack of adversity for the reasons given above. To the extent that it is a claim for any form of declaratory relief, it must fail for mootness. To the extent that it is a new claim, it must fail because CBV was denied leave to amend. And, at a minimum, CBV should be required to specify how its desired relief relates to its causes of action.

**B.  Section 2.8 of the PPA Is a Rule of Allocation, Not an Approval Right**

CBV seeks a declaration that PPA Section 2.8 provided it with a right to approve or disapprove ChanBond's payment to IPNAV before ChanBond made that payment in November 2022. That request, however, is inconsistent with the meaning of Section 2.8 and the Court's prior decision interpreting it. As the Court already found, Section 2.8 provides a definition important to determining how much money ChanBond owed CBV under the PPA and does not grant CBV approval rights. If CBV approves paying expenses to an affiliate, those expenses may be deducted from Net Recoveries, and ChanBond and CBV effectively split that cost. If CBV does not approve the payment, ChanBond must pay the full cost itself, and will be obligated to pay more to CBV under the contract. It is, as put in Leane Defendants Counterclaim, "a rule of allocation for whether payments made by ChanBond are deductible from Gross Recoveries in calculating Net Recoveries." D.I. 41 at Counterclaim, ¶ 23**.**

Indeed, the Court already reached this conclusion when it denied CBV's motion for a preliminary injunction, concluding that Section 2.8 unambiguously "defines the costs and fees which are deductible … and provides a limitation as to the costs and fees requiring pre-approval from CBV **to be eligible as a deduction**." D.I. 151 at 11-12 (emphasis added). In its complaint, CBV argued that Section 2.8 instead granted CBV a right to pre-approve contracts between ChanBond and its affiliates, and rendered it a breach of the PPA for ChanBond to enter into such a contract. D.I. 6 ¶¶ 156-175**.** The Court correctly rejected that claim: "§ 2.8 does not purport to grant CBV an unfettered right of consent before ChanBond enters into any affiliate agreement."

D.I. 151 at 11-12. Now, CBV argues that the PPA granted it an "unfettered right of consent

before ChanBond [makes any non-deductible payment]." Op. Br. at D.I. 239. But the Court's

earlier holding applies with equal force here. Section 2.8 does not give CBV a right to approve or

block ChanBond from making payments; it simply determines whether those payments are

deductible in calculating the Net Recoveries that set the baseline for determining how much

money ChanBond owes CBV under the PPA.[19] Simply put: Section 2.8 is a **definition**, not a

provision that can be 'breached.' Any breach between ChanBond and CBV would have come, if

at all, when ChanBond failed to pay CBV the full amount owed under Section 3.3.2 of the PPA.

And that breach never happened and never can, given CBV's settlement with ChanBond.[20]

---

[19] Indeed, any other ruling would, when combined with the Court's prior determination, result in
an unworkable state of affairs. ChanBond would be able to enter into binding agreements with
affiliates and stakeholders without breaching Section 2.8, because Section 2.8 does not give CBV
a right of consent over whether ChanBond can enter such contracts. But CBV could, under its
interpretation of the agreement, then refuse to allow ChanBond to fulfill its payment obligations
under those contracts, effectively forcing ChanBond to breach them. This would be an untenable
construction of the agreement and the Court should reject it. *See Osborn ex rel. Osborn v. Kemp*,
991 A.2d 1153, 1161 (Del. 2010) ("We cannot countenance such an absurd interpretation of the
contract").

[20] It is not at all clear that there would have been such a breach even without the Final Settlement
Agreement, and even assuming CBV had not sufficiently approved ChanBond's payment to
IPNAV. Until ChanBond and CBV settled their dispute, those parties were actively litigating
whether Section 2.8 applied to amounts owed to IPNAV at all; if it did not, then CBV received
everything it was owed under the PPA.

Even if the Court had ultimately ruled that the payment to IPNAV could not be deducted and
ChanBond owed CBV more money than remained from the funds recovered on the patent
litigation, nothing in the PPA required ChanBond to make such payments specifically from the
proceeds of the patent litigations, rather than from other sources. Faced with a judgment against
it, ChanBond might have been able to borrow or raise additional funds, or to assert claims
against its Manager, Billy Carter, and recover the necessary funds from him. Instead, CBV
settled its claims against ChanBond and rendered determination of Net Recoveries purely
academic: **whatever** amount CBV **would have been** entitled to from ChanBond under the PPA,
it no longer is entitled to anything more than what it already received. As such, ChanBond never
breached the PPA.

The Court's prior interpretation of Section 2.8 as providing a rule of allocation gives coherent meaning to the entire clause. This is in stark contrast to CBV's claimed meaning, which essentially reads out of the agreement every word of Section 2.8 prior to the phrase "any cost or expense which is paid to an Affiliate of [ChanBond] or to a stakeholder of [ChanBond] shall require the prior approval of Seller" – including the "Notwithstanding the above" at the start of that sentence. But contract interpretation does not look at isolated phrases, removed from context. "The meaning of a particular phrase is not properly determined by considering the phrase in isolation but by reading it in harmony with the rest of the contract." *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985). Read in context with the rest of the provision, the phrase upon which CBV relies is clearly part of a rule of allocation dictating what costs can be deducted before CBV's share of any proceeds would have been calculated – as, indeed, this Court already found.

Finally, interpreting Section 2.8 as a rule of allocation is not merely the conclusion demanded by the plain language of the agreement. It is also the only interpretation supported by CBV's own understanding of why the provision is there, and by its course of dealing in other agreements with ChanBond, including the First Settlement Agreement.[21]

---

[21] This Court has already found that the provision is unambiguous in the context of CBV's "contract formation approval right" argument. The argument here is presented in the unlikely event that the court determines that the contract is ambiguous as applied to CBV's "contract payment approval right" argument.

Although CBV does present arguments and assertions as to its intent throughout the process, *see, e.g.*, Op. Br. at 1, these statements are presented without citation to testimony or other forms of admissible evidence.[22] They should therefore be disregarded.

Finally, and were it necessary, the First Settlement Agreement further indicates that the parties did not intend, or view, Section 2.8 as establishing a "payment approval right" of any kind. Rather, CBV negotiated for a payment approval right in the First Settlement Agreement – a right it promptly abandoned by treating the First Settlement Agreement as non-binding and asserting claims against ChanBond that directly contradicted the First Settlement Agreement's terms.

### C. Section 2.8 Does not Apply to ChanBond's Payment to IPNAV Because IPNAV is Neither a ChanBond Affiliate nor a ChanBond Stakeholder

Even were that not the case, Section 2.8 would have no application to ChanBond's payment to IPNAV. By its terms, Section 2.8 applies (in relevant part) only to ChanBond "Affiliates" and "stakeholders" in ChanBond. ChanBond's "Affiliates" are its parents, subsidiaries, or entities under common control with ChanBond. D.I. 42 § 2.1. Though the PPA does not define "stakeholders" in ChanBond, its meaning is clear and unambiguous: persons who hold an interest (a 'stake') in the company itself, directly or indirectly. *See* Declaration of Deirdre Leane ("Leane Dec") ¶ 13-14. For instance, ChanBond's members are stakeholders in ChanBond regardless of whether or not they are also "Affiliates"; a contract with a minority member in ChanBond would be subject to Section 2.8 because that member would be a

---

[22] This is a persistent issue throughout CBV's Opening Brief; indeed, it is not clear that the factual assertions in the brief are supported by *any* potentially admissible evidence. There are, to be sure, copious citations to the facts asserted in the pleadings, but the complaint is not verified. Citation to an unverified complaint is insufficient to support a motion for summary judgment. *Averill v. Jones*, No. CV 12-599-MN, 2022 WL 605815, at *6 (D. Del. Jan. 19, 2022) (on summary judgment, "a litigant may not rely on its unsworn pleadings").

ChanBond stakeholder, though not an Affiliate. Similarly, Unified is both an Affiliate of ChanBond (as ChanBond's 100% owner) and a stakeholder of ChanBond; Unified's many shareholders other than Billy Carter, in contrast, are stakeholders but not Affiliates: they hold an indirect ownership interest in ChanBond, through Unified, but do not individually **control** ChanBond.

As such, Section 2.8's reference to payments to stakeholders has no application to payments to IPNAV. ChanBond made its payment under the Second Settlement Agreement to IPNAV, the entity that had provided it advisory services. Cohen Dec. Ex. 2 at 2. IPNAV is not an Affiliate of ChanBond, as CBV apparently now concedes;[23] it is 100% owned by Deirdre Leane and therefore does not control, is not controlled by, and is not under common control with ChanBond. Leane Dec ¶ 12. And IPNAV is not a stakeholder in ChanBond, because it does not own any interest in ChanBond, directly or indirectly.

CBV's alternative proposed definition – that anyone to whom ChanBond owes a debt calculated based on a percentage of the patent recovery is a stakeholder (which CBV suggests by implication but never expressly argues for) – is not only incorrect, but has been contractually disclaimed by CBV. As an initial matter, nothing in IPNAV's ASA gave it a particular right to be paid out of the proceeds of the patent litigation, specifically; rather, the ASA provided that IPNAV's fee would be *calculated* as a percentage of those proceeds. Leane Dec. Ex. 2 at ¶ **5.** Money is fungible. IPNAV had no legal right to the proceeds themselves, and ChanBond was free to pay IPNAV's fee from other sources as it chose. *Id.* More fundamentally, CBV itself previously recognized that "stakeholder" did not encompass parties who had in interest in the

---

[23] Though the FAC relied **only** on the "Affiliate" language in Section 2.8, CBV's motion argues **only** that § 2.8 applies because Leane Defendants are, supposedly, "stakeholders," D.I. 239 at 17, abandoning any argument that the "Affiliate" language of that section is relevant to its claims.

outcome of the patent litigation, but not an ownership interest in ChanBond itself. CBV's proposed definition of "stakeholder" would also encompass ChanBond's litigation funders, whose loans were to be repaid only if ChanBond recovered on the patent litigation, ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████. Yet CBV specifically acknowledged in the First Settlement Agreement that the payment to the litigation funder was a "litigation cost under the PPA … and will be considered a shared expense between ChanBond and CBV." D.I. 49-7, ¶ 11. And it did so despite, by its own admission, being unaware of either the terms of the funding agreements or the amount the funder was owed as a result. *See* D.I. 6, ¶¶ 37, 93. Similarly, CBV's proposed definition of "stakeholder" would have encompassed ChanBond's patent litigation counsel, who were paid on contingency. Cohen Dec Ex. 3 at 5**.** Yet CBV has never suggested that ChanBond's payments to its litigation counsel were not deductible under Section 2.8 as not "pre-approved."

To the extent that the Court reaches the issue at all, it should reject CBV's crafted-for-summary-judgment proposed definition of "stakeholder" and construe it, in line with its ordinary meaning, as an individual or entity with a direct or indirect ownership interest in ChanBond. And, on that definition, there should be no dispute that ChanBond's payment to IPNAV was deductible under Section 2.8 of the PPA.

### D. Issues of Fact Would Preclude Summary Judgment and Require Additional Discovery and Trial

Finally, were that not enough, summary judgment would still be inappropriate because issues of fact remain that would require not only trial, but further discovery. It is well settled that

summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wonderland Switzerland AG v. Evenflo Co., Inc.*, No. 1:20-CV-00727-JPM, 2022 WL 20590003, at *3 (D. Del. Dec. 6, 2022), *quoting* Fed. R. Civ. P. 56(a). To meet that burden, the moving party must provide evidence of record. *Delaware State Univ. v. Thomas Co., Inc.*, No. CV 15-1144-LPS-MPT, 2020 WL 6799605, at *15 (D. Del. Nov. 19, 2020) (summary judgment motion must rely on "materials on the record, such a deposition, documents, electronically stored information, admissions, interrogatory answers, affidavits and other like evidence"). Here, disputed factual issues abound.

For instance, even assuming the Court changed its construction of Section 2.8 and treated that section as prohibiting ChanBond from paying its vendors without CBV's approval, whether that approval was given would be an issue of fact. CBV has submitted no evidence to support its claim that the necessary approval was not provided, precluding summary judgment. *See* Fed. R. Civ. P. 56(c), (e).

More, the PPA does not require CBV's approval to take any particular form, D.I. 42 at § 2.8, and the question of whether CBV sufficiently approved payment to IPNAV by silently accepting the benefits IPNAV provided to ChanBond is a question of fact not suited for summary judgment. *See Chase Manhattan Bank v. Iridium Afr. Corp.*, 197 F. Supp. 2d 120, 130 (D. Del. 2002) (necessary consent did not have to be in writing and whether silent acceptance of benefit of loan was sufficient ratification or acquiescence was, as a matter of Delaware law, a question of fact), *report and recommendation adopted in relevant part, rejected in irrelevant part*, No. CIV.A. 00-564 JJF, 2004 WL 323178 (D. Del. Feb. 13, 2004) (adopting findings on lack of need for written consent, acquiescence, and ratification) and *report and recommendation*

*adopted in part, rejected in irrelevant part*, 307 F. Supp. 2d 608 (D. Del. 2004). That is particularly true here, where the pleadings themselves establish CBV knew or should have known the ASA existed. As alleged in the Counterclaim, the CIA informed CBV that ChanBond and IPNAV were parties to an agreement by which IPNAV would be ChanBond's "worldwide intellectual property enforcement and licensing agent" and would provide ChanBond with patent monetization services. D.I. 41, ¶ 6 (reciting the relevant language); D.I. 79, ¶ 5 (referring to the document for its terms); D.I. 49-1 at 16, § 1.1. In addition, Ms. Leane specifically confirmed to both CBV's counsel and CBV's principals that ChanBond had hired IPNAV. D.I. 41, ¶¶ 10-12; D.I. 41-1 and 41-2; D.I. 79, ¶¶ 10-12. Further, in November 2015, after purchasing ChanBond, Unified publicly filed ISA with the SEC – and that agreement disclosed the existence of the ASA. D.I. 41, ¶¶ 17-18; D.I. 41-3 at Schedule 1.3; D.I. 79, ¶¶ 17-18. Whether or not CBV's knowledge of the agreement was sufficient to constitute acceptance by silence is an unsettled factual question.

Were that evidence not enough to raise an issue of fact, the Court would still need to deny summary judgment to allow the parties to complete discovery. CBV has three founders – Earl Hennenhoefer, Dick Snyder, and Bob Stine – who jointly discussed and decided on issues relating to the ChanBond transaction. Cohen Dec Ex. 1 at 62:5-63:18. Though Defendants deposed both Hennenhoefer and Snyder, CBV has refused to make Stine available for deposition, despite receiving a deposition notice and multiple requests to reschedule his deposition after the parties postponed it for the December 2022 stay. See, *e.g.*, D.I. 215 at 41-43. More, none of CBV's principles were deposed regarding their understanding of the term "stakeholder," which CBV identified as relevant for the first time after the depositions, and the parties have conducted no document discovery regarding the meaning of that term. Cohen Dec, ¶

6. If the Court believes that term is ambiguous, rather than unambiguously referencing ChanBond's direct and indirect owners, the parties would need to conduct discovery on that issue as well. For that reason, too, summary judgment would be inappropriate.

## CONCLUSION

This is a case that never should have been filed (CBV brought breach of contract claims it knew were unfounded), was effectively determined on CBV's preliminary injunction motion (when the Court ruled that Section 2.8 was not a pre-approval right at all), and should have been fully put to bed after CBV settled its claims against ChanBond. Yet it has shambled along, zombie-like, for roughly another year, driven primarily by CBV's regret at the terms of the multiple agreements it – advised by well-respected counsel – signed. It is time for that shambling – and the case – to end. For any and all of the many reasons articulated above, CBV's motion for summary judgment should be denied, Leane Defendants' cross-motion granted, and the action dismissed.

Respectfully Submitted,

OF COUNSEL:

Akiva M. Cohen
Dylan M. Schmeyer
KAMERMAN, UNCYK,
    SONIKER & KLEIN P.C,
1700 Broadway, 16th Floor
New York, NY 10019
212.400.4930
acohen@kusklaw.com
dschmeyer@kusklaw.com

Dated: February 12, 2024

/s/ James H. S. Levine
James H. S. Levine (DE No. 5355)
TROUTMAN PEPPER
    HAMILTON SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
302.777.6500
james.levine@troutman.com

*Attorneys for IPNAV, LLC and Deirdre Leane*